E-filing

FILED

AUG 30 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

David M. Arbogast (SBN 167571)
David@SpiroMoss.com
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax: (310) 235-2456

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone: (310) 854-4444; Fax: (310) 854-0812

Jeffrey K. Berns, Esq. (SBN 131351)
iberns@jeffbernslaw.com
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

Attorneys for Plaintiff and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

GREGORY M. JORDAN, individually and on behalf of all others similarly situated,

　　　　　　　　Plaintiff,

　　v.

PAUL FINANCIAL, LLC, and DOES 1 through 10 inclusive,

　　　　　　　　Defendants.

CASE NO. C07-04496

**CLASS ACTION COMPLAINT FOR:**

(1) **Violations of the Truth in Lending Act, 15 U.S.C.A. §1601, *et seq*;**

(2) **Violation of Bus. & Prof. Code §17200, *et seq.* - "Unlawful" Business Practices (TILA);**

(3) **Violation of Bus. & Prof. Code §17200, *et seq.* – "Unfair" and "Fraudulent" Business Practices;**

(4) **Breach of Contract;**

(5) **Breach of the Covenant of Good Faith and Fair Dealing; and**

(6) **Violation of Bus. & Prof. Code §17200, *et seq.* – "Unlawful" Business Practices (Fin. Code § 22302).**

**JURY TRIAL DEMANDED**

GO 44 SEC. N
NOTICE OF REASSIGNMENT
TO MAGISTRATE JUDGE SENT

CLASS ACTION COMPLAINT

**FILE BY FAX**　　ORIGINAL

1    Plaintiff, GREGORY M. JORDAN, individually and on behalf of all others similarly situated
2    allege as follows:

## I.

## INTRODUCTION

6    1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C.A. §1601, *et*
7    *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other
8    statutory and common law in effect. Plaintiff, GREGORY M. JORDAN, individually, and on behalf of
9    all others similarly situated, brings this action against PAUL FINANCIAL, LLC, and DOES 1-10
10    (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose
11    to Plaintiff and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan
12    documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate
13    on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in
14    negative amortization and that the principle balance will increase (12 C.F.R. § 226.19); and (iii) that the
15    initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and the
16    Class members would be paying on the Note(s).

## II.

## THE PARTIES

20    2.    Plaintiff, GREGORY M. JORDAN ("Plaintiff") is, and at all times relevant to this
21    Complaint was, an individual residing in Discovery Bay, California. On or about December 30, 2005,
22    Plaintiff refinanced his existing home loan and entered into an Option ARM loan agreement with
23    Defendants. The Option ARM loan was secured by Plaintiff's primary residence. Attached hereto as
24    Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this
25    action.

26    3.    Defendant, PAUL FINANCIAL, LLC, is a California corporation licensed to do, and is
27    doing business in California. At all relevant times hereto PAUL FINANCIAL, LLC was and is engaged
28    in the business of promoting, marketing, distributing and selling the Option Arm loans that are the

-2-

CLASS ACTION COMPLAINT

1    subject of this Complaint. PAUL FINANCIAL, LLC transacts business in Alameda County, California
2    and at all relevant times promoted, marketed, distributed, and sold Option Arm loans throughout the
3    United States, including Alameda County, California. PAUL FINANCIAL, LLC has significant
4    contacts with Alameda County, California, and the activities complained of herein occurred, in whole or
5    in part, in Alameda County, California.

6    4.     Defendants, PAUL FINANCIAL, LLC, and DOES 1 through 10, shall hereinafter be
7    referred to collectively as "Defendants."

8    5.     At all times mentioned herein, Defendants, and each of them, were engaged in the
9    business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of
10    this Complaint, throughout the United States, including Contra Costa County, California.

11    6.     Plaintiff is informed and believes, and thereon alleges that each and all of the
12    aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,
13    fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,
14    for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately
15    caused by the conduct of Defendants.

16    7.     Plaintiff is informed and believes, and thereon alleges, that at all times material hereto
17    and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the
18    agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-
19    ego of each of the remaining Defendants and were at all times acting within the purpose and scope of
20    such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,
21    partnership or employment and with the authority, consent, approval and ratification of each remaining
22    Defendant.

23    8.     At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,
24    employee, assignee and/or joint venturer of each of the other Defendants and was acting within the
25    course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the
26    permission and consent of each of the other Defendants.

27    9.     Plaintiff is informed and believes, and thereon alleges, that Defendants, PAUL
28    FINANCIAL LLC and DOES 1-10, and each of them, are, and at all material times relevant to this

-3-

CLASS ACTION COMPLAINT

1    Complaint, performed the acts alleged herein and/or otherwise conducted business in California.

2    Defendants, and each of them, are corporations or other business entities, form unknown, have, and are

3    doing business in this judicial district.

4       10.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10,

5    inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters,

6    CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

7    assignees to the loans which are the subject of this action. Plaintiff will seek leave of Court to replace

8    the fictitious names of these entities with their true names when they are discovered by herein.

9       11.    The true names and capacities, whether individual, corporate, associate or otherwise, of

10   Defendants DOES 1 through 10, inclusive, and each of them, are unknown to at this time, and therefore

11   sue said Defendants by such fictitious names. Plaintiff alleges, on information and belief, that each Doe

12   defendant is responsible for the actions herein alleged. Plaintiff will seek leave of Court to amend this

13   Complaint when the names of said Doe defendants have been ascertained.

14      12.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein,

15   Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were

16   acting in concert or participation with each other, or were joint participants and collaborators in the acts

17   complained of, and were the agents or employees of the others in doing the acts complained of herein,

18   each and all of them acting within the course and scope of said agency and/or employment by the others,

19   each and all of them acting in concert one with the other and all together.

20

21                      **III.**

22            **JURISDICTION AND VENUE**

23      13.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

24   U.S.C. § 1331.

25      14.    This Court has personal jurisdiction over the parties in this action by the fact that

26   Defendants are either individuals who reside in this District within California or are corporations duly

27   licenced to do business in California.

28   ///

-4-

1    15.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because
2    a substantial part of the events and omissions giving rise to the claims occurred in this district, and
3    because there is personal jurisdiction in this district over the named Defendant because it regularly
4    conducts business in this judicial district.

**IV.**

**FACTS COMMON TO ALL CAUSES OF ACTION**

8    16.    PAUL FINANCIAL, LLC ("Defendant") sells a variety of home loans. The ARM or
9    adjustable rate mortgages are the loans that are the subject of this Complaint.

10    17.    The instant action arises out of residential mortgage loan transactions in which
11    Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff and
12    the Class members, in writing, as required by law.

13    18.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or
14    practices. Defendants engaged in a campaign of deceptive conduct and concealment aimed at
15    maximizing the number of consumers who would accept this type of loan in order to maximize
16    Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to
17    lose their homes through foreclosure.

