# ARBOGAST & BERNS LLP

Attorneys at Law
19510 Ventura Boulevard, Suite 200• Tarzana, California 91356
Telephone (818) 961-2000 • Fax (818) 867-4820

May 14, 2008

Honorable Susan Illston
United States District Court Judge
Northern District of California
450 Golden Gate Avenue, Courtroom 10
San Francisco, CA 94102-3483

*Via Email & U.S. Mail*
siPDF@cand.uscourts.gov

**Re:**   **Gregory Jordan  v. Paul Financial LLC, et. al.,** U.S.D.C. Case No. CV07-04496 -SI

Dear Judge Illston:

Plaintiff submits the following letter brief concerning several outstanding discovery disputes. True and correct copies of the requests and Defendant's inadequate responses are attached hereto as Exhibits 1 and 2. The parties fully complied with L.R. 37-1 in that they have exchanged "meet & confer" letters and discussed these matters over the telephone on several occasions. See Letters, Ex. 3.

**Interrogatory No. 5:**   This interrogatory seeks the name, address, telephone number, loan number and date of the loan for each of the putative Class members who were sold Defendant's ARM loan during the Liability Period. "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations.]" Pioneer Electronics (USA), Inc. v. Superior Court (2007) 40 Cal.4th 360, 373. As the California Supreme Court emphasized, "[s]uch disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches." Id. Moreover, given that the Court has already entered the Stipulated Protective Order, which specifically prohibits any improper use of the putative class members' contact information, any remaining privacy interests  have been "assuaged." Pioneer, 40 Cal.4th at 374; Protective Order ¶ 7.3 (Private consumer information "shall not be disclosed or disseminated to the general public or used for any commercial, business or competitive purpose.").

Because it is plaintiff's burden on the motion for class certification to establish the basis for certification as a matter of fact, the matters considered on such a motion typically include extrinsic evidence in the form of discovery responses and declarations, including declarations from proposed class members. While a plaintiff seeking to represent a class may be able to make the requisite showing for class certification without evidence from other proposed unnamed class members, it is entirely proper for plaintiffs to submit such declarations or other evidence obtained from such putative class members in support of the motion for class certification. Such

declarations often provide important information and evidence in support of required factual findings, for class certification, including, for example, the following:

A.    Evidence that the named Plaintiff's experiences with Defendant are not isolated occurrences, i.e. that other individuals were allegedly victims of the same unlawful practice and suffered harm similar to the harm suffered by the named Plaintiff;

B.    Evidence that the claims of the named Plaintiff are typical of those of other proposed class members, e.g. that the putative class members were subjected to the same or similar unlawful policies, practices or procedures; and

C.    Evidence of the existence of other victims of the alleged unlawful practices who might initiate separate actions if the case is not certified as a class action, providing a basis for concluding that class treatment is superior to an individual action.

Thus, it is of no surprise that the California Supreme Court recognizes a class action plaintiff's need for and entitlement to pre-certification discovery from proposed class members. Pioneer, 40 Cal.4th at 206.   Further, as another court explained: "*plaintiffs are entitled to have discovery directed towards appropriate parties in order to learn the names of other proper plaintiffs who may be of assistance in the presentation of the case and who may share the burdens of its prosecution.*"   Budget Finance Plan v. Superior Court (1973) 34 Cal.App.3d 794, 799; see also Pioneer, 40 Cal.4th at 373-74; Bartold v. Glendale Federal Bank (2000) 81 Cal.App.4th 816, 820-21 ("[W]hether the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits cannot realistically be made until the parties have had a chance to conduct reasonable investigation.")

Putative class counsel also has an ethical obligation to investigate the case, which ordinarily requires that they seek the identity of witnesses and potential class members.  Denying Plaintiff equal access to the putative class members will hamper the ability of class counsel to investigate the action and communicate with class members, but offers *no* similar restriction on the access of defense counsel to class members. Since Defendant already has the names, addresses and telephone numbers of it's consumers, it therefore enjoys unfettered access to those individuals from the outset of the litigation.  Thus, the one-sided advantage advocated by Defendant is at odds with the level playing field contemplated by long-standing state and federal class action case precedent.

In Gulf Oil Co. v. Bernard (1981) 452 U.S. 89, the United States Supreme Court addressed the scope of a federal court's authority to limit communications from named plaintiffs to prospective class members.  The district court had imposed a complete ban on such communications by plaintiffs or their counsel, unless they obtained prior approval for any communication by the court.  The Supreme Court concluded that the district court's order exceeded its authority under Fed. R. Civ. Proc. Rule 23.  The High Court held that a federal court could only impose a prior restraint on pre-certification communications with class members

if the moving party presented "a specific record of the particular abuses" that would threaten the underlying purposes of Rule 23. Even where the moving party did make this showing, any restriction on speech had to be "consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties." Gulf Oil, 452 U.S. at 102, quoting Coles v. Marsh (3rd Cir. 1977) 560 F.2d 186, 189.

The California courts soon followed the U.S. Supreme Court's lead. In Atari, Inc. v. Superior Court (1985) 166 Cal. App. 3d 867, the California Court of Appeal reviewed a lower court order, which permitted plaintiffs' counsel to communicate with potential class members, but prohibited all such communications by defense counsel. The Atari court recognized, as the Supreme Court had in Gulf Oil, the "importance of permitting named plaintiffs to communicate with persons for whose benefit their action was ostensibly filed." Atari, 166 Cal. App. at 872. It approved the order to the extent it permitted communications by plaintiffs' counsel but vacated the restrictions on pre-certification communications by the defendant. It concluded that neither side's communications would be restricted unless the moving party made the showing required by Gulf Oil.

> "We do not mean to foreclose either party's right to seek any protective order which probable circumstances may make appropriate. We only conclude, consistent with fundamental fairness, that in the absence of such circumstances neither party should be precluded from, investigating and preparing the case which [the named plaintiffs] have initiated."

Atari, 166 Cal. App. 3d at 873. Atari explicitly endorsed "equal access" - a level playing field - for pre-certification communications. Id. at 869; see also Pioneer, 40 Cal.4th at 373-74.

Here, no *serious* invasion of privacy is presented. The information sought, the names and addresses of the putative class members, raises minimal privacy concerns at best. Plaintiff does not seek medical or personal financial records and, because the Protective Order that is already in place in this case has already weighed the competing interests, whatever privacy concerns remain have been "assuaged." Pioneer, supra at 374 ("Protective measures, safeguards and other alternatives may minimize the [alleged] privacy intrusion. For example, if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged.")

