**K&L | GATES**

Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

T 617.261.3100    www.klgates.com

May 21, 2008

**By E-Filing and Hand Delivery**

The Honorable Susan Illston
U. S. District Court, Northern District of California
450 Golden Gate Avenue, Courtroom 10
San Francisco, CA 94109-3483

Re:    **Jordan v. Paul Financial LLC, CV07-04496-SI**

Dear Judge Illston:

    I am writing on behalf of defendant Paul Financial LLC ("Paul Financial") in response to plaintiff's letter brief ("LB") dated May 14, 2008. This case turns on disclosures that were provided to plaintiff by his mortgage broker and/or Paul Financial when his Option ARM mortgage loan was originated, processed, and closed.[1] An Option ARM loan has an adjustable interest rate and allows the borrower to make a payment in one of several amounts each month. Typically, there are four payment options including a minimum payment that can result in deferred interest or negative amortization, an interest-only option that allows for full payment of monthly interest so that the borrower may avoid deferred interest, and two fully amortized payment options (based on either a 30-year or 15-year schedule) that allow the borrower to pay the loan off more quickly. Accordingly, while some putative class members' loans may be negatively amortized, others' may be fully amortized, depending on each borrower's payment history and the payment option he or she selected each month.

    The question raised by plaintiff's claims on the merits is whether plaintiff received adequate and appropriate disclosures from Paul Financial, prior to loan funding, regarding the interest rate(s) applicable to his Option ARM loan and the risk of negative amortization occurring if he were to make payments under the minimum payment option. Plaintiff seeks relief under TILA (for rescission and damages) and California law for equitable and monetary relief. The putative classes defined in the Second Amended Complaint ("SAC") include a California-only and a nationwide class of "[a]ll individuals who, within the four year period preceding the filing of Plaintiff's Complaint …, received an Option ARM loan through defendant Paul Financial, LLC on their primary residence …." SAC at para. 50. There are approximately 10,000 individuals in the nationwide class. Plaintiff does not allege in the Second Amended Complaint, and cannot allege, that each putative class member's loan was negatively amortized.[2]

    The parties' current discovery dispute centers on plaintiff's entitlement to class discovery prior to class certification. Paul Financial objects to producing class member-specific information at this stage of the case. Indeed, the parties agreed in their Joint Rule 26(f) Report that "initial discovery should be directed to class certification issues …." The discovery plaintiff is now seeking does not address class certification

---

[1]    This case is one of more than 40 similar TILA Option ARM putative class actions currently pending in California federal courts against different defendants. Many of the cases are in the Central District (before Judge Stotler and others).

[2]    Plaintiff also does not exclude from the class borrowers whose loans have paid off and thus who no longer have a right to rescind. See, e.g., King v. State of California, 784 F.2d 910, 913 (9th Cir. 1986).

The Honorable Susan Illston
May 21, 2008
Page 2

issues; it seeks information that could only be relevant, if at all, to the resolution of the merits of putative class members' individual claims and/or enforcement of any relief ordered by the Court after trial.

**II.    Borrower Contact and Loan Information**.   Paul Financial objects to producing contact and loan information for each putative class member prior to class certification.  See Interrogatory No. 5.

     **A.    Putative Class Members Are Not Percipient Witnesses.**   Putative class members do not possess information that is relevant to either resolution of the merits of Mr. Jordan's individual claim or the question whether a class should be certified.

     Whether Paul Financial is liable to Mr. Jordan under federal or state law depends entirely on facts pertinent only to Mr. Jordan's transaction.  For example, the TILA claim in the Second Amended Complaint alleges that Paul Financial violated TILA as to Mr. Jordan's transaction because it failed to "clearly and conspicuously" disclose, among other things, information pertaining to operation of the interest rate and the risk of negative amortization.  The state law causes of action range from a claim under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") predicated entirely on the alleged TILA violations described above to plaintiff's claim for "Fraudulent Omissions" based on a purported failure by Paul Financial to disclose material facts that allegedly would have caused plaintiff not to enter into the loan had the facts not been "omitted."  Resolution of each of these claims rests primarily on the disclosures or representations that each individual received in connection with their loan transaction, whether written or verbal, and the extent to which the borrower may have understood or relied on the disclosures or representations, whether received from Paul Financial, the borrower's mortgage broker, or some other person or entity involved in the loan transaction.  The disclosures made to other borrowers will have no bearing whatsoever on whether Paul Financial is liable to Mr. Jordan.

