Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
**SMOGER & ASSOCIATES**
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel:   (510) 531-4529
Fax:  (510) 531-4377

Lee A. Weiss (*Admitted Pro Hac Vice*)
lweiss@dreierllp.com
Rebecca Tingey (*Admitted Pro Hac Vice*)
rtingey@dreierllp.com
**DREIER LLP**
499 Park Avenue
New York, NY 10022
Phone: (212) 328-6100
Fax:    (212) 328-6101

David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 867-4820

[*Additional counsel listed on signature page*]
Attorneys for Plaintiff and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY M. JORDAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAUL FINANCIAL, LLC, LUMINENT MORTGAGE CAPITOL, INC., LUMINENT MORTGAGE TRUST 2006-2, HSBC NATIONAL ASSOCIATION, and DOES 1 through 10 inclusive,<br><br>Defendants. | **CASE NO. 3:07-cv-04496-SI**<br><br>CLASS ACTION<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: December 5, 2008<br>Time:           9:00 a.m.<br>Place:          Courtroom 10<br>Judge:         Hon. Susan Illston<br><br><br>Complaint Filed: August 29, 2007<br>Trial Date: Not set yet. |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Defendants' Uniform Loan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.   The Loan Contracts (Notes) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.   The Truth-In-Lending Disclosure Statements . . . . . . . . . . . . . . . . . . . . . . . . 4

        3.   The Option ARM Loan Program Disclosures . . . . . . . . . . . . . . . . . . . . . . . 5

        4.   The Prepayment Penalty Rider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   The Classes Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.   National Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   The California Category I Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.   The California Category II Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   This Case Satisfies All of the Prerequisites for Class Certification Under Rule 23 . . . . . 6

    C.   Rule 23(a) Is Satisfied . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   The Class Is Sufficiently Numerous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.   Overarching Questions of Law and Fact Common to the Class Exist . . . . . . . . . 8

        3.   Plaintiff's Claims are Typical of Those of the Class . . . . . . . . . . . . . . . . . . . 9

        4.   Plaintiff Will Fairly and Adequately Represent the Class . . . . . . . . . . . . . . . . 9

    D.   Class Certification Is Appropriate Under Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.   The Class Should Also Be Certified Under Rule 23(b)(2) . . . . . . . . . . . . . . . 10

        2.   Common Questions Predominate In Satisfaction of Rule 23(b)(3) . . . . . . . . . . 11

        3.   Common Issues Predominate as to Plaintiff's Truth-In-Lending Act ("TILA") Claims - The National Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.   Common Issues Predominate in Plaintiff's Fraudulent Omissions Claim for the California Category I and II Classes . . . . . . . . . . . . . . . . . . . . . . . . . 14

(a)    Defendants' Duty to Disclose Material Facts Will Be Proven By Evidence Common to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

(b)    Materiality Will Be Proven By Evidence Common to the Class . . . . . . . 17

(c)    Defendants' Knowledge of the Fraudulent Omissions and Their Intent to Deceive Will Be Proven by Evidence Common to the Class . . . . . . 17

(d)    The Class Is Entitled To A Presumption of Reliance . . . . . . . . . . . . . . 18

(e)    Causation Will Be Shown on A Class-wide Basis . . . . . . . . . . . . . . . . 20

5.    Common Issues Predominate Plaintiff's UCL Claims . . . . . . . . . . . . . . . . . . . 20

6.    Common Issues Predominate Plaintiffs' Breach of Contract Claim - California Category I and II Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7.    Common Issues Predominate Plaintiffs' Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Claim - Category I and II Classes . . 23

E.    Defendant HSBC's Liability Can Also Be Determined on a Class Wide Basis . . . . . . 23

F.    Issues of Manageability and Notice Pale in Comparison to the Fairness and Efficiency Which Certification Would Bring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

Affiliated Ute Citizens v. United States,
    (1972) 406 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Amchem Products, Inc. v. Windsor,
    (1997) 521 U.S. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

American Pipe and Costr. Co. v. Utah,
    (1974) 414 U.S. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Armstrong v. Davis,
    (9th Cir. 2001) 275 F.3d 849 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Binder v. Gillespie,
    (9th Cir.1999) 184 F.3d 1059 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Blackie v. Barrack,
    (9th Cir. 1975) 524 F.2d 891 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 15, 22

Chisolm v. TranSouth Fin. Corp.,
    (E.D. Va. 2000) 194 F.R.D. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

Crosby v. Bowater Inc. Retirement Plan For Salaried Employees of Great Northern Paper, Inc.,
    (W.D. Mich. 2002) 212 F.R.D. 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dukes v. Wal-Mart Stores, Inc.,
    (N.D. Cal. 2004) 222 F.R.D. 137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

Eisen v. Carlisle & Jacquelin,
    (1974) 417 U.S. 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ellis v. Costco Wholesale Corp.,
    (N.D. Cal. 2007) 240 F.R.D. 627 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Finkel v. Docutel/Olivetti Corp.,
    (5th Cir.1987) 817 F.2d 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Gen. Tel. Co. of Sw. v. Falcon,
    (1982) 457 U.S. 147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Grainger v. State Sec. Life Ins. Co.,
    (5th Cir. 1977) 547 F.2d 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Haley v. Medtronic, Inc.,
    (C.D. Cal. 1996) 169 F.R.D. 643 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Handy v. Anchor Mortgage Corp.,
    (7th Cir.2006) 464 F.3d 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iv

Hanlon v. Chrysler Corp.,
 (9th Cir. 1998) 150 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

Harris v. Palm Springs Alpine Estates, Inc.,
 (9th Cir. 1964) 329 F.2d 909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hawaii v. Standard Oil Co. Of Calif.,
 (1972) 405 U.S. 251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Heffelfinger v. Elec. Data Sys. Corp.,
 (C.D. Cal., January 7, 2008) 2008 U.S. Dist. LEXIS 5296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Heighley v. J. C. Penney Life Ins. Co.,
 (C.D. Cal. 2003) 257 F. Supp. 2d 1241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hubbard v. Fidelity Bank,
 (C.D. Cal. 1997) 824 F. Supp. 909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.,
 (D. Ariz. 1992) 140 F.R.D. 425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 18, 19

In re Apte,
 (9th Cir. 1996) 96 F.3d 1319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Citigroup Pension Plan ERISA Litigation,
 (S.D.N.Y. 2006) 241 F.R.D. 172 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Consolidated Non-Filing Ins. Fee Litigation,
 (M.D. Ala. 2000) 195 F.R.D. 684 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re CornerStone Propane Ptnrs. L.P. Sec. Litig.,
 (N.D. Cal. May 3, 2006)C03-2522 MHP, 2006 WL 1180267 . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re First Alliance Mortgage Co.,
 (9th Cir. 2006) 471 F.3d 977 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 19, 24

In re Loewen Group Sec. Litig.,
 (E.D. Pa. 2005) 233 F.R.D. 154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re NASDAQ Market-Makers Antitrust Litigation,
 (S.D.N.Y. 1996) 187 F.R.D. 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
 (3d Cir. 1998) 148 F.3d 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

In re THQ, Inc. Secs. Litig.,
 (C.D. Cal. Mar. 22, 2002) 2002 WL 1832145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Visa Check/Mastermoney Antitrust Litig.,
 (2d Cir. 2001) 280 F.3d 124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

In re Vylene Enterprises, Inc.,
 (9th Cir. 1996) 90 F.3d 1472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Jenson v. Firserv Trust Co.,
   (2007) 256 Fed. Appx. 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Jordan v. County of Los Angeles,
   (9th Cir. 1982) 669 F.2d 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kanter v. Warner-Lambert Co.,
   (9th Cir. 2001) 265 F.3d 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lerwill v. Inflight Motion Pictures, Inc.,
   (9th Cir. 1978) 582 F.2d 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Linney v. Cellular Alaska P'ship,
   (9th Cir. 1998) 151 F.3d 1234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lozano v. AT&T Wireless Serv's, LLC,
   (9th Cir. 2007) 504 F.3d 718 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

McPhail v. First Command Financial Planning, Inc.,
   (S.D. Cal. 2007) 247 F.R.D. 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

Moeller v. Taco Bell Corp.,
   (N.D. Cal. 2004) 220 F.R.D. 604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Moore v. Hughes Helicopters, Inc.,
   (9th Cir. 1983) 708 F.2d 475 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mortimore v. F.D.I.C.,
   (W.D.Wash. 2000) 197 F.R.D. 432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

Molski v. Gleich,
   (9th Cir. 2003) 318 F.3d 937 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Negrete v. Allianz Life Ins. Co. of North America,
   (ND Cal. 2006) 238 F.R.D. 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Netscape Commc'n. Corp. v. Fed Ins. Co.,
   (N.D.Cal. 2006) 2006 WL 449149 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Nicholson v. Williams,
   (E.D.N.Y. 2001) 205 F.R.D. 92 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Peterson v. H&R Block Tax Servs., Inc.,
   (N.D. Ill. 1997) 174 F.R.D. 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Poulos v. Caesars World, Inc.,
   (9th Cir.2004) 379 F.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Smilow v. Sw. Bell Mobile Sys., Inc.,
   (1st Cir. 2003) 323 F.3d 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Taylor v. Quality Hyundai, Inc.,
   (7th Cir. 1998) 150 F.3d 689 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Spark v. MBNA Corp.,
　　(D. Del. 1998) 178 F.R.D. 431 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Van Colla v. County of Ventura,
　　(C.D. Cal. 1999) 189 F.R.D. 583 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Walterns v. Reno,
　　(9th Cir.) 145 F.3d 1032 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Western States Wholesale v. Synthetic Indus.,
　　(C.D. Cal. 2002) 206 F.R.D. 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Whitford v. First Nationwide Bank,
　　(W.D. Ky. 1992) 147 F.R.D. 135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Williams v. Gerber,
　　(9th Cir. 2008) 523 F.3d 934 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Woodard v. Online Information Svcs.,
　　(E.D.N.C. 2000) 191 F.R.D. 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


