Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
**SMOGER & ASSOCIATES**
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel:   (510) 531-4529
Fax:  (510) 531-4377

David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:    (818) 867-4820

[*Additional counsel listed on signature page*]
Attorneys for Plaintiff and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY M. JORDAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PAUL FINANCIAL, LLC, LUMINENT MORTGAGE CAPITOL, INC., LUMINENT MORTGAGE TRUST 2006-2, HSBC NATIONAL ASSOCIATION, and DOES 1 through 10 inclusive,<br><br>Defendants. | **CASE NO. 3:07-cv-04496-SI**<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: January 20, 2008<br>Time:          4:00 p.m.<br>Place:         Courtroom 10<br>Judge:        Hon. Susan Illston<br><br>Complaint Filed: August 29, 2007<br>Trial Date: Not set yet. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Law Favors Class Treatment of the Types of Allegations Made in this Lawsuit  . . . 1

    B.    The National Class Has Been Objectively Defined And Includes All Option ARM Loans Sold by Paul Financial With Certain Common Characteristics . . . . . . . . . . . . . . 2

    C.    The Parole Evidence Issues Raised By Defendants Are Red Herrings and Cannot Defeat Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D.    Plaintiff's Fraudulent Omission Claim Can Be Proven on a Class-Wide Basis . . . . . . . 5

    E.    Plaintiff's UCL Claims Can Be Proven on a Class-Wide Basis . . . . . . . . . . . . . . . . . . 7

    F.    Plaintiff's Breach of Contract Claim Can Be Proven on A Class-Wide Basis . . . . . . . . 9

    G.    Plaintiff's Tortuous Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Can Be Proven on A Class-Wide Basis . . . . . . . . . . . . . . . . . . . . . . . . . 10

    H.    Any Individual Issues Concerning the Calculation of Damages Do Not Preclude a Finding of Predominance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.    The Merits of Whether HSBC's Is Liable to Plaintiff and the Class Can, and Should, Be Determined on a Class-wide Basis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    J.    Plaintiffs' State Law Claims May Properly Include Non-California Borrowers . . . . . . . 15

            1.    Because Paul Financial is Headquartered in California, And The Conduct in Question Emanates From California, It is Constitutionally Permissible to Apply California Law to the Claims of Non-Resident Class Members  . . . . . . . 16

            2.    Defendants Have Failed to Identify Any Actual Conflict or Establish that Any other State has A Superior Interest In having Its Own Laws Applied . . . . . 17

            3.    California Has a Superior Interest in Having Its Laws Apply to this Case . . . . . 18

    K.    Plaintiff's Claims are Typical of Those of the Putative Class . . . . . . . . . . . . . . . . . . . 18

    L.    Plaintiff is an Adequate Representative Of The Proposed Classes . . . . . . . . . . . . . . . . 19

    M.    Plaintiff Has Standing to Represent the National TILA Class, Because Equitable Tolling of the One-Year Statute of Limitations for Statutory Damages Under TILA is Permitted  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    N.    Certification Under Rule 23(b)(2) is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            1.    Hybrid 23(b)(2) and 23(b)(3) Classes Are Permissible . . . . . . . . . . . . . . . . . . 21

            2.    The Reallocation of Payments Sought By Plaintiff Is an Equitable Remedy . . . 22

3.    This is Not a Rescissionary Class and Notice and the Right to Opt-Out Are Not Necessary With Respect to Those Claims Sought to be Certified Pursuant to 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4.    The 23(b)(2) Class Is Sufficiently Homogenous . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>FEDERAL CASES</u>

4

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

*Anunziato v. eMachines, Inc.,*
    402 F.Supp.2d 1133 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6

*Binder v. Gillespie,*
    184 F.3d 1059 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7

8

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

9

*Brame v. Ray Bills Finance Corp.,*
    85 F.R.D. 568 N.D.N.Y.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10

11

*Boggs v. Alto Trailer Sales, Inc.,*
    511 F.2d 114, 117 (5th Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

12

*Broad v. Rockwell Intern. Corp.,*
    642 F.2d 929 (5th Cir.) (*en banc*) cert. *denied*, 454 U.S. 965 (1981) . . . . . . . . . . . . . . . . . . . 2, 9

13

14

*Davis Cattle Co. v. Great Western Sugar Co.,*
    393 F.Supp. 1165 (D.Col.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

15

*Eubanks v. Billington,*
    110 F.3d 87 (C.A.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

16

17

*Fabricant v. Sears Roebuck,*
    202 F.R.D. 310 (S.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18

*Gartin v. S&M NuTec, LLC,*
    245 F.R.D. 429 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19

20

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21

*Gilkey v. Central Clearing Co.,*
    202 F.R.D. 515 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

22

23

*Goldman v. First National Bank,*
    532 F.2d 10 (7th Cir.), cert. denied, 429 U.S. 870 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24

*Gonzalez v. Proctor Gamble Co.,*
    247 F.R.D. 616 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

26

*Grant v. Imperial Motors,*
    539 F.2d 506 (5th Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

27

*Hanon v. Data Products Corp.,*

28

976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Baldwin-United Corp. Litig.*,
    122 F.R.D. 424 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Apte*,
    96 F.3d 1319 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

*Irving Trust Co. v. Nationwide Leisure Corp.*,
    95 F.R.D. 51 (S.D.N.Y.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Jefferson v. Sec. Pac. Fin. Servs. Inc.*,
    161 F.R.D. 63 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jennings Oil Co., Inc. v. Mobil Oil Corp.*,
    80 F.R.D. 124 (S.D.N.Y.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Kelley v. Galveston Autoplex*,
    196 F.R.D. 471 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*King v. California*,
    784 F.2d 910 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Laster v. T-Mobile, Inc.*,
    407 F.Supp.2d 1181, 1194 (S.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507(9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Lewallen v. Medtronic USA*,
    2002 WL 31300899 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25

*Lozano v. AT&T Wireless Services*, LLC,
    504 F.3d 737(9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Perrone v. General Motors Acceptance Corp.*,
    232 F.3d 433 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Peterson v. H & R Block Tax Services*,
    174 F.R.D. 78 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Plascencia v. Lending 1st Mortgage*,
    2008 WL 1902698 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Robinson v. Lorillard Corp.*,
     444 F.2d 792 (4th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*Santa Maria v. Pac. Bell*,
     202 F.3d 1170 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n*,
     791 F.2d 699 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
     323 F.3d 32 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Williams v. Gerber Products Co.*,
     523 F.3d 934 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATE CASES**

*Casa Herrera, Inc. v. Beydoun*,
     32 Cal.4th 336 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Diamond Multimedia Sys., Inc. v. Superior Court*,
     19 Cal.4th 1036 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Knipe v. Barkdull*,
     222 Cal. App. 2d 547 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hurtado v. Superior Court*,
     11 Cal.3d 574 (1974)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Lazar v. Superior Court*,
     12 Cal.4th 631 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mirkin v. Wasserman*,
     5 Cal.4th 1082 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Norwest Mortgage, Inc. v. Super. Ct.*,
     72 Cal.App.4th 214 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vasquez v. Superior Court*,
     4 Cal.3d 800 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Washington Mutual, FA v. Superior Court*,
     24 Cal.4th 906 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL STATUTES**

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20, 21

**STATE STATUTES**

Cal. Civ. Code § 1625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Civ. Code § 1639 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Code Civ. Proc. § 1856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**FEDERAL REGULATIONS**

12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

12 C.F.R. § 226.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**TREATISES**

Alba Conte & Newberg, *Newberg on Class Actions*,
    (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

Frankel, *Some Preliminary Observations Concerning Civil Rule 23*,
    43 F.R.D. 39, 43 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiffs set forth in their opening brief compelling evidence supporting findings both of a community of interest among members of the proposed Class of borrowers of certain Paul Financial Option ARM loans, and that all requirements for class certification under Rule 23 are satisfied.  In their opposition, Defendants raise a host of issues that are irrelevant to the true focus of this litigation: Defendants' common course of failing to disclose to borrowers, before they entered into the loans, important material information such as the fact that these are negative amortization loans and that making payments according to the payment schedule provided **will result in negative amortization.**

This consumer fraud class action is brought against Defendant Paul Financial and the subsequent purchasers and assignees of the named Plaintiff's loan (collectively "Defendants") for Paul Financial's deceptive and unfair practices in connection with the sale of the subject Option ARM loans.  In particular, the class claims seek to redress Defendants' failure to disclose critical material facts concerning the ARM loans they sold to Plaintiff and others.  As such, this consumer fraud class action is primarily, if not exclusively, based on Defendants' failures to disclose important material facts relating to the ARM loans Defendants sold to Plaintiff and all others. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667 (9th Cir.2004); *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir.1999).

**II.     ARGUMENT**

**A.      The Law Favors Class Treatment of the Types of Allegations Made in this Lawsuit.**

 Plaintiff's federal and state law claims are appropriate for class treatment. *See Amchem Products, Inc.v. Windsor*, 521 U.S. 591, 624 (1997); *see also*, *Vasquez v. Superior Court*, 4 Cal.3d 800, 814-15 (1971); accord *In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006).

Moreover, when this occurs in the event of a violation of TILA, numerous courts have  held that class treatment of a TILA claim is proper.  *See Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 117 (5th Cir.1975); *see also Goldman v. First National Bank*, 532 F.2d 10 (7th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568, 575 (N.D.N.Y.1979).

Indeed, even the authorities relied upon by Defendants actually support certification of the TILA statutory damages for the "National Class." *See, e.g., Perrone v. General Motors Acceptance Corp.*, 232

1

F.3d 433, 436 (5th Cir. 2000) ("The case law confirms that statutory damages may be imposed . . . even where no actual damages . . . the statutory civil penalties must be imposed for ... a [TILA] violation regardless of the district court's belief . . . the violation is *de minimus*.") (internal citations omitted); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 527 (E.D. Mich. 2001) ("The legislative history emphasizes that TILA provides for statutory remedies on proof of a simple TILA violation. . ."). Moreover, because 15 U.S.C. § 1640(a)(2)(B), specifically provides for the availability of statutory damages in class actions, this further evidences Congress' intent to provide a class-wide remedy in cases such as the instant action.

Moreover, Plaintiff's claim for statutory damages can readily be tried on a class-wide basis. *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003); *see also* Fed. R. Civ. P. 23(b)(2) Advisory Comm. Notes (certification under Rule 23(b)(2) is proper where "a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."). Statutory damages will automatically flow from any finding of liability since "TILA is a strict liability statute with respect to imposition of statutory damages: 'once a court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability.'" *Fabricant, supra*, 202 F.R.D. at 314 (quoting *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir.1976) (emphasis omitted).

Furthermore, where, as here, the claims arise from interpretation and application of form contracts, breach of contract claims are routinely certified as such. *See, e.g., Broad v. Rockwell Intern. Corp.*, 642 F.2d 929 (5th Cir.) (en banc) cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture agreement); *Irving Trust Co. v. Nationwide Leisure Corp.*, 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract for failure to provide charter tour services); *Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124 (S.D.N.Y.1978) (validity of general release provision of contract); *Davis Cattle Co. v. Great Western Sugar Co.*, 393 F.Supp. 1165 (D.Col.1975) (breach of contract).

### B.     The National Class Has Been Objectively Defined And Includes All Option ARM Loans Sold by Paul Financial With Certain Common Characteristics.

The class has been defined such that it encompasses an identifiable group. The touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership. Here, the National Class is defined

1  as "All individuals in the United States who, between August 29, 2006, and the date Notice is mailed to the

2  Class, have an ARM Loan that was sold or owned by Defendants which was secured by real property on

3  their primary residence located within the United States."  Determination of whether a class member is

4  included in the class can readily be determined by: (1) the Paul Financial loan documents; (2) Defendants'

5  records of ownership of the loans; or (3) documents mailed to Class members notifying them of the sale and

6  change of servicer of their loan. 15 U.S.C. 1641(f)(2). These are clearly objective criteria and, as discussed

7  above, Defendants' argument that "Plaintiff's TILA disclosures are necessarily different than those of other

8  borrowers" (Op. 2:3-4.) attempt to infuse disclosures made to those not defined to be members of the class

9  in order to confuse the issues before this court.

10        In contrast, Defendants do not dispute the central issues in this case: that the Loan Documents (Note,

11  Truth-In-Lending Disclosure Statements ("TILDS"), and Program Disclosures) attached to the Declaration

12  of Jeffrey K. Berns ("Berns Decl."), Exs., 1, and 5-9, provided by Paul Financial to Plaintiff and Class

13  members before they entered into the loans, failed to disclose objectively material information, and that this

14  issue can be readily proven on a class-wide basis.

15        Rather, than challenge this on its face, Defendants attempt to manufacture their own imprecise

16  national class by describing loans never subject to Plaintiffs' class certification motion.  While some of these

17  loans might in fact disclose that negative amortization was certain to occur, these are not the loans subject

18  to Plaintiffs' class certification motion.  Plaintiff carefully defined the loans at issue and thereby the class

19  of borrowers that make up the putative class.  Those common characteristics include:  (1) the payment

20  schedule listed on the TILDS for the first one to three years is based on an initial interest rate that is lower

21  than the one listed on that same TILDS;  (2) making payments according to the payment schedule in the

22  TILDS provided by Paul Financial will result in negative amortization in the first one to three years of the

23  note; and (3) the initial interest rate exists for only the first month of the loan.  Each of the Paul Financial

24  Option ARM loans falling within these common characteristics have been attached to the Declaration of

25  Jeffrey K. Berns, Exs. 1, and 5-9.

26    C.    **The Parole Evidence Issues Raised By Defendants Are Red Herrings and Cannot**

27          **Defeat Predominance**.

28        Defendants attempt to interject alleged statements from brokers or third parties to defeat

predominance.  However, Defendants overlook the fact that all causes of action in this action rely on the *fully integrated loan documents* that were created by Defendants and attached to the SAC.  *See, e.g.* Cal. Civ. Code §1639 ("[w]hen a contract is reduced to writing, *the intention of the parties is ascertained from the writing alone*...."); Cal. Civ. Code, §1625 (The writing, or in this case, the Loan Documents, "supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument"); *see also* Cal. Code Civ. Proc., §1856(a);Cal. Code Civ. Proc., § 1858 (Court's duty is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all.")

Moreover, the California Supreme Court has held that the type of parole evidence Defendants are attempting to offer is inadmissible, as codified at Cal. Civ. Code §§ 1625 and 1856, in that the exclusion "applies to any type of contract, and its purpose is to make sure that the parties' final understanding, deliberately expressed in writing, shall not be changed."  *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 9 Cal.Rptr.3d 97, 83 P.3d 497 (2004) (quoting 2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence § 63 at 183).  Here, the issues are whether the Loan Documents provided to Plaintiff and each class member failed to disclose: (1) that the promised low interest rate was only available for thirty days; (2) the payment rate for the first three to five years provided to Plaintiff and the Class members on the TILDS was insufficient to pay both principal and interest; (3) that negative amortization was absolutely certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendants; and (4) that loss of equity and/or loss of Plaintiff's and the Class members' residence was substantially certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendants.  What any third-party broker said or did not say to Plaintiff or Class members is irrelevant to what was disclosed within the four-corners of the loan documents.

Plaintiff's and each Class members' claims are identical, as each of the Paul Financial Option ARM loans referenced for class certification and sold during the Class Period were virtually identical.  (Mtn. at pp. 2, 3, 4, 13, 14, 16, 24; Berns Decl., Exs. 1, 5-9.)  Plaintiff does not rely on parole evidence to prove fraud.  Instead, he alleges and will prove, for example, that the standardized Loan Documents on their face omitted the statutorily mandated disclosure that the loans were certain to result to negative amortization.

4

1  This is not an individualized factual determination.  This is a common fact and a common fraudulent

2  omission that is true for each and every member of the putative class.[1]

3      Under TILA, Defendants were required to make a "clear and conspicuous" disclosure that the loans

4  were certain to result in negative amortization.  If their parole evidence argument is premised on a belief

5  that they could delegate this duty to third-party brokers, Plaintiff and the Class members adamantly disagree.

6  Where the obligation under the contract is personal or relies on the specific knowledge and skill of the party,

7  the obligation cannot be delegated.  *See generally Masterson v. Sine*, 68 Cal. 2d 222, 230-31 (1968) and

8  *Knipe v. Barkdull*, 222 Cal. App. 2d 547, 551 (1963).  Additionally, under California law, the burden of a

9  contractual obligation may not be assigned without the consent of the borrower.  *See, e.g.* Civil Code § 1457

10  ("Burden of obligation not transferable.  The burden of an obligation may be transferred with the consent

11  of the party entitled to its benefit, but not otherwise, except as provided by Section 1466.")  TILA also

12  requires that all disclosures be in writing.  Here, the Loan Documents, which are the final integrated written

13  agreement of the parties, are controlling and it is this common thread which unites Plaintiff's and the Class

14  members' interests in this action.

15      **D.    Plaintiff's Fraudulent Omission Claim Can Be Proven on a Class-Wide Basis**.

16      Plaintiff's fraudulent omission claim is also clearly suited for class-wide resolution as it is based on

17  the uniform loan documentation allegedly provided to every class member.  Centrally-organized and

18  standardized schemes to defraud consumers are paradigmatic cases for class treatment.  *See Vasquez v.*

19  *Superior Court*, 4 Cal.3d 800, 814-15 (1971); *accord In re First Alliance Mortgage Co.*, 471 F.3d 977, 991

20  (9th Cir. 2006);  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491-92 (C.D. Cal. 2006)

21  (holding that the plaintiffs' allegations that defendants used "standardized written marketing materials" to

22  deceive elderly purchasers into buying deferred annuities "adequately demonstrated a class-wide method

23  of proving reliance and causation by means of class-wide circumstantial evidence" such that common issues

24  predominated. *Id*. at 496.)  Thus, even where the scheme also included some fraudulent statements that

[1]  Other matters to which Defendant points in an effort to create individual issues are equally irrelevant and attempt to obscure the fact that Plaintiff's allegations rest on the face of Defendants' own loan documents.  For instance, this case is not about "a sales pitch" (Opp. at 30:12), and thus whether Plaintiff or any Class member received any "sales pitch" is completely irrelevant to the issues in this motion.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1  varied among individual class members, courts have found facts common to the class will still predominate.[2]

2  Since all Class members executed the same Loan Documents, variations in the enrollment process does not

3  defeat predominance.  *Id.* at 992 ("[t]hat [defendant's] fraudulent system of inducing borrowers to agree to

4  unconscionable loan terms did not consist of a specifically-worded false statement repeated to each and

5  every borrower … does not make [defendant] immune to class-wide accountability"). [3]

6         In stark contrast, Defendants rely on cases that are readily distinguishable from the facts here. Two

7  cases involved affirmative misrepresentations,  *e.g., Deitz v. Comcast*, 2007 WL 2015440 (N.D. Cal. 2007),

8  (failure to presume reliance since the case involved misleading affirmative misrepresentations); *Gartin v.*

9  *S&M NuTec, LLC*, 245 F.R.D. 429, 437 (C.D. Cal. 2007) (same); *Lewallen v. Medtronic USA*, 2002 WL

10  31300899 (N.D. Cal. 2002) (same), while a third case involved representations from multiple sources.

11  *Gonzalez v. Proctor Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007).

12         Defendants fail to appreciate that because Plaintiff's fraud claims here are based primarily on

13  Defendants' omissions, their arguments regarding the need to prove reliance on an individual basis are

14  inapposite.  As the U. S. Supreme Court explained, in a case involving allegations of a failure to

15  disclose, "positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts

16  withheld be material in the sense that a reasonable [consumer] might have considered them important in the

17  making of this decision." *Affiliate Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). *See*

18  *also In re Apte*,  96 F.3d 1319, 1323 (9th Cir. 1996)( the reliance element is satisfied by objective proof).

19  There is no question here but that it would have been important to borrowers' decisions to enter into

20

21  [2] *See, e.g.*, *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 427 (S.D.N.Y. 1986) (certifying class where
    defendant's alleged wrongful conduct occurred at the management level and observing that "[e]ven proof of a

22  material variance among the representations will not defeat the class if certain omissions, inferred from their
    absence in the [sales] literature, were common to all"); *In re First Alliance*, 471 F.3d at 991 ("[t]he exact wording

23  of the oral misrepresentations [] is not the predominant issue.  *It is the underlying scheme which demands*

24  *attention*.  Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser
    to prove the nucleus of the alleged fraud again and again.")

25  [3]  It does not even require that proof of Defendants' liability be capable of proof entirely common to the Class.

26  Indeed, it is to be expected that some individual questions will exist in most actions certified for class treatment
    under Rule 23(b)(3).  Frankel, *Some Preliminary Observations Concerning Civil Rule 23*, 43 F.R.D. 39, 43 (1967)

27  ("It is broadly implicit that a single determination by representative parties alone cannot itself decide the claims or
    defenses of all class members; it is assumed that individual questions peculiar to individual class members ... will

28  or may remain after the common questions have been finally determined.")

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1   Defendants' loans to know that negative amortization would occur when following the payment schedule

2   given to them at closing.

3       Alternatively, reliance may be presumed simply from the improbability that Class members would

4   have agreed to Defendants' loan product had they been informed of the true nature of the loan.[4]  Under

5   Defendants' view, numerous Class members willingly entered into loans that were guaranteed to cause them

6   to lose their equity in their homes for a period of three to five years until they recast at higher interest rates,

7   at which point they would likely be unable to make the significantly increased payments and be subject to

8   foreclosure.  The mere improbability of that assertion justifies a presumption of reliance.  *See, e.g., Peterson*

9   *v. H & R Block Tax Services, Inc.*, 174 F.R.D. 78, 85 (N .D. Ill. 1997), ("It is inconceivable that the class

10  members would rationally choose to pay a fee for a service they knew was unavailable . . . . The only logical

11  explanation for such behavior is that the class members relied on [defendants'] representation that they

12  could take advantage of [the service] by paying the requisite fee").  *Id.* at 85.

13      **E.     Plaintiff's UCL Claims Can Be Proven on a Class-Wide Basis.**

14      California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business

15  act or practice."  Cal. Bus. and Prof. Code § 17200.  Under the UCL, an "unfair business practice claim must

16  be evaluated from the vantage of a reasonable consumer."  *Williams v. Gerber Products Co.*, 523 F.3d 934,

17  938 (9th Cir. 2008) (citation omitted). This objective standard requires Plaintiff to show that "members of

18  the public are likely to be deceived."  *Id.* (citations omitted).  The California Supreme Court has held "that

19  these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either

20  actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"

21  *Kasky*, 27 Cal.4th at 951 (citation omitted). Thus, contrary to Defendant's argument, there is no requirement

22  under the UCL that each class member must provide reliance and causation on an individual basis.

23      While the  district courts are split on these issues, *compare  Anunziato v. eMachines, Inc.*, 402

24  F.Supp.2d 1133, 1139 (C.D. Cal. 2005), (no reliance requirement under the UCL) *with Laster v. T-Mobile,*

25  *Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D.Cal. 2005), (reliance required under the UCL in affirmative

26

27  [4]  It is patently unreasonable to conclude that Defendants would prepare and use uniform loan documents that
    failed to disclose that negative amortization was guaranteed to occur one month after Class members made their
28  very first payment on the loan, while relying on mortgage brokers to disclose this very fact.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

misrepresentation case), and, as Defendants point out the certain issues are before the Supreme Court, a key difference between the issues before the California Supreme Court and those raised here are that the former involve *affirmative misrepresentations,* whereas this case challenges material *omissions*. Whether borrowers saw and relied on statements that were never made (as here) is not and cannot be the test for omissions claims, because this is conceptually impossible. Instead, the test for omissions cases is whether the undisclosed and omitted information was material, *e.g.*, if it had been disclosed, "one would have behaved differently." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092-93 (1993).

Defendants' reliance on *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1018, is misplaced as the court was merely recognizing that class actions aggregate individual claims, and, thus, if a specific form of relief is unavailable to the named plaintiff, then that relief remains unavailable to the class. The same is true for Defendants' citation to *Zelman v. JDS Uniphase Corp.*, 376 F.Supp.2d 956, 966 (N.D. Cal. 2005), as the identified portion of that case was merely describing "[t]he purpose of defining a plaintiff class, through dates or otherwise, is to limit the class of plaintiffs to those ascertainable individuals who have standing to bring the action. *See* Alba Conte & Herbert Newberg, 1 *Newberg on Class Actions* §§ 2.3 (4th ed. 2002) (addressing class definition, scope, and member identification), 6.4 (addressing prefiling definition of plaintiff class)."

Defendants' reliance on *Endres v. Wells Fargo Bank*, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008), also misses the mark. In *Endres*, the plaintiffs filed a class action lawsuit seeking restitution and disgorgement of all profits gained by the defendant on payments of allegedly improper fees and charges on the bank's "College Visa Credit Card." *Id*. at *1. In particular, through statements and various marketing brochures provided to them by bank employees, the plaintiffs alleged that Wells Fargo did not disclose certain overdraft charges, that the amount transferred from the credit card to their checking account would be the minimum to cover the overdrafts and not a larger amount that would protect from becoming overdrawn the following day (if additional checks were presented for payment), that defendant failed to disclose that the contract would be enforced in Nevada or South Dakota, and that defendant failed to inform them of the consequences of applying these states laws in lieu of California law. *Id*. Unlike the instant case, where Plaintiff alleges that Defendants failed to disclose material facts, the plaintiffs in *Endres* argued that Wells Fargo's disclosures "disclosed the cost and the method of transferring funds from the credit card to the

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1   checking account." *Id.*

2       Defendants' reliance on *In re Paxil Litig.,* 218 F.R.D 242, 246-47 (C.D. Cal. 2003), is also

3   misplaced.  In *Paxil*, past and current users of the drug who allegedly experienced negative withdrawal

4   symptoms brought suit against the manufacturer, alleging, *inter alia*, that it had engaged in unfair and

5   fraudulent practices in violation of the UCL.   In particular, the plaintiffs alleged that, although the

6   defendant knew about these symptoms, "its advertising campaigns as well as its sales force deliberately

7   downplayed these concerns, to the detriment of the consuming public."  *Id.* at 244.

8       In sum, none of the cases cited by Defendants supports their argument that Plaintiff and Class

9   Members here asserting fraudulent *omission* claims must do the impossible by proving individual reliance

10  on a representation that was never made.

11      **F.      Plaintiff's Breach of Contract Claim Can Be Proven on A Class-Wide Basis.**

12      Where, as here, the claims arise from interpretation and application of form contracts, breach of

13  contract claims are routinely certified as such.  *See, e.g., Broad v. Rockwell Intern. Corp.*, 642 F.2d 929 (5th

14  Cir.) (en banc) cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture

15  agreement); *Irving Trust Co. v. Nationwide Leisure Corp.*, 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract

16  for failure to provide charter tour services); *Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124

17  (S.D.N.Y.1978) (validity of general release provision of contract); *Davis Cattle Co. v. Great Western Sugar

18  Co.*, 393 F.Supp. 1165 (D.Col.1975) (breach of contract).

19      Trial of the breach of contract claim will involve interpretation of standardized loan documents.

20  Moreover, Defendants' breach will uniformly involve whether Defendants applied the payments according

21  to the contracts' terms, which necessarily will be based on Defendants' loan payment application policies

22  and procedures.  Thus, Defendants' liability will be determined based upon evidence common to the class

23  and that decision will be the same for the named Plaintiff and Class members alike.  Thus, Plaintiff's breach

24  of contract cause of action presents a paradigmatic case for certification.

25      In arguing against class certification,  Defendants contend that each class member's claim requires

26  individualized inquiries (Opp. at 36-37), but Defendants ignore the fact that these inquiries involve

27  substantively identical loan note and payment statement documents.  To demonstrate the contract, their own

28  performance, Defendants' breach, and damages, Plaintiff and Class members will rely on Defendants'

standardized loan note setting forth identical obligations, as well as standardized payment statements setting forth Defendants' breach of these identical obligations. This inquiry is the same for Plaintiff and each Class Member: (1) whether Defendants promised in their loan note that "I will pay principal and interest by making a payment every month;" (2) whether Plaintiff and Class Members ever made such a payment; (3) whether Defendants applied part of such payment to drawing down the loan principal; and (4) the resulting damages from Defendants' failure to do so. Defendants in their opposition characterize these inquiries as "individualized," but they fail even to assert, let alone demonstrate, how this inquiry is any different from one Class Member to another.

The fact that these claims involve individual payment histories under identical loan note obligations does not distinguish this case from any case where a court has certified claims for breach of a standardized consumer contract. *See*, *e.g.*, *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st Cir. 2003) (reversing district court's decertification of class, holding that: "The common factual basis is found in the terms of the contract, which are identical for all class members. The common question of law is whether those terms precluded defendant from charging for incoming calls."); *Gunnells v. Healthplan Serv's, Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) ("Whether TPCM breached its contract to administer and timely pay claims under the plan, . . . are issues common to all potential class members, and do not require any individualized inquiry.")

Indeed, if the Court were to embrace Defendants' bare-bones argument and assertions about individualized inquiries in the face of Plaintiff's contrary evidence showing identical loan documents, it would be impossible for a court *ever* to certify breach of contract claims for class-wide resolution. Class certification is the most efficient means of resolving the ultimate question of Defendants' liability to Plaintiff and the Class. *See, e.g., Lozano v. AT&T Wireless Services*, LLC, 504 F.3d 737(9th Cir. 2007); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507(9th Cir. 1978); *Smilow*, *supra*, 323 F.3d at 42 ("[T]he fact that prospective class members signed nearly identical consumer contracts might, in itself, satisfy the predominance requirement.").

**G.    Plaintiff's Tortuous Breach of the Implied Covenant of Good Faith and Fair Dealing  Claim Can Be Proven on A Class-Wide Basis.**

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In*

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

*re Vylene Enters., Inc.*, 90 F.3d 1472, 1477 (9th Cir. 1996) (citation omitted).  The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000).

Here, Defendants contend that Plaintiff's tortious breach claim is based upon the same conduct as is his breach of contract claim (Brief at 37).  If this were correct, then Defendants' arguments against certifying Plaintiff's tortious breach claim would fail for largely the same reasons as do their arguments on breach of contract.  Defendants again contend that individualized inquiry into each Class member's payment history is necessary to adjudicate these claims (Brief at 37), but again fail to address Plaintiff's demonstration that this inquiry is identical for each class member because it involves a determination of whether Defendants breached a standardized loan note promise to apply each monthly payment towards principal and then failed to do so using standardized payment statements.

Likewise, Defendants' attempt to distinguish the California Court of Appeals' certification of a good faith and fair dealing claim in *Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128, 141 (1983), amounts to little, because Defendants do not and cannot show how this authority creates individualized issues that preclude certification.  *Lazar* held in certifying this claim for class-wide treatment that the trial court had "erroneously assumed reliance of the class members was an element of that claim" when in fact "[t]he essence of the good faith covenant is objectively reasonable conduct."  *Id.  Lazar* thus demonstrates that Plaintiffs' tortious breach claim involves a uniform determination of objective reasonableness.

Finally, Defendants' assertion that "[c]ertification of plaintiff's tortious breach of the implied covenant claim is inappropriate as such claims do not extend beyond the insurance context" (Brief at 38 n.1) is an entirely merits-based argument that, to the extent it has any bearing, *supports* certifying the class, because whether the tortious breach claim applies at all to Plaintiff's and class members' home mortgage loans is a common question of law for the entire class.

Of course, Plaintiff believes that this assertion fails even on its own terms as a merits argument.  Tort recovery for breach of contract is permissible where there is a violation of "an independent duty arising from principles of tort law."  *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 102 (1995) (citation omitted).  *See Celador Intern. Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 852 (C.D. Cal., 2004).  A breach of the implied covenant of good faith and fair dealing involves something more than breach of the

1  contractual duty itself.  *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1394

2  (1990).  It involves unfair dealing, whether or not it also constitutes breach of a consensual contract term

3  prompted by a conscious and deliberate act that "unfairly frustrates the agreed common purposes and

4  disappoints the reasonable expectations of the other party." *Id.* at 1395.

5       In *Guz*, *supra*, the court stated that the purpose of the implied covenant of good faith and fair dealing

6  was "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits

7  of the agreement actually made."  24 Cal.4th at 349. *Guz* gives the example of an employer terminating an

8  at-will employee (not itself a breach of contract) in order to cheat the worker out of another contract benefit

9  to which he or she is clearly entitled, such as compensation already earned.  *Id.* at 353 n.18.  *Guz* does not

10  imply that the employee could not also sue for breach of contract based on the failure to provide

11  compensation.  This is true even though the claims would be based on the same facts (failure to provide

12  compensation) and would claim the same damages (lost wages, etc.). The example can be distinguished

13  from a situation in which the employer terminates an at-will employee, and the employee claims that: (1)

14  she was not at-will, and so a contract was breached; and that (2) the termination violated the covenant of

15  good faith and fair dealing.  *See id.* at 349-50.

16       Here, Plaintiff contends in part that the Defendants violated the contract by failing in any way to

17  apply Plaintiff's and Class Members' monthly payments towards the principal balance of their loans.  (SAC

18  ¶¶169-173).  However, even if the fact finder concludes that the consensual terms of the contract did not

19  impose such obligations on Defendants, the fact finder could still conclude that the actions of Defendants

20  frustrated the benefit of the contracts for Plaintiff and Class Members, *see* Celador Intern. Ltd. v. Walt

21  Disney Co., 347 F.Supp.2d 846, 852 (C.D. Cal., 2004), by depriving them of the principal benefit of a

22  mortgage loan, i.e. ownership in their homes.  *Cf. Suburban Sav. and Loan Ass'n v. Commissioner of*

23  *Banking*, 375 A.2d 1185, 1188 (N.J. Super. Ct. App. Div. 1977) ("Traditionally, savings and loan

24  associations were mutual banks whose essential purposes were to encourage thrift by mutuality of

25  ownership ***and to encourage home ownership by the making of first mortgage loans*** . . .") (emphasis

26  added).  In failing to apply Plaintiff's or Class Members' monthly mortgage payments towards the principal

27  on their loans, Defendants violated the implied covenant of good faith and fair dealing by depriving forcing

28  Plaintiff and Class Members to lose equity and eventually ownership of their homes.

**H.      Any Individual Issues Concerning the Calculation of Damages Do Not Preclude a Finding of Predominance.**

Claimed differences in class members' damages do not preclude class certification.  *See Parra v. Bashas', Inc.*, 636 F.3d 975 (9th Cir. 2008); *see also Staton v.Boeing Co.,* 327 F.3d 938 (9th Cir. 2003).  Notwithstanding this well-established authority, Defendants try to oppose certification on the grounds that "damages calculations - if the Court requires re-allocation of mortgage payments to principal and interest - would be overwhelming." (Op. at 39).  This contention is wrong as a matter of law and fact.

In addition to the countless cases rejecting arguments that damages determinations defeat class certification, the simple facts of this case refute Defendants' contentions.  The relief Plaintiff and Class members seek is the return of all negative amortization from Defendants to borrowers.  The calculations involved in determining this relief for the class are few and simple: (1) for those borrowers who made only minimum monthly payments, their loan balance will be reset to the original amount they borrowed; (2) for borrowers who made more than the minimum monthly payments, those payments will be reapplied with the minimum monthly payment amount satisfying interest and all additional portions of payments being applied to principal reduction; and (3) finally, for borrowers who have refinanced out of their Option ARM loans, they shall receive a return of all the negative amortization that they incurred and paid.

Thus, far from "overwhelming" the Court, Plaintiff's and the Class members' damages are perfectly amenable to class-wide resolution.  *See*, *e.g.*, *Allapattah Serv's, Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1313 (S.D. Fla. 2001) ("The case law supports the calculation of compensatory damages [to which prejudgment interest will apply] through a common mathematical factor in a class context.").  Moreover, the fact that these calculations will yield varying damages totals for different class members does not preclude certification.  *See Blackie*, *supra*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment.") (citations omitted); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[I]t may be that if and when the defendants are determined to have violated the law, separate proceedings of some character will be required to determine the entitlements of the individual class members to relief. . . . That prospect need not defeat class treatment of the question whether the defendants violated [the law].").

In sum, none of Defendants' arguments on damages precludes certification of the proposed classes.

1    To the contrary, the fact that Class members' damages are derived through one of three simple calculations

2    only underscores the amenability of this case for class-wide treatment under Rule 23.

3    **I.    The Merits of Whether HSBC's Is Liable to Plaintiff and the Class Can, and Should,**

4    **Be Determined on a Class-wide Basis.**

5    This final argument raised by Defendants in opposition to class certification is "briefed" in two short

6    paragraphs tacked onto the final page.  Defendants assert that HSBC Bank should not be included in this

7    action, because it is not liable for the fraudulent scheme alleged by Plaintiff.  Defendants also summarily

8    argue that HSBC is not liable to Plaintiff due to its trustee status in this case.  Defendants thus attempt to

9    skip over the class certification procedure and move straight to a merits determination.

10   This attempt to adjudicate the merits of the underlying action at the class certification stage is

11   improper.  It is axiomatic that a motion for class certification is procedural in nature and "a preliminary

12   factual determination of the merits of a claim in connection with the certification of a class is improper."

13   *Sullivan v. Chase Inv. Svc. of Boston, Inc.*, 79 F.R.D. 246, 264 (citing *Eisen v. Carlisle & Jacquelin*, 417

14   U.S. 156, 177-178 (1974)); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996)

15   (merits determination is not part of class certification analysis).  The merits of HSBC's liability to Plaintiff

16   and Class members thus cannot preclude the Court from certifying the proposed Class.

17   Moreover, Defendants' argument that HSBC cannot be liable to Plaintiff or Class members with

18   mortgages for which HSBC is the trustee actually *favors* class certification.  The determination of HSBC's

19   liability presents questions of law applicable to the claims of Plaintiff *and* the Class.  If HSBC is found not

20   liable to Plaintiff, then that determination will apply not only to Plaintiff's individual claim, but also to the

21   claims of all similarly situated Class members.  Defendants' argument that HSBC did not engage in the

22   fraudulent scheme alleged by Plaintiff, or that a trustee is somehow immune from liability, actually supports

23   certification because the same determinations are needed to adjudicate HSBC's liability, if any, to Plaintiff

24   and Class members alike.  Thus, Defendants' argument only adds to the already long list of issues

25   supporting the predominance requirement in favor of class certification.

26   In any event, Defendants' argument that there is no basis for finding liability against HSBC has no

27   merit.  HSBC is the trustee of Plaintiff's and putative Class Members' loans.  Plaintiff alleges that the

28   Option ARM loans at issue, including Plaintiff's loan, and all rights and interest thereunder were assigned

1    to the Trustee, HSBC.  (SAC, ¶ 6, 9, 20).  The Option ARM loan that Paul Financial originated to Plaintiff

2    was then sold as part of a pool of loans held by Defendant HSBC Bank as trustees of the Luminent Trust

3    2006-2. (SAC, ¶20; Def. HSBC resp. to interrogatories, nos. 1,13)  Plaintiff further specifically alleged that

4    *all* defendants, including HSBC, engaged in a scheme to defraud Plaintiff and the Class, engaged in unfair

5    and fraudulent business practices, and committed fraudulent concealment.  (See, e.g., SAC, ¶¶ 134-138,

6    147-155)  Plaintiff adequately alleges claims for which HSBC may be held liable based on its own

7    participation and misconduct.

8         Further, the SAC also alleges violations of TILA, under which HSBC may be held liable.  TILA

9    provides that "*any* civil action against a creditor . . . with respect to a consumer credit transaction secured

10   by real property may be maintained against any assignee of such creditor. . . "  15 U.S.C. § 1641(e)

11   (emphasis added).  Even though HSBC may not have been the original creditor, as trustee of the subsequent

12   holder of Plaintiff's mortgage, it may be held liable for Plaintiff's claims as it certainly should have been

13   aware of the nature of the loans when it became the Trustee.  *See, e.g., Craven v. Litton Loan Servicing, LP*,

14   2005 WL 2333585 at *3 (W.D. Mich. Sept. 23, 2005).

15        Plaintiff has alleged a number of bases for finding liability against HSBC in this action. The

16   determination of HSBC's liability presents common questions of fact and law, and thus lends further support

17   for class certification in this case.

18        **J.    Plaintiffs' State Law Claims May Properly Include Non-California Borrowers.**

19        Plaintiffs have proposed a Category I and II Class.  Paul Financial has objected to the inclusion on

20   Non-California borrowers, ignoring the fact that they would retain the benefits of their wrongful conduct

21   absent certification.  Clearly, any problems which might arise in the management of a class action do not

22   justify a judicial policy that would permit Defendant to retain the benefits of its wrongful conduct and to

23   continue its conduct with impunity.  (*See Fletcher v. Security Pacific Nat'l Bank*, 23 Cal.3d 442, 451 (1979)

24   ("We do not deter indulgence in fraudulent practices if we permit wrongdoers to retain the considerable

25   benefits of their unlawful conduct.").  Moreover, any difficulties in management are of significance only

26   if they make the class action a less fair and efficient method of adjudication than other available methods.

27   (*In re Antibiotic Antitrust Litig.* (S.D.N.Y. 1971) 333 F.Supp. 278, 282).

28

1

2

3

        1.      **Because Paul Financial is Headquartered in California, And The Conduct in Question Emanates From California, It is Constitutionally Permissible to Apply California Law to the Claims of Non-Resident Class Members.**

4          Fortunately, it is constitutionally permissible for a state to apply its law to the claims of a national

5 class if the plaintiff shows that "significant contact or significant aggregation of contacts to the claims of

6 each class member such that application of the forum law is not arbitrary or unfair" and "so long as the

7 interests of other states are not found to outweigh California's interest in having its law applied."

8 *Washington Mutual, FA v. Superior Court*, (2001) 24 Cal.4th 906, 921 (quoting *Phillips Petroleum Co v.*

9 *Shutts*, 472 U.S. 797, 821-22 (1985)).

10          In *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222 (1999), the Court of Appeal

11 upheld the certification of a class of Category I and II  borrowers who were subjected to the defendant's

12 forced placement insurance ("FPI") scheme.  As here, the *Norwest* Category I Class included California

13 residents irrespective of whether defendant's activities occurred in California or elsewhere.  *Id*.  Similarly,

14 the *Norwest* Category II class included non-California residents since defendant's conduct  relating to the

15 purchase of FPI occurred in California.  *Id.*

16          Citing the Supreme Court's decision in *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.

17 4th 1036, 1063-1064 (1999), *Norwest Mortgage* held that "[t]he linchpin of [the] analysis is that [California

18 law and its] remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct

19 *occurring in California*."  *Norwest Mortgage,* 72 Cal.App.4th at 224-25 (emphasis added).  In reaching this

20 conclusion, *Norwest Mortgage* observed that the *Diamond Multimedia* court emphasized that there is no

21 constitutional impediment to permitting non-Californians a right of action under California's laws "because

22 California has a 'clear and substantial preventing fraudulent practices *in this state* ... [and] a legitimate and

23 compelling interest in preserving a business climate free of fraud and deceptive practices."  Accordingly,

24 California  has a legitimate interest in "extending state-created remedies to out-of-state parties harmed by

25 wrongful *conduct occurring in* California" *Id.*

26          In *Washington Mutual*, the California Supreme Court also cited its decision in *Clothesrigger v. GTE*,

27 191 Cal. App. 3d 605 (1987), which found sufficient contacts with California to allow constitutional

28 application of California law to claims by a nationwide class where: 1) defendant did business in California;

1    2) its principal offices were located in California; 3) a significant number of class members were located

2    in California; and 4) defendant's agents who prepared the promotional and advertising literature at issue in

3    the case did so in California, so that "the alleged fraudulent misrepresentations forming the basis of the

4    claim of every [class member] nationwide emanated from California." *Id*. at 613.

5             **2.    Defendants Have Failed to Identify Any Actual Conflict or Establish that**

6                    **Any other State has A Superior Interest In having Its Own Laws Applied.**

7             Defendants assert that the laws of several states allegedly conflict with California's consumer

8    protection statues. (*See* Op. at 29 n.12.)  However, on examination, Defendants "confuse[] two completely

9    independent state interests: (1) the state interest involved in *creating* a cause of action for [consumer fraud]

10   so as to provide *some* recovery; and (2) the state interest in involved in *limiting* the *amount* of that

11   recovery." *Hurtado v. Superior Court*, 11 Cal.3d 574, 582 (1974).  Further, Defendant sweepingly asserts,

12   without factual support, that the alleged "variances in state law will predominate over alleged common

13   issues as to non-California borrowers." (Op. at p. 29, fn. 12.)  However, as the California Supreme Court

14   has held, the foreign law proponent, Defendants, "must demonstrate that the [foreign law] will further the

15   interest of the foreign state ..."  (*Wash. Mutual, supra* at 919; *see also*)[5]

16           Here, all that Defendants have done is vaguely reference several other states where defendant has

17   "funded" loans. (Tussey Decl., ¶ 10.)  However, Defendants have *failed* to show that any of these other

18   allegedly interested states have *any* interest in denying their residents a recovery from Paul Financial, a

19   California corporation, that is headquartered in California, concerning conduct that occurred in and

20

21   _____

     [5] "California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain

22   the most appropriate law applicable to the issues where there is no effective choice-of-law agreement...." *Wash.
     Mutual, supra* at 919 (citations omitted).  "Under the first step... the foreign law proponent [here the Defendant]

23   must identify the applicable rule of law in each potentially concerned state and must show it materially differs
     from the law of California." *Wash. Mutual, supra* at 919. "[S]o long as the requisite significant contacts to

24   California exist, a showing that is properly borne by the class action proponent, California may constitutionally
     require [Defendants] to shoulder the burden of demonstrating that foreign law, rather than California law, should

25   apply to class claims." (*Wash. Mutual, supra* at 921, fn. omitted; *see also Wersherba, supra* at 241-242 citing
     *Clothsrigger, supra* at 614).  However, "the fact that two or more states are involved does not in itself indicate

26   that there is a conflict of laws problem." *Id*. at 919-920.  If "the trial court finds the laws are materially different,
     it must proceed to the second step and determine what interest, if any, each state has in having its own law applied

27   to the case." *Id*. at 920.  "This means the trial court may properly find California law applicable without
     proceeding to the third step in the analysis if the foreign law proponent [Defendants] fails to identify any actual

28   conflict or to establish the other state's interest in having its own laws applied." *Id*.

1    emanated from this state.  Moreover, because Paul Financial is a California corporation and *not* a resident

2    of any of the states it has identified, the other states identified by Defendant have absolutely "no interest

3    whatsoever in the application of [these] limitation[s]."  (*Hurtado*, 11 Cal.3d at 581.)  As succinctly stated

4    by the California Supreme Court, "when the defendant is a resident of California and the tortious conduct

5    giving rise to the ... action occurs here, California's deterrent policy of full compensation is clearly advanced

6    by application of its own law." (*Hurtado*, 11 Cal.3d at 584.) Indeed, "California's more favorable laws may

7    properly apply to benefit nonresident plaintiff's when their home states have no identifiable interest in

8    denying persons such full recovery."  (*Closthrigger v. GTE*, 191 Cal.App.3d 605, 616 (1987) citing

9    *Hurtado*, 11 Cal.3d at 580-581.).

10           **3.      California Has a Superior Interest in Having Its Laws Apply to this Case.**

11           Even if Defendants satisfied their burden of showing conflicts between the laws of interested states,

12   they failed to demonstrate that a foreign state's law should apply rather than California law.  In fact,

13   California clearly has a superior interest in preventing fraud and deception from occurring in and emanating

14   from this state. (*Wersherba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 243 (2001)).

15           In *Wersherba*, for example,  plaintiffs brought claims on behalf of a nationwide class alleging that

16   Apple had wrongfully discontinued free telephone technical service support that Apple had promised in its

17   advertising in violation of California's consumer protection statutes and other laws.  (*Id.* at 231.) The Court

18   of Appeals affirmed certification of the nationwide class, *rejecting* defendant's arguments that "applying

19   California's unfair business practice law to residents of other states does not further any legitimate interest

20   of this state and interferes with protections available under the law of other states, which might offer greater

21   relief." (*Id*. at 241-43.)

22           Here, since Paul Financial is a California corporation, headquartered in this state, and is being sued

23   for conduct that occurred in and/or emanated from this state, this Court may properly apply California law

24   to Category I and II Classes.  Category I and II classes are well suited for maintenance as a class action,

25   especially since Defendant Paul Financial, the originator of the loans, is, and was headquartered in San

26   Rafael.

27           **K.      Plaintiff's Claims are Typical of Those of the Putative Class.**

28           "The commonality and typicality requirements ... tend to merge," because both focus on the

---

18

similarities in claims across the class. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982). The typicality requirement means the named plaintiffs' claims are "reasonably coextensive" with the absent class members' claims, even if the claims are not "substantially identical." *Hanlon*, 150 F.3d at 1020; *Sepulveda*, 237 F.R.D. at 242. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Data Products Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The need to calculate individual damages does not defeat typicality. *Blackie*, 524 F.2d at 905.

Here, each of the Loan Documents at issue (Berns Decl, Exs. 1, and 5-9) all have the same common failures to disclose. Thus, while not required, the claims of the named Plaintiff are identical to the claims of the putative Class members. Moreover, the measure of damages for the named Plaintiff will be the same for each putative Class member. Plaintiff therefore fulfills the typicality requirement and Defendants have not brought forth any valid arguments that Plaintiff's claims are not typical on the claims of the absent Class members.

**L.     Plaintiff is an Adequate Representative Of The Proposed Classes.**

The Ninth Circuit applies a two-pronged test to determine whether the named plaintiff can fairly and adequately represent the class. The first prong is "the named representatives must appear able to prosecute the action vigorously through qualified counsel[.]" *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The second requirement is "the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Id.*

Here, Defendants have not identified a single antagonistic or conflicting interest between the named Plaintiff and the absent Class members. Indeed, as demonstrated in Plaintiff's opening brief, Plaintiff and the putative Class members' interests are united in that Plaintiff and each Class member were sold loans with one of the two versions of the offending Loan Documents.

**M.     Plaintiff Has Standing to Represent the National TILA Class, Because Equitable Tolling of the One-Year Statute of Limitations for Statutory Damages Under TILA is Permitted.**

While unable to make the argument that Plaintiffs is not adequate to represent the class with which

1    he shares an identity of interest, Defendants resort to challenging his individual case by arguing that because

2    Plaintiff filed his TILA claim after the one-year statute of limitations he is not an adequate class

3    representative. While Defendants correctly identify that statutory damage claims under TILA are governed

4    by a one-year statute of limitations,  15 U.S.C. s 1640(e), Defendants fail to acknowledge that equitable

5    tolling saves Plaintiff's individual claim. See King, at 915 ("[T]he [one-year] limitations period in Section

6    1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may,

7    in the appropriate circumstances, suspend the limitations period until the borrower discovers or had

8    reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."

9           Here, Plaintiff did not wait an unreasonable amount of time to file suit.  In January of 2006, Plaintiff

10   refinanced his existing home loan and entered into one of Defendants' ARM loans. SAC, ¶2.) The earliest

11   Plaintiff could have been aware that negative amortization was accruing on his loan was several months

12   later when he received his billing statement, or as the principal balance increased.  Although Plaintiff

13   realized that his principal balance was increasing within 3 or 4 months of receiving the loan (Jordan Dep.

14   Tr., 57:2-10, Arbogast Decl., Ex. 3), it was not until after a small claims suit in late 2006 over a broker

15   rebate that Plaintiff realized that there were other issues with his loan (*Id.* at 106:19-23).  These other issues

16   included: (1) failure to disclose the true interest rate of the loan (12 C.F.R. § 226.19(b)); (2)  failure to

17   disclose the interest rate underlying the payment schedule in violation of 12 C.F.R. §§ 226.17 and 226.18

18   (SAC, ¶¶ 68-80); and (3) failure to disclose that the initial interest rate offered on Plaintiff's loan was a

19   discounted rate in violation of § 226.19(b)(2)(v) (SAC ¶¶ 99-107).  Notwithstanding the factual issue of

20   whether Mr. Jordan became aware three to four months after his loan closed of whether Paul Financial

21   disclosed that this was, in fact, a negative amortization loan, these other TILA violations, in addition to Paul

22   Financial's failure to disclose negative amortization, have been alleged, and each entitles Plaintiff to

23   statutory damages under TILA. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.

24   1986).

25          The hearing on Plaintiff's small claims suit was on November 17, 2006 (*Id.* at 84:5- 7).  Because

26   Plaintiff did not become aware of these other TILA violations until after this hearing, it is appropriate to

27

28

1   equitably toll the statute of limitations based on the discovery of these other TILA violations alone.[6]

2   Plaintiff filed his suit in August 2007, within a year of his discovery of the potential claims, and could not

3   have reasonably known of it sooner. Because Plaintiff could not reasonably know of the existence of a

4   possible claim, his statute of limitations is appropriately subject to equitable tolling. *Santa Maria v. Pac.*

5   *Bell*, 202 F.3d 1170, 1178 (9th Cir.2000).

6       The cases Defendant cites are readily distinguishable. *See, e.g.*, *Santa Maria v. Pac. Bell*, 202 F.3d

7   1170, 1176 (9th Cir. 2000) (focus of equitable estoppel analysis is "on the plaintiff's excusable ignorance

8   of the limitations period and on lack of prejudice to the defendant."); *Jefferson v. Sec. Pac. Fin. Servs. Inc.*,

9   161 F.R.D. 63, 70 (N.D. Ill. 1995), (denying a motion to certify a class for statutory damages under TILA,

10  because the plaintiff did not file suit until more than three years after the statute of limitations precluded his

11  claim); *Kelley v. Galveston Autoplex*, 196 F.R.D. 471, 478 (S.D. Tex. 2000), (because plaintiff knew that

12  most class members' claims fell outside the one-year statute of limitations under 15 U.S.C. § 1640(e), he

13  sought to equitably toll these class members' claims. The court held that equitable tolling of the class's

14  claims involved individual determinations, and ruled against certification. *Id.* at 477-478). However, here

15  the proposed class members are within the one-year statutory period.)

16      As a result, Defendants' argument that the application of equitable tolling will present many

17  "individualized issues" ~~also~~ is without merit. The National Class is defined within the one-year statute of

18  limitations for the filing of this action (from August 29, 2006, to the date Notice is sent to the Class) and

19  thus there can be no individual issues with respect to for the National Class. Indeed, any borrower who falls

20  outside of this liability period may still bring suit on an individual basis against Defendants for statutory

21  damages, and then show that equitable tolling should apply. Therefore, such borrower's rights will not be

22  prejudiced by the National Class being certified.

23      **N.    Certification Under Rule 23(b)(2) is Appropriate.**

24          **1.    Hybrid 23(b)(2) and 23(b)(3) Classes Are Permissible.**

25      Classes may be certified under Fed. R. Civ. Proc. 23(b)(2) where perquisites for general class

26

---

27  [6] The *King* court held that "[t]he district courts... can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period

28  accordingly." *Id.*; *see also Plascencia v. Lending 1st Mortgage*, No. 07-cv-04485-CW, --- F.Supp.2d ---, 2008 WL 4544357, at *5-6 (N.D. Cal. Sept. 30, 2008) (same).

1   certification under Fed. R. Civ. Proc. 23(a) have been met and the relief sought is predominantly equitable

2   in nature, seeking "final injunctive relief or corresponding declaratory relief [which] is appropriate

3   respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2).  Contrary to Defendant's contention, a request

4   for monetary relief does not automatically defeat certification under Rule 23(b)(2). *See, e.g., Robinson v.*

5   *Lorillard Corp.*, 444 F.2d 792, 801-802 (4th Cir. 1971).  Rather, Courts have permitted bifurcated or

6   "hybrid" approaches when a (b)(2) class seeks monetary as well as injunctive or declaratory relief.  "In such

7   as case, the court may adopt a "hybrid" approach, certifying a (b)(2) class as to the claims for declaratory

8   or injunctive relief, and a (b)(3) class as to the claims for monetary relief, effectively granting (b)(3)

9   protections including the right to opt-out to class members at the monetary relief stage." *Eubanks v.*

10  *Billington*, 110 F.3d 87, 96 (C.A.D.C. 1997).[7]

11              **2.    The Reallocation of Payments Sought By Plaintiff Is an Equitable Remedy.**

12          A class may be certified under Fed. R. Civ. P. 23(b)(2) where the four prerequisites for class

13  certification under Fed. R. Civ. P. 23(a) have been met and the relief sought is predominantly equitable in

14  nature, seeking "final injunctive relief or corresponding declaratory relief [which] is appropriate respecting

15  the class as a whole."  Fed. R. Civ. P. 23(b)(2).  There is no question that "Rule 23(b)(2) classes are not

16  prohibited from seeking monetary relief," and that the only impediment to "certification of such classes is

17  ... where the monetary relief sought predominates over the injunctive relief being sought" *In re Paxil Litig.*,

18  218 F.R.D. 242, 247, citing Advisory Comm. Notes to Rule 23 (1966); *Doninger*, 564 F.2d 1304, 1314 (9th

19  Cir. 1977).  "Stated another way, the monetary damages must be secondary to the primary claim for

20  injunctive or declaratory relief."  *Id.* citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir.

21  1986).  "In determining whether claims for monetary damages predominate, the Court examines the specific

22  facts and circumstances of the case and determines the intent of Plaintiffs in bringing the case."  *Id.* citing

23  ─────────────────

24  [7]  Similarly, Newberg and Conte suggest that a district court may provide opt-out rights to a (b)(2) class in four
     different ways: First, ... the court could limit the Rule 23(b)(2) certification to certain issues only. Second, the

25  court could certify the injunction claims under Rule 23(b)(2) and the damages claims under Rule 23(b)(3). Third,
     the court could certify the entire class initially under Rule 23(b)(2), bifurcate the trial so that the defendant's

26  liability potentially for both forms of relief is determined initially, and reconsider the class certification category if
     the plaintiffs and the class are successful at the liability stage. Finally, the court could certify special claims or

27  issues under Rule 23(b)(2) and treat all the nondesignated claims or issues as individual or incidental ones to be
     determined separately after liability to the class has been adjudicated.  Newberg & Conte, supra, § 4.14, at 4-51 to

28  4-52.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1   *Moleski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003). "As a part of this inquiry, the Court may ask whether

2   a reasonable party would bring the suit to obtain the injunctive relief and whether the injunctive sought

3   would be both reasonably necessary and appropriate were the party to succeed on the merits." *Id.* citing

4   *Moleski*, 318 F.3d at 950 (quoting *Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147, 164

5   (2nd Cir. 2001).

6       Plaintiffs necessarily seek immediate injunctive relief to prevent the recasting of their loans and

7   foreclosures. Such relief is not only "reasonably necessary" bur urgently needed by members of the class.

8       Plaintiff further seeks to certify a Rule 23(b)(2) class of all borrowers who currently have Paul

9   Financial Option ARM loans, to pursue state law claims (e.g., fraud and UCL violations). The primary

10  remedy that Plaintiff seeks is a reallocation of payments already made to Defendants, such that negative

11  amortization improperly charged to Plaintiff and Class members is erased and the payments made by

12  Plaintiff and Class members are properly allocated to principal and interest, in accordance with the operative

13  loan documents.

14      Defendants argue that the reallocation of payments sought by Plaintiff is effectively monetary relief

15  because it seeks the "transfer of funds." Op. at 22. However, Plaintiff seeks no such transfer. If the Court

16  grants the requested reallocation of payments, Defendants will not have to pay a single penny to any

17  borrower to accomplish the reallocation. Instead, it will merely require accounting adjustments by

18  Defendants. This distinguishes the current circumstance from the case cited by Defendants, as there, if

19  plaintiffs had been successful, defendants would have had to pay money to plaintiffs. See *Burton v.*

20  *Mountain West Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 610 (D. Mont. 2003) (if plaintiffs prevailed

21  in obtaining an order compelling payment of benefits, then defendant would have to pay those benefits to

22  plaintiffs); *Eversole v. EMC Mortgage Corp.*, 2007 WL 1558512, *12 (E.D. Ky. 2007) (purported

23  injunctive relief sought to compel defendant to retrospectively give refunds to class); *In re Paxil Litigation*,

24  218 F.R.D. 242, 247 (C.D. Cal. 2003) (finding that primary relief sought was restitution).

25      Defendants also argue that Plaintiff's claim is not primarily for injunctive relief, as it does not seek

26  to "enjoin future activity." Op. at 22. That is simply incorrect. Not only is Plaintiff seeking a reallocation

27  of prior mortgage payments, but he is also seeking an order requiring Defendants to properly apply those

28  mortgage payments going forward. It is illogical to suggest that Plaintiff could prevail on his claim such

23

1   that Defendants would have to reallocate prior payments, but that they would be permitted to continue to

2   improperly allocate those payments in the future.

3       **3.      This is Not a Rescissionary Class and Notice and the Right to Opt-Out Are Not**

4           **Necessary With Respect to Those Claims Sought to be Certified Pursuant to**

5           **23(b)(2).**

6           Defendants argue that the reallocation remedy sought by Plaintiff is not appropriate for certification,

7   because it is "highly individualized." (Op. at 24.)  To make this meritless argument, Defendants improperly

8   conflate a rescission remedy with the reallocation remedy sought by Plaintiff.  For example, Defendants cite

9   to *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 574 (8th Cir. 2008), where the court reversed the

10  certification of a class seeking rescission of their loans pursuant to TILA.  There, the court held that

11  "[r]escinding a loan transaction under TILA, 'requires unwinding the transaction in its entirety and thus

12  requires returning the borrowers to the position they occupied prior to the loan agreement.'" *Id*. (citations

13  omitted).  It also held "that the rescission remedy described in § 1635 [of TILA] appears to contemplate

14  only individual proceedings …" *Id*.  Other than differing amounts, there is simply nothing individualized

15  about the reallocation process sought by Plaintiff.  Instead, it merely requires the reduction of each Class

16  members' principal balance.

17          Moreover, for a rescission class, "[e]ach class member individually would have the option of

18  exercising his or her right to rescind, and not all class members will want to do so because it requires

19  returning the loan principle [sic] in exchange for the release of the lien and any interest or other payments."

20  *Id*.  Thus, notice and a right to opt-out, which are not required under Rule 23(b)(2), are necessary to allow

21  class members to make the choice of whether or not to rescind.  Here, no Class member is going to refuse

22  a reduction in his or her principal balance.  Therefore, notice and a right to opt-out are unnecessary as to

23  those claims that are part of the 23(b)(2) class.[8]

24      **4.      The 23(b)(2) Class Is Sufficiently Homogenous.**

25          Defendants assert that the proposed injunctive relief class is not homogenous by summarizing their

26  ─────────────────────

27  [8]  Those borrowers who have already been foreclosed upon, or who have refinanced out of the Paul Financial
    loans are not part of the 23(b)(2) class, because they will require a payment of money, e.g. cannot reallocate

28  payments on a loan that no longer exists.  Similarly, they would not be subject to the injunctive relief currently
    sought.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1  arguments concerning Rule 23(b)(3) predominance.  As discussed above, the Class readily meets the

2  predominance requirement.  Moreover, the Rule 23(b)(2) cases to which Defendant cite are readily

3  distinguishable.  For example, in *Lewallen v. Medtronic USA, Inc.*, 2002 WL 31300899 *3 (N.D. Cal. Aug.

4  28, 2002), the court found that the necessary cohesiveness for a Rule 23(b)(2) class was lacking because

5  each patient's risk factors, medical history and treating physician's determination was different.  Defendants

6  try to analogize that case to the present one by arguing that each Class member's mortgage broker gave them

7  differing information.  However, the point is the each member's loan documents were in all material

8  respects the same.

9  **IV.    CONCLUSION**

10        For all of the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification.

11  DATED: January 6, 2009

12                                   **SMOGER & ASSOCIATES**

13

14                         By:    */s/ Gerson H. Smoger*
                                  Gerson H. Smoger, Esq.
15                                Steven M. Bronson, Esq.
                                  **SMOGER & ASSOCIATES, PC**
16                                3175 Monterey Blvd
                                  Oakland, CA  94602
17                                Phone:  (510) 531-4529
                                  Fax:     (510) 531-4377

18                                David M. Arbogast, Esq.
                                  Jeffrey K. Berns, Esq.
19                                **ARBOGAST & BERNS LLP**
                                  19510 Ventura Boulevard, Suite 200
20                                Tarzana, California 91356.
                                  Phone: (818) 961-2000
21                                Fax:    (818) 867-4820

22                                Christopher A. Seeger, Esq. (*Admitted Pro Hac Vice*)
                                  **SEEGER WEISS LLP**
23                                One William Street
                                  New York, NY 10004
24                                Phone: (212) 584-0700

25                                Jonathan Shub, Esq.
                                  **SEEGER WEISS LLP**
26                                1515 Market Street, Suite 1380
                                  Philadelphia, PA 19107
27                                Phone: (215) 564-2300
                                  Fax     (215) 851-8029

28  / / /

Paul R. Kiesel, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444
Fax:     (310) 854-0812

Attorneys for Plaintiff and all others Similarly Situated.

Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI