IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY M. JORDAN, on behalf of a putative class,<br><br>        Plaintiff,<br><br>  v.<br><br>PAUL FINANCIAL, LLC, *et al.*,<br><br>        Defendants.<br>_____ / | No. C 07-04496 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION and DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

On January 16, 2009, the Court heard oral argument on the plaintiff's motions for class certification and for a preliminary injunction. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the motions are DENIED.

**BACKGROUND**

The subject of this litigation is a dispute over so-called payment-option adjustable rate mortgages ("Option ARM" loans).[1] On August 30, 2007, plaintiff Gregory Jordan filed a putative class action complaint against defendant Paul Financial, LLC ("Paul Financial"). The complaint was amended twice in order to add named defendants Luminent Capital Mortgage, Inc., Luminent Mortgage Trust 2006-2, and HSBC National Association ("HSBC"), such that the operative complaint is now the Second Amended Complaint ("SAC"), which was filed on May 14, 2008.

Plaintiff has brought suit on behalf two putative classes. The California class consists of all

---

[1] Option ARM loans are also referred to as pay-option loans. They typically have an adjustable interest rate and allow the borrower to make one of several payment amounts each month. Decl. of Dennis Tussey ("Tussey Decl.") in Supp. of Def. Opp. to Pl. Mot. for Class Cert., ¶ 7.

individuals who received an option ARM loan through Paul Financial on their primary residence in California from August 30, 2003 to the present. SAC ¶ 50.[2] The national class consists of all individuals who received an option ARM loan through Paul Financial on their primary residence in the United States from August 30, 2003 to the present. *Id.*[3]

Plaintiff refinanced his existing home loan and entered into an option ARM loan agreement with Paul Financial on or about December 30, 2005. *Id.* ¶ 2. Plaintiff alleges that the loan he bought is a "deceptively devised" financial product. *Id.* ¶ 23. According to plaintiff, Paul Financial promised that the loan would have a low, fixed interest rate, but plaintiff was subsequently charged a much higher interest rate. *Id.* Paul Financial also disguised from plaintiff that his option ARM loan was designed to cause negative amortization.[4] *Id.* In addition, defendants breached their agreement to apply plaintiff's monthly payments to both the principal and interest owed on the loans. *Id.* ¶ 169. Plaintiff brought claims under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*; and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; as well as common law claims for fraud, breach of contract, and breach of the covenant of good faith and fair dealing.

As of December 22, 2008, Paul Financial's assets amounted to less than $1,000 and the company was scheduled to cease business operations on December 31, 2008. Decl. of Dennis Tussey ("Tussey Decl.") in Supp. of Def. Opp. to Pl. Mot. for Class Cert., ¶ 3. Paul Financial was in the business of originating, underwriting and funding first and second lien residential mortgage loans, and servicing those loans. *Id.* ¶ 4. Its practice was to sell approximately 75% of its loans to third-party investors, *id.* ¶ 5, and to sell the servicing rights to another investor, *id.* ¶ 26. During the period that it originated option ARM loans, Paul Financial sold the loans to about ten investors. *Id.* ¶ 27. It maintained records of the names of individuals who obtained loans from Paul Financial and the investors to whom Paul

---

[2] In his opening brief, plaintiff defines a second California class, consisting of individuals whose loans were secured by real property within the U.S. (excluding California) and approved by defendants inside California.

[3] In his opening brief, plaintiff limits the national class to those borrowers whose loans were consummated on or after August 29, 2006.

[4] Negative amortization occurs when a borrower's monthly payment does not cover the interest due on the loan. The unpaid interest is then capitalized into principal of the loan.

Financial sold those loans. *Id.* Paul Financial did not, however, keep records of subsequent sales of those loans. *Id.*

Paul Financial sold plaintiff's loan to Luminent Capital Mortgage, Inc. on January 24, 2006. *Id.* ¶ 57. The loan was pooled with other adjustable rate loans and is currently held by defendant Luminent Trust 2006-2, which is a mortgage-backed security pool. SAC ¶¶ 4-5. The trustee of the pool is defendant HSBC. *Id.* Paul Financial sold the servicing rights for plaintiff's loan to Greenwich Capital. Tussey Decl., ¶ 58. Paul Financial serviced plaintiff's loan under contract with Greenwich until December 1, 2008. *Id.*

## LEGAL STANDARD

The decision as to whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23; *see also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the requirements of Federal Rule of Civil Procedure 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23

are met. *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n.17. However, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 7.26 (4th ed. 2005). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23. *See Blackie*, 524 F.2d at 901 n.17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**DISCUSSION**

**1.     Motion to Certify Class**

**A.     Standing to represent TILA class**

Defendants argue that plaintiff does not have standing to represent the nationwide TILA class because plaintiff's TILA claim is barred by the statute of limitations. To have standing to sue as a class representative a plaintiff "must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *See Epstein v. MCA, Inc.*, 179 F.3d 641, 652 (9th Cir. 1999) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

TILA provides that "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or

4

had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Plaintiff's loan transaction was consummated in January, 2006. He brought this action on August 30, 2007. Plaintiff's claim is therefore time barred unless he can establish that he did not discover or have a reasonable opportunity to discover the purported TILA violations until August 30, 2006. Plaintiff stated at deposition that he discovered that his loan was negatively amortizing at most four months after closing, when he received his first billing statement. Decl. of David M. Arbogast ("Arbogast Decl."), ex. 4 (Jordan Depo.), Tr. 51:1-10; Decl. of Irene Freidel in Supp. of Defs. Opp. to Pl. Mot. to Certify Class, at ex. 8 (Jordan Depo.), Tr. 56:25-57:10. Plaintiff therefore concedes that he had actual knowledge of his negative amortization claim by May, 2007.

Plaintiff nonetheless argues that his claim is not time barred because he could not have discovered *other* purported TILA violations (relating to disclosure of the true interest rate of the loan and the interest rate underlying the payment schedule, and to the discounted initial interest rate) until November 17, 2006, the date of a hearing on plaintiff's small claims suit over a broker rebate. The fact that plaintiff may have other claims arising under TILA, however, does not remedy the statute of limitations bar on his negative amortization claim.[5] In addition, plaintiff does not explain why he could not have discovered the other TILA violations until the small claims action, which addressed only nondisclosure of a broker rebate. Arbogast Decl., ex. 4, 106:24-107:4. The portions of the deposition cited by plaintiff contain no information about TILA violations and do not establish that the statute of limitations should be tolled until November, 2006.

Accordingly, the Court finds that plaintiff does not have standing to represent the national class for TILA violations.

**B.  Standing to represent California classes**

Defendants argue that plaintiff is not suitable to represent the class members in the two

---

[5] Plaintiff cites *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), for the proposition that if equitable tolling applies to certain claims arising under TILA, no TILA claim can be time barred. In fact, *Santa Maria* held that plaintiff's claims for disability discrimination claim were time barred because plaintiff should have known about the possible existence of such a claim on the day he was fired. 202 F.3d at 1178.

5

California classes.[6] The first California class consists of individuals who, since August 29, 2003, have obtained an ARM loan that was sold or owned by defendants and secured by property in California; the second California class consists of those individuals who, since August 29, 2003, have obtained an ARM loan that was sold or owned by defendants and secured by property *outside* California, and approved by defendants inside California. According to defendants, plaintiff does not have standing to represent the members of these classes because he cannot satisfy the traceability requirement for standing.

Standing requires, at a minium, three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Traceability requires that there be "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant". *Id.* (internal citation and ellipses omitted). A borrower cannot establish traceability – and therefore lacks standing – if a defendant lender has *never* held the borrower's loan. *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004); *see also Dash v. FirstPlus Home Loan Owner Trust 1996-2*, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) ("As to those trusts which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and lack standing.").

Defendants argue that plaintiff cannot establish traceability because members of the putative class own loans that are held and serviced by entities other than the companies that hold and service plaintiff's loan. The Court agrees. Under *Easter*, plaintiff lacks standing to join defendants that have never held or serviced his loans. Plaintiff appears to propose conducting class discovery to identify all possible defendants, and to then join named plaintiffs who would have standing against those defendants. This unorthodox procedure reverses the traditional approach of seeking class certification on behalf of a class that is represented by named plaintiffs who have standing to represent the putative class.

---

[6] Defendants raise this issue in their discussion of the typicality requirement. The Court finds that it is more appropriately addressed as a challenge to plaintiff's standing to represent the California classes.

### C.   Rule 23(a)(3): Typicality

In light of the Court's conclusion that defendant does not have standing to represent the nationwide and California classes, the Court need not reach the requirements of Federal Rule of Civil Procedure 23. Nonetheless, in the interest of completeness, the Court will also consider whether plaintiff can satisfy the typicality requirement of Rule 23(a)(3).

Under Rule 23(a)(3), the Court must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). The named plaintiff need not have claims that are identical to those of the class members he seeks to represent, but he "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal citation omitted). A court must determine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).

Defendants argue that plaintiff's fraud claims are not typical because they are subject to unique defenses. The gravamen of plaintiff's complaint is that defendants failed to disclose material information about the nature of plaintiff's loan, including the true interest rate, the fact that the interest rate was variable, and the risk of negative amortization. Defendants argue that plaintiff cannot satisfy the typicality requirement because at deposition, he was equivocal as to whether he read the loan documents. *See* Decl. of Irene Freidel in Supp. of Defs. Opp. to Pl. Mot. to Certify Class, at ex. 8 (Jordan Depo.), 62:9-12, 65:4-8. In addition, plaintiff's mortgage broker (who was plaintiff's former colleague) attests that he explained to plaintiff that the minimum payments might not cover the interest due and that as a result, the principal balance on plaintiff's loan could increase. Decl. of Russell Ng in Supp. of Defs. Opp. to Pl. Mot. to Certify Class ("Ng Decl."), ¶ 15, 20. Plaintiff's mortgage broker also describes plaintiff as a "savvy consumer" who had purchased several properties previously and asked "a lot of questions about various mortgage products and terms." *Id.* ¶ 21. According to defendants, this evidence establishes that plaintiff is subject to the unique defense that he will not be able to prove that he relied on defendants' purportedly false representations or material omissions in the loan documents.

7

Plaintiff responds that he will prove fraud on the basis of material omissions in the loan documents provided to plaintiff, and that he therefore need not establish reliance. To the extent plaintiff must prove reliance, he also argues that reliance can be inferred.

Plaintiff's complaint reveals that his fraud claims are based on allegations that defendants made affirmative misrepresentations, not just material omissions. In his claim for fraudulent omission, plaintiff alleges that defendants had a duty to disclose material facts about the true interest rate of the loans and the likelihood that negative amortization would occur "based upon Defendants' partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur." *See* SAC ¶ 129. Plaintiff's UCL claim for unfair and fraudulent business practices alleges that defendants "marketed and advertised to the general public through brochures, flyers and other substantively identical marketing material" deceptive information about loan rates and the risk of negative amortization. *See id.* ¶ 147.

The Court agrees with defendants that plaintiff will have to prove that he relied on defendants' representations. *See Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Cal. Ct. App. 1986) (citing Cal. Civ. Code § 1710).[7] "[T]he defense of non-reliance is not a basis for denial of class certification." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). If, however, "it is predictable that a major focus of the litigation will be on a defense unique" to the named plaintiff, that plaintiff will not satisfy the typicality requirement of Rule 23(a). *Id.* Here, the evidence cited by defendants regarding plaintiff's working relationship with his mortgage broker, his prior experience with mortgage products, and the possibility that he did not read the loan documents establishes that the litigation will focus on a defense unique to plaintiff. For these reasons, the Court finds that plaintiff's fraud claims are not

---

[7] The Court cannot, as plaintiff urges, infer reliance in this case. Plaintiff argues that the Court can infer plaintiff relied on false statements about the true nature of the loan because it is highly improbable that plaintiff would have otherwise entered into a loan that would cause him to lose equity in his home and would require prohibitively high payments in the future. This case, however, is unlike *Peterson v. H & R Block Tax Services, Inc.*, 174 F.R.D. 78, 85 (N.D. Ill.1997), cited by plaintiff, in which the "only logical" explanation for the class members choice to pay a fee for a service they could not receive was that they relied on a representation by the defendant. Here, it is plausible that plaintiff signed the mortgage note because he believed it would benefit him. According to his mortgage broker, plaintiff sought a mortgage product that would reduce his monthly payments and let him "buy time" until the value of his home increased, allowing him to refinance in the future. *See* Ng Decl. ¶ 17.

8

typical of the putative class.

Defendants also argue that plaintiff's contract claims are not typical. The central allegation of plaintiff's contract claims is that defendants promised to apply his monthly payments to both the principal and interest owed on the loans, but failed to do so. Defendants contend this claim is not typical because it depends on language in his loan documents, but the members of the putative class did not sign contracts with uniform language. Plaintiff responds that class members signed "form contracts," that are "standardized loan documents," and "substantively identical." *See* Pl. Reply in Supp. of Mot. for Class Cert., at 9.

Paul Financial offered approximately forty-four types of option ARM loans. *See* Tussey Decl. ¶ 8. The promissory note that plaintiff signed provided, "I will pay principal and interest by making a payment every month." *See* SAC, ex. 1 ¶ 3(A). This language, according to defendants, is not common to all forty-four option ARM loans offered by Paul Financial. For example, one adjustable rate note stated that if the monthly payment "includes both Principal and interest, it will be applied to interest before Principal." *See* Freidel Decl., ex. 4, p. 2953. Another note provides, "Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then accrue additional interest at the rate then in effect." *See id*, ex. 5, p. 2715.

The Court finds plaintiff's characterization of putative class members' loan documents as uniform does not accord with the evidence cited by defendants. Plaintiff argues in his reply brief that the putative class is limited to those borrowers whose option ARM loans have the following three characteristics:

> 1) the payment schedule listed on the [Truth in Lending Act disclosure statement ( "TILDS")] for the first one to three years is based on an initial interest rate that is lower than the one listed on that same TILDS
> 2) making payments according to the payment schedule in the TILDS provided by Paul Financial will result in negative amortization in the first one to three years of the note
> 3) the initial interest rate exists for only the first month of the loan

Pl. Reply in Supp. of Mot. for Class Cert., at 3. At oral argument, plaintiff confirmed that he seeks to

9

1 amend his complaint to limit the scope of the putative classes.[8]  After oral argument, plaintiff filed a
2 motion to withdraw the instant motion for class certification in order to redefine the class (the most
3 recent proposed class definition is different from that described in his reply brief) and to conduct
4 discovery on "other issues" raised in defendants' opposition. [Docket No. 150]  Plaintiff's request to
5 withdraw this motion is DENIED.  Should plaintiff wish to redefine the putative class, he may seek
6 leave to file an amended complaint.  Plaintiff is directed to meet and confer with opposing counsel over
7 any discovery disputes and to file a letter brief with the Court if that process does not resolve the
8 dispute.

9 For these reasons, plaintiff cannot satisfy the typicality requirement of Rule 23(a)(3).  Plaintiff's
10 motion for class certification is DENIED.

### 2.      Motion for Preliminary Injunction[9]

Plaintiff seeks a preliminary injunction enjoining defendants from (1) offering option ARM loans with certain characteristics and (2) recasting ARM loans without first reallocating plaintiff's past payments.  Requests for preliminary injunctive relief require the movant to demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor.  *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).  In light of its denial of plaintiff's motion for class certification, the Court can apply an injunction only as to the named plaintiff.  *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1984) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

---

[8] The Court notes that plaintiff's description of the putative class in his opening brief did not include these limitations.  *See* Pl. Mot. for Class Certification, at 6.

[9] Plaintiff objects to defendants' inclusion of a three-page "addendum" to their forty-page opposition to plaintiff's motion for a preliminary injunction.  Plaintiff contends that this addition violates Local Rule 7-4(b), which requires parties to seek court approval for filings exceeding the twenty-five-page limit. While the parties stipulated to filing motions of forty pages, plaintiff's objection is well taken as defendants did not seek court approval before filing this three-page addition.  The Court GRANTS plaintiff's motion to strike Addendum A to defendants' opposition and did not consider plaintiff's fifteen-page response to Addendum A in deciding this motion.

The foregoing discussion demonstrates that plaintiff's TILA claim related to negative amortization is barred by the statute of limitations and that defendants' evidence suggests that plaintiff's fraud claim may not be viable because it subject to the defense of non-reliance. Defendants have also raised serious questions about the viability of plaintiff's contract claims. Plaintiff's claim for breach of contract appears to be based on the statement "I will pay principal and interest by making a payment every month" in plaintiff's mortgage note. *See* Tussey Decl., ex. 18, ¶ 3(A). The same section of the note, however, also provides, "Each monthly payment . . . will be applied to interest before Principal." *Id.* It is therefore uncertain that plaintiff will be able to establish that defendants breached the terms of the note when they applied plaintiff's payments only to the interest due. Accordingly, the Court finds that plaintiff has not established that a preliminary injunction is warranted in this case. After oral argument, plaintiff submitted a motion for leave to withdraw his motion for a preliminary injunction. [Docket No. 151]  Plaintiff's motion is DENIED in light of the Court's ruling on class certification.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for class certification, DENIES plaintiff's motion for a preliminary injunction, and DENIES plaintiff's motions to withdraw these motions. [Dockets Nos. 150, 151]

**IT IS SO ORDERED.**

Dated: January 27, 2009

SUSAN ILLSTON
United States District Judge