18    19.    Plaintiff, along with thousands of other similarly situated consumers, were sold an Option
19    ARM home loan by Defendants. The Option ARM loan sold to is a deceptively devised financial
20    product. The loan has a variable rate feature with payment caps. The product was sold based on the
21    promise of a low, fixed interest rate, when in fact Plaintiff was charged a different, much greater interest
22    rate than promised. Further, Defendants disguised from the fact that Defendants' Option ARM loan
23    was designed to, and did, cause negative amortization to occur. Further still, once lured into these loans,
24    consumers cannot easily extricate themselves from these loans. Defendants' Option ARM loan includes
25    a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

26    20.    The Option ARM loan Defendants sold to Plaintiff violates the Truth In Lending Act
27    (TILA). TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to
28    borrowers concerning the terms and conditions of their home loans. Defendants failed to make these

-5-

1 │ disclosures in connection with the Option ARM loan sold to Plaintiff.

2 │ 21. At all times relevant, Defendants marketed their Option ARM loan product to consumers, 3 │ including Plaintiff, in a false or deceptive manner. Defendants marketed and advertised to the general 4 │ public through brochures, flyers and other substantially identical marketing material, a loan which 5 │ appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative 6 │ amortization. Defendants used this "teaser" rate to lure Plaintiff into purchasing Defendants' Option 7 │ ARM loan product. However, the low fixed rate was illusory, a false promise. Plaintiff and others 8 │ similarly situated did not receive the benefit of the low rate promised to them. Once signed on to 9 │ Defendants' loan, the interest rate applied to Plaintiff's loan was immediately and significantly 10 │ increased.

11 │ 22. Plaintiff and others similarly situated are consumers who applied for a mortgage loan 12 │ through Defendants. During the loan application process, in each case, Defendants promoted, 13 │ advertised, and informed Plaintiff and the Class members that in accepting these loan terms, Plaintiff 14 │ would be able to lower their mortgage payment and save money. Defendants initiated this scheme in 15 │ order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

16 │ 23. Based on the Defendants' representations, and the conduct alleged herein, Plaintiff and 17 │ Class members agreed to finance their primary residence through Defendants' Option ARM loan. 18 │ Plaintiff and the Class members were told they were being sold a home loan with a low interest rate of 19 │ between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first 20 │ three (3) to five (5) years of the loan. Defendants also informed Plaintiff, and Plaintiff was lead to 21 │ believe, that if he made payments based on the promised low interest rate, which were the payments 22 │ reflected in the written payment schedule provided to them by Defendants, the loan was a no negative 23 │ amortization home loan. Plaintiff's payments were to be applied to their principal loan balances as well 24 │ as to interest.

25 │ 24. After, the purported three (3) - five (5) year fixed interest period, Plaintiff was told his 26 │ rate "may" change. Plaintiff believed he would then be able to re-finance to another home loan.

27 │ 25. Plaintiff believed these facts to be true because that is what the Defendants wanted 28 │ consumers to believe. Defendants aggressively marketed their product as a fixed, low interest home

-6-

CLASS ACTION COMPLAINT

1  loan. Defendants knew that if marketed in such a manner, their Option ARM loan product would be a
2  hugely popular and profitable product for them. Defendants also knew, however, that they were
3  marketing their product in a false and deceptive manner. While Defendants trumpeted their low, fixed
4  rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

5      26.    In fact, Defendants' Option ARM loan possessed a low, fixed interest *payment* but not a
6  low, fixed interest rate. Unbeknownst to Plaintiff and the Class members, the actual interest rate he was
7  charged on his loan was not fixed (and was in fact considerably higher than going market rates.) And,
8  after purchasing Defendants' Option ARM loan product, Plaintiff and the Class members did not
9  actually receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for
10 only a single month. Immediately, thereafter, Defendants in every instance and for every loan, increased
11 the interest rate they charged consumers. The charges incurred by Plaintiff and the Class members over
12 and above the fixed interest payment rate were added to the principal balance on their home loans in ever
13 increasing increments, substantially reducing the equity in these borrowers' homes.

14     27.    Defendants, through the loan documents they created and supplied to Plaintiff, stated that
15 negative amortization was only a possibility and would occur only if the payments were not sufficient.
16 Defendants concealed the fact that the loan as presented and designed, in fact, *guaranteed* negative
17 amortization. Defendants failed to disclose and omitted the objectively material fact that negative
18 amortization would occur if the consumer followed the payment schedule set forth by Defendants in the
19 loan documents. This information was objectively material and necessary to make the statements made
20 by Defendants, in light of the circumstances, not only misleading because that information would
21 indicate that equity would be consumed if the payment schedule was followed, thereby making it
22 difficult if not impossible to refinance the loan at or around the time the prepayment penalty expired and
23 the interest and payment rates re-set. In this respect, Defendants utterly failed to place any warning on
24 the Truth and Lending Disclosure Form about negative amortization.

25     28.    At all times relevant, once Plaintiff and the Class members accepted Defendants' Option
26 ARM loan, they had no viable option by which to extricate themselves because these Option ARM loan
27 agreements included a draconian three year pre-payment penalty.

28  / / /

-7-

CLASS ACTION COMPLAINT

1    29.    The Option ARM loans sold by Defendants all have the following uniform

2    characteristics:

3        (a)    There is an initial low interest rate or "teaser" rate that was used to entice the

4            Plaintiffs into entering into the loan. The rate offered was typically 1%-3%;

5        (b)    The loan has with it a corresponding low payment schedule. The marketing of the

6            loan with the above teaser was intended to misleadingly portray to consumers that

7            the low payments for the first three (3) to five (5) years were a direct result of the

8            low interest rate being offered;

9        (c)    The initial payments in the required disclosures were equal to the low interest rate

10            being offered. The purpose was to assure that if someone were to calculate what

11            the payment would be at the low offered interest rate, it corresponded to the

12            payment schedule. This portrayal was intended to further mislead consumers into

13            believing that the payments were enough to cover all principal and interest;

14        (d)    The payment has a capped 2-3 % annual increase on the payment amount;

15        (e)    This loan includes a prepayment penalty preventing consumers from securing a

16            new loan for a period of up to three (3) years.

17    30.    Defendants uniformly failed to inform consumers, including Plaintiff and the Class

18    members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was

19    actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the

20    true interest charged on the loans was significantly higher than the promised, advertised rate.

21    31.    Defendants uniformly failed to inform consumers, including Plaintiff and the Class

22    members, that the payments set forth in Defendants' schedule of payments were insufficient to cover the

23    actual charges and that this was, in fact, a negative amortization loan.

24    32.    Defendants uniformly failed to inform consumers, including Plaintiff and the Class

25    members, that when the principal balance increased to a certain level, they would no longer have the

26    option of making the fixed interest payment amount.

27

28

-8-

CLASS ACTION COMPLAINT

V.

CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly

situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case

law thereunder. The classes Plaintiff seeks to represent are defined as follows:

> **The California Class**: All individuals who, within the four year period
> preceding the filing of Plaintiffs' Complaint through the date notice is
> mailed to the Class, received an Option ARM loan through Defendants on
> their primary residence located in the State of California. Excluded from
> the California Class are Defendants' employees, officers, directors, agents,
> representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who,
> within the four year period preceding the filing of Plaintiffs' complaint
> through the date notice is mailed to the Class, received an Option ARM
> loan through Defendants on their primary residence located in the United
> States of America. Excluded from the National Class are Defendants'
> employees, officers, directors, agents, representatives, and their family
> members.

An appropriate sub-Class exists for the following Class Members:

> All individuals in the United States of America who, within the three year
> period preceding the filing of Plaintiffs' complaint through the date notice
> is mailed to the Class, received an Option ARM loan through Defendants
> on their primary residence located in the United States of America.
> Excluded from the National sub-Class are Defendants' employees,
> officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the

Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through

discovery, legal arguments advanced by Defendants or otherwise.

34.    Numerosity: The Class is so numerous that the individual joinder of all members is

impracticable under the circumstances of this case. While the exact number of Class members is

unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of

approximately tens of thousands of members.

35.    Commonality: Common questions of law or fact are shared by the Class members. This

action is suitable for class treatment because these common questions of fact and law predominate over

any individual issues. Such common questions include, but are not limited to, the following:

-9-

CLASS ACTION COMPLAINT

1    (1)   Whether Defendants' acts and practices violate the Truth in Lending Act;

2    (2)   Whether Defendants' conduct violated 12 C.F.R. § 226.17;

3    (3)   Whether Defendants' conduct violated 12 C.F.R. § 226.19;

4    (4)   Whether Defendants engaged in unfair business practices aimed at deceiving

5        Plaintiff and the Class members before and during the loan application process;

6    (5)   Whether Defendants, by and through their officers, employees, and agents failed

7        to disclose that the interest rate actually charged on these loans was higher than

8        the rate represented and promised to Plaintiff and the Class members;

9    (6)   Whether Defendants, by and through their officers, employees and agents

10       concealed information they were mandated to disclose under TILA;

11    (7)   Whether Defendants failed to disclose the true variable nature of interest rates on

12       adjustable rate mortgage loans and adjustable rate home equity loans;

13    (8)   Whether Defendants failed to properly disclose the process by which negative

14       amortization occurs, ultimately resulting in the recasting of the payment structure

15       over the remaining lifetime of the loans;

16    (9)   Whether Defendants' failure to apply Plaintiffs' and the Class members' payments

17       to principal as promised in the form Notes constitutes a breach of contract,

18       including a breach of the covenant of good faith and fair dealing;

19    (10)  Whether Defendants' conduct in immediately raising the interest rate on

20       consumers' loans so that no payments were made to the principal balance

21       constitutes breach of the covenant of good faith and fair dealing;

22    (11)  Whether Defendants' marketing plan and scheme misleadingly portrayed or

23       implied that these loans were fixed rate loans, when Defendants knew that only

24       the periodic payments were fixed (for a time) but that interest rates were not, in

25       fact, "fixed;"

26    (12)  Whether the terms and conditions of Defendants' Option ARM home loan are

27       unconscionable;

28    (13)  Whether all Class members are entitled to punitive damages;

-10-

CLASS ACTION COMPLAINT

1        (14)    Whether all Class members are entitled to actual damages; and

2        (15)    Whether all Class members are entitled to rescission.

3    36.    Typicality: Plaintiffs' claims are typical of the claims of the Class members. Plaintiff

4    and the other Class members were subjected to the same kind of unlawful conduct and the claims of

5    Plaintiff and the other Class members are based on the same legal theories.

6    37.    Adequacy: Plaintiff is an adequate representatives of the Class because his interests do

7    not conflict with the interests of the other members of the Class Plaintiff seeks to represent. Plaintiff has

8    retained counsel competent and experienced in complex class action litigation and Plaintiff intends on

9    prosecuting this action vigorously. The interests of members of the Class will be fairly and adequately

10    protected by Plaintiff and his counsel.

11    38.    Ascertainable Class: The proposed Classes are ascertainable in that the members can be

12    identified and located using information contained in Defendants' mortgage lending records.

13    39.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

14    23(b)(2), and 23(b)(3):

15    (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as alleged

16        herein, constitute a course of conduct common to Plaintiff and each Class member.

17        Prosecution of separate actions by individual Class members would create a risk of

18        inconsistent or varying adjudications which would establish incompatible standards of

19        conduct for Defendants and/or substantially impair or impede the ability of individual

20        Class members to protect their interests;

21    (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate: Defendants, and each of

22        them, have acted or refused to act on grounds generally applicable to the Class, thereby

23        making final injunctive relief or corresponding declaratory relief with respect to the Class

24        as a whole appropriate; and

25    (c)    Predominant Questions of Law or Fact: Questions of law or fact common to the Class

26        members, including those identified above, predominate over questions affecting only

27        individual Class members (if any), and a class action is superior to other available

28        methods for the fair and efficient adjudication of the controversy. Class action treatment

-11-

1    will allow a large number of similarly situated consumers to prosecute their common

2    claims in a single forum, simultaneously, efficiently, and without the unnecessary

3    duplication of effort and expense that numerous individual actions would require.

4    Further, an important public interest will be served by addressing the matter as a class

5    action. The cost to the court system of adjudicating each such individual lawsuit would

6    be substantial.

7

8    ## VI.

9    ## FIRST CAUSE OF ACTION

10    ### (Violations of Truth in Lending Laws, 15 U.S.C.A. §1601, *et seq.*,

11    ### (Against All Defendants)

12    40.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

13    41.    15 U.S.C.A. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA"). The Federal

14    Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12

15    C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became

16    mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board

17    is also binding on all lenders.

18    42.    The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which

19    reads:

20    **§226.1 Authority, purpose, coverage, organization, enforcement and**

21    **liability...**

22    (b)    Purpose. The purpose of this regulation is to promote the informed

23    use of consumer credit by requiring disclosures about its terms and costs.

24    The regulation also gives consumers the right to cancel certain credit

25    transactions that involve a lien on a consumer's principal dwelling . . .

26    43.    Reg. Z also mandates very specific disclosure requirements regarding home loans with

27    which lenders, including Defendants, must comply:

28    **§ 226.17. General disclosure requirements.**

-12-

1                (a) Form of disclosures. (1) The creditor shall make the disclosures

2                required by this subpart clearly and conspicuously in writing, in a form

3                that the consumer may keep. The disclosures shall be grouped together,

4                shall be segregated from everything else, and shall not contain any

5                information not directly related to the disclosures required under §

6                226.18.

7     44.     The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

8 borrowers will be able to compare more readily the various credit terms available to them and avoid the

9 uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

10 practices.

11     45.     Defendants' Option ARM loan violates TILA because Defendants failed to comply with

12 the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

13 Federal Reserve Board. Defendants failed in a number of ways to clearly or accurately disclose the

14 terms of the Option ARM loan to Plaintiff as Defendants were required to do under TILA. These

15 violations are apparent on the face of the TILA Disclosure Forms.

16     46.     As such, Plaintiff seek redress under the Truth in Lending Act. This action seeks to

17 obtain rescission for each Class member, injunctive relief, redress, restitution, disgorgement, money

18 damages, attorneys' fees and other equitable relief against Defendants for engaging in unfair or deceptive

19 acts or practices in violation of TILA.

20     47.     The TILA violations committed by Defendants are more specifically detailed as follows:

21     **A.     Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**

22           **Violates Truth in Lending Laws**

23     48.     12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

24 concerning the interest rate in a clear and conspicuous manner. Further, a misleading disclosure is as

25 much a violation of TILA as a failure to disclose at all. Defendants failed to meet the disclosure

26 mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and

27 Class members' loans, as well as the interest actually charged to Plaintiff and the Class members.

28 ///

-13-

CLASS ACTION COMPLAINT

49.     Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous. At worst, it is intentionally deceptive. In either instance, it is certainly different than the interest rate set forth by Defendants in the TILA Disclosure Form. The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

51.     The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to the loan for a single month. However, Defendants do not make clear in the Note or anywhere else that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiffs) is only offered for the first thirty (30) days of the loan. Defendants employ a most convoluted, confusing and circuitous methodology in describing the interest rate. Somewhere in the Note, Defendants state that the promised low interest rate is the rate until the "change date." A description of the change date is found somewhere else in the Note. The descriptive method employed by Defendants in this regard makes it extremely difficult for anyone to arrive at the conclusion that the change date corresponds to the very first monthly payment Plaintiff and the Class members made on their loans.

52.     The language used by Defendants to disclose the interest rate on Plaintiffs' and the Class members loans was anything but clear and conspicuous. Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiff and the Class members. In particular, it is virtually impossible to discern when Plaintiff and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all. And, the truth is that Plaintiff and the Class members *never* received the low interest rate, or in some cases received it for only thirty days. Defendants promise of a low interest rate is and was wholly illusory and deception practiced on Plaintiff and Class members by Defendants to facilitate sales of their loans to consumers.

53.     The Note also sets forth the amount of Plaintiffs' and Class members' initial monthly payments. That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by Defendants was true and was being applied to the principal balance on the loans. This a further deception committed by Defendants, because the real interest rate charged on the loan by Defendants turns out to be much higher than the low interest rate promised to Plaintiff and Class

-14-

CLASS ACTION COMPLAINT

1  members. The payment amount is included to deceive consumers into falsely believing they are, in fact,
2  receiving the teaser rate promised to them.

3      54.     The TILA Disclosure Form is also confusing and deceptive for much the same reason. It
4  shows the scheduled payments for the first three to five years of the loan as being based on the low
5  "teaser" rate Plaintiff and Class members were promised. In truth, however, this payment schedule has
6  no real relation to the interest rate Defendants actually charged Plaintiff on their loans.

7      55.     Lastly, as concerning Defendants' failure to accurately, clearly or conspicuously disclose
8  the actual interest rate applied to Plaintiffs' and Class members' loan, the Note expressly states and/or
9  implies that Plaintiffs' and the Class members payments will pay off principal and interest on the loan.
10  That is, based on the payment schedule and initial monthly payment amount presented to Plaintiff by
11  Defendants, and set forth in the Note and TILA Disclosure Form, Plaintiff and the Class members will
12  be paying off principal and interest on their loans by submitting payments in accordance with the
13  payment schedule. The contractual language in the Note only makes sense, and can only be true, if the
14  interest rate actually applied to Plaintiffs' loans by Defendants were, in fact, the "teaser" rate promised
15  by Defendants. Thus, Plaintiff and the Class members believed that the low rate promised to them
16  would be applied to their loans. However, the true fact is that the payment established by Defendants
17  did not pay any principal on the loan at all. The payment established by Defendants only covered a
18  portion of the interest actually charged Plaintiff and the Class members by Defendants each month on
19  these loans.

20      56.     Taken separately and in totality, all of the unclear and contradictory information given to,
21  and representations made by Defendants, to Plaintiff and the Class members, violated TILA in that it
22  failed to provide the clear and conspicuous disclosures as required under the Act.

23

24      B.     **Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization**
25             **Violates the Truth in Lending Laws**

26      57.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential
27  home loans:

28             **§ 226.19. Certain residential mortgage and variable-rate transactions.**

-15-

CLASS ACTION COMPLAINT

1     . . .

2     (b) Certain variable-rate transactions. If the annual percentage rate may

3     increase after consummation in a transaction secured by the consumer's

4     principal dwelling with a term greater than one year, the following

5     disclosures must be provided at the time an application form is provided or

6     before the consumer pays a non-refundable fee, whichever is earlier. . .

7     (vii) *Any rules relating to changes in the index, interest rate, payment*

8     *amount, and outstanding loan balance including, for example, an*

9     *explanation of interest rate or payment limitations, negative amortization,*

10     *and interest rate carryover.* (Emphasis added.)

11     58.    These required disclosures must be made in the TILA Disclosure Form with the other

12 disclosures. The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and

13 whether unpaid interest *is* being added to principal.

14     59.    In 1995, and continuing each time new Official Staff Commentary was issued, the

15 Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps,

16 that the disclosure required a definitive statement about negative amortization:

17                                  12 CFR Part 226

18                          [Regulation Z; Docket No. R-0863]

19                             Monday, April 3, 1995

20             AGENCY: Board of Governors of the Federal Reserve System.

21                 ACTION: Final rule; official staff interpretation.

22                "For the program that gives the borrower an option to cap

23               monthly payments, the creditor must fully disclose the rules

24               relating to the payment cap option, including the effects of

25               exercising it (such as **negative amortization occurs** and

26               that the **principal balance will increase**)..." (Found at

27               C.F.R. § 226.19)

28   / / /

CLASS ACTION COMPLAINT

1        60.     At all times relevant, statutory and common law in effect make it unlawful for a lender,

2 such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as

3 Regulation Z and TILA.

4        61.     Defendants sold Plaintiff and the Class members an Option ARM loan which has a

5 variable rate feature with payment caps. Defendants failed to include any reference on the TILA

6 Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone

7 that the loan schedule had negative amortization. The payment schedule makes no reference to negative

8 amortization and makes it appear that the payments cover both principal and interest.

9        62.     In fact, the only place where Defendants even inferentially reference negative

10 amortization is in the Note. However, they mention it in such a way as to make a reasonable person

11 believe that negative amortization is only a possibility, rather than a certainty. And, these loans are, in

12 fact, designed in such a manner so as to make negative amortization a certainty.

13        63.     This attempt at a disclosure did not actually serve to alert or inform the borrowers of

14 anything, much less clearly and conspicuously disclose that the the payment schedule provided by

15 Defendants absolutely would not pay both principal and interest, and therefore would guarantee that

16 negative amortization was to occur on these loans. Rather, Defendants made it appear that as long as the

17 payment schedule provided by Defendants was followed, there would be no negative amortization.

18        64.     So, even where any language is found describing negative amortization, the language is

19 misleading and deceptive. In fact, Defendants' Option ARM loan was designed in such a way as to

20 guarantee negative amortization. TILA demands more than a statement that the payment could be less

21 when Defendants were well aware that the payment is less, and would always be less, than the full

22 interest and principal.

23

24      **C.     Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

25             **Rate is Discounted Violates Truth in Lending Laws**

26        65.     As previously stated, the informed use of credit means being able to make decisions, as

27 well as being able to plan an individual's finances. Every month consumers look at their income and

28 budget where their funds must be paid. The biggest investment in one's life is generally that person's

-17-

1  home. In fact, it is often referred to as "the American Dream" to own a home.

2     66.    Variable rate loans are based on a "margin" and an "index." The index is often the Prime
3  Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, basically
4  it is the lender's profit on the loan.

5     67.    TILA and Regulation Z require disclosures to be clear and conspicuous so people
6  understand what their obligations are. In particular, when the payment is not based on that index and
7  margin a separate disclosure is required. Further, the disclosure must inform the borrower that the
8  payment they are making is not based on what the index and margin really should be in order to avoid
9  negative amortization. The disclosure must also inform that interest rate and payment may go up and
10 clearly and conspicuously provide the circumstances under which the rate and payment will increase.

11    68.    The Federal Reserve Board established disclosure requirements for variable rate loans.
12 26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments
13 to borrowers. If interest rate changes will be imposed more frequently or at different intervals than
14 payment changes, a creditor must disclose the frequency and timing of both types of changes.

15    69.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because
16 Plaintiff and other consumers similarly situated need this information in order to budget their money.
17 They need to know if their house payments are going to go up so that they can plan for it. If the change
18 comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their
19 homes.

20    70.    Defendants, and each of them, state only that the interest rate *may* increase in the future.
21 However, an interest rate increase was in fact far more certain than this disclosure lead Plaintiff and
22 Class members to believe. If Defendants had given Plaintiff and the Class members the promised low
23 interest rate for any initial period of time, the interest rate was guaranteed to go up even without any
24 change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it
25 was an absolute certainty and Defendants failed and omitted this material information in their
26 disclosures to Plaintiff and the Class members.

27    71.    Defendants disclosure statement provided that, "the interest rate may increase during the
28 term of this transaction if the index increases." This, however, was not the only circumstance that could

-18-

CLASS ACTION COMPLAINT

1   cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial
2   interest rate is discounted, creating the possibility of an increase even when the index did not rise. Due
3   to the initial discounted interest rate, the annual interest rate would increase if the index remained
4   constant, or even if the index declined. Because Defendants' disclosure failed to provide this extremely
5   important, material information, Defendants disclosure failed to meet the clear and conspicuous standard
6   mandated under TILA.

7   72.   Defendants failed to disclose to Plaintiff and the Class members that their rate was, with
8   100% certainty, going to increase, whether or not the index upon which their loans are based changed or
9   not. As such, Defendants violated TILA and Regulation Z with unclear, deceptive and poorly drafted or
10  intentionally misleading disclosure.

11

12  **D.    Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in**
13  **Lending Laws**

14  73.   Defendants provided Plaintiff and Class members with multiple, conflicting interest rates
15  when describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one interest
16  rate, while on the Note, Defendants set forth two other, different interest rates.

17  74.   The official staff commentary to 226 C.F.R. § 17(C)(8) states:
18      *Basis of disclosures in variable-rate transactions.* The disclosures for a
19      variable-rate transaction must be given for the full term of the transaction
20      and must be based on the terms in effect at the time of consummation.
21      Creditors should base the disclosures only on the initial rate and should
22      not assume that this rate will increase. For example, in a loan with an
23      initial rate of 10 percent and a 5 percentage points rate cap, creditors
24      should base the disclosures on the initial rate and should not assume that
25      this rate will increase 5 percentage points. **However, in a variable-rate**
26      **transaction with** a seller buydown that is reflected in the credit contract, a
27      consumer buydown, or **a discounted or premium rate, disclosures**
28      **should not be based solely on the initial terms. In those transactions,**

-19-

CLASS ACTION COMPLAINT

1               **the disclosed annual percentage rate should be a composite rate based**

2                **on the rate in effect during the initial period and the rate that is the**

3                **basis of the variable-rate feature for the remainder of the term.** (See

4                the commentary to section 226.17(c) for a discussion of buydown,

5                discounted, and premium transactions and the commentary to section

6                226.19(a)(2) for a discussion of the redisclosure in certain residential

7                mortgage transactions with a variable-rate feature.)

8   75.   The reason for this requirement is clear. Consumers cannot make informed decisions 9 when they cannot compare the cost of credit to other proposals. It is therefore incumbent upon 10 Defendants to show the composite interest rate in effect so that the borrowers can understand exactly 11 what they are paying for the loan.

12   76.   A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite 13 rate in variable rate loans that had a discounted initial rate. The loan sold to Plaintiff and Class members 14 by Defendants is a discounted variable-rate loan. Because Defendants failed to properly, clearly and 15 conspicuously, disclose a composite annual percentage rate on these loans Defendants violated TILA and 16 Regulation Z.

17   77.   As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff 18 and Class members have suffered injury an amount to be determined at time of trial. If Defendants had 19 not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM 20 loan product, as alleged herein, Plaintiff and Class members would not have entered into the home loan 21 agreements which are the subject of this action. Because Defendants failed to make proper disclosures 22 in violation of TILA, Plaintiff and Class members now seek redress in an amount and/or type as proven 23 at time of trial.

24  ///
25  ///
26  ///

-20-

CLASS ACTION COMPLAINT

1        VII.

2        SECOND CAUSE OF ACTION

3    Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -

4        "Unlawful" Business Acts or Practices Predicated on Violations of TILA

5        (Against All Defendants)

6

7        78.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

8        79.    California's Unfair Competition Law ("UCL"),  Business and Professions Code, §17200,

9    *et seq.*, prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive

10   business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

11       80.    A business act or practice is "unlawful" if it violates any other law, code or statute.

12       81.    Defendants, and each of them, engaged in unfair competition within the meaning of

13   §17200 by violating the TILA as detailed in Plaintiffs' First Cause of Action. Defendants failed to

14   comply with the disclosure requirements mandated by TILA, Regulation Z and Official Staff

15   Commentary issued by the Federal Reserve Board. Defendants failed in a number of ways to clearly or

16   accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do

17   under TILA.

18       82.    Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as

19   herein alleged, and each has suffered injury in fact, and have lost money or property as a result of

20   Defendants' unfair competition.

21

22       VIII.

23       THIRD CAUSE OF ACTION

24   (Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*,

25       "Unfair" and "Fraudulent" Business Acts or Practices,

26       (Against All Defendants)

27       83.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

28       84.    The instant claim is predicated on the generally applicable duty of any contracting party

-21-

CLASS ACTION COMPLAINT

1  to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business
2  practices. Plaintiff and the Class members hereby seek to enforce a general proscription of unfair
3  business practices and the requirement to refrain from deceptive conduct. The instant claim is
4  predicated on duties that govern anyone engaged in any business and anyone contracting with anyone
5  else.

6      85.    California Business and Professions Code, §17200, *et seq.*, also known as the California
7  Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair,
8  fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading
9  advertising."

10     86.    A business practice is "unfair" if is violates established public policy or if it is immoral,
11  unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.

12     87.    A business practice is "fraudulent" if it is one which is likely to deceive the public.

13     88.    Defendants engaged in a pattern of deceptive conduct and concealment aimed at
14  maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each
15  of them, marketed and sold Plaintiff and Class members a deceptively devised financial product.
16  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a
17  false or deceptive manner. Defendants marketed and advertised to the general public through brochures,
18  flyers and other substantially identical marketing material, a loan which appeared to have a very low,
19  fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further,
20  Defendants disguised from Plaintiff and the Class members the fact that Defendants' Option ARM loan
21  was designed to, and did, cause negative amortization to occur.

22     89.    Defendants lured Plaintiff and the Class members into the Option ARM loan with
23  promises of low fixed interest. Once Plaintiff and the Class members entered into these loans,
24  Defendants switched the interest rate charged on the loans to a much higher rate than the one they
25  advertised and promised to Plaintiff and the Class members. After entering these loans, Plaintiff and the
26  Class members could not escape because Defendants purposefully placed into these loans an extremely
27  onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves
28  from these loans. Thus, once on the hook, Plaintiff and the Class members could not escape from

-22-

CLASS ACTION COMPLAINT

1  Defendants loans.

2      90.    Plaintiffs and Class members were consumers who applied for a mortgage loan through
3  Defendants. During the loan application process, in each case, Defendants uniformly promoted,
4  advertised, and informed Plaintiff and Class members that in accepting these loan terms, Plaintiff and
5  Class members would be able to lower their mortgage payment and save money.

6      91.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,
7  typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate,
8  the purpose of which was to get consumers to enter into loan agreements with Defendants. Defendants
9  did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate that
10 Defendants would actually charge Plaintiff and the Class members on their outstanding loan balances.

11     92.    Based on the Defendants' representations and conduct, Plaintiff and the Class members
12 agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiff and the Class
13 members were told they were being sold a home loan with a low interest rate, fixed for the first three (3)
14 to five (5) years of the loan. Plaintiff and the Class members were also lead to believe that if they made
15 payments based on this advertised interest rate, and the payment schedule provided to them by
16 Defendants, the loan was a no negative amortization home loan. After, the fixed interest period, Plaintiff
17 and the Class members were told their rate "may" change. And, Plaintiff believed he would then be able
18 to re-finance to another home loan. Plaintiff and the Class members believed these facts to be true
19 because that is what the Defendants wanted consumers to believe, that is what Defendants lead
20 consumers to believe.

21     93.    Defendants aggressively sold their product as a fixed low interest home loan. Defendants
22 knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and
23 profitable product for them. Defendants also knew, however, that they were marketing their product in a
24 false and deceptive manner. While Defendants trumpeted their low, fixed rate loans to the public,
25 Defendants knew, however, that this was not entirely true.

26     94.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low,
27 fixed interest rate. Unbeknownst to Plaintiff and Class members, the actual interest rate they were
28 charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product, Plaintiff

-23-

CLASS ACTION COMPLAINT

1    and the Class members never actually received the benefit of the low advertised interest rate, or, in some
2    cases, consumers received the low rate for just a single month. Immediately, thereafter, Defendants in
3    every instance and for every loan increased the interest rate they charged Plaintiff and the Class
4    members. Once Plaintiff and Class members accepted Defendants' Option ARM loan, they had no
5    viable option to extricate themselves because of these loan agreements included a draconian pre-
6    payment penalty.

7        95.    Defendants perpetrated a bait and switch scheme on Plaintiff and the Class members.
8    Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe
9    the loan as having a fixed interest rate was deceptive and unfair. Defendants initiated this scheme in
10   order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

11       96.    Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as
12   herein alleged, and each has suffered injury in fact, and have lost money or property as a result of
13   Defendants' unfair competition.

14

15                                                **IX.**

16                          **FOURTH CAUSE OF ACTION**

17                                **Breach of Contract**

18                              **(Against All Defendants)**

19       97.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

20       98.    Plaintiffs and Class members entered into a written home loan agreement – the Note –
21   with Defendants. The Note was drafted by Defendants and could not be modified by Plaintiff or Class
22   members. The Note describes terms and respective obligations applicable to the parties herein.

23       99.    The Note describes Plaintiffs' and Class members' interest rate on the loan as a low
24   interest rate, typically between 1% and 3%. In addition, as required by federal law, the Defendants
25   provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment
26   schedule based on that low 1% to 3% interest rate. For the first three (3) to five (5) years the payment
27   schedule shows that Plaintiffs' and Class members' monthly payment obligations to Defendants are the
28   exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the

                                                  -24-

CLASS ACTION COMPLAINT

1  interest rate actually charged by Defendants on the loans was the low interest rate promised.

2      100.    Defendants expressly and/or through their conduct and actions indicate that Plaintiffs'
3  and Class members' monthly payment obligations *will* be applied to payment of both principal and
4  interest owed on the loans. Defendants breached this agreement and never applied any of Plaintiffs' and
5  Class members' payments to principal.

6      101.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and
7  Class members' loans, show that the payment amounts owed by Plaintiff and Class members to
8  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest
9  actually charged on the loan was the low interest rate promised. If the Defendants did as promised, the
10 payments would have been sufficient to pay both principal and interest amounts.

11     102.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates and
12 applied *no part* of Plaintiffs' and Class members' payments to the principal balances on their loans. In
13 fact, because Defendants charged more interest than was agreed to, the total payment was insufficient to
14 cover the interest charge and the principal balance increased (which is the negative amortization built
15 into the loan).

16     103.    Defendants breached the written contractual agreement by failing to apply any portion of
17 Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

18     104.    Plaintiffs and the Class members, on the other hand, did all of those things the contract
19 required of them. Plaintiff and the Class members made monthly payments in the amount required by
20 the terms of the Note and reflected in the payment schedule prepared by Defendants.

21     105.    As a result of Defendants' breach of the agreement, Plaintiff and the Class members have
22 suffered harm. Plaintiff and Class members have incurred additional charges to their principal loan
23 balance. Plaintiff and Class members have incurred and will continue to incur additional interest
24 charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'
25 principal loan balance. Furthermore, Defendants' breach has placed Plaintiff and the Class members in
26 danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class
27 members' principal loan balances to increase and limited these consumers' ability to make their future
28 house payments or obtain alternative home loan financing.

-25-

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**X.**

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

106. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

107. Defendants entered into written agreements with Plaintiff and Class members based on representations Defendants made indirectly and directly to Plaintiff and the Class members about the terms of their loans.

108. Defendants impliedly and expressly represented to Plaintiff and Class members that it would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

109. Defendants also represented that if Plaintiff and Class members made the monthly payments in the amount prescribed by Defendants no negative amortization would occur. The Note expressly states and/or implies that Plaintiffs' and Class members' monthly payment obligation **will** be applied to pay both principal and interest owed on the loan. The Note further makes clear that for each monthly payment Plaintiff and Class members make, "interest shall be paid before principal."

110. The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendants acted as it promised, the payments would have been sufficient to pay both principal and interest.

111. Instead, Defendants immediately raised Plaintiffs' and Class members' interest rate and applied *no part* of Plaintiffs' and Class members' payment to principal. In fact, because Defendants charged more interest than was disclosed and agreed to in the loans, Plaintiff and the Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiff and the Class members owed on their homes.

112. Defendants unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiff and Class members thousands of dollars more

-26-

CLASS ACTION COMPLAINT

1  than represented by Defendants. Plaintiff and Class members did not receive the fixed low interest rate

2  home loan promised them by Defendants. Defendants have caused Plaintiff and Class members to lose

3  equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of

4  one of their most important investments.

5      113.  Plaintiffs and Class members, on the other hand, did all of those things the contract

6  required of them. Plaintiff and Class members made monthly payments in the amount required by the

7  terms of the Note and reflected in the payment schedule prepared by Defendants.

8      114.  As a result of Defendants' breach of the agreement, Plaintiff and Class members have

9  suffered harm. Plaintiff and Class members have incurred additional charges to their principal loan

10  balance. Plaintiff and Class members have incurred and will continue to incur additional interest

11  charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'

12  principal loan balance. Furthermore, Defendants' breach has placed Plaintiff and Class members in

13  danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class

14  members' principal loan balances to increase and limited these consumers' ability to make their future

15  house payments or obtain alternative home loan financing.

16

17  **XI.**

18  **SIXTH CAUSE OF ACTION**

19  **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*, –**

20  **"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

21  **(Against All Defendants)**

22      115.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

23      116.  California Business and Professions Code, §17200, *et seq.*, also known as the California

24  Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair,

25  fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading

26  advertising."

27      117.  A business act or practice is "unlawful" if it violates any other law, code or statute.

28      118.  Defendants, and each of them, engaged in unfair competition within the meaning of

-27-

CLASS ACTION COMPLAINT

1    §17200 by violating California Financial Code § 22302.

2        119.   California Financial Code § 22302 applies to consumer loan contracts. It states that a
3    loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be
4    deemed to be a violation of Financial Code § 22302.

5        120.   The loan contracts prepared by Defendants and entered into between Plaintiff and Class
6    members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

7        121.   The relative bargaining power between Plaintiff and Class members and Defendants was
8    unequal. Plaintiff and Class members could not negotiate or change any of the particular terms related to
9    the loan and drafted by Defendants. To secure the loan Plaintiff and Class members were given no
10   choice but to make payments as described in the payment schedule and to accept and sign all the
11   associating documents numbering over a hundred pages.

12       122.   The period of time where Defendants offered Plaintiff and Class members a low interest
13   rate, often was for only one month. Because Defendant Lender packaged the documents in such a
14   manner as to lead Plaintiff and Class members to believe that they had a low interest rate and therefore
15   low payments for three to five years, Plaintiff and Class members would end up owing significantly
16   more than before they started and with a significant chance of losing their homes through foreclosure.

17       123.   Defendants drafted these loan documents for use on tens of thousands of individuals. The
18   loan process was such that individual terms could not be modified. The documents evidencing the loan
19   were delivered to Plaintiff and Class members at the time of signature. The loan process offered by
20   Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents
21   at the time of execution.

22       124.   Defendants further inserted into the loan documents a prepayment penalty that has as it
23   sole purpose to cause Plaintiff and Class members to continue under the terms of this loans or lose
24   thousands of dollars if Plaintiff try to refinance the loans.

25       125.   The loans as drafted by Defendants were so "one-sided" that they could only lead Plaintiff
26   and Class members to one result, which was a significant loss of money. As a result of Defendants'
27   unconscionable behavior, Plaintiff and the Class members have suffered direct and actual injury.

28   ///

-28-

CLASS ACTION COMPLAINT

1    126.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section

2    1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and

3    constitutes a violation of the UCL.

4    127.    Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as

5    herein alleged, and each has suffered injury in fact, and have lost money or property as a result of

6    Defendants' unfair competition.

7

8    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant,

10   jointly and severally, as follows:

11   A.    An order certifying this case as a class action and appointing Plaintiff and their counsel to

12          represent the Class;

13   B.    For actual damages according to proof;

14   C.    For compensatory damages as permitted by law;

15   D.    For consequential damages as permitted by law;

16   E.    For statutory damages as permitted by law;

17   F.    For punitive damages as permitted by law;

18   G.    For rescission;

19   H.    For equitable relief, including restitution;

20   I.    For an order requiring Defendants to disgorge all profits obtained as a result of their

21          unfair competition;

22   J.    For interest as permitted by law;

23   K.    For Declaratory Relief;

24   L.    For a mandatory injunction requiring Defendants to permanently include in every Option

25          ARM loan and disclosure statement: (i) comply with 12 C.F.R. § 226.17 by clearly and

26          conspicuously disclosing the actual interest rate on the Note(s) and disclosure

27          statement(s); (ii) comply with 12 C.F.R. § 226.19 by clearly and conspicuously disclosing

28          in the Note(s) and the disclosure statement(s) that payments on the variable interest rate

-29-

1    loan during the initial period at the teaser rate will result in negative amortization and that

2    the principle balance will increase; and (iii) clearly and conspicuously disclose that the

3    initial interest rate provided is discounted and does not reflect the actual interest that

4    Plaintiff and Class members would be paying on the Note(s).

5    M.    For reasonable attorneys' fees and costs; and

6    N.    For such other relief as is just and proper.

7

8    DATED: August 29, 2007                    SPIRO MOSS BARNESS LLP

9

10                                             By: _____

11                                             David M. Arbogast, Esq.
                                               11377 W. Olympic Boulevard, Fifth Floor
                                               Los Angeles, CA 90064-1683
12                                             Phone: (310) 235-2468
                                               Fax:    (310) 235-2456

13
                                               Paul R. Kiesel, Esq.
14                                             Patrick Deblase, Esq.
                                               Michael C. Eyerly, Esq.
15                                             KIESEL BOUCHER LARSON LLP
                                               8648 Wilshire Boulevard
16                                             Beverly Hills, California 90210
                                               Phone: (310) 854-4444
17                                             Fax:    (310) 854-0812

18                                             Jeffrey K. Berns, Esq.
                                               LAW OFFICES OF JEFFREY K. BERNS
19                                             19510 Ventura Blvd, Suite 200
                                               Tarzana, California 91356
20                                             Phone: (818) 961-2000
                                               Fax:    (818) 867-4820
21
                                               Attorneys for Plaintiff and all others Similarly
22                                             Situated

23    / / /

24    / / /

25    / / /

26

27

28

                                        -30-
     CLASS ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a trial by jury to the full extent permitted by law.

3

4    DATED: August 29, 2007                    **SPIRO MOSS BARNESS LLP**

5

6                                             By:

7                                                 David M. Arbogast, Esq.
                                                  11377 W. Olympic Boulevard, Fifth Floor
                                                  Los Angeles, CA 90064-1683
8                                                 Phone: (310) 235-2468
                                                  Fax:    (310) 235-2456
9

10                                            Paul R. Kiesel, Esq.
                                              Patrick Deblase, Esq.
                                              Michael C. Eyerly, Esq.
11                                            **KIESEL BOUCHER LARSON LLP**
                                              8648 Wilshire Boulevard
12                                            Beverly Hills, California 90210
                                              Phone: (310) 854-4444
13                                            Fax:    (310) 854-0812

14                                            Jeffrey K. Berns, Esq.
                                              **LAW OFFICES OF JEFFREY K. BERNS**
15                                            19510 Ventura Blvd, Suite 200
                                              Tarzana, California 91356
16                                            Phone: (818) 961-2000
                                              Fax:    (818) 867-4820
17
                                              Attorneys for Plaintiff and all others Similarly
18                                            Situated

19

20

21

22

23

24

25

26

27

28

-31-

CLASS ACTION COMPLAINT

# Exhibit No. 1

JUL-31-2007  08:11      San Francisco PUC                    415 274 8695    P.02

# ADJUSTABLE RATE NOTE
(Monthly Treasury Average - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATE IN THIS NOTE.

December 30, 2005              San Francisco                California
[Date]                        [City]                      [State]

314 Oroville Court, Discovery Bay, CA  94514

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 844,000.00                (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is  Paul Financial, LLC

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
(A) Interest Rate
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of            1.000 %.  The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Change Dates
The interest rate I will pay may change on  the first day of  February,  2006          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."
The new rate of interest will become effective on each Interest Change Date.

(C) Interest Rate Limit
My interest rate will never be greater than            12.500 %.

(D) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The "Twelve Month Average" is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.  The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon the comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding  Three  and 525/1000                      percentage points (                   3.525 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

0000471201

Form 3691 1/01

MTA-448H #001: Modified for Monthly Treasury Average (MTA)

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5              Initials:
ALTA-NEG-46YR-4/1-07         PF0131

PF_COLLATERAL_NOTE

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **February 01, 2006** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 01, 2046** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 7867, Santa Rosa, CA  954070867**

*or at a different place if required by the Note Holder.*

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of **U.S. $1,375.54** . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the **1st** day of **February, 2007** , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited Payment.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (   110% ) of the Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

0000471201

Form 5502 1/01

**(STR)** 440N (0101)  Modified for Monthly Treasury Average (MTA)    Page 2 of 5

ALTA-REG-40YR-1/1/09            —

PFM1201

**4. NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable Law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by

0000473203

4109 (0001) Modified for Monthly Treasury Average (MTA)          Page 2 of 3          Form 3502 1/01
ALTA-NEG-40VR-1/1-03                                                              PPU131

delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                 _____ (Seal)
Gregory K Jordan                         -Borrower                                             -Borrower

_____ (Seal)                 _____ (Seal)
                                        -Borrower                                             -Borrower

_____ (Seal)                 _____ (Seal)
                                        -Borrower                                             -Borrower

_____ (Seal)                 _____ (Seal)
                                        -Borrower                                             -Borrower

*[Sign Original Only]*

JUL-31-2007   08:11    San Francisco PUC          415 274 0696   P.01
⌐x   818-86748/S

☒ INITIAL     ☐ FINAL
**FEDERAL TRUTH-IN-LENDING DISCLOSURE**

Creditor    Pael Financial, LLC
1401 Los Gamos Drive
San Rafael, CA 94801                   Borrower(s)  Gregory M Jordan

Loan No.   0000471261
Processor
Date of Disclosure    12/05/2005       Mailing    314 Oroville Court
Est. Settlement Date (Date of Closing)  01/06/2006    Address    Byron, CA 94514

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | AMOUNT FINANCED  The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.446 'e' % | $ 778,953.01 'o' | $ 533,533.84 'e' | $ 1,312,486.85 'o' |

Your MONTHLY   PAYMENT SCHEDULE will be:

| # Payments  $ Payment... Beginning On  * | # Payments  $ Payment  Beginning On  * | # Payments  $ Payment  Beginning On  * |
|---|---|---|
| 12    $1,720.78    3/1/2006 | | |
| 12    $1,849.84    3/1/2007 | | |
| 12    $1,999.53    3/1/2008 | | |
| 12    $2,127.73    3/1/2009 | | |
| 3     $2,296.06    3/1/2010 | | |
| 309   $2,976.33    6/1/2010 | | |
| 1     $3,919.87    2/1/2036 | | |

* Private Mortgage Insurance (PMI) premiums, if shown, are included in the amount of the periodic payments.

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account any required deposit.
☐ DEMAND FEATURE: This obligation has a demand feature.
☐ VARIABLE RATE MORTGAGE: Variable Rate Mortgage Program disclosures have been provided earlier which discuss the and other variable rate features of your loan.

☒ ASSUMPTION: Someone buying your property
   ☐ may, subject to conditions   ☒ cannot   assume the remainder of your loan on the original terms.
PROPERTY INSURANCE: Property insurance is required in this transaction. You may obtain such insurance from anyone that is
acceptable to the creditor. If you purchase from the creditor you will pay    for a    month term.
SECURITY: You are giving a security interest in:
   ☐ The goods or property being purchased
   ☒ Real property you own located at 314 Oroville Court, Byron, CA, 94514
   ☐ Other Collateral
   Collateral securing other loans with us (or an assignee) may also secure this loan.

FILING FEES AND TAXES:  $
LATE CHARGE: If a payment is 16  days late, you will be charged 5.000   % of Principal and Interest Payment
PREPAYMENT: If you pay off early, you
   ☐ may    ☒ will not    have to pay a penalty.
   ☐ may    ☒ will not    be entitled to a refund of part of the finance charge.

See your actual contract documents for any additional information about nonpayment, default, or any required repayment in full before the
scheduled date as well as prepayment refunds and penalties.

☒  All dates and numerical disclosures, except the late payment disclosure, are ESTIMATES.

Borrower(s) understand that delivery of this disclosure is not a commitment by the creditor to make this loan, and that signing this disclosure does
not obligate Borrower(s) to accept the loan.

_____    _____    _____    _____
Borrower   Gregory M Jordan   Date      Borrower                   Date

_____    _____    _____    _____
Borrower                   Date      Borrower                   Date

Copyright Gallagher Financial Systems, 2002.                       SFS Form 0029 (0C29)