As the Court of Appeal in Puerto v. Superior Court (Wild Oats Markets, Inc.) (2008) 158 Cal.App.4th 1242 observed, "[t]his is basic civil discovery. .... **Nothing could be more ordinary in discovery than finding out the location of identified witnesses so that they may be contacted and additional investigation performed.**" Id. at 1254. "Witnesses may be compelled to appear and testify whether they want to or not." Id; see also Salazar v. Avis Budget Group, Inc. (S.D. Cal. Oct. 10 2007) 2007 WL 2990281 ("**[T]he minimal information Plaintiff requests is indeed contemplated under the Federal Rules of Civil Procedure ... as basic to the discovery process.**") The Court of Appeal in Belaire-West Landscape, Inc. v. Superior

Court (Rodriguez) (2007) 149 Cal.App.4th 554, also observed that class members can "reasonably be expected to want their information disclosed to a class action plaintiff who may ultimately recover for them [monies] that they are owed." Id. at 561. The same is true here, borrowers who have been duped into entering into the ARM loans at issue, and have experienced negative amortization as a result of these loans can also be reasonably expected to want their contact information disclosed to Plaintiff who may ultimately recover the negative amortization and other costs incurred as a result of the ARM loans at issue.

Moreover, Federal. Rules of Civil Procedure, Rule 26(a) *requires* disclosure of names and contact information for witnesses *likely* to have certain discoverable information without the need for a formal discovery request. Certainly the putative class members have such discoverable information that thus, the putative class members contact information should be produced so that Plaintiff can "improve his chances of marshaling a successful class action against [Defendant], thus perhaps ultimately benefitting some, if not all, those customers." Pioneer, 40 Cal.4th at 374.

**Interrogatory No. 4 and Document Request Nos. 2 and 5:** These requests seek the identity of any subsequent purchasers and/or assignees of the ARM loan's Defendant Paul Financial sold during the Liability Period. 15 U.S.C. § 1641 provides that "[a]ny person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." Thus, these requests seek information that is directly relevant and necessary to identity of other parties who are or maybe liable to Plaintiff and the putative class members.

Identification of the subsequent purchasers and/or assignees of the subject ARM loans is also necessary, and therefore relevant, so that Plaintiff can take steps to preserve documents and information concerning the ARM loans Defendant sold to subsequent purchasers and/or assignees. While Defendant may no longer have control of the loan documents and evidence relating to the loans it subsequently sold, where "[a] party who cannot preserve relevant evidence (e.g., because it does not own or control the evidence) *it still has an obligation to give the opposing party notice of access to the evidence ... if litigation involving that evidence is anticipated.* See Scharzer, Tashima & Wagstaffe, Fed. Civ. Proc. Bf. Trial (2008) at ¶ 11:132; citing Silvestri v. General Motors Corp. (4th Cir. 2001) 271 F.3d 583, 591. Here, Defendant has limited it's response to only the subsequent purchaser of the ARM loan it sold to the named Plaintiff. Litigation concerning the subsequent purchasers of the loans Defendant sold to the putative class members loans is anticipated as Plaintiff intends on ultimately securing judgment as to all entities whom have liability, including those who have liability under 15 U.S.C. § 1641. Thus, Defendant should be required to disclose the identities of those who have purchased and/or currently own the loan documents so as to allow Plaintiff to take steps to preserve evidence, by either sending a "freeze" letter and subsequently entering into stipulation to preserve such evidence or otherwise by order of the Court.

**Document Request Nos. 3 and 4:** These requests seek copies of the ARM loan documents at issue. Request No. 3 seeks five (5) (randomly selected) loan files for each subsequent purchaser or assignee of the ARM loans Defendant sold during the Liability Period. Request No. 4 seeks a complete copy of each version of the ARM loan documents Defendant used during the Liability Period. Since Defendant's loan documents, and the documentary evidence related to the loans sold to Plaintiff and the Class members during the Liability Period are at issue in this case, the documents are either directly relevant or extremely likely to lead to the discovery of admissible evidence at class certification. Nevertheless, Defendant has objected claiming that these requests "prematurely seek[] documents regarding putative class members in advance of certification." The ARM loans and loan documents provided to Plaintiff and the Class members are central to Plaintiff's class claims. As such, they are either directly relevant or likely to lead to the discovery of admissible evidence at class certification.

By these requests, Plaintiff has attempted to seek a sufficient number of the loan documents by which he can support his motion for class certification. However, during the meet and confer efforts, Defendant argues that the class certification question "**will necessarily require a specific examination of the facts and circumstances surrounding the origination of each putative class member's loan**." See Letter, Ex. 4 at p. 002. Thus, while Plaintiff has attempted to narrow the document requests so as to allow the examination of enough of the loans Defendant sold during the Liability Period, it appears, based on Defendant's own arguments, that a copy of each of the loans Defendant sold during the Liability Period, namely, a copy of the Notes, TILDS, Adjustable Payment Riders, Prepayment Penalty Addendums and Program Disclosures, should be produced.[1] Moreover, as Defendant has previously advised the Court, Paul Financial is the process of closing down its business and therefore, in order to preserve this documentary evidence, these crucial documents should be produced.

Respectfully submitted,

**ARBOGAST & BERNS LLP**

By: _____

David M. Arbogast
*Attorneys for Plaintiff and*
*all others Similarly Situated*

---

[1] Defendant Paul Financial sold approximately 10,000 ARM loans during the Liability Period. Plaintiff estimates that these documents total no more than 15 documents per class member or a total of 150,000 pages for the entire proposed class.

1  MATTHEW G. BALL (SBN No. 208881)
   KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
2  55 Second Street, Suite 1700
   San Francisco, California 94105-3493
3  Telephone:  (415) 882-8200
   Facsimile:   (415) 882-8220
4
   Attorneys for Defendant
5  PAUL FINANCIAL LLC

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  GREGORY M. JORDAN, individually and      Case No. CV07-04496 SI
    behalf of all others similarly situated,
13
                        Plaintiff,           RESPONSE OF DEFENDANT PAUL
14                                           FINANCIAL LLC TO PLAINTIFF'S FIRST
    vs.                                      SET OF INTERROGATORIES
15
    PAUL FINANCIAL LLC; and DOES 1 through   Assigned to the Honorable:
16  10, inclusive,                           District Judge Susan Illston
17                      Defendants.

18

19       Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Paul Financial LLC

20  ("Paul Financial") hereby responds to Plaintiff's First Set of Interrogatories dated February 25, 2008

21  ("First Set of Interrogatories").

22          **SPECIFIC OBJECTIONS OF GENERAL APPLICABILITY**

23       Paul Financial makes the following objections of general applicability to plaintiff's First Set

24  of Interrogatories, including specific objections to the definitions and instructions set forth therein:

25       1.    Paul Financial objects to Plaintiff's First Set of Interrogatories to the extent that they

26  seek to discover information beyond the merits of Plaintiff's individual claims, which information

27

28  RESPONSE OF DEFENDANT PAUL FINANCIAL          1
    LLC TO PLAINTIFF'S FIRST SET OF
    INTERROGATORIES

1 **RESPONSE TO INTERROGATORY NO. 3:**

2     Paul Financial objects to Interrogatory No. 3 on the grounds that it is overly broad, vague and
3 ambiguous, unduly burdensome, seeks information that is neither relevant nor reasonably calculated
4 to lead to the discovery of admissible evidence, seeks the disclosure of confidential and proprietary
5 business and financial information of Paul Financial, seeks information or documents for any time
6 period outside of the applicable statutes of limitations, and seeks information that may be protected
7 by the attorney work product doctrine and/or the attorney-client privilege. Paul Financial further
8 objects to Interrogatory No. 3 on the grounds that plaintiff's use of the term "ARM Loan(s)" does
9 not accurately describe the adjustable rate mortgage loans originated by Paul Financial or the
10 disclosures made by Paul Financial in connection with such loans.

11     Subject to and without waiving the foregoing general and specific objections, Paul Financial
12 states that it originated 1,816 first lien Option ARM loans for property located outside of the State of
13 California (but within the United States) from August 29, 2003 through November 26, 2007.

14 **INTERROGATORY NO. 4**:

15     Identify each subsequent purchaser or assignee for each ARM loan you sold during Liability
16 Period, by the loan number you assigned to each loan, the date the loan was made (as reflected in the
17 Note(s), the name and address of the subsequent purchaser and/or assignee of the loan, and the date
of the sale or assignment of the loans as follows:

18

| Loan No. | Date of Loan | Purchaser/Assignee | Date of Sale |
|---|---|---|---|
| A123456 | August 29, 2003 | XYZ Bank | August 29, 2003 |

19

20

21 **RESPONSE TO INTERROGATORY NO. 4:**

22     Paul Financial objects to Interrogatory No. 4 on the grounds that it is unduly burdensome
23 because it will require a loan by loan review to determine such information for each of thousands of
24 putative class members; it seeks information that is neither relevant nor reasonably calculated to lead
25 to the discovery of admissible evidence regarding either plaintiff's individual claim or the putative
26 class claims against Paul Financial because neither plaintiff nor the putative class has a viable legal
27 claim against assignees and/or subsequent purchasers or a viable basis or standing to seek

28 RESPONSE OF DEFENDANT PAUL FINANCIAL          7
LLC TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES

1  certification of plaintiff's claims against such entities; and it prematurely seeks information

2  regarding putative class members in advance of class certification. Paul Financial further objects to

3  Interrogatory No. 4 to the extent that it calls for the production of information that is not in Paul

4  Financial's possession, custody or control, and to the extent that it calls for information or

5  documents for any time period outside of the applicable statutes of limitations. Paul Financial

6  further objects to Interrogatory No. 4 because plaintiff's use of the term "ARM Loan(s)" does not

7  accurately describe the adjustable rate mortgage loans originated by Paul Financial or the disclosures

8  provided by Paul Financial in connection with such loans.

9       Subject to and without waiving the foregoing general and specific objections, and subject to

10 the entry of a confidentiality order, Paul Financial states that, after funding, plaintiff's loan note was

11 sold by Paul Financial to Luminent Mortgage Capital, Inc. on January 24, 2006. Plaintiff's loan note

12 is currently held in mortgage-backed security pool Luminent Mortgage Trust 2006-2. The trustee of

13 the pool is HSBC Bank National Association.

14

15 **INTERROGATORY NO. 5**:

16       For each ARM Loan that you sold during the Liability Period, state the borrowers name,

17 address, telephone number, the loan number you assigned to the loan and date of the loan (as
   reflected in the Note(s) as follows:

18

| Name | Address | Telephone No. | Loan No. | Date of Loan |
|------|---------|---------------|----------|--------------|
| Jane Doe | 123 State Street San Francisco, CA 94101 | (415) 431-1234 | A123456 | August 29, 2003 |

21 **RESPONSE TO INTERROGATORY NO. 5:**

22       Paul Financial objects to Interrogatory No. 5 on the grounds that the identification of the

23 names and addresses of each putative class member is premature prior to class certification; it calls

24 for information protected by each putative class member's privacy rights under applicable federal

25 and state privacy laws; it would require a burdensome, time-consuming, and costly file by file

26 review of the thousands of putative class member loan files; and it seeks information that is neither

27 relevant nor reasonably calculated to lead to the discovery of admissible evidence regarding

28 RESPONSE OF DEFENDANT PAUL FINANCIAL           8
   LLC TO PLAINTIFF'S FIRST SET OF
   INTERROGATORIES

1  plaintiff's individual claims against Paul Financial. Paul Financial further objects to Interrogatory

2  No. 5 to the extent it seeks information or documents for any time period outside of the applicable

3  statutes of limitations. Paul Financial further objects to Interrogatory No. 5 because plaintiff's use of

4  the term "ARM Loan(s)" does not accurately describe the adjustable rate mortgage loans originated

5  by Paul Financial or the disclosures provided by Paul Financial in connection with such loans.

6  **INTERROGATORY NO. 6**:

7      Identify the computer program(s), including the version(s) (e.g. XYZ Mortgage Document
8  Creater 5.1), that you used to create the ARM Loan documents (Note(s), TILDS, and disclosure
    statements) that you sold to Plaintiff and the Class members during the Liability Period.

9

10  **RESPONSE TO INTERROGATORY NO. 6**:

11      Paul Financial objects to Interrogatory No. 6 on the grounds that it is vague and ambiguous

12  and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

13  admissible evidence. Paul Financial further objects to Interrogatory No. 6 on the grounds that

14  plaintiff's use of the term "ARM Loan(s)" does not accurately describe the adjustable rate mortgage

15  loans originated by Paul Financial or the disclosures provided by Paul Financial in connection with

16  such loans.

17      Subject to and without waiving the foregoing general and specific objections, Paul Financial

18  states it used CBF Systems, Inc. d/b/a VMP to create loan documents for adjustable rate mortgage

19  loans that it originated from August 29, 2003 to November 26, 2007.

20  **INTERROGATORY NO. 7**:

21      Identify all persons or entities who designed, created and/or approved the ARM Loan
22  documents (Note(s), TILDS, and disclosure statements) you used for the ARM loans you sold to
    Plaintiff and the Class members during the Liability Period.

23

24  **RESPONSE TO INTERROGATORY NO. 7**:

25      Paul Financial objects to Interrogatory No. 7 on the grounds that it is overly broad, seeks

26  information that is neither relevant nor reasonably calculated to lead to the discovery of admissible

27  evidence, seeks information or documents for any time period outside of the applicable statutes of

28  RESPONSE OF DEFENDANT PAUL FINANCIAL      9
    LLC TO PLAINTIFF'S FIRST SET OF
    INTERROGATORIES

1

2

3    PAUL FINANCIAL LLC

4    By: _____

5    Dennis Tussey
     Executive Vice President

6    As to objections only:

7    _____

8

9    KIRKPATRICK & LOCKHART
     PRESTON GATES ELLIS LLP

10

11   Dated: March 31, 2008    By: _____

12   Matthew G. Ball

13   Irene C. Freidel
     Attorneys for Defendant Paul Financial LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   RESPONSE OF DEFENDANT PAUL FINANCIAL    11
     LLC TO PLAINTIFF'S FIRST SET OF
     INTERROGATORIES

**Exhibit No. 2**



1  MATTHEW G. BALL (SBN No. 208881)
   KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
2  55 Second Street, Suite 1700
   San Francisco, California 94105-3493
3  Telephone: (415) 882-8200
   Facsimile: (415) 882-8220
4
   Attorneys for Defendant
5  PAUL FINANCIAL LLC

6                         UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                          SAN FRANCISCO DIVISION

9

10 | GREGORY M. JORDAN, individually and       | Case No. CV07-04496 SI
   | behalf of all others similarly situated,   |

11 |              Plaintiff,                     | DEFENDANT PAUL FINANCIAL LLC'S
                                                   RESPONSES TO PLAINTIFF'S FIRST SET
12 | vs.                                         | OF REQUESTS FOR PRODUCTION OF
                                                   DOCUMENTS
13 | PAUL FINANCIAL LLC; and DOES 1 through      |
14 | 10, inclusive,                              | Assigned to the Honorable:
                                                   District Judge Susan Illston
15 |              Defendants.                    |

16

17        Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Paul Financial LLC

18 ("Paul Financial") hereby responds to plaintiff's First Set of Requests for Production of Documents

19 dated March 3, 2008 ("Document Requests").

20              **SPECIFIC OBJECTIONS OF GENERAL APPLICABILITY**

21        Paul Financial makes the following objections of general applicability to plaintiff's

22 Document Requests, including specific objections to the definitions and instructions set forth

23 therein:

24        1.     Paul Financial objects to plaintiff's Document Requests to the extent that they seek to

25 discover information beyond the merits of plaintiff's individual claims, which information has no

26 bearing on whether a class should be certified. Until and unless the Court certifies a class in this

27

28 | DEFENDANT PAUL FINANCIAL LLC'S                        1
   | RESPONSES TO PLAINTIFF'S FIRST SET OF
   | REQUESTS FOR PRODUCTION OF DOCUMENTS

1  **REQUEST NO. 2:**

2      A complete copy of all documents that reflect or refer to the securitization of your ARM

3  Loans to any lender, originating lender, warehouse lender, lines of credit used for funding loans, trustee, investor or securitized trust during the Liability Period.

4

5  **RESPONSE TO REQUEST NO. 2:**

6      Paul Financial objects to Request No. 2 on the grounds that it is vague and confusing; it is

7  unduly burdensome to the extent that it will require a loan by loan review to identify responsive

8  documents for each of thousands of putative class members; it seeks voluminous documents; it seeks

9  documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible

10  evidence regarding either plaintiff's individual claim or the putative class claims against Paul

11  Financial because neither plaintiff nor the putative class has a viable legal claim against such

12  subsequent assignees, purchasers and/or securitizers or a viable basis to seek certification of

13  plaintiff's claims against such entities; it prematurely seeks documents regarding putative class

14  members in advance of class certification; and it seeks information or documents that are not in Paul

15  Financial's possession, custody or control. Paul Financial further objects to Request No. 2 to the

16  extent that it seeks documents for any time period outside of the applicable statutes of limitations.

17  Paul Financial further objects to Request No. 2 because plaintiff's use of the term "ARM Loan(s)"

18  does not accurately describe the adjustable rate mortgage loans originated by Paul Financial or the

19  disclosures provided by Paul Financial in connection with such loans.

20      Subject to and without waiving the foregoing objections, and subject to the entry of a

21  stipulated protective order, Paul Financial will produce responsive documents in its possession

22  pertaining to plaintiff's mortgage loan to the extent such documents exist.

23  **REQUEST NO. 3:**

24      Produce 5 complete ARM Loan files (randomly selected) for each subsequent purchaser or

25  assignee of the ARM loans you sold during the Liability Period, which should include all documents related to these loans, from pre-funding to subsequent sale and/or assignment, including all pre-

26  funding and post-funding communications with banks or financial institutions, and the funding, servicing, subsequent sale and/or assignment of the subject ARM Loans.

27

28  DEFENDANT PAUL FINANCIAL LLC'S                    6
    RESPONSES TO PLAINTIFF'S FIRST SET OF
    REQUESTS FOR PRODUCTION OF DOCUMENTS

**RESPONSE TO REQUEST NO. 3:**

Paul Financial objects to Request No. 3 on the grounds that it is confusing to the extent that Paul Financial does not understand the term "ARM Loan files ... for each subsequent purchaser or assignee ...;" it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence regarding plaintiff's individual claims against Paul Financial; it prematurely seeks documents regarding putative class members in advance of class certification; and it seeks information or documents that are not in Paul Financial's possession, custody or control. Paul Financial further objects to Request No. 3 to the extent that it seeks documents for any time period outside of the applicable statutes of limitations. Paul Financial further objects to Request No. 3 because plaintiff's use of the term "ARM Loan(s)" does not accurately describe the adjustable rate mortgage loans originated by Paul Financial or the disclosures provided by Paul Financial in connection with such loans.

**REQUEST NO. 4:**

A complete copy of each version of the ARM Loan documents you provided to borrowers during the Liability Period, including, but not limited to, a complete copy of each version of the ARM Loan contracts or notes, TILDS, riders, disclosure statements, and any other standardized forms, denominated by a different name, that reflect or refer to the ARM Loan documents you provided to borrowers before or at the time of closing during the Liability Period.

**RESPONSE TO REQUEST NO. 4:**

Paul Financial objects to Request No. 4 on the grounds that it is unduly burdensome to the extent that it will require a loan by loan review to identify responsive documents; it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence regarding plaintiff's individual claims against Paul Financial; and it prematurely seeks documents regarding the merits of putative class members' claims in advance of class certification. Paul Financial further objects to Request No. 4 to the extent that it seeks documents for any time period outside of the applicable statutes of limitations. Paul Financial further objects to Request No. 4 because plaintiff's use of the term "ARM Loan(s)" does not accurately describe the adjustable rate

1  mortgage loans originated by Paul Financial or the disclosures provided by Paul Financial in

2  connection with such loans.

3  **REQUEST NO. 5:**

4      A complete copy of all reports or documents that summarize your subsequent sale and/or

5  assignment of the subject ARM Loans you sold to Plaintiff and the Class members during the
   Liability Period.

6

7  **RESPONSE TO REQUEST NO. 5:**

8      Paul Financial objects to Request No. 5 on the grounds that it is vague and confusing to the

9  extent that it seeks a "summary" of the subsequent sale and/or assignment of any particular loan; it is

10  unduly burdensome to the extent that it will require a loan by loan review to identify responsive

11  documents for each of the thousands of putative class members; it seeks documents that are neither

12  relevant nor reasonably calculated to lead to the discovery of admissible evidence regarding either

13  plaintiff's individual claims against Paul Financial or putative class member's claims against Paul

14  Financial because neither plaintiff nor the putative class has a viable legal claim against subsequent

15  assignees or purchasers or a viable basis to seek certification of plaintiff's claims against such

16  entities; and it prematurely seeks documents regarding putative class members in advance of class

17  certification; and it seeks information or documents that are not in Paul Financial's possession,

18  custody or control.  Paul Financial further objects to Request No. 5 to the extent that it seeks

19  documents for any time period outside of the applicable statutes of limitations.  Paul Financial

20  further objects to Request No. 5 because plaintiff's use of the term "ARM Loan(s)" does not

21  accurately describe the adjustable rate mortgage loans originated by Paul Financial or the disclosures

22  provided by Paul Financial in connection with such loans.

23  **REQUEST NO. 6:**

24      A complete copy of all documents that reflect or refer to plaintiff GREGORY M. JORDAN,

25  including but not limited to all ARM Loan documents, contracts, correspondence, handwritten notes,
   disclosure statements, billings statements, and all documents which were prepared, generated or

26  reviewed in connection with Plaintiff's loan application, underwriting, review and credit assessment,

27  approval, funding, closing and recording of said transactions.

28  DEFENDANT PAUL FINANCIAL LLC'S                          8
   RESPONSES TO PLAINTIFF'S FIRST SET OF
   REQUESTS FOR PRODUCTION OF DOCUMENTS

1  **RESPONSE TO REQUEST NO. 10:**

2       Paul Financial objects to Document Request No. 10 on the grounds that it is overly broad,

3  vague and ambiguous to the extent that it requests "document organization" "policies and/or

4  procedures," which terms are broad and undefined, and seeks information that is neither relevant nor

5  reasonably calculated to lead to the discovery of admissible evidence.

6       Subject to and without waiving the foregoing objections, Paul Financial does not have a

7  written document retention policy.

8

9

10                                                 KIRKPATRICK & LOCKHART
                                                   PRESTON GATES ELLIS LLP
11

12  Dated: March 31, 2008                   By:    _Irene C. Freidel_

13                                                 Matthew G. Ball
                                                   Irene C. Freidel
                                                   Phoebe S. Winder
14                                                 Attorneys for Defendant Paul Financial LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28  DEFENDANT PAUL FINANCIAL LLC'S               11
    RESPONSES TO PLAINTIFF'S FIRST SET OF
    REQUESTS FOR PRODUCTION OF DOCUMENTS

**Exhibit No. 3**

# ARBOGAST & BERNS LLP

Attorneys at Law

19510 Ventura Boulevard, Suite 200• Tarzana, California 91356

Telephone (818) 961-2000 • Fax (310) 861-1775

April 16, 2008

Irene C. Friedel
KIRKPATRIC & LOCKHART
PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

*Via Email & U.S. Mail*
irene.freidel@klgates.com
Matthew.Ball@klgates.com

Matthew G. Ball
KIRKPATRIC & LOCKHART
PRESTON GATES ELLIS LLP
55 Second Street, Suite 1700
San Francisco, CA 94105-3493

Re:    Gregory Jordan v. Paul Financial LLC, et. al.,
          U.S.D.C. Case No. CV07-04496

Dear Irene:

I write concerning Paul Financial LLC's inadequate responses to Plaintiff's First Set of Special Interrogatories and First Set of Requests for Production of Documents. Therefore, please consider this letter to be an attempt to "meet and confer" pursuant to Fed. R. Civ. Proc., rule 37(a)(2)(B).

It is Plaintiffs' desire to either resolve or substantially reduce the number of issues that may have to be resolved by the Court. However, Plaintiff is informed and believes that a substantial number of Class members who purchased Defendant's loans are currently being subjected to foreclosure proceedings as a result of the ARM loans at issue. Thus, Plaintiffs will be seeking an expedited discovery processes in this action to prevent consumers from losing their homes as a result of Defendant's improper loan practices.

## I.    DEFENDANT'S INADEQUATE RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

### Defendant's Improper Blanket "General Objections"

Each interrogatory must be responded to "separately and fully." F.R.C.P. 33 (b)(3). "The requirement that each interrogatory be responded to 'separately' makes blanket objections to an entire set improper." See Scharzer, Tashima & Wagstaffe, Fed. Civ. Proc. Bf. Trial ("Rutter") (2008), ¶ 11:1730.

Accordingly, Defendant's blanket "Objections of General Applicability," Nos. 1-19, directed to Plaintiff's entire set of Interrogatories is improper.

### Interrogatory No. 4:

This interrogatory seeks the identity of any subsequent purchasers and/or assignees of the ARM loan's World sold during the Liability Period. 15 U.S.C. § 1641 provides that "[a]ny person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." Thus, this interrogatory seeks information that is directly relevant and necessary to identity of other parties who are or maybe liable to Plaintiffs.

Identification of the subsequent purchasers and/or assignees of the subject ARM loans is necessary, and therefore relevant, so that Plaintiff can take steps to preserve documents and information concerning the ARM loans Defendant sold to subsequent purchasers and/or assignees. While Plaintiffs understand that Defendant may no longer have control of some of the loan documents and evidence relating to the loans it subsequently sold. Where "[a] party who cannot preserve relevant evidence (e.g., because it does not own or control the evidence) *still has an obligation to give the opposing party notice of access to the evidence* ... if litigation involving that evidence is anticipated. Rutter, supra, at ¶ 11:132, citing Silvestri v. General Motors Corp. (4th Cir. 2001) 271 F.3d 583, 591. Here, litigation concerning these subsequent purchasers is certainly anticipated as Plaintiff intends on ultimately securing judgment as to all entities whom have liability, including those who have liability under 15 U.S.C. § 1641.

Page 2 of 8

Thus, disclosing the identities of the persons or entities who have purchased and/or currently own the loan documents will allow Plaintiff to take steps to preserve evidence, by either sending a "freeze" letter and subsequently entering into stipulation to preserve such evidence or otherwise by order of the Court.

In answering interrogatories propounded to a corporation, partnership, association or governmental agency, the officer or agent responding on its behalf "***must furnish the information available to the party***." F.R.C.P. 33(b)(1)(B) (emphasis added). Thus, Defendant is under a duty to obtain and provide non-privileged information known to anyone in Defendant's employ or over whom it has control. "This includes information known to the entity's agents or lawyers (assuming the information is otherwise discoverable and neither privileged nor protected work product). See Rutter, supra, at ¶ 11:1747, citing General Dynamics Corp. v. Selb Mfg. Co. (8th Cir. 1973) 481 F2d 1204, 1210.

Accordingly, Defendant should provide the name, address, telephone number, loan number and date of the loan for each subsequent purchaser and/or current owner and/or assignee of the loans sold to the Class members during the Liability Period that Defendant has knowledge about.

### Interrogatory No. 5:

This interrogatory seeks the name, address, telephone number, loan number and date of the loan for each of the putative Class members who were sold Defendant's ARM loans during the Liability Period.

"Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations] Such disclosure involves no revelation of personal or business secrets, intimate activities, or similar private information, and threatens no undue intrusion into one's personal life, such as mass-marketing efforts or unsolicited sales pitches." Pioneer Electronics (USA), Inc. v. Superior Court (2007) 40 Cal.4th 360, 373; see also Puerto v. Superior Court (Wild Oats Markets, Inc.) (2008) 158 Cal.App.4th 1242, 1254 ("This is basic civil discovery. ... Nothing could be more ordinary in discovery than finding out the location of identified witnesses so that they may be contacted and additional investigation performed.")

"[T]he minimal information Plaintiff requests is indeed contemplated under the Federal Rules of Civil Procedure ... as basic to the discovery process." <u>Salazar v. Avis Budget Group, Inc.</u> (SD Cal. 2007), 2007 WL 2990281 at *2.

Moreover, the Stipulated Protective Order proposed by Plaintiffs limits the use of the putative Class members contact information so that it will be "shielded from disclosure except to those who have a legitimate need to know." <u>Pioneer</u>, 40 Cal.4th at 521.

A full and complete response to this interrogatory should be forthcoming.

## II.    WORLD'S INADEQUATE RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT REQUESTS

### <u>Defendant's Improper Blanket "Objections of General Applicability"</u>

In responding to a Rule 34 request, the responding party may object to any item or category requested, in whole or in part.   However, to be effective, the objection must: (a) Identify the specific document or evidence requested as to which the objection is made; and (b) Set forth the reason for objection, including claims of privilege or work product protection. <u>See</u> F.R.C.P.  34(b)(2)(C); <u>see also</u> <u>Eureka Financial Corp. v. Hartford Acc. & Indem. Co.</u> (ED CA 1991) 136 F.R.D. 179, 185.

Moreover, boilerplate objections or blanket refusals in response to a Rule 34 request are insufficient to assert a privilege.  <u>Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana</u> (9th Cir. 2005) 408 F.3d 1142, 1148; <u>Etienne v. Wolverine Tube, Inc.</u> (D KS 1999) 185 FRD 653, 656.

Here, Defendant's blanket "Specific Objections of General Applicability," Nos. 1-19, are neither specific, nor provide the reasons for the objections.

### <u>Request No. 1:</u>

This request seeks the production of documents sufficient to identify each subsequent purchaser or assignee of the ARM loans Defendant sold to Plaintiff and the Class members during the Liability Period.

As discussed above, 15 U.S.C. § 1641 provides that "[a]ny person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." Thus, this request seeks documents containing information that is directly relevant and necessary to identity the parties who also may be found liable to Plaintiffs.

Moreover, as discussed above, the identity and location of the subsequent purchasers and/or assignees is necessary, and therefore relevant, so that Plaintiffs can take steps to preserve other documentary evidence that is relevant to Plaintiff's class claims.

As to Defendant's objection that this request "prematurely seeks documents regarding putative class members in advance of certification" is absurd. The documents related to the class members loans, and their subsequent sale are either directly relevant to the class certification questions of typicality, commonality and community of interest, but are also extremely likely to contain information which is likely to lead to evidence which will support Plaintiff's motion for class certification.

Because Defendant's common and uniform practices have been put at issue with the filing of Plaintiff's Class Action Complaint, the loan documents, and the documents which identify such subsequent purchasers and/or assignees should be produced.

### Request No. 2:

This request seeks documents concerning the securitization of the ARM loans Defendant sold during the Liability Period.

Because these documents are likely to contain the identities of subsequent purchasers and/or assignees of the ARM loans at issue, they are therefore relevant. Further, these documents are also likely to contain relevant information about the loans which Plaintiff may use in support of his motion for class certification.

Defendant has responded that it will produce only those documents related to the named Plaintiff's ARM loan. However, since Plaintiff intends on seeking certification of the Class or Classes identified in Plaintiff's Class Action Complaint, the documents sought by this request are either directly relevant or likely to lead to the discovery of admissible evidence at the class certification.

Accordingly, all documents related to the securitization of the ARM loans Defendant sold during the Liability Period should be produced.

**Request No. 3:**

This request seeks 5 (randomly selected) loan files for each subsequent purchaser or assignee of the ARM loans Defendant sold during the Liability Period.

Since Defendant's loan documents, and the documentary evidence related to the loans sold to Plaintiff and the Class members during the Liability Period are at issue in this case, the documents are either directly relevant or extremely likely to lead to the discovery of admissible evidence as class certification.

And, as discussed above, Defendant's objection that this request "prematurely seeks documents regarding putative class members in advance of certification" is absurd. The loans and loan documents provided to Plaintiff and the Class members are central to Plaintiff's class claims. As such, they are either directly relevant or likely to lead to the discovery of admissible evidence at class certication.

Because the ARM loan files are directly relevant to the class claims brought by Plaintiff, these documents should be produced.

**Request No. 4:**

This request seeks a complete copy of each version of the ARM loan documents Defendant provided to borrowers during the liability period.

And, as discussed above, Defendant's objection that this request "prematurely seeks documents regarding putative class members in advance of certification" is completely without merit. The loans and the loan documents provided to Plaintiff and the Class members are central to Plaintiff's class claims and should be produced. These documents are either directly relevant to the class certification questions of typicality, commonality and community of interest and are also likely to contain information which is likely to lead to admissible evidence to support Plaintiffs motion for class certification.

Because the ARM loan documents are directly relevant to the class claims brought by Plaintiff, these documents should be produced.

**Request No. 5:**

This request seeks complete copies of any reports or documents that summarize Defendant's subsequent sale and/or assignment of the ARM loans it sold during the liability period.

As discussed above, documents which identify any subsequent purchasers and/or assignees are directly relevant in that, pursuant to 15 U.S.C. § 1641 "[a]ny person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage."

Moreover, these summaries are also likely to contain other relevant information or information which may lead to the discovery of admissible evidence at certification.

And, as discussed above, Defendant's objection that this request "prematurely seeks documents regarding putative class members in advance of certification" is completely without merit. The ARM loans sold by Defendant are the subject of Plaintiff's Class claims and therefore they are either directly relevant to the class certification questions of typicality, commonality and community of interest, but are also likely to contain information which is likely to lead to discovery of admissible evidence in support of Plaintiffs motion for class certification.

These documents should be produced.

## III.    STIPULATED PROTECTIVE ORDER - E-DISCOVERY PROTOCOL

As for the Protective Order, I have reviewed your comments and have eliminated the "Highly Confidential" category based on your recommendations. I have also made some of the changes you have requested and maintained others which I feel are extremely important. For example, you proposed eliminating 5.1 "Exercise of Restraint and Care in Designating Material for Protection." Plaintiff believes this provision is important so that over designation is the exception, rather than the rule.

Accordingly, please take another look at the proposed Stipulated Protective Order and let me know if there are any other changes or revisions that you believe need to be made.

As for the E-Discovery protocol. I have made some addition changes and put it in the form of a stipulation. If you would rather style the protocol as a Case Management Order, I will be happy to consider that option as well.

## IV.    CONCLUSION

After you have had an opportunity to review this letter, your clients responses, and the proposed Stipulated Protective Order and E-Discovery Protocol, please let me know when you are available to discuss.

Very truly yours,

ARBOGAST & BERNS LLP

By: _____

David M. Arbogast

Attorneys for Plaintiffs and all others
Similarly Situated

Enclosures
*via email only*

**Exhibit No. 4**

# K&L|GATES

Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950

T 617.261.3100     www.klgates.com

April 24, 2008

Irene C. Freidel
D 617.951.9154
F 617.261.3175
irene.freidel@klgates.com

**By E-mail**

David M. Arbogast, Esq.
Arbogast & Berns LLP
19510 Ventura Blvd., Suite 200
Tarzana, CA  91356

Re:     **Jordan v. Paul Financial LLC, CV07-04496**

Dear David:

I am writing in response to your "meet and confer" letter of April 16, 2008.

In your letter, you state that your client "is *informed and believes* that a substantial number of Class members who purchased Defendant's loans are currently being subjected to foreclosure proceedings as a result of the ARM loans at issue. Thus, Plaintiffs will be seeking an expedited discovery process[] in this action to prevent consumers from losing their homes as a result of Defendant's improper loan practices."

At the outset, Paul Financial disagrees with your premise "that a substantial number of Class members" who obtained Option ARM loans from Paul Financial are facing foreclosure proceedings "as a result of Defendant's improper loan practices." You state that your client has information supporting this statement; accordingly, I ask that you provide the information to me. Paul Financial does not possess data regarding the current status of all of the Option ARM loans that it originated, because it does not own such loans, and it does not service the majority of such loans. Paul Financial is aware, however, that Mr. Jordan's loan is current, and it denies that it engaged in any "improper loan practices."

More important, Paul Financial strenuously objects to your suggestion that there is a connection between the disclosures that Paul Financial provided to Mr. Jordan when it originated his loan, which disclosures are the focus of this action, and "consumers losing their homes." There is no link; the disclosures that Paul Financial provided to Mr. Jordan were fair, accurate, and complied with applicable federal and state laws. Regardless, resolution of plaintiff's claims in this case will not impact the issue of "consumers losing their homes." Thus, we do not agree that there is any justification in this case for "expedited discovery processes ...."

**000001**

# K&L|GATES

David M. Arbogast, Esq.
April 24, 2008
Page 2

> ### Documents or Information Regarding Subsequent Purchasers: Interrogatory No. 4, Document Request Nos. 1, 2, and 5

In Interrogatory No. 4, plaintiff seeks the identity of any subsequent purchaser or assignee of the Option ARM loans sold by Paul Financial during the relevant time period. Document Request No. 1 seeks documents "sufficient to identify each subsequent purchaser or assignee of the ARM Loans you sold to Plaintiff and the Class members during the Liability Period." Document Request No. 2 seeks "[a] complete copy of all documents that reflect or refer to the securitization of your ARM Loans to any" purchaser during the relevant time period. Document Request No. 5 seeks copies of any reports or documents that summarize Paul Financial's sale or assignment of putative class members' loans.

You state that plaintiff needs this information to "take steps to preserve documents and information concerning the ARM loans Defendant sold to subsequent purchasers and/or assignees" and that "Plaintiff intends on ultimately securing judgment as to all entities whom have liability ...."

In response to plaintiff's requests, Paul Financial provided plaintiff with the name of the entity that purchased his loan after funding, Luminent Mortgage Capital, Inc., the name of the securitization pool in which plaintiff's loan is held, and the trustee of the pool.

Paul Financial objects to providing plaintiff with purchase information regarding each putative class member. First, a class has not yet been certified, and plaintiff's motion for class certification has not been briefed or even filed. Discovery regarding individual absent class members is premature absent class certification. Indeed, the parties agreed in their Joint Rule 26(f) Report that "initial discovery should be directed to class certification issues ...." Interrogatory No. 4, and Document Request Nos. 1, 2, and 5 do not seek discovery regarding class certification issues; they seek information regarding putative class members. Mr. Jordan does not have individual claims against the subsequent purchasers and assignees of loans other than his own, and he does not have standing to seek relief from those entities, whether individually or as a class representative. As such, your request that Paul Financial provide information beyond that bearing on Mr. Jordan's claims is improper.

Moreover, Paul Financial does not believe it is appropriate to incur unnecessary expenses in pre-certification discovery of class issues, particularly when, as is apparent from the allegations in the Complaint, the action is not appropriate for class treatment because liability and damages with respect to any putative class member, if any, will necessarily require a specific examination of the facts and circumstances surrounding the origination of each putative class member's loan.

In your letter, you state that Paul Financial's objection to producing information regarding the sale of individual putative class members' loans prior to class certification is

# K&L | GATES

David M. Arbogast, Esq.
April 24, 2008
Page 3

"absurd," and that the information is relevant to "typicality, commonality and community of interest." You do not, however, explain how this could be so. As discussed above, the question raised by plaintiff's claims on the merits is whether he received adequate and appropriate disclosures regarding the terms of his Option ARM loan. Information regarding the subsequent purchaser and/or securitizer of each putative class member's loan does not offer any support as to the questions of whether plaintiff's claims are typical or if commonality is satisfied. Satisfaction of the typicality requirement, for example, turns on whether resolution of plaintiff's individual claim will resolve each putative class member's claim. See Sweet v. Pfizer, 232 F.R.D. 360, 367-69 (C.D. Cal. 2005). If the Court needs to review facts pertinent to each putative class member to determine if the requirements of Fed. Civ. P. 23 are satisfied (not to mention to resolve the merits of the class claims), class certification is not appropriate. See, id.; Metcalf v. Household Int'l, Inc., No. 99CV2066, 2001 WL 1608012, at *2-3 (E.D. Cal. Oct. 10, 2001) (class certification improper where liability turned on the particular content of defendant's interaction with each potential class member); Nguyen Da Yen v. Kissinger, 70 F.R.D. 656, 665 (N.D. Cal. 1976) (finding a lack of typicality where the named plaintiffs' claims and defenses were based predominantly on individual factual issues not common to the entire proposed class). Indeed, the fact that the putative class members' loans were assigned to numerous purchasers and securitized into different loan pools counsels against certification of the putative class defined in the Complaint. Even if – assuming for the sake of argument –plaintiff was entitled to relief from Luminent Mortgage Capital, Inc., he does not have standing to seek relief from any other loan purchasers or securitizers.

Second, we do not agree with your argument that plaintiff needs information regarding subsequent assignees, at this time, in order "to preserve documents and information concerning the ARM loans" obtained by putative class members. Plaintiff's claims (and the putative class claims) are based entirely on the disclosures that he received from Paul Financial at the time the loan was originated; resolution of plaintiff's claims will not turn, in any respect, on information that may be in the possession of the subsequent purchaser of plaintiff's loan – Luminent Mortgage Capital, Inc. This is true as to each individual putative class member. Accordingly, the pursuit of evidence from assignees and subsequent purchasers is neither necessary nor justified.

### Contact and Loan Information For Putative Class Members: Interrogatory No. 5

Interrogatory No. 5 seeks contact and loan information for each putative class member. Paul Financial objects to producing contact information for putative class members at this stage of the litigation. Again, this information is not relevant to class certification, and you have not identified how it is relevant to the merits of Mr. Jordan's individual claim. As discussed above, Mr. Jordan's claim turns on the disclosures he was provided by Paul Financial at the time of loan origination.

000003

**K&L|GATES**

David M. Arbogast, Esq.
April 24, 2008
Page 4

Plaintiff's reliance on Pioneer Electronics (USA), Inc. v. The Superior Court, 40 Cal. 4th 360 (2007), is misplaced. In Pioneer, a pivotal fact in the court's decision to allow pre-certification discovery of the names of putative class members was that those individuals had already complained to Pioneer regarding the defects in the company's DVD players. Accordingly, those individuals had a reduced expectation of privacy and they potentially possessed information that was relevant to the plaintiff's claim, that is, the defective nature of Pioneer's DVD player. Further, the court required that notice go out to the putative class members prior to the release of their contact information to plaintiff's counsel.

Puerto v. The Superior Court, 158 Cal. App. 4th 1242 (2d Dist. 2008), is similarly distinguishable. In Puerto, the plaintiff sought contact information regarding witnesses who possessed discoverable information regarding the plaintiff's claims, and the defendant had already disclosed the names of the individuals. The same is true for Salazar v. Avis Budget Group, Inc., 2007 WL 2990281 (S.D. Cal. Oct. 10, 2007), where the court found that the putative class members had discoverable information that bore on the merits of the named plaintiffs' claims.

Here, unlike in Pioneer, the information that putative class members possess regarding their personal loans, unlike in Pioneer and Puerto, does not bear on the merits of plaintiff's claims, that is, whether the disclosures Mr. Jordan received from Paul Financial at the time of his loan origination violated TILA or California law. In addition, the Pioneer court held that the putative class members there had a reduced expectation of privacy, which is not the case here. Even if plaintiff could meet the requirements of Pioneer for pre-certification disclosure of the class list, you have not suggested that you would provide notice to the putative class as required by Pioneer (and Salazar). Accordingly, absent class certification, Paul Financial maintains its objections to producing contact and loan information for each putative class member.

Five Randomly-Selected Loan Files: Document Request No. 3:

Request No. 3 seeks five randomly selected loan files for each subsequent purchaser or assignee of putative class members' loans during the relevant time period.

Paul Financial's loan origination files do not vary depending on the identity of the subsequent purchaser or assignee of the loan. In an effort to compromise and limit the discovery issues that may have to be resolved by the Court, Paul Financial agrees to produce five randomly selected loan files for loans purchased by Luminent Mortgage Capital, Inc. Paul Financial will produce these files in electronic format and will redact from the files private borrower information, including name, address, and identifying financial data.

000004

# K&L | GATES

David M. Arbogast, Esq.
April 24, 2008
Page 5


### Form Option ARM Loan Documents: Document Request No. 4:

Request No. 4 seeks "[a] complete copy of each version of the ARM Loan documents you provided to borrowers" during the relevant time period. We are considering this request; to that end, it would be helpful if you would more specifically identify the types of documents that plaintiff is requesting so that we can evaluate which documents might be responsive.

### Protective Order:

I am attaching a redlined draft of your last version of the protective order. I have tried to simplify the order to make it more workable. The recent changes that you have made to the draft, however, render the order more complicated and will cause the production of material by Paul Financial to be more costly and time-consuming without any added benefit. I am referring, in particular, to the requirement you have added that the designating party must use two separate confidentiality tags depending on the nature of the information: "Confidential" or "Private Consumer Information." Separate tags are not necessary and will be time-consuming and costly to manage. Private consumer information clearly falls within the "Confidential" designation, and Paul Financial does not intend to unnecessarily designate material as confidential. Thus, we do not believe that your proposal to have two different designation categories is needed. I trust we can reach an agreement on this draft without having to spend more time negotiating its terms.

### E-Discovery Protocol:

We are reviewing your proposed e-discovery protocol and will provide you with comments shortly.

I look forward to addressing these issues with you further on Friday.

000005

**K&L|GATES**

David M. Arbogast, Esq.
April 24, 2008
Page 6

Very truly yours,

*Irene C. Freidel*

Irene C. Freidel

cc:    Jeffrey K. Berns, Esq. (w/ enclosure by e-mail)

000006