     For the same reason, information possessed by each individual borrower other than plaintiff is not necessary to determine whether plaintiff's claims can be resolved on a class basis.  Class certification will depend on the substantive nature of the named plaintiff's legal claims and the type of evidence needed to establish those claims and defenses.  See, e.g., General Telephone Co. v. Falcon, 457 U.S. 147, 160 (1982) ("the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'"); see also Brown v. Fed. Express Corp., --- F.R.D. ---, 2008 WL 906517, at *3 (C.D. Cal. Feb. 26, 2008) (same).  To the extent that its various forms of disclosures are relevant to the class certification inquiry, Paul Financial has agreed to produce the various form disclosures that it used for Option ARM loans during the class period, as well as five redacted sample loan files from other borrowers who obtained Option ARM loans from Paul Financial.

     For the same reasons addressed here, numerous courts have denied pre-certification discovery into the identities of putative class members.  See, e.g., Palmer v. Stassinos, 2005 WL 3868003, *4 (N.D. Cal. May 18, 2005) (Seeborg, M.J.); Bird Hotel Corp. v. Super 8 Motels, Inc., 2007 WL 404703, *2 (D.S.D. Feb. 1, 2007) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage ….") (quoting Dziennik v. Sealift, Inc., 2006 WL 1455464 (E.D.N.Y. May 23, 2006); Robbins v. NCO Financial Systems, Inc., 2006 WL 3833352, *5 (N.D. Ind. Dec. 12, 2006)

     Plaintiff does not adequately explain his need for putative class members' contact information now or how any evidence they possess could be relevant to the threshold issues in the case.  Resolution of the claims in the complaint do not depend on pattern or practice evidence; and identifying other class members will not assist the court in determining typicality or superiority. LB at 2, A-C.  Satisfaction of the typicality requirement, for example, turns on whether resolution of *plaintiff*'s individual claim will resolve each putative class member's claim.  See Sweet v. Pfizer, 232 F.R.D. 360, 367-69 (C.D. Cal. 2005); Metcalf v. Household Int'l, Inc., 2001 WL 1608012, at *2-3 (E.D. Cal. Oct. 10, 2001) (class certification improper where liability turned on the particular content of defendant's interaction with each potential class member);

The Honorable Susan Illston
May 21, 2008
Page 3

Nguyen Da Yen v. Kissinger, 70 F.R.D. 656, 665 (N.D. Cal. 1976). As a result, this case is unlike Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 (1981), where the need for communications was presented by the fact that putative class members "were being pressed to decide whether to accept a backpay offer from Gulf that required them to sign a full release of all liability for discriminatory acts." No such need is present here.

Last, plaintiff asserts that he should be entitled to class member contact information because "Defendant already has the names, addresses and telephone numbers of its consumers [and] enjoys unfettered access to those individuals …" LB at 2. Paul Financial has not contacted and has no intention of contacting such individuals. Thus, there is no "one-sided advantage," as plaintiff claims. Id.

      **B.**     **Paul Financial's Customers Have An Expectation Of Privacy**. The putative class members have a legitimate expectation of privacy, and releasing borrowers' private loan and contact information to plaintiff would violate that privacy right. Plaintiff asserts that "no *serious* invasion of privacy is presented," LB at 3, but plaintiff has not shown a "legitimate need to know" which individuals obtained an Option ARM loan from Paul Financial, where they live, what their loan number was, and when they received the loan. That these individuals obtained an Option ARM loan is private information bearing on each borrower's finances. Even if plaintiff were permitted access to the borrowers' information, plaintiff has not proposed giving the borrowers any prior form of notice or right to opt-in or opt-out of communications. Instead, plaintiff simply argues that the existence of the stipulated protective order is enough to protect the individuals' privacy. LB at 1. It is not, because it does not provide notice to each borrower of the release of their personal information to plaintiff's counsel or counsel's intention to contact them.

Plaintiff's reliance on Pioneer Electronics (USA), Inc. v. The Superior Court, 40 Cal. 4th 360 (2007), is misplaced. In Pioneer, a pivotal fact in the court's decision to allow pre-certification discovery of the names of certain individuals was that they had already complained to Pioneer regarding the defects in a DVD player manufactured by the company. Accordingly, those individuals had a reduced expectation of privacy and they potentially possessed information that was relevant to the plaintiff's claim, that is, the defective nature of Pioneer's DVD player. As the Court stated, "[i]n a real sense, many of Pioneer's complaining customers would be *percipient* witnesses to relevant defects in the DVD players." Id. at 374 (emphasis in original). Further, the court required that notice go out to the putative class members *prior* to the release of their contact information to plaintiff's counsel.

Puerto v. The Superior Court, 158 Cal. App. 4th 1242, 1248 (2d Dist. 2008), is similarly distinguishable. In Puerto, the plaintiff sought contact information from Wild Oats Markets regarding employees who possessed discoverable information regarding the key issue of plaintiff's claims (the "occupational duties of" Wild Oats), and Wild Oats had already disclosed the names of the individuals as witnesses, but not their contact information. The same is true for Salazar v. Avis Budget Group, Inc., 2007 WL 2990281 (S.D. Cal. Oct. 10, 2007), where the court found that – unlike here -- the putative class members had discoverable information that bore on the merits of the named plaintiffs' claims.

In this case, a balance of borrowers' privacy interests versus plaintiff's need for the information favors protection of the privacy interests. There is no basis for the Court to conclude that the putative class members have a reduced expectation of privacy, as in Pioneer, or that they have discoverable information that justifies an invasion of their privacy right. Moreover, the Court's decision on class certification in this case is not imminent, there are good grounds for a class *not* to be certified, and plaintiff's notification of Mr. Jordan's claims to ten thousand putative class members will be unnecessarily injurious to Paul Financial and expensive.[3] If the Court determines that disclosure of putative class members' contact information is

---

[3]     See, e.g., Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1007 (11th Cir. 1997) (court rejected preliminary class communications in discrimination action where class did not appear certifiable).

The Honorable Susan Illston
May 21, 2008
Page 4

appropriate, Paul Financial requests that the Court order that notice be provided to the borrowers at plaintiff's expense and that borrowers be required to opt-in prior to contact being made.

**III.     Subsequent Purchaser Information**.  In Interrogatory No. 4, plaintiff seeks the identity of any subsequent purchaser or assignee of the Option ARM loans sold by Paul Financial during the relevant time period.  Document Request Nos. 1, 2 and 5 seek loan-specific documents identifying the subsequent purchaser or assignee of each putative class member's loan.  Paul Financial has objected to plaintiff's requests on various grounds set forth in Exhibit 2 to plaintiff's Letter Brief.  In response to plaintiff's requests, Paul Financial provided plaintiff with the name of the entity that purchased his loan after funding, Luminent Mortgage Capital, Inc. ("Luminent"), the name of the securitization pool in which plaintiff's loan is held, and the trustee of the pool.  Plaintiff has now amended the Complaint to add each of these entities as defendants.  Plaintiff's request that Paul Financial produce information identifying the assignee or subsequent purchaser of *each* putative class member's loan should be denied.

First, as with individual borrower information, data regarding the assignment of each putative class member's loan is not relevant to the merits of plaintiff's individual claim or whether a class should be certified.  As stated above, the determination of liability against Paul Financial rests on the disclosures Mr. Jordan (and putative class members) received *prior to the assignment or sale* of each putative class member's loan.  Similarly, subsequent purchaser information does not bear on the question of whether a class can properly be certified in this case, including, for example, questions of typicality or commonality.  Indeed, the fact that the putative class members' loans were assigned to numerous purchasers and securitized into different loan pools counsels against certification of the putative class defined in the Complaint.  Even if – assuming for the sake of argument – plaintiff was entitled to relief from Luminent Mortgage Capital, Inc. ("Luminent"), he does not have standing to seek relief from any other loan purchasers or securitizers.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Second, plaintiff does not need to know the identity of each putative class member's assignee or subsequent purchaser in order "to preserve documents and information concerning the ARM loans" obtained by putative class members.  LB at 4.  The information that is relevant to the liability determination – including the loan files for the putative class -- is in Paul Financial's possession and is being preserved by Paul Financial pursuant to a litigation hold, as is information regarding the sale of each loan by Paul Financial.  Plaintiff suggests that "Defendant may no longer have control of the loan documents and evidence relating to the loans it subsequently sold …."  Id..  This is a red herring.  Paul Financial is preserving the information that plaintiff claims he needs from the assignees, and he does not otherwise explain what other information he believes the assignees possess that could be relevant to his claims.

Third, this action would become extremely complicated and costly if plaintiff is permitted to bring in all of the subsequent purchasers, securitization pools, and trustees for each putative class member prior to class certification.  There are substantial issues that should be resolved before the Court permits plaintiff to pursue class discovery, such as the scope of assignee liability.  The Second Amended Complaint does not set forth any theory of liability against the purchaser of plaintiff's loan, the securitization trust, or the trustee.  While TILA permits assignee liability in certain circumstances, 15 U.S.C. § 1641(a), (c), the holder in due course doctrine ordinarily bars assignee liability under California law for negotiable instruments.  See Cal. Com. Code §§ 3302, 3305(b); Finalco, Inc. v. Roosevelt, 235 Cal. App. 3d 1301, 1305 (1991).  The scope of assignee liability under TILA and California law is likely to be raised by Luminent, as well as the trustee and the trust, in response to the Second Amended Complaint.

A second threshold that should be resolved prior to involving the assignees is class certification.  There are numerous reasons why class certification for plaintiff's liability and damages claims is not

The Honorable Susan Illston
May 21, 2008
Page 5

appropriate.[4]  The presence of the assignees (and/or trusts and trustees) is not necessary for the Court to make that decision.  It also may be appropriate for the Court to resolve the merits of plaintiff's individual claims against Paul Financial, possibly by dispositive motion, prior to bringing in the assignees.  If plaintiff's claims against Paul Financial fail, so does his class claims against the assignees.

### III.     Loan Documents

   **A.     Form Disclosures and Randomly-Selected Loan Files.**  Paul Financial has already agreed to provide documents in response to plaintiff's Request No. 4, which seeks "[a] complete copy of each version of the ARM Loan documents you provided to borrowers" during the relevant time period.  In addition, in response to Request No. 3, Paul Financial has agreed to produce, and will produce, five redacted loan files for borrowers whose loans were assigned to Luminent.  The types of disclosures Paul Financial provided to borrowers at the time of loan origination were not impacted by the entity that subsequently purchased the loans after funding.  As such, there is no logic to Paul Financial producing a certain number of loan files – up to 50 loan files -- that were sold to *each* subsequent purchaser.  The production of such files would be costly and time-consuming with little benefit to the litigation.  More important, Paul Financial's production of its various form disclosures obviates the need for production of additional randomly-selected loan files, particularly since the vast majority of documents in the loan files have nothing to do with the Option ARM disclosures borrowers received.

   **B.     Putative Class Member's Core Loan Documents.**  Plaintiff asks that Paul Financial produce (unredacted) "a copy of each of the [approximately 10,000] loans Defendant sold during the Liability Period, namely, a copy of the Notes, TILDS, Adjustable Rate Payment Riders, Prepayment Penalty Addendums and Program Disclosures …" LB at 5.  Plaintiff never asked for the production of such material in his document requests.  He does so now apparently based on a misreading of Paul Financial's statement that putative class members' claims cannot be resolved on anything other than an individualized basis and, therefore, a class should not be certified.  LB at 5.  The undersigned counsel first learned of plaintiff's new request shortly before plaintiff filed his Letter Brief with the Court (May 14, 2008).  This type of class merits discovery is onerous, monumentally expensive, and unjustified prior to certification of the class, particularly in light of the other documents Paul Financial already has or will produce.  If the Court considers ordering the production of such material, Paul Financial requests the opportunity to submit an affidavit to the Court establishing the undue cost and burden of making the production.  See Rule 26(b)(2)(B).

Very truly yours,

/s/ Irene C. Freidel

Irene C. Freidel
Attorneys for Defendant Paul Financial LLC

cc:     Jeffrey Berns, Esq. (by e-mail)

---

[4]     For example, looking solely at the relief sought by plaintiff, the rescission right plaintiff seeks cannot be awarded on a class basis.  See Gibbons v. Interbank Funding Group, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002); McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 423 (1st Cir. 2007).  Similarly, courts have held that actual damages claims under TILA are not suitable for class certification because they are highly individualized.  See, e.g., Turner v. Beneficial Corp., 242 F.3d 1023, 1028 (11th Cir. 2000); Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 440 (5th Cir. 2000).  See also In re Smith, 289 F.3d 1155, 1157 (9th Cir. 2002) (detrimental reliance is an element of a TILA actual damages claim).

The Honorable Susan Illston
May 21, 2008
Page 6