**STATE CASES**

Angelucci v. Century Supper Club,
　　(2007) 41 Cal.4th 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Aron v. U-haul Co.,
　　(2006) 143 Cal.App.4th 796 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Blakemore v. Superior Court,
　　(2005) 129 Cal. App. 4th 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Chern v. Bank of America,
　　(1976) 15 Cal. 3d 866 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Comm. on Children's Television, Inc. v. Gen. Foods Corp.,
　　(1983) 35 Cal. 3d 197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Crowley v. Banking Ctr.,
　　(Conn. Super. Ct. Mar. 9, 1992)1992 WL 54557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Day v. AT&T Corp.,
　　(1998) 63 Cal.App.4th 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Diamond Multimedia Sys., Inc. v. Superior Court,
　　(1999) 19 Cal.4th 1036 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Fletcher v. Security Pacific Nat'l Bank,
　　(1979) 23 Cal. 3d 442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Guz v. Bechtel Nat. Inc.,
　　(2000) 24 Cal. 4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Harm v. Frasher,
     (1960) 181 Cal. App. 2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Herrod v. First Republic Mortg. Corp, Inc.
     (W.Va 2005) 625 S.E.2d 373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Intrieri v. Superior Court,
     (2004) 117 Cal.App.4th 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lazar v. Superior Court,
     (1996) 12 Cal.4th 631  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

Lewis v. Robinson Ford Sales, Inc.,
     (2007) 156 Cal. App. 4th 359 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

LiMandri v. Judkins,
     (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lovejoy v. AT & T Corp.,
     (2001) 92 Cal.App.4th 85  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lovejoy v. AT & T Corp.,
     (2004) 119 Cal.App.4th 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Mass. Mut. Life Ins. Co. v. Superior Court,
     (2002) 97 Cal. App. 4th 1282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 21

Motors, Inc. v. Times Mirror Co.,
     (1980) 102 Cal.App.3d 735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Norwest Mortgage, Inc. v. Super. Ct. ,
     (1999) 72 Cal.App.4th 214  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 15

Occidental Land, Inc. v. Superior Court,
     (1976) 18 Cal.3d 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pastoria v. Nationwide Ins.,
     (2003) 112 Cal.App.4th 1490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Regan Roofing Co. v. Superior Court,
     (1994) 24 Cal. App. 4th 425 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Schnall v. Hertz Corp.,
     (2000) 78 Cal. App. 4th 1144  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

Schnall v. AT&T Wireless Services, Inc.,
     (Wash. App. 2007) 161 P.3d 395 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Small v. Fritz Companies, Inc.,
     (2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

State Farm Mutual Automobile Ins. Co. v. Superior Court,
     (2003) 114 Cal. App. 4th 434 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Stevens v. Superior Court,
    (1986) 180 Cal.App.3d 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Van Ness v. Blue Cross of California,
    (2001) 87 Cal. App. 4th 364 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Vasquez v. Superior Court,
    (1971) 4 Cal.3d 800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Vega v. Jones, Day, Reavis & Pogue,
    (2004) 121 Cal.App.4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wall Street Network, Ltd. v. New York Times Co.,
    (2008) 164 Cal. App. 4th 1171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Williams v. Aetna Finance Co.,
    (1998) 83 Ohio St.3d 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**FEDERAL STATUTES**

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATE STATUTES**

Cal. Civ. Code § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Ins. Code, § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Pub. Util. Code, § 2889.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**FEDERAL REGULATIONS**

12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

12 C.F.R. § 226.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19 . . . . . . . . . . . . . . . . . . . 13, 14

1

**<u>TREATISES</u>**

2

Alba Conte & Newberg, <u>Newberg on Class Actions</u>,
   (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 24

3

James W. Moore, <u>et al</u>., <u>Moore's Federal Practice</u>,

4
   (3d ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5

Elizabeth Renuart & Kathleen Keest, <u>Truth In Lending</u>,
   (5th ed 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6

William L. Stern, <u>Business & Professions Code §17200 Practice</u>,

7
   (West 3d ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

From its headquarters in San Rafael, California, Defendant Paul Financial LLC ("Paul Financial") created and sold thousands of Adjustable Rate Mortgages ("ARM loan") without telling borrowers: (i) that these loans were certain to result in negative amortization; (ii) the supposed payment amounts listed in the loan documents for the first two to five years were based entirely upon short-term "teaser rates" which themselves existed for only the first thirty days of the loan and would never be sufficient to pay the interest due on the amount borrowed; and (iii) that if borrowers made the payments according to the payment schedule provided by the Defendants, the principal balance due on their loans would actually increase significantly, stripping away the equity in their homes and making it much more difficult, if not impossible, for them to refinance when their loans recast into higher monthly payments.  Moreover, not one of the documents used by Paul Financial disclosed any of these material facts to borrowers at the time that the borrowers entered into these loans.

Because Defendants were successful in deceiving consumers by misrepresenting the effect of the monthly payments that they would make, Defendants reaped millions of dollars of illicit profits. Meanwhile, Defendants themselves would resell these loans to banks who would securitize them.  By doing so, Defendants were able to replace the money used to fund any given loan and then repeat this action on the next loan with another borrower.  It is this course of conduct which has brought this nation to the very brink of economic catastrophe.

While Defendants' profits swelled, their borrowers suffered.  These seemingly low-payment loans inevitably carried a hidden but devastating cost.  Rather than being true low cost loans, Defendants' borrowers were unaware that the equity in their homes would be used to subsidize the represented low monthly payments.  As a result, Plaintiff and thousands of Class members suffered negative amortization, were stripped of the equity in their homes, and in many cases are now threatened with foreclosure – all as a result of Defendants' uniform failure to disclose material facts in the original loan documents.

Fortunately, although the devastation caused by Defendants' scheme has been widespread, its cure can be accomplished in a centralized and efficient manner through the class action mechanism.  This case is ideally suited for class certification, because each Class member's claims arise from uniform loan

1

documents which failed to disclose material facts.  Like other actions seeking remedies for "frauds predicated on documents" that have been regularly found "suitable for class action treatment," Defendants' conduct here is evidenced by a common fraud.  See Chisolm v. TranSouth Fin. Corp. (E.D. Va. 2000) 194 F.R.D. 538, 564; In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (3d Cir. 1998) 148 F.3d 283, 314 (predominance readily met in case involving common scheme to defraud millions of life insurance policyholders).  Indeed, this fraud, discernible on the very face of the loan documents, is consistent for all Class members, thereby easily predominating over any possible individual issues.

Plaintiff, therefore, seeks to certify, under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), three separate classes of ARM loans: (i) a National Class for statutory damages pursuant to violations of the Truth-In-Lending Act, 15 U.S.C. §§ 1640 and 1641; (ii) a Category I Class of homeowners who were inappropriately sold a loan concerning real property located in California in contravention of California state law; and (iii) also in contravention of California state law, a Category II Class of borrowers who were inappropriately sold loans which concerned real property located outside of California but whose loan and/or loan documents were approved by Defendants in California.  See Norwest Mortgage, Inc. v. Super. Ct. (1999) 72 Cal.App.4th 214, 222.  Plaintiff will demonstrate below that these classes should be certified, because they readily meet all requirements for certification under Rule 23.  Because Defendants' scheme was uniform and the contracts virtually identical, Defendants' liability to the Plaintiff will determine their liability to the remainder of the Class members.  As such, there are no individual issues that predominate over the common ones.  Damages can be easily resolved on a class-wide basis in one class trial.  Accordingly, this Court should certify the Classes proposed herein and move this case toward trial.

**II.    STATEMENT OF FACTS**

Preliminarily, in this motion, the allegations in Plaintiffs' complaint must be accepted as true. Western States Wholesale v. Synthetic Indus. (C.D. Cal. 2002) 206 F.R.D. 271, 274 (citing Blackie v. Barrack (9th Cir. 1975) 524 F.2d 891, 901 n. 17.  "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage."  Moore v. Hughes Helicopters, Inc. (9th Cir. 1983) 708 F.2d 475, 480, citing Eisen v. Carlisle & Jacquelin (1974) 417 U.S. 156, 177-78; see also In re CornerStone Propane Ptnrs. L.P. Sec. Litig., C03-2522 MHP (N.D. Cal. May 3, 2006) 2006

1    WL 1180267.

2         Below are some of the principal factual allegations relied upon in this petition for class certification.

3    **A.    Plaintiff's  Allegations**

4         Plaintiff and the Class members are consumers who applied for a primary residence mortgage

5    through Defendants. SAC, ¶ 2, 26, 27.  Defendants sold Plaintiff and Class members Option Arm Loans.

6    SAC, ¶ 3, 4, 20, 23.  In selling these loans, Defendants' loan documents promised a low, fixed interest rate,

7    and Plaintiff relied upon that promise. SAC, ¶ 25, 26, 29.  In reality, the interest rate increased almost

8    immediately after signing.  SAC, ¶ 25, 30.  These loans as sold to Plaintiff both violated  the Truth-In-

9    Lending Act, 15 U.S.C. §§ 1640 and 1641, and California law.

10        For instance, Defendants' loan documents promised that Plaintiff's monthly payments would be

11   applied to "principal and interest." SAC, ¶ 33(c), 35, 37, 72. Defendants, however, never applied Plaintiff's

12   payments to principal.  Id.  Defendants further informed Plaintiff that if Plantiff made payments based on

13   the promised low interest rate, no negative amortization would occur.  SAC, ¶ 25, 27, 31.  This was also not

14   true, as Plaintiff did experience negative amortization.  SAC, ¶ 31, 38- 41, 73.  Finally, once the loan was

15   agreed to, Plaintiff could not escape from the loan, because of harsh exit penalties.  SAC, ¶ 23, 32, 153.

16   Plaintiff has, therefore, brought this civil action seeking compensatory, consequential, statutory, and

17   punitive damages.  SAC, p. 40.

18        These damages are sought against Defendants Paul Financial, LLC, and HSBC Bank N.A.  In

19   response to Plaintiff's discovery, Defendant Paul Financial LLC  identified Luminent Mortgage Capital,

20   Inc., Liminent Mortgage Trust 2006-2, and HSBC Bank N.A. as the subsequent purchasers and/or assignees

21   of Plaintiff's loan.  See Berns Decl., Ex. 11, Response to Interrogatory No. 4, dated March 31, 2008.

22   However, on September 5, 2008, Defendants "Luminent Mortgage Capital, Inc and related parties" filed

23   for bancruptcy.  See Notice of Bankruptcy, filed Sept. 17, 2008.

24   **B.    Defendants' Uniform Loan Documents**

25        **1.    The Loan Contracts ("Notes")**

26        Plaintiffs and the Class members are consumers who received Arm loans from Defendants for their

27   primary residences.  SAC, ¶ 2, 26, 27.  Each of the Promissory Notes (loan contracts) created and used by

28   Defendants during the class period, contain identical material statements and omissions.  Those loan

3

contracts expressly but falsely  promised that the monthly payments would amortize both principal and interest.  On their face they made statements such as: "*I will pay principal and interest by making a payment every month.*"[1] (emphasis added ).  Such statements were demonstrably false, obscuring the fact that negative amortization was absolutely certain to occur even if borrowers made their scheduled payments.

Unquestionably, Defendants promised and led borrowers to believe that their monthly payments were sufficient to amortize both principal and interest.  Defendants failed to disclose that these loans were negative amortization loans and that the payments were, in fact, secretly subsidized by the equity these borrowers had in their homes.  To this day, Plaintiff and the Class members are were left stripped of the equity that they had in their homes.

### 2.    The Truth-In-Lending Disclosure Statements

As with the Note, all versions of the Defendants' Truth-in-Lending Disclosure Statement ("TILDS")[2] contained identical language; indeed, federal law requires certain uniform disclosures.  On the upper left hand corner of each was an APR (annual percentage rate) that was represented to be the stated interest rate for the loan.  See SAC, Ex. 1, 00007; see also TILDS, Berns Decl. Ex. 6.  However, the payment schedule listed in the documents was not based upon and bore no relation to the APR listed in the document.  In fact, for the first two to five years of the loan, the TILDS failed to disclose that the scheduled payment amounts were not based on this APR at all, but instead were based upon the significantly lower "teaser" interest rate of between 1-3%.   However, this teaser rate applied only for the first 30 days of the loan.  After that, the standard payment schedule was not even sufficient to cover all of the interest accruing on the loans**,** much less the principal.  Negative amortization was certain to occur**.**  See id.

---

[1] See SAC, Ex. 1, ¶ 3(A) (emphasis added).  The loan contracts also uniformly stated that: (i) "My monthly payment *could be less* than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal ... ."  Id. ¶3(E) (emphasis added); (ii) "Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of [1.000% to 3.000%].  The interest rate I will pay *may* change."  Id. ¶2(A) (emphasis added); and (iii)  "The amount of the charge will be 6.00% of my overdue payment of principal and interest."  Id. ¶7(A). Note that any payment that Plaintiff and the Class members made during the liability period, they were all subject to this same ¶ 7(A).

[2]  The Truth-in-Lending Disclosure Statement ("TILDS") is a mandated disclosure intended to provide consumers with material information about the loan.  12 C.F.R. 226.17.

### 3.     The Loan Program Disclosures

Defendants' Loan Program Disclosure was a standardized form provided to all Class members. Each Loan Program Disclosure that Defendants used during the liability period failed to even mention the term "negative amortization" and further failed to tell borrowers that if they made payments according to the provided payment schedule, Defendants would apply those payments only to a portion of interest. As a result, negative amortization was ***absolutely certain*** to occur. In contrast to what a borrower would normally expect when "paying off" a loan, the principal balance ***escalated*** rather than declined as payments were made.

Failing to disclose this to the borrower before they entered into the loan, the Program Disclosure's statements were both incomplete and misleading. Under the paragraph, "How Your Interest Rate and Payment Are Determined," each Program Disclosure states only that: "Your interest rate will be based on an index rate plus a margin....Your initial interest rate is not based on the index used to make later adjustments. ...Your payment will be based on the interest rate, loan balance, and remaining loan terms." See Program Disclosures, Berns Decl., Exs. 7, 8. Meanwhile, the paragraph, "How Your Interest Rate and Payment Can Change," nebulously indicated only the possibility of negative amoritization: "Your payment ***can*** change every year and ***can increase or decrease*** based on changes in the interest rate. .... This means the balance of your loan ***could*** increase." Id. (emphasis added).

### 4.     The Prepayment Penalty Riders

Each of the Prepayment Penalty Riders Defendants used during the liability period contained the same language and/or had the same effect. Every version imposed substantial penalties for prepayments made within the first three years, i.e. the period during which the loan was negatively amortizing because borrowers were making only a partial payment of interest. Prepayment Rider, Berns Decl. Exs. 5, 9.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**III.   ARGUMENT**

**A.   The Classes Defined**

Plaintiff seeks certification of the following Classes:

**1.   National Class**: All individuals in the United States who, between August 29, 2006, and the date Notice is mailed to the Class, have an ARM Loan that was sold or owned by Defendants which was secured by real property on their primary residence located within the United States.[3]

**2.   The California Category I Class:** All individuals who, between August 29, 2003 and the date Notice is mailed to the Class, who have an ARM Loan that was sold or owned by Defendants which was secured by real property located in the State of California.[4]

**3.   The California Category II Class:** All individuals who, between August 29, 2003 and the date Notice is mailed to the Class, who have an ARM Loan that was sold or owned by Defendants which was secured by real property located within the United States (excluding California) and was approved by Defendants within the State of California.[5]

**B.   This Case Satisfies All of the Prerequisites for Class Certification Under Rule 23.**

Under Rule 23, a district court may certify a class if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The district court must also find that at least one of the following three requirements of Rule 23(b) is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying

---

[3] The one-year class period for the National Class sought today is based on 15 U.S.C. § 1640, which provides for a one year statutory damages period.

[4] The California Category I Class period is based upon Bus. & Prof. Code § 17204 et seq., which provides for a four year statute of limitations for restitution and equitable relief claims, Civil Code § 337, which provides for a four year statute of limitations period for breach of contract claims; and Code Civ. Proc. § 338 (d), which provides for a three year statute of limitations period for fraudulent omissions claims.

[5] The California Category II Class period is based on the same statutory periods set forth for Category I.  Similarly, California law applies to these claims pursuant to Norwest Mortgage, 72 Cal.App.4th at 222, 224 (citing Diamond Multimedia Sys., Inc. v. Superior Court (1999) 19 Cal.4th 1036, 1063-1064)) ("California has a 'clear and substantial interest in preventing fraudulent practices in this state ... [and] a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices,' and for that reason has a legitimate interest in 'extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California.")

1   adjudications or (b) individual adjudications dispositive of the interests of other members not a party to

2   those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally

3   applicable to the class; or (3) the questions of law or fact common to the members of the class predominate

4   over any questions affecting only individual members, and a class action is superior to other available

5   methods for the fair and efficient adjudication of the controversy.  See Fed. R. Civ. P. 23(b).

6        Although plaintiff bears the burden of demonstrating that Rule 23's requirements are satisfied, Haley

7   v. Medtronic, Inc. (C.D. Cal. 1996) 169 F.R.D. 643, 647, the requirements of Rule 23 "should be liberally

8   construed." 3 Alba Conte & Newberg, Newberg on Class Actions §7.20 (4th ed. 2002).  When evaluating

9   whether the requirements of Rule 23 are met in a particular case, the Court should keep in mind the

10  important public policies that class actions like this one promote.  Van Colla v. County of Ventura (C.D.

11  Cal. 1999) 189 F.R.D. 583, 590 ("when making this determination, a district court should bear in mind the

12  two goals behind Rule 23 . . . .").  First, class actions are important to provide ordinary citizens without

13  substantial resources access to justice.  See Hawaii v. Standard Oil Co. Of Calif. (1972) 405 U.S. 251, 266

14  ("Rule 23 . . . provides for class actions that may enhance the efficacy of private actions by permitting

15  citizens to combine their limited resources to achieve a more powerful litigation posture.")  Second, class

16  actions "promote efficiency and economy of litigation by consolidating numerous individual suits into a

17  single suit."  American Pipe and Costr. Co. v. Utah (1974) 414 U.S. 538, 551 (calling this "the principal

18  function of a class suit.")   As such, Rule 23 provides district courts with broad discretion to determine

19  whether a class should be certified.  See Armstrong v. Davis (9th Cir. 2001) 275 F.3d 849, 872 n.28; Dukes

20  v. Wal-Mart, Inc. (9th Cir. 2007) 474 F.3d 1214, 1224.  Any doubt as to the propriety of certification should

21  be resolved in favor of certifying the class.  Harris v. Palm Springs Alpine Estates, Inc. (9th Cir. 1964) 329

22  F.2d 909, 913.

23        **C.     Rule 23(a) Is Satisfied.**

24              **1.      The Class Is Sufficiently Numerous**

25        Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."

26  Fed. R. Civ. P. 23(a)(1).  Plaintiff need not allege that joining all class members would be impossible.

27  Hanlon v. Chrysler Corp., supra, 150 F.3d at 1019.  Nor must Plaintiff establish the precise number or

28  identity of class members.  See, Dukes v. Wal-Mart, Inc. (N.D. Cal. 2004) 222 F.R.D. 137, 144, aff'd, 509

F.3d 1168 (9th Cir. 2007); <u>Moeller v. Taco Bell Corp.</u> (N.D. Cal. 2004) 220 F.R.D. 604, 608.  Instead, a finding of numerosity may be supported by common-sense assumptions.  <u>Heffelfinger v. Elec. Data Sys. Corp.</u>, 2008 U.S. Dist. LEXIS 5296, at *55-56 (C.D. Cal., January 7, 2008); 6 NEWBERG ON CLASS ACTIONS, section 18.3, n.2 (4th ed., 2004).

The National Class consists of over 9,000 members spread throughout the United States.  <u>See</u> Response to Interrogatory No. 2, Berns Decl. Ex. 10.  The California Category I Class encompasses over 7,700 homeowners in California.  The California Category II Class is estimated to include over 1,800 homeowners.  <u>See</u> <u>Jordan v. County of Los Angeles</u> (9th Cir. 1982) 669 F.2d 1311, 1319 (exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous).  Certainly, joinder of thousands of class members in a single action would not be practicable.  For reasons of judicial efficiency, classes with as few as 40 members have been found to be sufficiently numerous that joinder is considered impractable.  <u>Ellis v. Costco Wholesale Corp.</u> (N.D. Cal. 2007) 240 F.R.D. 627, 637(<u>citing</u> 5 James W. Moore, <u>et al</u>., <u>Moore's Federal Practice</u>, section 23.22[1][b] (3d ed. 2004)).

### 2.    Overarching Questions of Law and Fact Common to the Class Exist.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This provision of Rule 23 is neither exacting nor difficult to satisfy:

> Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts, even when coupled with disparate legal remedies within the class.

<u>Hanlon v. Chrysler Corp.</u> (9th Cir. 1998) 150 F.3d 1011.  Indeed, just one significant common issue is enough to satisfy Rule 23(a)(2).  <u>Dukes</u>, 474 F.3d at 1225; <u>see also</u> <u>In re THQ, Inc. Secs. Litig.</u> (C.D. Cal. Mar. 22, 2002) 2002 WL 1832145 at *11.

This standard is easily satisfied here.  For instance, certain common legal and factual issues have already been described:

(1)    Whether the Loan Documents failed to disclose that the payment amounts listed in the Note and TILDS were insufficient to pay both principal and interest;

///

1       (2)     Whether the Loan Documents failed to disclose that negative amortization was absolutely

2  certain to occur if Plaintiff made payments according to the payment schedule provided by Defendants;

3       (3)     Whether Defendants' Loan Documents violated the Truth-In-Lending Act, 15 U.S.C. § 1601,

4  *et seq.*, and 12 C.F.R. §§ 226.17 and 226.19.

5       Any one of these core common questions of law or fact is sufficient to establish commonality.

6       **3.     Plaintiff's Claims are Typical of Those of the Class.**

7       Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the

8  claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  As the Ninth Circuit stated in <u>Hanlon</u>, "[u]nder

9  the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with

10  those of absent class members; they need not be substantially identical."  <u>Hanlon</u>, 150 F.3d at 1020.  Some

11  degree of individuality is to be expected in all cases, but that does not necessarily defeat typicality.  <u>See</u>

12  <u>Staton</u>, 327 F.3d at 957. Typicality is satisfied so long as the named plaintiff's claims stem from the same

13  practice or course of conduct that forms the class claims and is based upon the same legal theory. <u>Jordan</u>,

14  669 F.2d at 1321.

15       Here, Plaintiff's and the Class members' claims stem from similarly worded loan disclosure

16  documents used by the Defendants, which Plaintiff alleges were insufficient and unlawful. Thus, whether

17  the Loan Documents satisfied TILA or whether they failed to disclose material terms are all issues that can

18  and should be determined equally for the named Plaintiff as well as for all Class members.  Moreover, the

19  typicality requirement is presumptively satisfied when, as here, injunctive and declaratory relief is a primary

20  component of the case.  <u>See</u> <u>Nicholson v. Williams</u> (E.D.N.Y. 2001) 205 F.R.D. 92, 99 ("Typicality may

21  be assumed where the nature of the relief sought is injunctive and declaratory.")  This is true even where

22  the relief sought includes a damages component.  <u>See</u> <u>In re Consolidated Non-Filing Ins. Fee Litigation</u>

23  (M.D. Ala. 2000) 195 F.R.D. 684, 691.  Thus, Rule 23(a)(3)'s typicality requirement is satisfied.

24       **4.     Plaintiff Will Fairly and Adequately Represent the Class.**

25       Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and

26  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This factor requires: (i) that the

27  proposed representative Plaintiff does not have conflicts of interest with the proposed class; and (ii) that the

28  Plaintiff is represented by qualified and competent counsel.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1020; <u>see</u> <u>also</u> <u>Molski</u>,

318 F.3d at 955.

The first factor – that there be no conflict of interest – only requires similarity, not identity, of interests, and it precludes only adverse interests. See Dukes, 222 F.R.D. at 168-69. Where, as here, the claims of the class members and the class representative are virtually coextensive, there is no conflict. General Tel. Co. v. Falcon (1982) 457 U.S. 147, 157-8, fn. 13.

The second adequacy factor is also satisfied. As set forth in the Declaration of Gerson H. Smoger ("Smoger Declaration"), Plaintiff's counsel each have solid reputations for excellence in complex class litigation. Gerson Smoger, Lee Weiss, David M. Arbogast and Jonathan Shub each have extensive experience in litigating complex class consumer matters and have served as class counsel in numerous class actions throughout the country. Detailed descriptions of counsel's experience are attached as Exhibit 1 to the Smoger Declaration and illustrate that counsel are exceptionally well-qualified to serve as Class counsel in this case.[6]

### D.    Class Certification Is Appropriate Under Rule 23(b)

Having established that Plaintiff meets the requirements of Rule 23(a), one or more portions of Rule 23(b) are also satisfied. In this case, because of the nature of Plaintiff's claims, the uniformity of Defendants' statements and omissions, and the remedies that Defendants' violations require, the Court may certify a class under 23(b)(2), (b)(3) or both. In re NASDAQ Market-Makers Antitrust Litigation (S.D.N.Y. 1996) (citing cases for the proposition that certification of a class under (b)(2) and (b)(3) simultaneously is permitted).

### 1.    The Class Should Also Be Certified Under Rule 23(b)(2).

For a class to be certified under Rule 23(b)(2), Defendants must have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Thus, a class should be certified under 23(b)(2) "if the class members complain of a pattern or practice that is generally applicable to the class as a whole." Walterns v. Reno (9th Cir.) 145 F.3d 1032, 1047.

---

[6]  In any event, even if there were some basis to doubt the adequacy of representation, those doubts should be resolved in favor of upholding the class, subject to later possible reconsideration. See Newberg on Class Actions §7.24 at 7-80 to 7-81 (3d ed. 1992).

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1    That is precisely what Plaintiff complains of here.  At the heart of this case are Defendants' failures

2   either to disclose or to apply Class members' monthly mortgage payments to both principal and interest as

3   they represented they would do.  As a result of Defendants' applying those monthly mortgage payments

4    only to a portion of interest and then adding "unpaid" interest to the principal balance on Class  members'

5   mortgages, Class members have not only been deprived of the loan terms promised to them in Defendants'

6   loan documents, they have also lost equity in their homes and seen the purported principal balance on their

7   loans increase dramatically.

8    By this action, Plaintiff seeks for himself and the Class an order requiring Defendants to do what

9   they promised to do – provide Plaintiff and the Class with a no-negative amortization home loan by applying

10   monthly payments to both principal _and_ interest.  Successful prosecution of this suit would, in part, seek a

11   re-allocation of Class members' prior payments and a re-accounting of the amounts Class members are

12   shown on Defendants' books to owe.

13    This is precisely the sort of claim that has been found suitable for class treatment under Rule

14   23(b)(2).  Crosby v. Bowater Inc. Retirement Plan For Salaried Employees of Great Northern Paper, Inc.

15   (W.D. Mich. 2002) 212 F.R.D. 350, 364 (action seeking order requiring defendant to recalculate retirement

16   benefits owed to class members based on proper formula was equitable and satisfied 23(b)(2) certification

17   requirements); In re Citigroup Pension Plan ERISA Litigation (S.D.N.Y. 2006) 241 F.R.D. 172, 180-181

18   (action seeking to establish that defendant's method of computing benefits owed was unlawful was properly

19   certified under (b)(2), since re-calculation of benefits owed flowed from finding that conduct violated

20   ERISA).[7]

21   / / /

22   / / /

23

24   [7]  Rule 23(b)(2) class actions can include claims for monetary damages so long as such damages are not the "predominant"
relief sought, but instead are "secondary to the primary claim for injunctive or declaratory relief." Molski v. Gleich (9th Cir.

25   2003) 318 F.3d 937, 947.  To determine whether the primary relief sought is declaratory or injunctive, courts examine the
specific facts and circumstances of each case, focusing predominantly on the plaintiffs' intent in bringing the suit. See id.;

26   Kanter v. Warner-Lambert Co. (9th Cir. 2001) 265 F.3d 853, 860; Linney v. Cellular Alaska P'ship (9th Cir. 1998) 151 F.3d
1234, 1240 n.3.  The statutory damages Plaintiff and the Class members seek under TILA clearly satisfy this requirement.

27   Woodard v. Online Information Svcs. (E.D.N.C. 2000) 191 F.R.D. 502, 506-07 (certifying 23(b)(2) class where a declaration
that the defendant violated the statute and injunction to require compliance predominated, and the amount of damages were

28   fixed by statute.).

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

2.     **Common Questions Predominate In Satisfaction of Rule 23(b)(3).**

Rule 23(b)(3) requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. 23(b)(3). Predominance does not demand that the common issues be identical.  See In re Loewen Group Sec. Litig. (E.D. Pa. 2005) 233 F.R.D. 154, 167.  "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."     In re Visa Checks/MasterMoney Antitrust Litig. (2d Cir. 2001) 280 F.3d 124, 136.  This criteria is normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. Id. at 136.

Cases that involve allegations arising from form contracts or uniform documents are "particularly appropriate" for treatment as a class action. Mortimore v. F.D.I.C. (W.D.Wash. 2000) 197 F.R.D. 432, 438; see also Lozano v. AT&T Wireless Serv's, LLC (9th Cir. 2007) 504 F.3d 718, 737 (confirming class certification where a common fraudulent scheme was perpetrated through the use of standardized form contracts).  So are cases, as here, where a "standardized sales pitch" or uniform set of documents is employed.  See In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig. (D. Ariz. 1992) 140 F.R.D. 425, 430, citing Grainger v. State Sec. Life Ins. Co. (5th Cir. 1977) 547 F.2d 303, 307-08.  This is because questions common to the class predominate where a plaintiff alleges a common course of failures to disclose, fraudulent omissions, or other wrongdoing that uniformly affected all the Class members in the same or similar manner.  Blackie v. Barrack (9th Cir. 1975) 524 F.2d 891, 905-908.

Because this action is based on standardized Loan Documents, which all failed to disclose material information and upon which identical breach of contract claims are based, the common issues in this litigation easily predominate over any individual questions that Defendants may attempt to create.

3.     **Common Issues Predominate as to Plaintiff's Truth-In-Lending Act ("TILA")**
       **Claims - The National Class**

TILA requires that certain information be disclosed clearly and conspicuously.  "If a disclosure is capable of more than one plausible interpretation, it is not clear."  Elizabeth Renuart & Kathleen Keest, Truth In Lending § 4.2.4 (5th ed 2003); see Handy v. Anchor Mortgage Corp. (7th Cir.2006) 464 F.3d 760,

1   764.

2         Because all of the Class members received virtually identical Loan Documents from the Defendants,

3   questions of whether Defendants provided the required disclosures and whether those disclosures were clear

4   and conspicuous can and should be determined on a class-wide basis.

5         Indeed, Plaintiff's claims that Defendants failed to disclose the negative amortization and the

6   borrower's true legal obligations on the loans alone present several issues of fact and law predominant for

7   Class members.  Clearly, determining what disclosures regarding negative amortization are required by law

8   is a common, indeed, predominant question.  TILA itself requires disclosure of "any rules relating to

9   changes in the index, interest rate, payment amount and outstanding loan balance," which include "an

10  explanation of any interest rate or payment limitations, negative amortization, and interest rate carryover."

11  12 C.F.R. 226.19.  For loans that can trigger negative amortization in several ways, such as the ARM loans

12  at issue here, Section 226.19 (b)(2)(vii) requires separate disclosures for each manner in which negative

13  amortization might occur.  Furthermore, in 1995, the Federal Reserve Board ("FRB") issued binding

14  commentary providing in relevant part:  "For the program that gives the borrower an option to cap monthly

15  payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects

16  of exercising it (***such as whether negative amortization occurs and that the principal balance will***

17  ***increase***)…"  See FRB Official Staff Commentary to 12 C.F.R. 226.19(b), dated April 3, 1995, pp. 10, 21

18  (Smoger Decl. Ex. 2.).  These requirements apply in equal force to all of the loans at issue here and this

19  Court can and should interpret their meaning uniformly.

20         Second, whether Defendants provided disclosures in the manner required is also common to the

21  Class.  Defendants' Program Disclosures, for example, uniformly failed to include a clear and conspicuous

22  statement that negative amortization would occur and that the principal balance would increase by following

23  the payment schedule.[8]  (See Berns Decl. Exs. 7, 8).  Similarly, instead of clearly and conspicuously

24  disclosing that negative amortization was virtually certain to occur, each version of Defendants' Promissory

25  Note(s) states that negative amortization is only a possibility.  SAC ¶ 83-86; SAC, Ex. 1, ¶ 3(E)

26  ─────────────────

27  [8]  Pursuant to Section 226.19, terms for variable rate loans must be made in Defendants' early disclosures, which Defendants
    set forth in a document entitled "Program Disclosures."  Defendants' ARM loan is also a variable rate loan with payment
    caps, wherein payment amounts can only be increased one time a year by 7.5%.  SAC, Ex. 1, ¶ 3(D); see also SAC, ¶ 30.

28

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1    Other common questions include whether the ARM loans contained features that were virtually

2    certain to cause negative amortization, and/or whether a separate clear and conspicuous disclosure about

3    each of these features was required.  Because the loan documents and terms were virtually identical for all

4    Class members, whether Defendants violated TILA and the Official Staff Commentary to § 226.19 (b) by

5    failing to clearly and conspicuously disclose in the documents provided to all Class members that the

6    question of whether the "loan [was] designed in such a way so as to make negative amortization an absolute

7    certainty," (SAC, ¶ 86), is a common question that can and should be resolved on a class-wide basis.

8    Third, TILA requires lenders to disclose the borrowers' legal obligation, not just the payment

9    obligation.  See 15 U.S.C. § 1601, § 226.17 and § 226.18.  Indeed, the Official Staff Commentary also

10   provides that "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the

11   outset of the transaction[;] [¶][and] 2. ...  The legal obligation normally is presumed to be contained in the

12   note or contract that evidences the agreement."  Id.  Although the individual interest rates varied, all of the

13   TILDS listed a payment schedule that was based on the low "teaser" rate that only applied to the loan for

14   30 days, if at all, and none of the payment schedules were based on the actual interest rate reflected in the

15   APR disclosed in the TILDS.  Whether Defendants violated TILA by providing payment schedules that

16   were not based on the interest rates disclosed in the TILDS and that were insufficient to satisfy Plaintiffs'

17   monthly legal obligation also presents common issues.  See SAC, ¶¶ 31, 38, 93.

### 4.    Common Issues Predominate in Plaintiff's Fraudulent Omissions Claim for the California Category I and II Classes

20   Under California law, the elements of Plaintiff's fraudulent omission claim are: (1) an omission of

21   material fact; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5)

22   resulting damages.  Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; see also Small v. Fritz Companies,

23   Inc. (2003) 30 Cal.4th 167, 173.  In cases like this one, where the action is based upon omissions in a

24   uniform set of written documents provided to all class members, proof of each of these elements will be

25   common to the class.[9]

---

[9]  As noted above, California has a paramount interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers nationally from fraud emanating from California.  Norwest Mortgage, 72 Cal.App.4th at 222, 224 (citing Diamond Multimedia, 19 Cal.4th at 1063-1064.)  Because the alleged fraudulent scheme was perpetrated by a California corporation (Paul Financial), that was headquartered in California and approved loans from its offices located in

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

In fact, as the Ninth Circuit recently affirmed in <u>In re First Alliance Mortgage Co.</u> (9th Cir. 2006) 471 F.3d 977, the court "favors class treatment of fraud claims stemming from a common course of conduct." As such, where a centrally-orchestrated scheme is alleged, "it is the underlying scheme which demands attention" rather than any variations in the underlying misrepresentations.  <u>See also</u> <u>Chisolm v. TranSouth Fin. Corp.</u> (E.D. Va. 2000) 194 F.R.D. 538, 564; <u>see also</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u> (3d Cir. 1998) 148 F.3d 283, 314 (predominance readily met in case involving common scheme to defraud millions of life insurance policyholders).

 In <u>First Alliance</u>, the defendant allegedly engaged in predatory lending practices in originating and selling sub-prime mortgage loans.  <u>Id</u>. at 984-85.  Loan officers made standardized sales presentations in face-to-face meetings with borrowers that failed to disclose numerous hidden fees and other material facts. <u>Id</u>. at 991- 92.  On appeal of a jury verdict in favor of the consumer class, the defendant argued that class certification was inappropriate, because, among other things, the oral misrepresentations to class members were not uniform.  <u>Id</u>. at 990.  Finding class treatment appropriate, <u>First Alliance</u> directly addressed the "required degree of uniformity among misrepresentations in a class action for fraud" that this Circuit requires.  <u>Id</u>.  Rejecting the argument that "the misrepresentation at the heart of the class-wide fraud finding must have been ... repeated in a verbatim fashion to each member of the class," the Court explained:

> While some other courts have adopted somewhat different standards in identifying the degree of factual commonality required in the misrepresentations to class members in order to hold a defendant liable for class-wide fraud, this court has followed an approach that favors class treatment of fraud claims stemming from a "common course of conduct." <u>See</u> <u>Blackie v. Barrack</u>, 524 F.2d 891, 902 (9th Cir. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions"); <u>see also</u> <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 914 (9th Cir. 1964).

<u>Id</u>. at 990-91 (emphasis added).

Equally important, the Ninth Circuit rejected the notion that individualized oral presentations to class members somehow would preclude class certification.  Noting that the proper focus is on the underlying scheme itself, the Court explained that:

California, California law properly applies to both Category I and II Class members.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

In In re American Continental Corp./Lincoln Savings & Loan Securities Litigation, 140 F.R.D. 425 (D. Ariz. 1992), the court correctly rejected a "talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical," observing that such a strict standard overlooks the design and intent of Rule 23. Lincoln Savings involved a scheme that included, among other things, the sale of debentures to individual investors who relied on oral representations of bond salespersons who in turn had received from defendant's fraudulent information about the value of the bonds. The Lincoln Savings court focused on the evidence of a "centrally orchestrated strategy" in finding that the "center of gravity of the fraud transcends the specific details of oral communications." As the court explained:

[T]he gravamen of the alleged fraud is not limited to the specific misrepresentations made to bond purchasers... The exact wording of the oral misrepresentations, therefore, is not the predominant issue. ***It is the underlying scheme which demands attention***.

First Alliance, 471 F.3d at 991 (internal citations omitted). The court observed that the "scheme was built on inducing borrowers to sign documents without really understanding the terms" and that the forms were used "with the fraudulent intent of inducing reliance." Id. at 992.

Citing First Alliance, the Southern District recently granted class certification in a financial fraud case where plaintiffs were sold investments that carried undisclosed front-end sales loads. McPhail v. First Command Financial Planning, Inc. (S.D. Cal. 2007) 247 F.R.D. 598, 603. In coming to this decision, the court observed that "the reliance requirement must encompass the rise of sophisticated marketing strategies which rely on communicating similar misrepresentations to a large class of investors." Id. at 614-15. Here, the need for class-wide determination regarding Defendants' scheme is even more compelling, because Plaintiff and each Class member entered into virtually identical ARM loans in which Defendants fraudulently omitted virtually the same information.

### (a)   Defendants' Duty to Disclose Material Facts Will Be Proven By Evidence Common to the Class.

A duty to disclose arises when, among other circumstances, the defendant makes partial representations while also suppressing some material facts. LiMandri v. Judkins ("Judkins") (1997) 52 Cal.App.4th 326, 336.[10] Here, proof of Defendants' partial representations are plain on the face of the

---

[10] Other circumstances in which a duty to disclose arises are: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; and (3) when the defendant actively conceals a material fact from the plaintiff. Judkins, 52 Cal.App.4th at 336.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

documents provided to all Class members and, thus, will be established by common evidence, including evidence of Defendants' uniform partial representations of "if" and "may" in the Loan Documents.  These representations obscured the fact that negative amortization was virtually certain to occur under the terms of the loan, a fact which created a duty to disclose.  See Judkins, 52 Cal.App.4th at 336.  "Even where no duty to disclose would otherwise exist, 'where one does speak, he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] ...[T]he telling of a half-truth calculated to deceive is fraud.' [Citations.]"  Vega v. Jones, Day, Reavis & Pogue (2004) 121 Cal.App.4th 282, 292; Intrieri v. Superior Court (2004) 117 Cal.App.4th 72, 86.)[11]

In addition, a duty to disclose may also be imposed by statute. (Pastoria v. Nationwide Ins. (2003) 112 Cal.App.4th 1490, 1499 [Cal. Ins. Code, § 330]; Lovejoy v. AT & T Corp. (2004) 119 Cal.App.4th 151, 158-159 [Cal. Pub.Util.Code, § 2889.5]; see Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 167 at fn. 6 [Cal.Civ.Code § 51.6, subd. (f)].)  Whether TILA required  Defendants to make certain disclosures will be determined by reference to TILA and the FRB's implementing regulations.  Therefore, this issue is once again common to Plaintiff and the Class members.

**(b)    Materiality Will Be Proven By Evidence Common to the Class.**

California courts have found that the question of materiality of omitted information predominates for purposes of certifying a class:

> However, the information Mass Mutual provided to prospective purchasers appears to have been broadly disseminated. Given that dissemination, the trial court could have reasonably concluded that the ultimate question of whether the undisclosed information was material was a common question of fact suitable for treatment in a class action.

See Mass. Mut. Life Ins. Co. v. Super. Ct. (2002) 97 Cal. App. 4th 1282, 1294

In this case, Defendants' documents uniformly failed to disclose that: (i) the payment schedule would not pay off the actual interest rate charged on the Note(s); and (ii) negative amortization would occur and that the "principal balance" of the Notes would then increase.  SAC, ¶¶ 1, 30, 31, 83, 93.  The

---

[11]  In addition, Plaintiffs have alleged that Defendants "actively conceal[ed] material facts from Plaintiffs."  SAC, ¶ 39, 133, 135. "[I]ntentional concealment of a material fact is an alternative form of fraud and deceit equivalent to direct affirmative misrepresentation."  Lovejoy v. AT & T Corp. (2001) 92 Cal.App.4th 85, 97, quoting Stevens v. Superior Court (1986) 180 Cal.App.3d 605, 608.  Proof of this Judkins factor, too, will depend upon evidence common to each Class member since it will be proven by the uniform set of written documents Defendants provided to each Class member.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1    materiality of these omissions is an issue common to the Class.

2               **(c)     Defendants' Knowledge of the Fraudulent Omissions and Their Intent**
3                        **to Deceive Will Be Proven by Evidence Common to the Class.**

4         Defendants' knowledge of the falsity of their representations is plainly an issue common to all of

5    the Plaintiffs, raising no individualized questions within the Class.  The same is true of Defendants' intent

6    to deceive.  Evidence of these elements of Plaintiff's fraudulent omission claims focus on the Defendants,

7    not on any individual loan transaction.

8               **(d)     The Class Is Entitled To A Presumption of Reliance.**

9         Justifiable reliance may be presumed when "the case can be characterized as one that primarily

10   alleges omissions."  Poulos v. Caesars World, Inc. (9th Cir.2004) 379 F.3d 654, 667; Binder v. Gillespie

11   (9th Cir.1999) 184 F.3d 1059, 1064; Affiliated Ute Citizens v. United States (1972) 406 U.S. 128, 153-54.

12   To determine whether the presumption should apply, the Court must "analytically characterize [the] action

13   as either primarily a nondisclosure case, or a positive misrepresentation case."  Binder, 184 F.3d at 1064,

14   citing Finkel v. Docutel/Olivetti Corp. (5th Cir.1987) 817 F.2d 356, 359.  Reliance may be presumed here

15   because Plaintiff's claim is based primarily upon Defendants' failures to disclose to borrowers the following

16   information before they entered into their loans: (i) the actual interest rate charged on the Note(s); (ii) that

17   negative amortization would occur and that the "principal balance" of the Notes would then increase; and

18   (iii) that the initial interest rate on the Note was discounted.

19        When claims are based primarily on omissions, pursuant to Affiliated Ute Citizens v. United States

20   (1972) 406 U.S. 128, 153-54, reliance may be presumed if the evidence establishes that Defendants omitted

21   material facts relevant to the decision-making process. Cf. In re Apte (9th Cir. 1996) 96 F.3d 1319, 1322-23

22   (applying Affiliated Ute's presumption of reliance in a fraud case outside the securities context).  Here,

23   Plaintiff has alleged that "[t]he omitted information, as alleged herein, was material to Plaintiff and each

24   Class member in that had the information been disclosed, Plaintiff and each Class member would not have

25   entered into the loans." SAC, ¶ 139.  Certainly, Plaintiff and the Class members would not have entered into

26   the subject ARM mortgage loans if Defendants had disclosed that the loans were designed to strip them of

27   the equity in their homes by creating an escalating mortgage balance.

28   / / /

In a recent case addressing class wide proof of reliance, <u>McPhail</u>, 247 F.R.D. 598, the defendant trained its sales force to deliver standardized sales presentations with accompanying documents that, *inter alia,* uniformly both failed to inform investors about the earnings they lost because of high front-end sales loads and misrepresented the nature of alternative investments. <u>Id</u>. at 603. Defendant argued that a class was not properly certified, because "actual sales pitches did not exactly follow the script, therefore, the oral representations were never uniform." <u>Id</u>. at 609. Relying on the Ninth Circuit's opinion in <u>First Alliance</u> and the district court opinion in <u>In re American Continental Corp./Lincoln Savings & Loan Securities Litigation</u>, endorsed by the Ninth Circuit in <u>First Alliance</u>, the court found that the plaintiff satisfied the reliance requirement because the defendant "trained its sales force to deliver a 'homogenized presentation.'" <u>McPhail</u> at 614; <u>see also</u>; <u>Lincoln Savings</u>, 140 F.R.D. at 431 ("center of gravity of the fraud transcends the specific details of oral communications").

The <u>McPhail</u> court noted that "the reliance requirement must encompass the rise of sophisticated marketing strategies which rely on communicating similar misrepresentations to a large class of investors." <u>Id</u>. at 614-15. This is in accord with the Ninth Circuit's statement in <u>First Alliance</u> that "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud simply by altering the wording or format of his misrepresentations across the class of victims." 471 F.3d at 992. <u>Accord</u>, <u>Jenson v. Firserv Trust Co.</u> (2007) 256 Fed. Appx. 924 (affirming district court's rejection of defendant's argument that differing oral representations are not amenable to class treatment by holding that the "center of gravity" of the fraud predominates over details of individual communications) (citing <u>First Alliance</u>, 471 F.3d at 991).[12]

Moreover, under California law, "an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation." <u>Mass. Mut. Life Ins. Co. v. Superior Court</u> ("Mass. Mutual") (2002) 97 Cal.App.4th 1282, 1293-1294 (quoting <u>Occidental Land, Inc. v. Superior Court</u> (1976) 18 Cal.3d 355,363). <u>See also</u> <u>Vasquez v. Superior Court</u> (1971) 4 Cal.3d 800, 814 ("The rule in this state ... is that it is not necessary to show reliance upon a false

---

[12]  Plaintiffs can also prove class-wide reliance by establishing a "common sense" or "logical" connection between Defendants' common course of conduct and the behavior of Plaintiffs and the Class. <u>Negrete v. Allianz Life Ins. Co. of North America</u> (ND Cal. 2006) 238 F.R.D. 482, 491; <u>see also</u> <u>Spark v. MBNA Corp.</u> (D. Del. 1998) 178 F.R.D. 431, 435-36; <u>Peterson v. H&R Block Tax Servs., Inc.</u> (N.D. Ill. 1997) 174 F.R.D. 78, 84-85 (Class wide reliance legitimately can be inferred "when it is logical to do so or when the complaint's allegations make reliance apparent.").

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1  representation by direct evidence.  The fact of reliance upon alleged false representations may be inferred

2  from the circumstances attending the transaction which oftentimes afford much stronger and more

3  satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than

4  his direct testimony to the same effect.") (Internal quotation marks omitted).

5       Since all Class members in this case entered into loans after receipt of documents lacking full

6  disclosures, a presumption of class-wide reliance is proper.

7                          **(e)    Causation Will Be Shown on A Class-wide Basis.**

8       Causation will be shown on a class wide basis through a finding of materiality.  Mass. Mutual, 97

9  Cal.App.4th 1282, 1292-94.  In Mass. Mutual, the plaintiffs alleged that the defendant's misrepresentations

10  "would have been material to any reasonable person contemplating purchase" of certain insurance products.

11  Id. at 1293.  As discussed above, the Defendants' omission of material information regarding  the  ARM

12  loans was critical to any reasonable person's decision to enter into the loan.

13                  **5.    Common Issues Predominate as to Plaintiff's UCL Claims.**

14      The UCL prohibits unfair, unlawful and fraudulent business activities. Cal. Bus. & Prof. Code

15  §17200, et. seq.  Each prong of the UCL is a separate and distinct theory of liability.  See Schnall v. Hertz

16  Corp. (2000) 78 Cal. App. 4th 1144,1153.  Here, Plaintiff has asserted claims under two prongs of the UCL:

17  (1) unfair business practices or acts; and (2) fraudulent business practices or acts.  See SAC,  ¶¶ 143-164.

18  Plaintiff can show on a class-wide basis that common issues predominate as to both the "unfair" and

19  "fraudulent" business practices and acts of the Defendants.

20      The "unfair" prong of the UCL is intentionally broad, allowing courts maximum discretion to

21  prohibit new schemes to defraud.  William L. Stern, Business & Professions Code §17200 Practice (West

22  3d ed. 2008) at  3:113 citing Motors, Inc. v. Times Mirror Co. (1980) 102 Cal.App.3d 735, 740.  An unfair

23  practice under § 17200 is one whose harm to the victim outweighs its benefits.  (Day v. AT&T Corp. (1998)

24  63 Cal.App.4th 325, 331- 32).  Here, Plaintiff has alleged that Defendants uniformly omitted and failed to

25  disclose material facts regarding Defendants' ARM loans in violation of the UCL.  Defendants' acts and

26  practices took unfair advantage of their superior knowledge and bargaining power, resulting in thousands

27  of home owners losing equity in their home and, in many cases, facing foreclosure.  Proof of Defendants'

28  conduct is common to the Class, since that conduct primarily took the form of uniform written documents

1    supplied to Class members.  Likewise, proof of the harm caused by Defendants' conduct, including the

2    devastating effect of that conduct on this country's financial system, will also be common to the Class.

3            Establishing a violation of the fraudulent prong of the UCL requires a finding only that the practices

4    at issue are "likely to deceive" the public.  See Heighley v. J. C. Penney Life Ins. Co. (C.D. Cal. 2003) 257

5    F. Supp. 2d 1241, 1259 (citing Comm. on Children's Television, Inc. v. Gen. Foods Corp. (1983) 35 Cal.

6    3d 197, 211); see also Netscape Commc'n. Corp. v. Fed Ins. Co. (N.D.Cal. 2006) 2006 WL 449149.  The

7    UCL does not require any reliance by the consumer or proof that any individual consumer was actually

8    deceived.  Committee, supra, 35 Cal.3d 197, 211; Fletcher v. Security Pacific Nat'l Bank (1979) 23 Cal. 3d

9    442, 453.  The test is an objective one depending on whether the defendant's conduct was "likely to

10   deceive" a reasonable consumer and, therefore, amenable to class-wide adjudication.  Williams v. Gerber

11   (9th Cir. 2008) 523 F.3d 934 (reversing decision of trial court and affirming "likely to deceive" standard);

12   Committee, supra, 35 Cal.3d at 211; Chern v. Bank of America (1976) 15 Cal. 3d 866, 876; Aron v. U-haul

13   Co. (2006) 143 Cal.App.4th 796, 806.  Once, as it is the case here, broad dissemination of common false

14   statements to the class has been established, "the ultimate question of whether the undisclosed [or

15   affirmatively misrepresented] information was material [is] a common question of fact suitable for treatment

16   in a class action." Mass. Mutual, 97 Cal. App. 4th at 1294; see also Blakemore v. Superior Court (2005) 129

17   Cal. App. 4th 36, 56 (rejecting argument that the varied subjective reasons for each class member's conduct

18   was relevant to liability or class certification under the UCL).

19           **6.    Common Issues Predominate as to Plaintiffs' Breach of Contract Claim**

20                  **- California Category I and II Classes.**

21           Under California law, "[t]he standard elements of a claim for breach of contract are '(1) the contract,

22   (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to

23   plaintiff therefrom.'"  Wall Street Network, Ltd. v. New York Times Co. (2008) 164 Cal. App. 4th 1171,

24   1178 (quoting Regan Roofing Co. v. Superior Court (1994) 24 Cal. App. 4th 425, 434-35 ).  Here, each of

25   these elements is amenable to proof on a class-wide basis.

26           As discussed, supra at D.2., courts have repeatedly held that claims involving standardized form

27   contracts are particularly amenable to class-wide resolution.  See, e.g., Lozano v. AT&T Wireless Services,

28   LLC (9th Cir. 2007) 504 F.3d 718, 737 (standardized disclosures for wireless telephone billing practices);

Lerwill v. Inflight Motion Pictures, Inc. (9th Cir. 1978) 582 F.2d 507, 513 (breach of collective bargaining agreement provision guaranteeing overtime pay); Smilow v. Southwestern Bell Mobile Systems, Inc. (1st Cir. 2003) 323 F.3d 32, 42 (standardized disclosures for wireless telephone billing practices: "Overall, we find that common issues of law and fact predominate here.  The case turns on interpretation of the form contract..."); Schnall v. AT&T Wireless Services, Inc. (Wash. App. 2007) 161 P.3d 395, 405 ( "Having availed itself of the benefits of a standardized, boilerplate contract used across the nation, AT&T cannot now assert that the contracts are to be interpreted individually based on the intent of each consumer at the time of purchase.").

In Mortimore v. FDIC (W.D. Wash. 2000) 197 F.R.D. 432, the court reached this same conclusion when certifying a class of adjustable rate mortgage borrowers challenging a lender's practice of selectively imposing interest-rate changes so that rates only adjusted upward.  Id. at 434.  In granting class certification under Rule 23(b)(3), Mortimore held that, "[s]ince this case involves the use of form contracts, it is particularly appropriate to use the class action procedure."  Id. at 438.  The court further noted that "Defendants do not dispute that other courts have certified classes involving adjustable rate mortgages." Id., citing Hubbard v. Fidelity Bank (C.D. Cal. 1997) 824 F. Supp. 909; Whitford v. First Nationwide Bank (W.D. Ky. 1992) 147 F.R.D. 135; Crowley v. Banking Ctr. (Conn. Super. Ct. Mar. 9, 1992)1992 WL 54557 (unpublished opinion).

Here, since each of the loan contracts are the same, Plaintiff will easily be able to prove, on a class-wide basis the pertinent contract terms, i.e. that statements such as, "I will pay principal and interest by making a payment every month" were uniformly applicable to each Class member.   See SAC, Exh. 1, ¶ 3(A); Berns Decl., Exs 1, 2.  Similarly, Plaintiff will prove on a class-wide basis that Defendants breached their promise by engaging in the uniform practice of allocating the entire minimum monthly and biweekly payments to interest without applying any of the payments to principal.  Instead of payments going to principal, principal actually *increased* with each payment through the negative amortization of the loans.

Finally, to remedy this common breach by Defendants, Plaintiff will calculate the difference between the actual amount of their present mortgage balance and the incorrect amount presently reflected on Defendants' books.  Although this calculation will result in different amounts for Plaintiff and each Class member, it is beyond dispute that differences in individual damage *amounts* derived through a commonly

1   applied formula will not defeat class certification.  See, e.g., Blackie v. Barrack,  524 F.2d at 905; see also

2   Smilow, 323 F.3d at 42-43; Lewis v. Robinson Ford Sales, Inc. (2007) 156 Cal. App. 4th 359, 371.

3   For all of these reasons, the Court should hold that Plaintiffs' breach of contract claim based on

4   Defendants' uniform loan contracts satisfies the predominance requirement under Rule 23(b)(3).

5   **7.    Common Issues Predominate as to Plaintiffs' Tortious Breach of the Implied**

6   **Covenant of Good Faith and Fair Dealing Claim - Category I and II Classes.**

7   "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing."  In

8   re Vylene Enterprises, Inc. (9th Cir. 1996) 90 F.3d 1472, 1477, citing Harm v. Frasher (1960) 181 Cal. App.

9   2d 405, 417.  The covenant "exists merely to prevent one contracting party from unfairly frustrating the

10  other party's right to receive the benefits of the agreement actually made." Guz v. Bechtel Nat. Inc. (2000)

11  24 Cal. 4th 317, 349.  Here, Plaintiff's breach of good faith claims satisfy Rule 23(b)(3)'s predominance

12  requirement for largely the same reasons that the breach of contract claims do.

13  Numerous California courts have certified good faith and fair dealing claims for class-wide

14  resolution. See, e.g., Lazar v. Hertz Corp. (1983) 143 Cal. App. 3d 128, 141-44; see also State Farm Mutual

15  Automobile Ins. Co. v. Superior Court (2003) 114 Cal. App. 4th 434, 439 (describing trial court's

16  certification of nationwide class asserting breach of contract and breach of covenant of good faith and fair

17  dealing claims); Van Ness v. Blue Cross of California (2001) 87 Cal. App. 4th 364, 370 (describing trial

18  court's grant of class certification and the subsequent denial of mandamus from that ruling).

19  Indeed, in Lazar, the court of appeals reversed the trial court, because it had "erroneously assumed

20  reliance of the class members was an element of that claim."  The court of appeals instead held that the

21  "essence of the good faith covenant is objectively reasonable conduct."  143 Cal. App. 3d at 141.  Lazar,

22  therefore, concluded that the plaintiff's good faith duty claims challenging a rental car company's

23  imposition of excessive refueling charges were amenable to class-wide resolution. Id. The same conclusion

24  should apply here.  Plaintiff can prove his breach of good faith claims using the same common evidence

25  used to prove his breach of contract claims.

26  / / /

27  / / /

28  / / /

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

### E.    Defendant HSBC's Liability Can Also Be Determined on a Class Wide Basis

For Plaintiff's TILA allegations, he will prove on a class-wide basis that Defendants are jointly and severally liable for the TILA violations because those violations were apparent on the face of the Loan Documents.  This is consistent with <u>Taylor v. Quality Hyundai, Inc.</u> (7th Cir. 1998) 150 F.3d 689, in which the court found that even under the TILA amendment limiting TILA liability of assignees of  consumer credit contracts, violations "apparent on the face" of the required TILA disclosure statements will make assignees liable under the TILA.  <u>Id</u>. at 694.

Plaintiff also alleges that the Defendants share liability for the fraudulent omission, UCL, breach of contract, and breach of implied covenant of good faith and fair dealing allegations.  These allegations and the attendant liabilities can be shown on a class-wide basis.  Plaintiff has alleged that each Defendant was acting as a co-conspirator, agent, servant, employee, assignee and/or joint venturer of each other Defendant. SAC ¶¶ 11, 12.  In many instances, courts have found that originators and their lenders were operating jointly in a manner that imposed liability on all of the defendants.  <u>See</u> <u>In re: First Alliance Mortgage Co.</u>, 471 F.3d 977 (9th Cir. 2006); <u>Williams v. Aetna Finance Co.</u> (1998) 83 Ohio St.3d 464; <u>Herrod v. First Republic Mortg. Corp, Inc.</u> (2005) 625 S.E.2d 373 (finding civil conspiracy in securitized loan context); <u>Short v. Wells Fargo</u> (S.D. W.Va. 2005) 401 F.Supp.2d 549 (pooling and servicing agreement sufficient to find joint-venture liability in context of a securitized loan).

Again, because of the boilerplate nature of the Loan Documents, the virtually identical statements (or omissions) in all of the Loan Documents and the consistent practices between the Defendants, Plaintiff will be able to show on a class-wide basis that the Defendants were working together such that liability will attach to any subsequent assignees of the Notes.

### F.    Issues of Manageability and Notice Pale in Comparison to the Fairness and Efficiency Which Certification Would Bring

As to manageability, many class actions of similar complexity and magnitude have been certified, litigated and pursued fairly and efficiently through the use of both traditional and creative case management techniques:

> Class actions, while adding somewhat to the burdens of management of pretrial and trial aspects, do not add appreciably to the onus of administering an action, or multiple actions, that may be otherwise inherently complex. . .

24

> Fears expressed by some courts that proposed class actions present insuperable management obstacles have been shown to be unfounded by other courts that have successfully managed complex cases.
>
> * * *
>
> Courts have developed several innovative management techniques to eliminate or minimize court burdens arising from management difficulties posed by class actions.

See Newberg on Class Actions, § 9.46 at 9-129, § 4.32 at 4-133 (3d ed. 1995).

Further, there is little question that adequate class notice can be given to all class members. In order to effectuate jurisdiction over absent class members, notice must be given which is the best practicable notice available and is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812. Here, because Defendants have the physical addresses of most Class members, there are no anticipated problems with notice by first class mail. To the extent that the Class members are no longer in their homes due to foreclosure or subsequent sale of the property, those members can be identified by Defendants from their records or a search of the public records. Publication is also available.

In any case, neither of these questions implicate the fact that Class certification here is appropriate under both Rules 23(b)(2) and 23 (b)(3). Certainly, a class proceeding is the fairest and most efficient method for adjudication of the essential issues in these claims. It promotes "economies of time, effort, and expense" and uniformity of decisions. Amchem Products, Inc. v. Windsor (1997) 521 U.S. 591, 615. This is particularly true when, as here, both factually and legally there are common issues to the class as a whole which turn on uniform or substantially uniform form documents. Under these conditions, individual adjudication of claims is neither desirable nor necessary.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification.

DATED: October 31, 2008                                 **SMOGER & ASSOCIATES, PC**

                                By:   */s/ Gerson H. Smoger*
                                       Gerson H. Smoger
                                       Steven M. Bronson
                                       **SMOGER & ASSOCIATES, PC**
                                       3175 Monterey Blvd
                                       Oakland, CA  94602
                                       Tel:  (510) 531-4529; Fax: (510) 531-4377

Lee Weiss
Rebecca Tingey
**DREIER LLP**
499 Park Avenue
New York, NY 10022
Phone: (212) 328-6100; Fax: (212) 328-6101

David M. Arbogast, Esq.
Jeffrey K. Berns, Esq.
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356.
Phone: (818) 961-2000; Fax: (818) 867-4820

Jonathan Shub (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444; Fax: (310) 854-0812

Attorneys for Plaintiff and all others Similarly
Situated.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI