# EXHIBIT 1

# ADJUSTABLE RATE NOTE
(Monthly Treasury Average - Payment and Rate Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATE IN THIS NOTE.

July 28, 2005                    Santa Clarita                    California
[Date]                              [City]                              [State]

24658 Montevista Circle, Valencia, CA, 91354

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 409,500.00                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Paul Financial, LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of                    1.375 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Change Dates**

The interest rate I will pay may change on the first day of September, 2005                    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

The new rate of interest will become effective on each Interest Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than                    12.500 %.

**(D) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The "Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon the comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 825/1000                    percentage points (                    3.825 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

By _Kari Kenyon_                    0000413211

Form 3602 1/01

-840N (0005) Modified for Monthly Treasury Average (MTA)

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 6    Initials:

ALTA-NEGAM-1/1-03

RBS-JOR3-0006482

4

**3. PAYMENTS**

    **(A) Time and Place of Payments**

    I will pay principal and interest by making a payment every month.

    I will make my monthly payments on the first day of each month beginning on September 01, 2005.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to
interest before Principal. If, on August 01, 2035, I still owe amounts under this Note,
I will pay those amounts in full on that date, which is called the "Maturity Date."

    I will make my monthly payments at P.O. Box 7867, Santa Rosa, CA, 954070867

or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**

    Each of my initial monthly payments will be in the amount of U.S. $1,388.84                 . This amount may
change.

    **(C) Payment Change Dates**

    My monthly payment may change as required by Section 3(D) below beginning on the                 1st                 day of
September, 2006                 , and on that day every 12th month thereafter.  Each of these dates is called a "Payment Change
Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.

    I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in
Section 3(F) or 3(G) below.

    **(D) Calculation of Monthly Payment Changes**

    At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity
Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The
result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment
due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the
"Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited
Payment.

    **(E) Additions to My Unpaid Principal**

    My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient
to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If
so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my
monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder
will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added
to Principal will be the rate required by Section 2 above.

    **(F) Limit on My Unpaid Principal; Increased Monthly Payment**

    My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (                 110% ) of the
Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments
and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will
instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my
then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

    **(G) Required Full Payment**

    On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full
Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my
monthly payment on the final Payment Change Date.

This is to certify that this
and correct copy of the document
NORTH AMERICAN TITLE COMPANY

By _____

    0000413211

**MP** -840N (0005) Modified for Monthly Treasury Average (MTA)    Page 2 of 6         Form 3602
ALTA-NEGAM-1/1-03                                        Initials:        PF0131

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by

ALTA-NEGAM-1/1–

I hereby certify that this is a true and correct copy of the original. NORTH AMERICAN ___ COMPANY

_Karen Simpson_

0000413211

840N (0005)
ALTA-NEGAM-1/1-03

Page 3 of 6

BY

Form 3602 1/01
Initials:

PF01313

RBS-JOR3-0006484

delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

This is to certify that this is a true and correct copy of the original.
NORTH AMERICAN TITLE COMPANY

By _____

ALTA-NEGAM-1/1-                                                                    0000413211

840N (0005)                          Page 4 of 5                     Form 3602 1/01
ALTA-NEGAM-1/1-03                                                    PF01314

CONFIDENTIAL                                              RBS-JOR3-0006485

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)    _____ (Seal)
Josephine  Goldhaber          -Borrower    Eli  Goldhaber           -Borrower

_____ (Seal)    _____ (Seal)
                              -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                              -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                              -Borrower                            -Borrower

[Sign Original Only]

ALTA-NEGAM-1/1-                                                0000413211
   •840N (0005)                    Page 6 of 6                  Form 3602 1/01
ALTA-NEGAM-1/1-03                                               PF01315

CONFIDENTIAL                                    RBS-JOR3-0006486

Date:      July 28, 2005
Borrower(s):   Josephine  Goldhaber and Eli  Goldhaber

Loan #:     0000413211
Property Address:   24668 Montevista Circle, Valencia, CA. 91354

## PREPAYMENT PENALTY ADDENDUM TO NOTE

THIS PREPAYMENT PENALTY ADDENDUM TO NOTE IS MADE THIS   28th                              day of
July, 2005                                and is incorporated into and shall be deemed to amend
and supplement the Note made by the undersigned ("Borrower") in favor of
                                       Paul Financial, LLC
("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument,
as modified or amended, in favor of Lender dated the      28th
day of   July, 2005                                             (the "Security Instrument").

**ADDITIONAL COVENANTS:**  In addition to the covenants and agreements made in the Note, this Addendum
amends and restates Section 5 of the Note in its entirety as follows:

I have the right to make payments of Principal at any time before they are due. A payment of Principal only
is known as a "prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a full Prepayment or partial Prepayments
of my obligation. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe
under the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

If within the first   36                    months after the execution of the Note, I make any prepayment(s)
within any 12-month period, the total of which exceeds twenty (20) percent of the original principal amount of this
loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the
amount by which the total of my prepayment(s) within that 12-month period exceeds twenty (20) percent of the
original principal amount of the loan.

All other terms and conditions of the Note remain in full force and effect.

If a law, which applies to this loan and which sets a maximum prepayment charge or prohibits prepayment charges,
is finally interpreted so that the prepayment charge to be collected in connection with this loan exceeds the permitted
limits, then (i) any such prepayment charge shall be reduced by the amount necessary to reduce the charge to the
permitted limit, or (ii) if the prepayment charge is prohibited, no prepayment charge will be assessed or collected.

**ADDITIONAL NOTICE:**
**Notice to Borrower:  Do not sign this loan agreement before you read it.  This loan agreement
provides for the payment of a penalty if you wish to repay the loan prior to the date provided for
the repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment
Penalty Addendum to Note.

7 - 29 - 05                                              _____ (Seal)
Date                                                    Borrower   Josephine Goldhaber

7-29-05                                                 _____ (Seal)
Date                                                    Borrower   Eli Goldhaber

_____                        _____ (Seal)
Date                                                    Borrower

_____                        _____ (Seal)
Date                                                    Borrower

                                                       This is to certify that this is a true
                                                       and correct copy of the original.
ARM Multistate Prepayment Penalty Addendum             NORTH AMERICAN TITLE COMPANY
(ARM Plans 2 & 4 and Fixed Period ARMs)  6/2002
ALTA-NEGAM-1/1-03                                      By _____

                                                                     PF0104 - (H - 12/03)

**CONFIDENTIAL**                                                              RBS-JOR3-0006487

# EXHIBIT 2

☐ INITIAL   ☒ FINAL

# FEDERAL TRUTH-IN-LENDING DISCLOSURE

Creditor   Paul Financial, LLC
1401 Los Gamos Drive
San Rafael, CA 94903

Borrower(s)   Josephine Goldhaber
Eli Goldhaber

Loan No.   0000413211
Processor
Date of Disclosure   07/28/2005
Est. Settlement Date (Date of Closing)   08/03/2005

Mailing Address   24821 Garland
Valencia, CA 91355

| | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|
| | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| | $ 402,230.86 | $ 1,008,934.14 |

Your MONTHLY   PAYMENT SCHEDULE will be:

| # Payments | $ Payment | Beginning On | # Payments | $ Payment | Beginning On | # Payments | $ Payment | Beginning On |
|---|---|---|---|---|---|---|---|---|
| 12 | $1,388.84 | 9/1/2005 | | | | | | |
| 12 | $1,493.01 | 9/1/2006 | | | | | | |
| 12 | $1,604.99 | 9/1/2007 | | | | | | |
| 12 | $1,725.37 | 9/1/2008 | | | | | | |
| 11 | $1,854.78 | 9/1/2009 | | | | | | |
| 300 | $3,036.51 | 8/1/2010 | | | | | | |
| 1 | $3,032.04 | 8/1/2035 | | | | | | |

* Private Mortgage Insurance (PMI) premiums, if shown, are included in the amount of the periodic payments.

☐   REQUIRED DEPOSIT: The annual percentage rate does not take into account any required deposit.
☐   DEMAND FEATURE: This obligation has a demand feature.
☒   VARIABLE RATE MORTGAGE: Variable Rate Mortgage Program disclosures have been provided earlier which discuss this and other variable rate features of your loan.

☒   ASSUMPTION: Someone buying your property
☐ may, subject to conditions   ☒ cannot   assume the remainder of your loan on the original terms.
PROPERTY INSURANCE: Property insurance is required in this transaction. You may obtain such insurance from anyone that is acceptable to the creditor. If you purchase from the creditor you will pay   for a   month term.
SECURITY: You are giving a security interest in:
☒ The goods or property being purchased   24858 Montevista Circle, Valencia, CA, 91354
☐ Real property you own located at
☐ Other Collateral
☐ Collateral securing other loans with us (or an assignee) may also secure this loan.

FILING FEES AND TAXES: $
LATE CHARGE: If a payment is 15 days late, you will be charged 6.000 % of Principal and Interest Payment
PREPAYMENT: If you pay off early, you
☐ may   ☐ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

See your actual contract documents for any additional information about nonpayment, default, or any required repayment in full before the scheduled date as well as prepayment refunds and penalties.

☒   All dates and numerical disclosures, except the late payment disclosure, are ESTIMATES.

Borrower(s) understand that delivery of this disclosure is not a commitment by the creditor to make this loan, and that signing this disclosure does not obligate Borrower(s) to accept the loan.

_Josephine Goldhaber_   7-29-05          _Eli Goldhaber_   7-29-05
Borrower   Josephine Goldhaber   Date          Borrower   Eli Goldhaber   Date

Borrower   Date          Borrower   Date

Copyright Gallagher Financial Systems, 2002.

GFS Form 6029 (0C28)

RBS-JOR3-0006772

CONFIDENTIAL

Borrower    :  Josephine Goldhaber          Eli Goldhaber
Loan Number :  0000413211

## TRUTH-IN-LENDING RECAP

| | | | |
|---|---|---|---|
| Actual Date of Closing | 8/3/2005 | No. Payments to 1st Rate Adjustment | 1 |
| Date of Disbursement | 8/3/2005 | No. Payments to Subsequent Rate Adjustment(s) | 1 |
| Date of 1st Payment | 9/1/2005 | No. Payments to 1st Payment Adjustment | 12 |
| Number of Odd Days | -2 | No. Payments to Subsequent Payment Adjustment(s) | 12 |
| Amortization Term | 360 | Maximum Rate Increase at First Adjustment | 11.125% |
| Sales Price | $525,000.00 | Maximum Rate Increase at Subsequent Adjustment(s) | 12.500% |
| Appraised Value | $525,000.00 | Lifetime Rate Increase Cap | 12.500% |
| Loan Amount | $409,500.00 | | |
| LTSP Ratio | 78.000% | | |
| LTAV Ratio | 78.000% | | |
| Down Payment | $115,500.00 | | |
| | | | |
| Number of Payments | 360 | | |
| Interest Rate | 1.375% | | |
| Odd Days Rate | 1.375% | | |
| Index | 2.737% | | |
| Margin | 3.825% | | |
| Fully Indexed Rate | 6.500% | | |
| Origination Fee | 1.000% | | |
| Discount Fee | 0.000% | | |

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| Loan Amount | | [A] | $409,500.00 |
| | Origination Fee | | $4,095.00 |
| | Underwriting Fee | | $195.00 |
| | Tax Service | | $70.00 |
| | Flood Cert Fee | | $20.00 |
| | Doc Prep Fee | | $320.00 |
| | Wire Fee | | $30.00 |
| | Broker Processing Fee | | $1,120.00 |
| | Closing Fee | | $1,250.00 |
| | Courier Fee | | $50.00 |
| | Loan Tie-In Fee | | $150.00 |
| | Total Other Fee(s) | | $0.00 |
| Total Prepaid Finance Charge | | [B] | $7,300.00 |
| Premium Amount | | [C] | $0.00 |
| Amount Financed [A - B + C] | | [D] | $402,200.00 |

## ITEMIZATION OF TOTAL FINANCE CHARGES

| | | |
|---|---|---|
| Total Prepaid Finance Charge | | $7,300.00 |
| Interest | | $599,434.14 |
| Total Finance Charge | [E] | $606,703.28 |
| Total of Payments [D + E] | [F] | $1,008,934.14 |
| Annual Percentage Rate | [G] | 6.619% |

| A.P.R. | Finance Charge | Amount Financed | Total of Payments | REO: DP/SP |
|---|---|---|---|---|
| 6.619% | $606,703.28 | $402,230.86 | $1,008,934.14 | N/A<br>N/A |

GFS Form 0003

RBS-JOR3-0006773

12

# EXHIBIT 3

Lender: Paul Financial, LLC
Address: 1401 Los Gamos Drive
City, State, Zip:  San Rafael, CA, 94903

[Space Above This Line For Recording Data]

# PREPAYMENT PENALTY RIDER

This Prepayment Penalty Rider is made this        28th        day of              July, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage *Deed of Trust*, or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note
(the "Note") to

Paul Financial, LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

24658 Montevista Circle, Valencia, CA, 91354
[ Property Address ]

**ADDITIONAL COVENANTS.**   In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

Borrower may make a full prepayment or a partial prepayment of principal at any time. However, if within the
first        3        years after the date Borrower executes the Note, Borrower will pay a prepayment charge on the
aggregate prepayments made within any consecutive twelve month period which exceed 20% of the original
principal amount stated in the Note (the "Excess Principal"). The prepayment charge will equal the interest rate that
would accrue during a six month period of the Excess Principal calculated at the rate of interest in effect under the
terms of the note at the time of the prepayment.

No prepayment penalty will be assessed for any prepayment made after the Penalty Period.

The Note Holder's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed
a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable on
demand.

PP0183 (H - 12/03) Prepayment Penalty Rider
Page 1 of 1                                                        Initials

ALTA-NEGAM-1/1-03                                                                                          0000413211

PF-JORDAN03980

14



If a law, which applies to this loan and which sets a maximum prepayment charge or prohibits prepayment charges, is finally interpreted so that the prepayment charge to be collected in connection with this loan exceeds the permitted limits, then (i) any such prepayment charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, or (ii) if the prepayment charge is prohibited, no prepayment charge will be assessed or collected.

**DO NOT SIGN THE PREPAYMENT PENALTY RIDER BEFORE YOU READ IT. THIS PREPAYMENT PENALTY RIDER PROVIDES FOR THE PAYMENT OF A CHARGE IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in the Prepayment Note Addendum.

_____ (Seal)          _____ (Seal)
Josephine Goldhaber        -Borrower      Ed Goldhaber              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

PF9103   (IK - 12/83)   Prepayment Penalty Rider

Page 2 of 2

ALTA-NEGAM-1/1-03

0080413211

PF-JORDAN03981

# EXHIBIT 4

1  RICHARD J. SAHATJIAN (Bar No. 252442)
   BUCKLEYSANDLER LLP
2  100 Wilshire Boulevard, Suite 1000
   Santa Monica, CA 90401
3  Telephone: (424) 203-1000
4  Facsimile: (424) 203-1019
   Email: rsahatjian@buckleysandler.com
5
6  BENJAMIN B. KLUBES (Admitted *Pro Hac Vice*)
   MICHELLE L. ROGERS (Admitted *Pro Hac Vice*)
7  BUCKLEYSANDLER LLP
   1250 24th Street, NW, Suite 700
8  Washington, DC 20037
   Telephone: (202) 349-8000
9  Facsimile: (202) 349-8080
   Email: bklubes@buckleysandler.com
10        mrogers@buckleysandler.com
11
   *Attorneys for Defendant RBS Financial Products Inc.*
12

13                  UNITED STATES DISTRICT COURT
14                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
15
16  GREGORY M. JORDAN, *et al.*,          Case No. 3:07-cv-04496-SI
                                          CLASS ACTION
17         Plaintiffs,
                                          RBS FINANCIAL PRODUCTS INC.'S
18     v.                                 RESPONSES TO PLAINTIFFS' FIRST SET
                                          OF INTERROGATORIES
19  PAUL FINANCIAL, LLC., *et al.*,
20         Defendants.
                                          Hon. Susan Illston
21
22
23
24
25
26
27
28

RBS FINANCIAL PRODUCT INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES
Jordan v. Paul Financial, LLC., et al. No. 3:07-cv-04496-SI

17

**INTERROGATORY NO. 2**

State the total number of Option ARM loans originated or otherwise made by Paul Financial concerning real property located in the State of California during the Liability Period, which You acquired at any time.

**ANSWER TO INTERROGATORY NO. 2**

In addition to the General Objections set forth above, RBS objects to Interrogatory No. 2 on the grounds that it is vague, overly broad, and unduly burdensome; it seeks information concerning or relating to persons and matters beyond the scope of the allegations of the FAC; it seeks information concerning or relating to persons other than Plaintiffs, and is not relevant to class certification; and it seeks information or documents that are neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, RBS states as follows: RBS purchased approximately 5550 Option ARM loans secured by real property located in the state of California from Paul Financial.

**INTERROGATORY NO. 3**

Identify each non-clerical employee of Paul Financial with whom You had communications concerning Option ARM Loans during the Liability Period.

**ANSWER TO INTERROGATORY NO. 3**

In addition to the General Objections set forth above, RBS objects to Interrogatory No. 3 on the grounds that it is vague, overly broad, and unduly burdensome; it seeks information concerning or relating to persons and matters beyond the scope of the allegations of the FAC; it seeks information concerning or relating to persons other than Plaintiffs, and is not relevant to class certification; and it seeks information or documents that are neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving these objections, RBS states that documents containing information responsive to this Interrogatory are being or will be produced by RBS.

5

RBS FINANCIAL PRODUCT INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES
*Jordan v. Paul Financial, LLC, et al.*, No. 3:07-cv-04496-SI

18

1   Dated: November 24, 2010

2                                          BUCKLEYSANDLER LLP

3                              By: _Michelle L. Rogers_ MN·M
                                   Michelle L. Rogers (admitted *pro hac vice*)

4

5                                  *Attorneys for RBS Financial Products Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

RBS FINANCIAL PRODUCT INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES
*Jordan v. Paul Financial, LLC, et al.,* No. 3:07-cv-04496-SI

## VERIFICATION

1      I, Kay L. Lackey, am an attorney authorized to make this Verification on behalf of

2

3 Defendant RBS Financial Products Inc. (formerly known as Greenwich Capital Financial Products,

4 Inc.). I am familiar with the contents of RBS Financial Product Inc.'s Responses To Plaintiff's

5 First Set of Interrogatories. Based upon matters within my personal knowledge and on information

6 that has been assembled and provided to me, the foregoing responses are true and correct to the

7 best of my knowledge, information and belief. If it appears at any time that omissions or errors

8 have been made in these responses, I reserve the right to change or supplement the answers herein.

9      I declare under penalty of perjury that the foregoing is true and correct.

10 Executed this _z⁴ᵗʰ_ day of November 2010.

11

12 _____
Kay L. Lackey

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RBS FINANCIAL PRODUCT INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
*Jordan v. Paul Financial, LLC., et al.,* No. 3:07-cv-04496-SI

1

## CERTIFICATE OF SERVICE

2       I am employed in the District of Columbia.  I am over the age of 18 and not a party to the

3   within action.  My business address is BuckleySandler, LLP,1250 24th Street NW, Washington,

4   DC 20037.  On this day, November 24, 2010, I caused a true and correct copy of RBS

5   FINANCIAL PRODUCTS INC.'S RESPONSES TO PLAINTIFFS' FIRST SET OF

6   INTERROGATORIES to be served upon the below counsel of record via U.S. Mail, first class,

7   postage prepaid:

8

9                                 Haylee N. Freeman

| | |
|---|---|
| **BROWNE WOODS GEORGE LLP**<br>Lee A. Weiss<br>1 Liberty Plaza, Suite 2329<br>New York, NY 10006<br><br>Michael A. Bowse<br>2121 Avenue of the Stars, Suite 2400<br>Los Angeles, CA 90067 | Counsel for Plaintiffs Gregory M. Jordan and Eli Goldhaber and Josephina Goldhaber |
| **ARBOGAST & BERNS LLP**<br>David M. Arbogast<br>Jeffrey K. Berns<br>6303 Owensmouth Avenue, 10th Floor<br>Woodland Hills, CA 91367-2263 | Counsel for Plaintiffs Gregory M. Jordan and Eli Goldhaber and Josephina Goldhaber |
| **SMOGER & ASSOCIATES PC**<br>Gerson H. Smoger<br>Steven Michael Bronson<br>Mark T. Baller<br>3175 Monterey Boulevard, Suite 3<br>Oakland, CA 94602 | Counsel for Plaintiffs Gregory M. Jordan and Eli Goldhaber and Josephina Goldhaber |
| **SEEGER WEISS LLP**<br>Jonathan Shub<br>1515 Market Street, Suite 1380<br>Philadelphia, PA 91902<br><br>Christopher A. Seeger<br>One William Street<br>New York, NY 10004 | Counsel for Plaintiff Gregory M. Jordan |
| **SPIRO MOSS LLP**<br>James Mark Moore<br>11377 West Olympic Boulevard, 5th Floor<br>Los Angeles, CA 90064 | Counsel for Plaintiff Gregory M. Jordan |

1

| | |
|---|---|
| **K & L GATES LLP**<br>Irene C. Freidel<br>Phoebe S. Winder<br>Brian M. Forbes<br>David D. Christensen<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111<br><br>Matthew Gordon Ball<br>Four Embarcadero Center, Suite 1200<br>San Francisco, CA 94111 | Counsel for Defendants Paul Financial, LLC, Luminent Mortgage Trust 2006-2, and HSBC National Association |
| **TOBIN & TOBIN**<br>John Patrick Christian<br>500 Sansome Street, 8th Floor<br>San Francisco, CA 94111 | Counsel for Defendant Paul Financial, LLC |
| **DUANE MORRIS LLP**<br>Paul S. Rosenlund<br>Terrance James Evans<br>One Market, Spear Tower, Suite 2000<br>San Francisco, CA 94105-1104 | Counsel for Defendants Luminent Mortgage Capital, Inc. and Luminent Mortgage Trust 2006-2 |

2

# EXHIBIT 5

Page 1

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4    GREGORY M. JORDAN; ELI GOLDHABER      )
     and JOSEPHINA GOLDHABER,             )
5    individually and on behalf of all     )
     others similarly situated,            )
6                                          )
                  Plaintiffs,              )
7                                          )
        vs.                                )   No. 3:07-CV-04496-SI
8                                          )
     PAUL FINANCIAL, LLC; LUMINENT         )
9    MORTGAGE CAPITAL, INC.; HSBC BANK     )
     USA, N.A., AS TRUSTEE OF LUMINENT     )
10   MORTGAGE TRUST 2006-2; RBS            )
     FINANCIAL PRODUCTS, INC., and         )
11   DOES 2 through 10, inclusive,         )
                                           )
12                Defendants.              )
     _____)

13

14

15

16              Deposition of JOHN GLANDER

17           taken at 155 Montgomery Street,

18             San Francisco, California,

19         commencing at 2:08 p.m., Wednesday,

20                February 16, 2011,

21        before Theresa A. Darnell, CSR No. 9966

22

23

24

25

Page 12

1     A    Okay.

2     Q    For identification, Exhibit 2 is an adjustable

3  rate note that is dated December 30th, 2005, and signed

4  on the last page by plaintiff, Gregory M. Jordan.

5     A    Based on your teaser rate question, yes, this

6  note has a teaser rate for one month based on Section 2.

7     Q    And is this note for the Option ARM loan that

8  you referred to earlier as monthly adjustable?

9     A    Yes.

10    Q    And you notice on the bottom left of the first

11  page -- actually, all the pages, it says VMP, and then on

12  the first page it says, VMP mortgage forms.  Do you see

13  that?

14    A    Yes.

15    Q    Was that another third-party document vendor?

16    A    Yes.

17    Q    Can you think of any others that Paul may have

18  used besides VMP and DocMagic?

19    A    I believe Gallagher, who does NetOxygen, the

20  LOS, the loan origination system, also provided us with

21  certain documents as well.

22    Q    Now, with respect to VMP, did Paul Financial use

23  the forms in the same way that you described earlier,

24  they used the DocMagic?  In other words, they were

25  imported into the loan origination system and then Paul

Page 18

1   margins going forward on that information.

2       Q   Now, when you refer to a loan pool sale, was

3   that -- would that be of loans that had already closed?

4   Let's take a step back.  I'm sorry.

5           With respect to loan pool sales of Option ARM

6   loans, would that always be loans that had already

7   closed?

8       A   Typically, the majority of a pool are closed

9   loans, but there might be some that are just about to

10  fund or just have the docs signed with the expectation

11  they will close in a very short amount of time.

12      Q   So you would set the pricing for loans based on

13  what the demand was for already closed loans or loans

14  where the documents had already been signed?

15      A   Essentially that's the way to gauge how to

16  price.

17      Q   Did Paul Financial sell all of its Option ARM

18  loans in the secondary market in pools?

19      A   Yes.

20      Q   Did Paul Financial ever retain any of the

21  loans -- any of the Option ARM loans that originated for

22  an extended period of time?

23      A   Yes.  Very rarely, but yes.

24      Q   Typically, how quickly were the loans sold in --

25  were the Option ARM loans sold in pools after

Page 19

1   origination?

2       A   Less than three months.

3       Q   Did Paul Financial typically sell its Option ARM

4   loans to the same investors over and over again or were

5   that -- withdraw that.

6           While you were at Paul Financial, about how many

7   investors did Paul Financial sell its Option ARM loans

8   pools to?  You can approximate.

9       A   Approximately eight.

10      Q   And can you identify those eight, or as many of

11  the eight that you can recall?

12      A   Merrill Lynch, Lehman Brothers, Goldman Sachs,

13  Washington Mutual, Greenwich, Countrywide, Luminent,

14  Morgan Stanley.

15      Q   Out of those eight entities, do you know which

16  of those Paul Financial sold the most Option ARM loan

17  pools to?

18      A   Let me add another to the list.  Bear Stearns.

19          I would say -- off the top of my head, probably

20  Greenwich and Bear Stearns bought most Option ARMS.

21      Q   And can you give a ballpark of what percentage

22  of the Option ARM pools they bought, each of those

23  entity?

24          MR. CHRISTIAN:  Do you have a particular time

25  frame in mind because I don't know if this would have

1    mortgages that are in the pool?

2        A    Correct.

3        Q    Now is that on the original principal balances

4    or the principal balances that exist as of the time the

5    trade is executed?

6        A    The latter, that exist as of the time the trade

7    is executed.

8        Q    In connection with the Paul Financial's sale of

9    Option ARM loans mortgage pools, did the secondary market

10   purchasers perform any due diligence?

11       A    Yes.

12       Q    Can you describe the due diligence that they

13   perform?

14           MR. CHRISTIAN:  I'm going to object that's an

15   overbroad question, because you're asking the witness to

16   describe the due diligence performed by eight or so

17   investors, each whom may have their own unique

18   perspective on due diligence.  So with that cautionary

19   tail in mind, if you can answer the question, go ahead.

20           THE WITNESS:  They would pull files, typically

21   using a third party such as Clayton, in the case of

22   Greenwich to review files to make sure they met our

23   underwriting criteria and met all compliance.

24   BY MR. WEISS:

25       Q    And what was the function of Clayton?

Page 44

1   of three, that would be a compliance violation.

2       Q   So were the compliance issues to which you were

3   referring, were those based on the information that Paul

4   Financial put into the loan document forms?

5       A   Correct.

6       Q   So as we sit here today, you're not aware of any

7   compliance issues that were raised regarding the template

8   to use your counsel's word?

9       A   Correct.

10      Q   Are you aware of any governmental agency ever

11  contacting Paul Financial regarding compliance issues

12  concerning its Option ARM loan documents?

13      A   No.

14      Q   If that had occurred, would you have been made

15  aware of it?

16          MR. CHRISTIAN:  Calls for speculation.

17          THE WITNESS:  Yeah, I don't know if I personally

18  would have been made aware of it.

19  BY MR. WEISS:

20      Q   What was the source of funds - withdrawn.

21          Did Paul Financial use its own funds to

22  originate Option ARM loans?

23      A   No.

24      Q   From where did it obtain those funds?

25      A   Warehouse lines.

1    Q   So is it fair to say that all of Paul

2  Financial's Option ARM loans were funded through funds

3  from Paul Financial's warehouse lines?

4    A   Yes.

5    Q   And during the period 2003 to 2007, who were

6  Paul Financial's primary warehouse lenders?

7    A   There was Merrill Lynch, JP Morgan Chase,

8  Greenwich, and I believe Bank of New York were the four.

9    Q   And of those four, was there one that typically

10  provided the largest line to Paul Financial?

11    A   I believe Merrill Lynch and Greenwich lines were

12  roughly the same size.

13    Q   Do you know the name of the Greenwich entity

14  that provided the warehouse line?

15    A   I believe it was RBS Greenwich.

16    Q   Do you know whether it was like, for example,

17  RBS Greenwich Warehouse Lending?  Do you know the name of

18  the entity?

19    A   I don't.

20    Q   And did Paul Financial have a warehouse line

21  from Greenwich when you first joined the company?

22    A   Yes.

23    Q   And I know it's a while ago, but I'll ask

24  anyway.  Do you recall the amount of that line in 2001?

25    MR. CHRISTIAN:  Can we get a foundational

VERITEXT REPORTING COMPANY
www.veritext.com
212-279-9424                 212-490-3430

30

Page 46

1    question as to whether it varied at any time.

2         Well, answer it as best you can.

3         THE WITNESS:  My recollection is the Greenwich

4    line was always a hundred million, but it could have been

5    smaller than that.

6    BY MR. WEISS:

7         Q   Are you aware of whether it ever increased over

8    a hundred million?

9         A   I'm not aware, no.

10        Q   Did you have any responsibilities with respect

11   to the warehouse line while you were the -- the warehouse

12   line with Greenwich while you were at Paul Financial?

13        A   My responsibility was in regards to making sure

14   that when a settlement occurred, I had to provide the

15   investor who bought the loans with the warehouse

16   information of where to wire the funds.

17        Q   When the purchasers of Option ARM loan pools

18   closed, the -- were the funds distributed all to Paul

19   Financial, or they were -- some of the funds were

20   distributed directly to the warehouse lenders and other

21   of the funds would go to Paul Financial?

22        A   They would go to pay off the warehouse line,

23   yeah.

24        Q   So at the time a loan pool sale closed, the

25   money that had been drawn down from the warehouse line

1    for all of the loans in that pool would be paid off in

2    full?

3         A    Yes.

4         Q    And the remainder of the funds would go to Paul

5    Financial?

6         A    Yes.

7         Q    Earlier I believe you said the pools were sold

8    on either a servicing retained or a servicing release

9    basis; is that correct?

10        A    Yes.

11        Q    Servicing retained means Paul Financial would

12   continue to service the loan after the sale?

13        A    Yes.

14        Q    When loans were sold to Greenwich Capital on a

15   servicing release basis, was there -- did they use one

16   servicer typically or was it more than one over time?

17        A    Typically, they used one servicer.

18        Q    And what was that servicer?

19        A    I can't recall.

20        Q    At the time that an Option ARM loan pool was

21   sold, what would happen -- to where would the underlying

22   loan files be transferred?

23        A    To the due diligence team, in this case Clayton

24   in regards to Greenwich.

25        Q    And would the due diligence be done before or

Page 77

1   Paul Financial?

2       A   No.

3       Q   Did RBS have any role in creating or designing

4   the loan products that Paul Financial offered to

5   borrowers?

6       A   No.

7       Q   Did Paul Financial consult with RBS with respect

8   to creating, designing or using the loan documents?

9       A   In regards to we had to present Paul Financial's

10  underwriting guidelines to Greenwich, along with all of

11  your other investors for approval.  Same with loan

12  documents, all to all investors for approval.

13      Q   But in terms of creating them, designing them,

14  did RBS give you input into what they should be?

15      A   No, not to my knowledge.

16      Q   Did the -- the complaint in this case or the

17  current complaint in this case in paragraph 85 alleges,

18  among other things, in part that RBS provided Paul

19  Financial with deficient loan documents and directed Paul

20  Financial to use those documents despite the material

21  omissions.

22          Is it in fact correct that RBS provided Paul

23  Financial with loan documents and directed Paul Financial

24  to use those loan documents?

25      A   That is not correct.

# EXHIBIT 6

# Deposition of

## ELI GOLDHABER

## JORDAN v. PAUL FINANCIAL

*Taken On*
*February 15, 2011*

Transcript provided by:

# HUTCHINGS℠
## COURT REPORTERS, LLC
CSR 649

GLOBAL LEGAL SERVICES

800.697.3210

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 12

| | | |
|---|---|---|
| 09:18 | 1 | Q.   Okay. |
| | 2 | A.   This is the first time. |
| | 3 | Q.   And the mailings you were referring to were |
| | 4 | probably notices of class action proceedings of which |
| 09:18 | 5 | you were a member of a large class? |
| | 6 | A.   Yes, that I never really -- It just comes in |
| | 7 | the mail, stuff like that. |
| | 8 | Q.   Understood.   Thank you. |
| | 9 | In terms of your background, can you just describe |
| 09:18 | 10 | your educational background in terms of where you went |
| | 11 | to school and when you graduated? |
| | 12 | A.   I got a high school diploma in the army back |
| | 13 | in -- I think it was 1976.  And high school diploma was |
| | 14 | the highest I got. |
| 09:19 | 15 | Q.   Have you taken any other -- any professional |
| | 16 | related training? |
| | 17 | A.   Tile setter to become a journeyman tile setter, |
| | 18 | construction work. |
| | 19 | Q.   Okay. |
| 09:19 | 20 | A.   That's a training. |
| | 21 | Q.   Let's talk about your current employment now. |
| | 22 | Are you employed? |
| | 23 | A.   Yes, I am. |
| | 24 | Q.   Where are you employed? |
| 09:19 | 25 | A.   I work for Rucker Tile Company.  I'm a tile |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011                    ELI GOLDHABER

Page 13

| | | |
|---|---|---|
| 09:19 | 1 | setter.  I work off a union, Local 18 union. |
| | 2 | Q.  And how long have you held that position? |
| | 3 | A.  I've been a tile setter for the last 30 |
| | 4 | years -- |
| 09:19 | 5 | Q.  And have you -- |
| | 6 | A.  -- approximately 30 years. |
| | 7 | Q.  Have you been a member of that union for that |
| | 8 | whole time period? |
| | 9 | A.  As far as I remember, yes. |
| 09:19 | 10 | Q.  And do I understand the basic way the structure |
| | 11 | works is the union assists in placing you in particular |
| | 12 | jobs with particular companies? |
| | 13 | A.  Yes. |
| | 14 | Q.  How long have you been at the current position |
| 09:19 | 15 | you have now? |
| | 16 | A.  Let me -- As a tile setter? |
| | 17 | Q.  I'm sorry.  The current -- The current company |
| | 18 | that you're working -- |
| | 19 | A.  Oh. |
| 09:20 | 20 | Q.  -- with. |
| | 21 | A.  I would say seven months. |
| | 22 | Q.  Prior to the company that you're currently at, |
| | 23 | where were you -- what company were you working for? |
| | 24 | A.  I was working for -- like in between two |
| 09:20 | 25 | companies, Premier Tile and P&E Tile. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 50

| | | |
|---|---|---|
| 10:04 | 1 | A.  Yes. |
| | 2 | Q.  And I think I asked you this. |
| | 3 | As to the Canyon Country house, you don't have a |
| | 4 | recollection of the type of loan or the amount of the |
| 10:04 | 5 | loan? |
| | 6 | A.  I'll be honest with you.  I really don't.  I |
| | 7 | don't recall. |
| | 8 | Q.  On these investment properties, the |
| | 9 | Canyon Country house and the Stillmore house, did you |
| 10:04 | 10 | and your wife act as co-borrowers on the mortgages for |
| | 11 | those -- |
| | 12 | A.  Yes. |
| | 13 | Q.  -- properties? |
| | 14 | A.  Correct. |
| 10:04 | 15 | Q.  And were also the deeds in both the name of you |
| | 16 | and your wife? |
| | 17 | A.  As far as I recall, yes. |
| | 18 | Q.  So you had the Canyon Country house -- |
| | 19 | Canyon County house, which you sold, and -- |
| 10:05 | 20 | A.  "Canyon Country." |
| | 21 | Q.  -- then you purchased the Stillmore house? |
| | 22 | A.  Yes. |
| | 23 | Q.  Correct? |
| | 24 | And then you sold that to buy the Colorado |
| 10:05 | 25 | property? |

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011              ELI GOLDHABER

Page 51

| | | |
|---|---|---|
| 10:05 | 1 | A. Yes. |
| | 2 | Q. Other than those three properties, did you ever |
| | 3 | own any other property for purposes of investment that |
| | 4 | you did not live in? |
| 10:05 | 5 | A. Not that I remember.  Not that I recall. |
| | 6 | Q. Okay. |
| | 7 | A. But when we sold the Colorado home, we bought |
| | 8 | the Montevista. |
| | 9 | Q. Okay.  We'll spend a little time talking about |
| 10:05 | 10 | that one since that's the focus of this litigation. |
| | 11 | But beyond the three -- the Canyon County, the |
| | 12 | Stillmore and the Colorado and the -- and then the |
| | 13 | Montevista -- there were no other -- |
| | 14 | A. At what time period?  That's what I'm trying |
| 10:05 | 15 | to... |
| | 16 | Q. Well, let's -- Ever. |
| | 17 | A. Oh, ever.  Yes. |
| | 18 | Q. Yes. |
| | 19 | A. We've owned houses in the Eagle Rock area |
| 10:06 | 20 | before in the '80s. |
| | 21 | Q. Do you recall how many homes you owned? |
| | 22 | A. We own- -- Well, we -- we lived in a house. |
| | 23 | Q. Okay. |
| | 24 | A. And we owned a rental property at the same |
| 10:06 | 25 | block. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 56

| | | |
|---|---|---|
| 10:10 | 1 | Q. And do you still own that property? |
| | 2 | A. Yes. |
| | 3 | Q. And were you able to rent it for the full time |
| | 4 | that you've owned it, or have you been able to rent it |
| 10:10 | 5 | for the full time you've owned it? |
| | 6 | A. Not the full time. But I think the first few |
| | 7 | months we -- or six -- I don't even recall -- we -- we |
| | 8 | were trying to rent it. |
| | 9 | Q. But since the initial time period of finding a |
| 10:11 | 10 | renter, have you been able to rent it consistently since |
| | 11 | then? |
| | 12 | A. Yes. |
| | 13 | Q. And how much do you charge in rent? |
| | 14 | A. 2,300 a month. |
| 10:11 | 15 | Q. And is that more or less than your monthly cost |
| | 16 | in terms of paying the mortgage on the home? |
| | 17 | A. Well, they were -- We found out later they |
| | 18 | were -- Actually it was less because they were taking |
| | 19 | money out of my equity, the loan. |
| 10:11 | 20 | I mean, we'd make a -- the payment. They gave us |
| | 21 | like a payment of 1600. I don't recall. And we |
| | 22 | would -- At the time when we first got the loan, we were |
| | 23 | paying that. |
| | 24 | So it was like a -- I don't know how you would say |
| 10:11 | 25 | profit, I mean, but it was -- we were losing, actually. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

40

JORDAN V. PAUL FINANCIAL   February 15, 2011                    ELI GOLDHABER

Page 57

```
10:11    1    You understand?
         2         Q.  I think I know, but let me try to -- Let me ask
         3    you some questions.  Hold on.
         4         Is your testimony that initially when you were
10:12    5    renting a loan, you understood that your monthly
         6    mortgage payment was approximately 1600 a month, and
         7    therefore that was -- At 2300 a month, you were taking
         8    in more than you were paying out initially on the loan?
         9         A.  You got to redo the question.
10:12   10         Q.  Okay.  I'm sorry.
        11         You said your monthly rent was about $2,300.
        12         A.  Yes.
        13         Q.  And I think you were indicating that your
        14    monthly mortgage payment on the property initially was
10:12   15    about $1,600.
        16         A.  Yes.  That's correct.
        17         Q.  So it's correct that you were taking in more in
        18    rent on a monthly basis than you were paying out in the
        19    mortgage payment initially?
10:12   20         A.  Well, we have insurance we have to pay.
        21         We have to pay taxes.
        22         So it was a little bit more, but -- If go
        23    moneywise, it was more, but...
        24         Q.  Did you view the property as making you a
10:12   25    slight profit, initially?
```

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

                                                    Page 66

| 10:23 | 1 | property loan from Paul Financial, you had previously |
| | 2 | had, I think you testified, at least with respect to |
| | 3 | some of the other properties, interest only -- at least |
| | 4 | one interest only loan, at least one negative |
| 10:23 | 5 | amortization loan; is that correct? |

6   A.  That's correct.  I -- Go ahead.

7   Q.  At the time you obtained the loan in 2005 from

8   Paul Financial, did you have an understanding of what a

9   negative amortization loan was?

10:24   10   A.  I understand what -- We had one in our Garland.

11   Q.  And what does it mean to you?  What does that

12   term mean to you?

13   A.  That they take money out of your equity.  Like

14   if you pay 1500 a month -- Let's say you pay 1500 a

10:24   15   month.  Another 15- or 1600 is coming right out of your

16   mortgage -- I mean your equity.

17   Q.  And is that your -- I was trying to ask, was

18   that your understanding in 2005 when you obtained the

19   Paul Financial loan?

10:24   20   A.  No.

21   I read -- I read the loan.  And me and my wife

22   understood when we read the loan that all it said was --

23   MR. ARBOGAST:  Listen to his question.  Listen to

24   his question.

10:24   25   MR. KLUBES:  Yeah.  That's fine.  I didn't mean to

d5a05a97-7534-4cf9-aa47-05d15090e458

42

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 87

| 10:57 | 1 | A. Yes, and we signed papers. |

2    Q. And there was a subsequent closing?

3    A. I think -- You know what? I'll be honest with

4    you. I really don't recall.

| 10:58 | 5 | Q. Take a look at, in terms of identifying, the |

6    first page after the sheet called "Credit," which is the

7    seventh page of the document.

8    And you see it's a Uniform Residential Loan

9    Application in the amount of $409,500; is that correct?

| 10:59 | 10 | A. Yes, that's correct. |

11    Q. And again it's for the Montevista Circle

12    property that we've discussed before?

13    A. That's correct.

14    Q. And the document indicates on this page that

| 10:59 | 15 | the interest rate is at 1.375 percent; is that correct? |

16    A. That's correct.

17    Q. And that it's a 360-month loan term?

18    A. Yes, that's correct.

19    Q. And that the amortization type is -- the box

| 10:59 | 20 | marked with an X is ARM; is that correct? |

21    A. Yes.

22    Q. And next to it it says "ALTA-NEGAM" --

23    N-E-G-A-M -- "-1/1-03"?

24    Do you see that?

| 10:59 | 25 | A. Yes, I do see that. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

43

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 88

| 10:59 | 1 | Q. Do you have an understanding of what that term |
| | 2 | indicates about the type of loan that this is an |
| | 3 | application for? |
| | 4 | A. It looks like a conventional loan. |
| 11:00 | 5 | Q. Okay. I'm sorry. And why do you say that? |
| | 6 | A. Because it's -- Because right here it's a X, |
| | 7 | conventional loan (indicating). |
| | 8 | Q. I'm sorry. Where you say X, where are you -- |
| | 9 | A. Yeah. |
| 11:00 | 10 | Q. -- pointing to in the document? |
| | 11 | A. It's an X there, conventional loan. |
| | 12 | Q. On the line that says "Mortgage Application |
| | 13 | Applied for," it's got an X that says "Conventional." |
| | 14 | Okay. I see that. |
| 11:00 | 15 | But I was directing your attention to the term |
| | 16 | "ALTA-NEGAM-" -- What -- |
| | 17 | A. The wording -- |
| | 18 | Q. Yeah. |
| | 19 | A. -- I'm -- I don't know what it means. |
| 11:00 | 20 | Q. Okay. |
| | 21 | You've never seen that term before? |
| | 22 | A. Never. |
| | 23 | Q. Do you recognize this loan application? |
| | 24 | A. I'll be honest with you. I do not recognize |
| 11:00 | 25 | it. I don't -- I never typed anything in my life, so... |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

44

JORDAN V. PAUL FINANCIAL  February 15, 2011          ELI GOLDHABER

Page 93

| | | |
|---|---|---|
| 11:05 | 1 | left-hand corner there's a mark -- there's a section |
| | 2 | that says "To be Completed by Interviewer.  This |
| | 3 | application was taken by:" and it gives several options, |
| | 4 | and the one that is marked is "Mail." |
| 11:06 | 5 | Do you see that? |
| | 6 | A.  Yes, I see it. |
| | 7 | Q.  Do you recall whether or not you filled out |
| | 8 | this application and mailed it to someone? |
| | 9 | A.  Honestly, I don't remember.  I don't recall. |
| 11:06 | 10 | Q.  Do you see right next to that section there it |
| | 11 | says "Interviewer's Name: Dan Triana," T-r-i-n-a -- |
| | 12 | T-r-i-a-n-a? |
| | 13 | A.  Yes, that's correct.  I see it. |
| | 14 | Q.  And it indicates that he's employed at -- To |
| 11:06 | 15 | the right it indicates he's employed at Home Loans |
| | 16 | Unlimited, Inc.?  Is that correct? |
| | 17 | A.  Yes, I do see that. |
| | 18 | Q.  Do you recall ever -- Do you know who |
| | 19 | Dan Triana is, and do you recall ever talking to him? |
| 11:06 | 20 | A.  I don't even recall.  I mean, it's been so |
| | 21 | long, I don't recall. |
| | 22 | Q.  Can you turn the page to the next page.  And it |
| | 23 | has a -- That page is entitled "Liquid Assets Addendum." |
| | 24 | And you see below the line across the page there's |
| 11:07 | 25 | a series of information.  It says "Type : Net |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

45

JORDAN V. PAUL FINANCIAL   February 15, 2011            ELI GOLDHABER

Page 94

| | | |
|---|---|---|
| 11:07 | 1 | Proceeds/REO; Holder : 1031 Exchange"? |
| | 2 | A.  Yes, I see that. |
| | 3 | Q.  And then "Description : Sale of 314 North |
| | 4 | Wilcox Street"? |
| 11:07 | 5 | A.  Yes, I see that. |
| | 6 | Q.  Do you have an understanding of what those |
| | 7 | three lines are describing about the liquid assets that |
| | 8 | you and your wife had? |
| | 9 | A.  It's selling my Colorado property.  And the |
| 11:07 | 10 | proceeds goes into the -- without touching it, it goes |
| | 11 | into the Montevista property.  That's what I understand. |
| | 12 | Q.  So the 314 North Wilcox Street is the address |
| | 13 | for the Colorado property that we discussed -- |
| | 14 | A.  That's correct. |
| 11:08 | 15 | Q.  -- earlier? |
| | 16 | A.  That is correct. |
| | 17 | MR. ARBOGAST:  Let him finish -- |
| | 18 | THE WITNESS:  Oh, okay. |
| | 19 | MR. ARBOGAST:  -- the question. |
| 11:08 | 20 | THE WITNESS:  Sorry. |
| | 21 | MR. KLUBES:  Okay. |
| | 22 | Q.  We can put this document aside for a moment.  I |
| | 23 | may have some follow-up questions about it.  But let me |
| | 24 | show you another document we'll mark as Exhibit 2, |
| 11:09 | 25 | please. [EXH-2] |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

                                                        Page 102

11:20   1      question.  Listen to his question.

        2          MR. KLUBES:

        3          Q.  Let me go back and restate the question.

        4          The three sentences that I read, my question was,

11:20   5      do those three sentences, to your understanding,

        6      describe what you had told me was the reduction in your

        7      equity that you understood --

        8          A.  Oh.

        9          Q.  -- was going to happen --

11:21   10         A.  I'm sorry.

        11         Q.  -- every month?

        12         A.  Yes, it does.  It shows it.

        13         Q.  I'm sorry.  Your answer was "Yes"?

        14         A.  Yeah.  Yes, it does.

11:21   15         Q.  Okay.

        16         Do you see in the bottom left-hand corner of each

        17     page of this document that it says "ALTA-NEGAM-1/1-03"?

        18     And it's A-L-T-A, in capitals, dash N-E-G-A-M dash 1

        19     slash 1 dash 03?

11:22   20         Do you see that on each page?

        21         A.  Yes, I do see that.

        22         Q.  Do you have any understanding of whether or not

        23     that references a neg am -- negative amortization loan?

        24         A.  No.

11:22   25         Q.  Okay.

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011                ELI GOLDHABER

Page 127

| | | |
|---|---|---|
| 12:10 | 1 | any further questions. |
| | 2 | MR. ARBOGAST:  I have just a couple. |
| | 3 | |
| | 4 | -EXAMINATION- |
| 12:10 | 5 | |
| | 6 | BY MR. ARBOGAST: |
| | 7 | Q.  Mr. Goldhaber, I'd like you to look back at |
| | 8 | Exhibit Number 4, the Federal Truth-In-Lending |
| | 9 | Disclosure statement. |
| 12:10 | 10 | A.  Yes. |
| | 11 | Q.  You see these -- the payments amount here in |
| | 12 | the middle box? |
| | 13 | A.  Yes. |
| | 14 | Q.  At the time you entered into this loan, did you |
| 12:10 | 15 | think that those amounts were your full payment amounts? |
| | 16 | A.  Yes. |
| | 17 | Q.  The other question I have, Mr. Goldhaber, is if |
| | 18 | you could look at the -- Exhibit Number 2.  It says |
| | 19 | "Adjustable Rate Note" at the top. |
| 12:11 | 20 | And if it said, in those same size letters, same |
| | 21 | bold like that -- said "Negative Amortization Note" -- |
| | 22 | if it said that before you entered into the loan, would |
| | 23 | you have entered into it? |
| | 24 | A.  No, I wouldn't. |
| 12:11 | 25 | Q.  Okay. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

48

JORDAN V. PAUL FINANCIAL   February 15, 2011               ELI GOLDHABER

Page 128

| | | |
|---|---|---|
| 12:11 | 1 | If it said -- If this note said in that second |
| | 2 | column, "This" -- "If I make payments according to the |
| | 3 | payment amount stated in this note, my loan" -- "this |
| | 4 | loan will cause my principal balance to increase," |
| 12:11 | 5 | otherwise negative amortization, would you have entered |
| | 6 | into the loan? |
| | 7 | MR. KLUBES:  Objection. |
| | 8 | THE WITNESS:  No. |
| | 9 | MR. ARBOGAST: |
| 12:12 | 10 | Q.  Did you think this was a negative amortization |
| | 11 | loan when you entered into it? |
| | 12 | A.  No. |
| | 13 | Q.  If you thought it was a negative amortization |
| | 14 | loan before you signed the documents, would you have |
| 12:12 | 15 | signed them? |
| | 16 | A.  No, I haven't -- No, I wouldn't. |
| | 17 | MR. ARBOGAST:  I have no further questions. |
| | 18 | MR. KLUBES:  Just a follow-up question on the |
| | 19 | negative amortization. |
| 12:12 | 20 | |
| | 21 | -EXAMINATION- |
| | 22 | |
| | 23 | BY MR. KLUBES: |
| | 24 | Q.  How many negative amortization loans had you |
| 12:12 | 25 | entered into prior to taking out this loan? |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011                    ELI GOLDHABER

Page 129

| | | |
|---|---|---|
| 12:12 | 1 | A.  As far as I know, it was just the Garland |
| | 2 | property.  And they had a paper like that one, and they |
| | 3 | showed -- and they showed minus.  They showed it like |
| | 4 | this (indicating), and they -- I actually gave it to you |
| 12:12 | 5 | for your evidence. |
| | 6 | It showed minus against my equity.  And we knew it |
| | 7 | was.  And we got it.  And me and my wife told ourselves |
| | 8 | we would never get into it again. |
| | 9 | And this one -- I mean, anybody -- I mean, an |
| 12:13 | 10 | average -- an average person would look at that.  You |
| | 11 | would think this is the payment.  That's it.  I mean; I |
| | 12 | don't see anything here that said minus. |
| | 13 | Q.  You did indicate that you reviewed all the |
| | 14 | documents -- |
| 12:13 | 15 | A.  Yes, I did review all the documents. |
| | 16 | MR. ARBOGAST:  Let him -- |
| | 17 | THE WITNESS:  Okay. |
| | 18 | MR. ARBOGAST:  -- finish his -- |
| | 19 | THE WITNESS:  Okay. |
| 12:13 | 20 | MR. ARBOGAST:  -- question. |
| | 21 | THE WITNESS:  Sorry.  I'm sorry. |
| | 22 | MR. KLUBES: |
| | 23 | Q.  I'm sorry.  You indicated you reviewed all the |
| | 24 | documents as opposed to just the one page that your |
| 12:13 | 25 | attorney was just asking you questions about? |

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 130

| | | |
|---|---|---|
| 12:13 | 1 | A.   Correct.   We reviewed it to the best of our |
| | 2 | knowledge. |
| | 3 | Q.   Okay. |
| | 4 | And -- I'm sorry -- you were just asked if |
| 12:13 | 5 | Exhibit 2 was the -- one of the exhibits you asked |
| | 6 | another question? |
| | 7 | MR. ARBOGAST:   Yes.   The note? |
| | 8 | MR. KLUBES:   Yeah, the note. |
| | 9 | Q.   The top of it -- The top in bold says, "The |
| 12:13 | 10 | principal amount to repay" -- The third sentence says, |
| | 11 | "The principal amount to repay could be greater than the |
| | 12 | amount originally borrowed but not more than the limit |
| | 13 | state" -- it meant "stated" -- "in this note"; is that |
| | 14 | correct? |
| 12:14 | 15 | A.   Yes.   I'm reading it. |
| | 16 | Q.   And I think you had indicated previously that |
| | 17 | that is your understanding of what a negative |
| | 18 | amortization loan is.   In other words, it increases the |
| | 19 | principal that you owe if you don't make your full |
| 12:14 | 20 | payment. |
| | 21 | MR. ARBOGAST:   Objection. |
| | 22 | MR. KLUBES: |
| | 23 | Q.   Is that correct? |
| | 24 | MR. ARBOGAST:   Objection.   Misstates the witness's |
| 12:14 | 25 | testimony. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

51

JORDAN V. PAUL FINANCIAL   February 15, 2011                    ELI GOLDHABER

Page 131

| 12:14 | 1 | THE WITNESS: At that time, I might have read it. |

| | 2 | And I -- I have a better knowledge of it now than I did |

| | 3 | back then. |

| | 4 | But the other loan we had at -- The other loan I |

| 12:14 | 5 | told you I had at Garland's house, it clearly showed me |

| | 6 | a negative amortization. We decided to take the loan at |

| | 7 | the time, and we would never take another loan like that |

| | 8 | again. |

| | 9 | And we've got a lot of stuff in here, but there was |

| 12:15 | 10 | a lot of misleading things in this. That's why we're |

| | 11 | here -- sitting here today. |

| | 12 | MR. KLUBES: |

| | 13 | Q. But is the problem that you and your wife had |

| | 14 | with the negative amortization loan is that it is a loan |

| 12:15 | 15 | which, if dealt with in a certain way, you end up owing |

| | 16 | more in principal than you borrowed at the outset? |

| | 17 | MR. ARBOGAST: Objection. Vague. Incomplete |

| | 18 | hypothetical. |

| | 19 | You can answer. |

| 12:15 | 20 | THE WITNESS: Yeah. My understanding was -- The |

| | 21 | way I understood it is you pay $1500, let's say, and |

| | 22 | then all of a sudden there's another minus 15- against |

| | 23 | your equity. That's my understanding of an |

| | 24 | amortization. |

| 12:15 | 25 | MR. KLUBES: |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 132

| | | |
|---|---|---|
| 12:15 | 1 | Q. I guess what I was getting at, is the problem |
| | 2 | that you and your wife have with the negative |
| | 3 | amortization loan, the reason you don't want to take |
| | 4 | another one, is that you end up owing more than you |
| 12:15 | 5 | borrowed at the outset? |
| | 6 | A. Yes. That's correct. |
| | 7 | Q. And isn't that precisely what the third |
| | 8 | sentence of this, in bold, explains could happen with |
| | 9 | this loan? |
| 12:16 | 10 | MR. ARBOGAST: Objection. Argumentative. |
| | 11 | Misstates the witness's prior testimony. |
| | 12 | You can answer. |
| | 13 | THE WITNESS: Like I said, I -- it was -- they |
| | 14 | showed me more of this and more of that. We read |
| 12:16 | 15 | everything that we could possibly read. And maybe at |
| | 16 | that time when I read that, I -- maybe I didn't |
| | 17 | understand it. I don't know. But that clearly tells me |
| | 18 | something different. So it's confusing. |
| | 19 | MR. KLUBES: |
| 12:16 | 20 | Q. I guess I'm getting at -- my question is, this |
| | 21 | last sentence, as you read it now today, isn't it |
| | 22 | describing precisely the concern that you have with a |
| | 23 | negative amortization loan? |
| | 24 | A. It just -- It's -- It looks like it, and it |
| 12:16 | 25 | doesn't, so it's hard to say. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

53

JORDAN V. PAUL FINANCIAL   February 15, 2011          ELI GOLDHABER

Page 133

| | | |
|---|---|---|
| 12:16 | 1 | Q.  Is there something that's confusing about that |
| | 2 | sentence? |
| | 3 | A.  It's confusing. |
| | 4 | Q.  What is it that's confusing about that |
| 12:17 | 5 | sentence? |
| | 6 | A.  It's just confusing to me. |
| | 7 | Q.  What part of it don't you understand? |
| | 8 | A.  Well, that's like every loan gets -- The way |
| | 9 | I'm looking at it, it looks like every loan in the end |
| 12:17 | 10 | is going to be more when you pay interest.  I mean, it's |
| | 11 | confusing.  It really is, in my opinion. |
| | 12 | It's adjustable.  It's just telling me "Adjustable |
| | 13 | Rate Note" at the top. |
| | 14 | Q.  But do you agree with me that the sentence |
| 12:17 | 15 | indicates that the principal amount to repay could be |
| | 16 | greater than the amount originally borrowed? |
| | 17 | A.  Yes.  I understand that. |
| | 18 | Q.  And I guess what I'm trying to get at is, isn't |
| | 19 | that the reason why you and your wife don't want to take |
| 12:17 | 20 | another negative amortization loan, because you could |
| | 21 | end up owing more in principal than you initially |
| | 22 | borrowed? |
| | 23 | MR. ARBOGAST:  Objection.  Misstates the witness's |
| | 24 | testimony. |
| 12:18 | 25 | You can answer. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

d5a05a97-7534-4cf9-aa47-05d15090e458

54

# EXHIBIT 7

# Deposition of

## JOSEPHINE GOLDHABER

## JORDAN v. PAUL FINANCIAL

### *Taken On*
### *February 15, 2011*

Transcript provided by:

# HUTCHINGS ℠
## COURT REPORTERS, LLC
CSR 649

GLOBAL LEGAL SERVICES

800.697.3210

JORDAN V. PAUL FINANCIAL   February 15, 2011      JOSEPHINE GOLDHABER

Page 8

| | | |
|---|---|---|
| 13:53 | 1 | A.  No. |
| | 2 | Q.  Besides this one. |
| | 3 | A.  Beside this one?  No. |
| | 4 | Q.  Have you ever been involved in any court |
| 13:53 | 5 | proceeding? |
| | 6 | A.  No. |
| | 7 | Q.  Litigation? |
| | 8 | A.  (Shakes head in the negative.) |
| | 9 | Q.  You did file bankruptcy, though, last year; |
| 13:54 | 10 | correct? |
| | 11 | A.  Yes. |
| | 12 | Q.  Other than that, have you ever been to court |
| | 13 | for any reason? |
| | 14 | A.  No. |
| 13:54 | 15 | Q.  Could you just briefly describe your education. |
| | 16 | What degrees, if any, do you have? |
| | 17 | A.  I finish ten grade. |
| | 18 | Q.  Finished -- I'm sorry.  Which grade? |
| | 19 | A.  I finish ten grade. |
| 13:54 | 20 | Q.  Tenth grade?  Okay. |
| | 21 | A.  And I went to United State.  When I came to |
| | 22 | United States, I went for one year to the high school. |
| | 23 | Q.  Any other formal education, training types of |
| | 24 | programs -- |
| 13:54 | 25 | A.  No. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011      JOSEPHINE GOLDHABER

Page 9

| 13:54 | 1 | Q.  -- you've been -- |
| | 2 | MR. ARBOGAST:  Just let him finish his question. |
| | 3 | THE WITNESS:  Okay. |
| | 4 | MR. ARBOGAST:  Okay?  Give him time.  Let him |
| 13:54 | 5 | finish his question. |
| | 6 | THE WITNESS:  Oh, okay. |
| | 7 | MR. ARBOGAST:  Count one to two and then give |
| | 8 | him -- answer his -- |
| | 9 | THE WITNESS:  Oh, okay. |
| 13:54 | 10 | MR. ARBOGAST:  -- question. |
| | 11 | She has to write down everything -- |
| | 12 | THE WITNESS:  Okay. |
| | 13 | MR. ARBOGAST:  -- we say, and you're going -- |
| | 14 | THE WITNESS:  I'm sorry. |
| 13:54 | 15 | MR. ARBOGAST:  -- to make her afternoon -- |
| | 16 | THE WITNESS:  Okay. |
| | 17 | MR. ARBOGAST:  -- really miserable.  Okay? |
| | 18 | THE WITNESS:  Okay. |
| | 19 | MR. ARBOGAST:  All right.  Thank you. |
| 13:54 | 20 | MR. KLUBES: |
| | 21 | Q.  Are you currently employed? |
| | 22 | A.  Yes. |
| | 23 | Q.  Where are you employed? |
| | 24 | A.  I own my own business. |
| 13:54 | 25 | Q.  What business -- |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011          JOSEPHINE GOLDHABER

Page 10

| | | |
|---|---|---|
| 13:55 | 1 | A.   And -- |
| | 2 | Q.   Sorry. |
| | 3 | A.   -- I work in Rosarito Fresh Mexican Grill. |
| | 4 | Q.   And how long have you owned that business? |
| 13:55 | 5 | A.   Close to 12 years. |
| | 6 | Q.   And where is that located? |
| | 7 | A.   It's in Valencia, California. |
| | 8 | Q.   And is that your full-time occupation, owning |
| | 9 | and operating the restaurant? |
| 13:55 | 10 | A.   Yes. |
| | 11 | Q.   Do you have any other sources of income from |
| | 12 | employment? |
| | 13 | A.   My husband's check. |
| | 14 | Q.   But for you in terms of what -- |
| 13:55 | 15 | A.   Oh, for me, no, no.   That's it.   That's all. |
| | 16 | Q.   Okay. |
| | 17 | And prior to the Rosarito restaurant, did you own |
| | 18 | another restaurant before then? |
| | 19 | A.   Yes. |
| 13:55 | 20 | Q.   What was that? |
| | 21 | A.   It was Rosarito Fast Taco in Valencia. |
| | 22 | Fast Taco in Canyon Country. |
| | 23 | In Casa Vieja in Canyon Country.   It also. |
| | 24 | Q.   Also? |
| 13:56 | 25 | And did you own -- What -- What time periods did |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL  February 15, 2011      JOSEPHINE GOLDHABER

Page 21

| | | |
|---|---|---|
| 14:07 | 1 | think so. |
| | 2 | Q.  Was it a -- I'm sorry.  Maybe it's a -- Was it |
| | 3 | a fixed-rate loan?  Did the interest rate -- |
| | 4 | A.  It's a fix rate. |
| 14:07 | 5 | Q.  Okay. |
| | 6 | A.  Fix rate. |
| | 7 | Q.  And do you remember what the term of the loan |
| | 8 | was, how long it was? |
| | 9 | A.  30 years. |
| 14:07 | 10 | Q.  And do you recall ever refinancing that loan? |
| | 11 | A.  Yes.  We refinance for $50,000. |
| | 12 | Q.  Do you remember with which lender? |
| | 13 | A.  Actually we took a second for $50,000. |
| | 14 | Q.  Sorry.  You took a second.  Okay. |
| 14:08 | 15 | A.  Uh-huh. |
| | 16 | Q.  And do you remember with which lender you took |
| | 17 | the second? |
| | 18 | A.  Well, I'm confuse with Home Savings and -- |
| | 19 | because we took a first loan.  It was with a GI, GI |
| 14:08 | 20 | loan.  It was a GI loan. |
| | 21 | And when we took a second, it was with |
| | 22 | Home Savings. |
| | 23 | Q.  Okay. |
| | 24 | A.  That's why I got confuse. |
| 14:08 | 25 | Q.  Okay. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 22

14:08   1          So the second on the Eagle Rock property was a

        2     Home Savings loan?

        3          A.   Uh-huh.

        4          Q.   And do you remember the terms of that loan?

14:08   5          A.   30 years.

        6          Oh, the second?

        7          Q.   Yes.

        8          A.   You know, I don't remember.

        9          Q.   Do you remember the type of loan that it was?

14:08   10         A.   It was a -- It was a -- "Type of loan."

        11         I don't remember.

        12         Q.   Do you remember was it a fixed rate or an

        13    adjustable --

        14         A.   Oh, no.   It was fix rate.

14:09   15         Q.   And do you remember, did you use a broker to

        16    get either of those loans on the Eagle Rock property?

        17         A.   No.   We went directly to the -- to the bank.

        18         Q.   Okay.

        19         And then any -- did you try to -- did you refinance

14:09   20    either of those two loans while you owned the Eagle Rock

        21    property?

        22         A.   No.

        23         Q.   Then you moved from Eagle Rock to Hilton Court;

        24    is that correct?

14:09   25         A.   Correct.

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 71

15:15   1        Q.  How much did you pay for the Montevista

2        property?

3             A.  Montevista property was for 525,000 or 535-.

4        I'm not too sure.

15:15   5             It was the top of the houses, you know, when the

6        houses really went up.

7             Q.  How did you find that property?

8             A.  (Indicating).

9             Q.  How did you find that property to purchase?

15:15  10             A.  The man who found us the house in Garland.  And

11        we needed to -- to invest -- reinvest the money in

12        Colorado.  We did a 1031 exchange, and we bought the

13        house in Alta Vista.

14             Q.  Did you know about a 1031 exchange --

15:16  15             A.  Yes.

16             Q.  -- before?

17             How did you know about a 1031 exchange?

18             A.  We been told what friends -- you know, they

19        said if you don't want to pay taxes, trying to invest

15:16  20        whatever -- whatever you get out of the other property

21        into the new one.

22             We didn't touch any money; we just did the 1031

23        exchanges, as we told.

24             Q.  Is it correct that you purchased the Montevista

15:16  25        property with the intent that you would rent it out as

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011      JOSEPHINE GOLDHABER

Page 76

15:21   1          A.   That was about two weeks before the loan.   They

2       send somebody into my house.

3              Q.   Do you remember who that was?

4          A.   He was just a representative from Paul Finance.

15:22   5          Q.   And can you describe to me the conversation

6       that you had?

7          A.   He said to me that it was one of the best loans

8       that they had, and -- and the payment was going to be

9       low.

15:22   10         Q.   Did you and your husband talk to him or did

11      just you talk to him?

12         A.   I talk to him.

13         Q.   Your husband was not present?

14         A.   He was working.

15:22   15         Q.   Did you tell him how much you wanted to borrow?

16         A.   Yes.

17         Q.   Did you tell him anything else about what you

18      wanted in the loan?

19         A.   Yes.

15:22   20         Q.   What did you tell him?

21         A.   I told him, you know, I wanted a good loan, you

22      know, that...

23         Q.   What did he tell you?

24         A.   He told me was an -- he was presented me a very

15:23   25      good loan.

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011      JOSEPHINE GOLDHABER

Page 77

| | | |
|---|---|---|
| 15:23 | 1 | Q. Did he show you any documents at that time? |
| | 2 | A. Not at that time. |
| | 3 | Q. Did he tell you anything about what the terms |
| | 4 | of the loan were going to be? |
| 15:23 | 5 | A. No. |
| | 6 | He says to me, "We going to send the documents. |
| | 7 | You have all the time in the world to read them." And |
| | 8 | we did. |
| | 9 | Q. And when did he send the documents to you? |
| 15:23 | 10 | A. I don't remember exactly. |
| | 11 | But he said -- It was not too long after that, |
| | 12 | after we talk. And then he send the papers to us. |
| | 13 | Q. He sent the papers. |
| | 14 | And then the notary came to sign them? |
| 15:23 | 15 | A. Yes. |
| | 16 | Q. So other than the meeting with the person from |
| | 17 | Paul Financial at your house, did you have any other |
| | 18 | discussions with anyone from Paul Financial -- |
| | 19 | A. No. |
| 15:23 | 20 | Q. -- about this loan? |
| | 21 | And I think you said at the meeting you had with |
| | 22 | the Paul Financial individual, he did not give you any |
| | 23 | documents. |
| | 24 | A. No. |
| 15:24 | 25 | Q. And he didn't tell you anything about the terms |

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 92

| | | |
|---|---|---|
| 15:40 | 1 | Q.   And it indicates the interest rate is |
| | 2 | 1.375 percent; is that correct? |
| | 3 | A.   Correct. |
| | 4 | Q.   And you see, moving over, it says -- there's a |
| 15:40 | 5 | box, and it's marked.   It says "ARM (type)." |
| | 6 | Do you see that, moving over to the right? |
| | 7 | A.   Yes. |
| | 8 | Q.   Okay. |
| | 9 | And then it says "ALT-NEGAM-1/1-03"? |
| 15:40 | 10 | Do you see that writing there? |
| | 11 | A.   Yes. |
| | 12 | Q.   And do you recall reviewing and signing this |
| | 13 | loan application? |
| | 14 | A.   I don't remember.   My signature, but I -- I |
| 15:40 | 15 | don't remember at this moment. |
| | 16 | Q.   Okay. |
| | 17 | Do you have a recollection of seeing the |
| | 18 | application indicates you're applying for an ARM loan? |
| | 19 | A.   I don't remember. |
| 15:41 | 20 | Q.   Do you know what "ARM" stands for? |
| | 21 | A.   Amortization. |
| | 22 | Q.   I'm sorry? |
| | 23 | A.   Amortization. |
| | 24 | Q.   Amortization? |
| 15:41 | 25 | A.   My accent is bad. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

65

JORDAN V. PAUL FINANCIAL   February 15, 2011       JOSEPHINE GOLDHABER

Page 93

| | | |
|---|---|---|
| 15:41 | 1 | Q.  Okay.  No.  That's okay.  My hearing is bad |
| | 2 | too. |
| | 3 | Do you know what the "ALT-NEGAM" stands for? |
| | 4 | MR. ARBOGAST:  Do you know what that means |
| 15:41 | 5 | (indicating)? |
| | 6 | THE WITNESS:  "ALTA"? |
| | 7 | MR. ARBOGAST:  Do you understand the question? |
| | 8 | THE WITNESS:  No. |
| | 9 | MR. KLUBES: |
| 15:41 | 10 | Q.  The question is, do you have an understanding |
| | 11 | of what does that -- those letters and numbers mean |
| | 12 | right there? |
| | 13 | A.  I see the date, "1/1-03." |
| | 14 | MR. ARBOGAST:  He's asking you a simple question. |
| 15:42 | 15 | He's asking you whether you know whether -- |
| | 16 | THE WITNESS:  No. |
| | 17 | MR. ARBOGAST:  -- what that means. |
| | 18 | THE WITNESS:  No. |
| | 19 | MR. KLUBES: |
| 15:42 | 20 | Q.  Do you recall seeing that on the document when |
| | 21 | you signed it? |
| | 22 | A.  No, I don't remember. |
| | 23 | Q.  Okay. |
| | 24 | Have you ever heard of a negative amortization loan |
| 15:42 | 25 | being referred to as "negam" or n-e-g-a-m? |

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011       JOSEPHINE GOLDHABER

Page 112

16:14   1       exception of two months making the loan payments --

        2           A.   Yes.

        3           Q.   -- that were due?

        4           And what did you do to try to get a loan

16:15   5       modification?

        6           A.   Well, we made some payments.  We were ready to

        7       let the house go because the house was worth nothing,

        8       thanks to that lousy loan that we got.

        9           Q.   Okay.

16:15   10          I think my question was, though, what did you --

        11      You said you decided you wanted to get a loan

        12      modification.

        13          A.   Yes.

        14          Q.   What did you do to try to get a loan

16:15   15      modification?

        16          A.   I look for somebody to help me out.

        17          Q.   Who did you go to to try to help you out?

        18          A.   I went to the same bank.  I went to Bank of

        19      America.  I told them.  I says, "The house is negative

16:15   20      completely.  Can you please help me out if you want me

        21      to keep it?"

        22          Q.   And what did --

        23          A.   And they didn't want the house.  They -- They

        24      just say, "Yeah.  We going to help you."

16:15   25          Q.   Do I understand you to be saying they said they

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 132

16:40    1        A.   You know what?  I don't remember.  It's been so

         2    long.  You know what I mean?  It's just -- It's been so

         3    long that I don't even remember all these numbers, you

         4    know.

16:40    5        Q.   Well, were these payment amounts -- were these

         6    the full payment amounts, the --

         7        A.   Yes.

         8        Q.   -- that --

         9        Let me finish my question.

16:40   10        A.   Oh.

        11        Q.   Were these the full payment amounts that, if

        12    you paid, you would not experience negative

        13    amortization?

        14        A.   Right.

16:40   15        Q.   And let me turn your attention to -- Oh.

        16        You said you had on your other house -- You did

        17    have a negative amortization loan before; right?

        18        A.   Yes.

        19        Q.   And do you recall looking at the

16:40   20    truth-in-lending disclosure statement as to that loan,

        21    and it had negatives by it so you knew when you were

        22    getting into that other negative amortization loan that

        23    it was a negative amortization loan --

        24        MR. KLUBES:  Objection.

16:40   25        MR. ARBOGAST:

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

68

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 133

| | | |
|---|---|---|
| 16:40 | 1 | Q.  -- correct? |
| | 2 | MR. KLUBES:  Leading. |
| | 3 | THE WITNESS:  I didn't know that I was getting in a |
| | 4 | negative amortization.  I didn't want to get into |
| 16:41 | 5 | another one. |
| | 6 | MR. ARBOGAST: |
| | 7 | Q.  Right.  You said that. |
| | 8 | A.  Yes. |
| | 9 | Q.  Okay. |
| 16:41 | 10 | But did anything on this page, truth-in-lending |
| | 11 | disclosure statement, lead you to believe that you were |
| | 12 | getting into another negative amortization loan? |
| | 13 | A.  No. |
| | 14 | Q.  I'm next going to show you Exhibit Number 2. |
| 16:41 | 15 | At the top it says "Adjustable Rate Note." |
| | 16 | Do you see that? |
| | 17 | A.  Yes. |
| | 18 | Q.  If instead it said "Negative Amortization |
| | 19 | Note," would you have signed this document? |
| 16:41 | 20 | MR. KLUBES:  Objection. |
| | 21 | THE WITNESS:  No. |
| | 22 | MR. ARBOGAST: |
| | 23 | Q.  If this note -- that it said "Adjustable Rate |
| | 24 | Negative Amortization Note," would you have signed |
| 16:41 | 25 | this -- entered into this loan? |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 134

| | | |
|---|---|---|
| 16:41 | 1 | MR. KLUBES:  Objection. |
| | 2 | THE WITNESS:  Of course not. |
| | 3 | MR. ARBOGAST:  Okay. |
| | 4 | THE WITNESS:  I already was in a -- in that loan |
| 16:42 | 5 | before.  I didn't want to get into another one. |
| | 6 | MR. ARBOGAST: |
| | 7 | Q.  If it said that "The principal amount to repay |
| | 8 | will" -- not "could" but "will be greater than the |
| | 9 | amount you originally borrowed," would you have entered |
| 16:42 | 10 | into the loan? |
| | 11 | A.  No, because -- |
| | 12 | MR. KLUBES:  Objection. |
| | 13 | THE WITNESS:  -- it says right here "could," |
| | 14 | "could."  It didn't say "will." |
| 16:42 | 15 | MR. ARBOGAST: |
| | 16 | Q.  So I want to get an idea of -- because you said |
| | 17 | that you looked at all the payments -- the payment |
| | 18 | coupons you get every month. |
| | 19 | A.  Yes. |
| 16:42 | 20 | Q.  And in those payment coupons, it is those |
| | 21 | coupons that give you the different options; right? |
| | 22 | A.  Yes. |
| | 23 | Q.  You never saw those options before you entered |
| | 24 | into the loan, did you? |
| 16:42 | 25 | A.  No. |

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011         JOSEPHINE GOLDHABER

Page 135

16:42   1          Q.  And in looking at all those payment coupons, is

        2      that --

        3          When did you first find out that you got into a

        4      negative amortization loan?

16:42   5          A.  When I got my payments, when it start going up.

        6      And then they put the -- the -- they put the -- the

        7      balance in my -- in my -- in my balance -- in my whole

        8      balance.  They put -- They add up money into my balance.

        9      That's when I found out it was.

16:43   10         Q.  Okay.

        11         About how many months into the loan did you realize

        12     that you had a negative amortization loan?

        13         A.  About four or five months.

        14         Q.  Okay.

16:43   15         Now, earlier -- and I want to get the two

        16     paragraphs that --

        17         I'm showing you there's -- still on Exhibit 2, and

        18     also I'm going to set side by side Exhibit 3, page 3.

        19         In Exhibit 2, we have paragraph 3.(E); right?

16:43   20         A.  Yes.

        21         Q.  And then on Exhibit 3, we have paragraph 3.(E)

        22     again.  Okay?

        23         Do you remember looking at these paragraphs

        24     earlier?

16:44   25         A.  Yes.

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

JORDAN V. PAUL FINANCIAL   February 15, 2011        JOSEPHINE GOLDHABER

Page 136

16:44   1        Q.  Okay.

        2        See the first part of the sentence says, "My

        3    monthly payment could be less than the amount of the

        4    interest portion"?

16:44   5        A.  Yes.

        6        Q.  Okay.

        7        What does "could be less" mean?

        8        A.  It's not telling me it will be.  It says

        9    "could."

16:44  10        Q.  Okay.

       11        A.  It didn't say "will be."

       12        Q.  Okay.

       13        And you testified later on this afternoon that you

       14    were quite upset for getting into this loan?

16:44  15        A.  Yes.

       16        Q.  Can you explain why you're upset for getting

       17    into this loan?

       18        A.  Because I feel like they lie to me.

       19        Q.  Okay.

16:44  20        A.  They didn't specify when I signed the loans,

       21    you know, that it was going to be for sure all this

       22    mess.

       23        Q.  And about how many months into the loan and

       24    making payments every month did you finally realize, you

16:45  25    know, that you got into this loan?

HUTCHINGS COURT REPORTERS, LLC - GLOBAL LEGAL SERVICES
800.697.3210

80961fb4-0df0-4d6b-bd3b-e5b9b7d00736

# EXHIBIT 8

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

**Israel Saperstein**
**Saperstein Law Firm**
**3828 Carson Street**
**Suite 102**
**Torrance, CA 90503**
**424-456-0005 Fax: 424-772-3919**
**84471**
☒ Attorney for:

FOR COURT USE ONLY

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

**Eli Goldhaber**
**Josephine Goldhaber**

Debtor(s).

CASE NO.: **2:10-bk-20052-RN**

CHAPTER: **7**

ADV. NO.

## ELECTRONIC FILING DECLARATION
### (INDIVIDUAL)

## PART I - DECLARATION OF DEBTOR(S) OR OTHER PARTY

☐   Petition, statement of affairs, schedules or lists      Date Filed: _____

☒   Amendments to the petition, statement of affairs, schedules or lists    Date Filed: _____

☐   Other: _____      Date Filed: _____

I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), hereby declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document); (2) the information provided in the Filed Document is true, correct and complete; (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s); (4) I have actually signed a true and correct hard copy of the Filed Document in such places and provided the executed hard copy of the Filed Document to my attorney; and (5) I have authorized my attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a *Statement of Social Security Number(s)* (Form B21) and provided the executed original to my attorney.

/s/ Eli Goldhaber         May 18, 2011
Signature of Signing Party      Date
**Eli Goldhaber**
Printed Name of Signing Party
/s/ Josephine Goldhaber         May 18, 2011
Signature of Joint Debtor      Date
**Josephine Goldhaber**
Printed Name of Joint Debtor

## PART II - DECLARATION OF ATTORNEY FOR SIGNING PARTY

I, the undersigned Attorney for the Signing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed the *Declaration of Debtor(s) or Other Party* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct hard copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration*, the *Declaration of Debtor(s) or Other Party*, and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration*, the *Declaration of Debtor(s) or Other Party*, and the Filed Document available for review upon request of the Court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the *Statement of Social Security Number(s)* (Form B21) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the *Statement of Social Security Number(s)* (Form B21) for a period of five years after the closing of the case in which they are filed; and (3) I shall make the executed original of the *Statement of Social Security Number(s)* (Form B21) available for review upon request of the Court.

/s/ Israel Saperstein         May 18, 2011
Signature of Attorney for Signing Party      Date
**Israel Saperstein 84471**
Printed Name of Attorney for Signing Party

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California

*November 2006*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| Filer's Name: | **Israel Saperstein** | Atty Name (if applicable): | **Israel Saperstein** |
| | **3828 Carson Street** | | |
| | **Suite 102** | | |
| Street Address: | **Torrance, CA 90503** | CA Bar No. (if applicable): | **84471** |
| Filer's Telephone No.: | **424-456-0005** | Atty Fax No. (if applicable): | **424-772-3919** |

| In re: | Case No. 2:10-bk-20052-RN |
|---|---|
| **Eli Goldhaber**<br>**Josephine Goldhaber** | Chapter **7** |

## SECOND AMENDED SCHEDULE(S) AND/OR STATEMENT(S)

A filing fee of $26.00 is required to amend any or all of Schedules "D" through "F." An addendum mailing list is also required as an attachment if creditors are being added to the creditors list. Is/are creditor(s) being added?

☐ Yes     ☒ No

Indicate below which schedule(s) and/or statement(s) is(are) being amended.

☐ A   ☒ B   ☒ C   ☐ D   ☐ E   ☐ F   ☐ G   ☐ H   ☐ I   ☐ J

☐ Statement of Social Security Number(s)     ☒ Statement of Financial Affairs

☐ Statement of Intention     ☐ Other

**NOTE:** IT IS THE RESPONSIBILITY OF THE DEBTOR TO MAIL COPIES OF ALL AMENDMENTS TO THE TRUSTEE AND TO NOTICE ALL CREDITORS LISTED IN THE AMENDED SCHEDULE(S) AND TO COMPLETE AND FILE WITH THE COURT THE PROOF OF SERVICE ATTACHED.

I/We, **Eli Goldhaber and Josephine Goldhaber**, the person(s) who subscribed to the foregoing Amended Schedule(s) and/or Statement(s) do hereby declare under penalty of perjury that the foregoing is true and correct.

DATED:   May 18, 2011

**\*\*FOR COURT USE ONLY\*\***

/s/ Eli Goldhaber
**Eli Goldhaber**
*Debtor Signature*

/s/ Josephine Goldhaber
**Josephine Goldhaber**
*Co-Debtor Signature*

**\*\*SEE PROOF OF SERVICE\*\***

B-1008 *Revised November 2003*

75

## PROOF OF SERVICE

I hereby certify that a copy of the Amendment(s) was(were) mailed to the Trustee and that notice was given to the additional creditors listed.

DATED:   __May 18, 2011_____

Israel Saperstein _____
Print or Type Name

/s/ Israel Saperstein _____
Signature

(SEE ATTACHED MAILING LIST.)

**Elissa Miller**
Sulmeyer Kupetz
333 S Hope Street
35th Floor
Los Angeles, CA 90071

**U.S. Trustee**
**United States Trustee (LA)**
725 S Figueroa Street 26th Floor
Los Angeles, CA 90017

B-1008 *Revised November 2003*

B6B (Official Form 6B) (12/07)

In re    **Eli Goldhaber**
     **Josephine Goldhaber**                     Case No.    **2:10-bk-20052-RN**

                         Debtor(s)

# SECOND AMENDED SCHEDULE B - PERSONAL PROPERTY

     Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

     **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint or Community | Current Value of Debtor's Interest In Property, With-Out Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | | Cash on Hand | C | $20.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bank of America Business Act. Checking and Savings Acct. | C | $2,000.00 |
| | | Premier Bank Checking and Savings Acct. | C | $4,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Miscellaneous household goods furnishings & personal effects | C | $4,000.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | Clothing and other personal effects | C | $350.00 |
| 7. Furs and jewelry. | | Personal jewelry | C | $300.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

B 6B (Official Form 6B) (12/07) - Cont.

In re **Eli Goldhaber**
    **Josephine Goldhaber**
             **Debtor**

Case No. **2:10-bk-20052-RN**

                  **(If known)**

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint or Community | Current Value of Debtor's Interest In Property, With-Out Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | | **Retirement The Union Trust Fund** | C | $53,696.84 |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **Tax Refund** | C | $6,000.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Best Case Bankruptcy

B 6B (Official Form 6B) (12/07) - Cont.

In re  **Eli Goldhaber**
 **Josephine Goldhaber**
                                    Debtor

Case No.  **2:10-bk-20052-RN**

(If known)

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint or Community | Current Value of Debtor's Interest In Property, With- Out Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Debtors claims in class action lawsuit: Jordan, Goldhaber, Individually and on behalf of all others similarly situated, Plaintiffs,  v. Paul Financial, LLC, et al., Defendants, US District Court, Northern District of California-San Francisco Division, Case No. 3:07-CV-04496-SI | C | Unknown |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2006 Toyota Tacoma 90,000 Miles | C | $6,500.00 |
| | | 2002 Cadillac Escalade 135,000 Miles | C | $4,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | 9 tables $250.00; 35 chairs $200.00, 9 bar chairs $200.00, water drink machine $300.00; 1 small chip machine $50.00, 42 inch TV $300.00 glass refrigerator $150.00; 6 burner ove stoves $250.00; 1 fryer $200.00; 2 Grills $400.00; 2 cash register $400.00; dishes $40.00; pots and pans $100.00; micro wave oven $25.00; racks to put merchandise $40.00; | C | $2,905.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B 6B (Official Form 6B) (12/07) - Cont.

In re    **Eli Goldhaber**
        **Josephine Goldhaber**
                    **Debtor**

Case No.   **2:10-bk-20052-RN**

_____
            (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint or Community | Current Value of Debtor's Interest In Property, With-Out Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

Total >          **$83,771.84**

(Report also on Summary of Schedules)

Best Case Bankruptcy

B6C (Official Form 6C)  (04/10)

In re   Eli Goldhaber
        Josephine Goldhaber
                                    Debtor(s)

Case No.   2:10-bk-20052-RN

## SECOND AMENDED SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
☒ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds $146,450.*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Cash on Hand** | | | |
| Cash on Hand | C.C.P. § 703.140(b)(5) | 20.00 | 20.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Bank of America Business Act. Checking and Savings Acct. | C.C.P. § 703.140(b)(5) | 2,000.00 | 2,000.00 |
| Premier Bank Checking and Savings Acct. | C.C.P. § 703.140(b)(5) | 4,000.00 | 4,000.00 |
| **Household Goods and Furnishings** | | | |
| Miscellaneous household goods furnishings & personal effects | C.C.P. § 703.140(b)(3) | 4,000.00 | 4,000.00 |
| **Wearing Apparel** | | | |
| Clothing and other personal effects | C.C.P. § 703.140(b)(3) | 350.00 | 350.00 |
| **Furs and Jewelry** | | | |
| Personal jewelry | C.C.P. § 703.140(b)(4) | 300.00 | 300.00 |
| **Annuities** | | | |
| Retirement The Union Trust Fund | C.C.P. § 703.140(b)(10)(E) | 53,696.84 | 53,696.84 |
| **Other Liquidated Debts Owing Debtor Including Tax Refund** | | | |
| Tax Refund | C.C.P. § 703.140(b)(5) | 6,000.00 | 6,000.00 |
| **Other Contingent and Unliquidated Claims of Every Nature** | | | |
| Debtors claims in class action lawsuit: Jordan, Goldhaber, individually and on behalf of all others similarly situated, Plaintiffs, v. Paul Financial, LLC, et al., Defendants, US District Court, Northern District of California-San Francisco Division, Case | C.C.P. § 703.140(b)(5) | 1,820.00 | Unknown |

*Amount subject to adjustment on 4/1/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.
Schedule of Property Claimed as Exempt consists of 2 total page(s)

Best Case Bankruptcy

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com

B6C (Official Form 6C) (04/10) -- Cont

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT
### (Continuation Sheet)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| **2006 Toyota Tacoma 90,000 Miles** | C.C.P. § 703.140(b)(2) | 3,525.00 | 6,500.00 |
| | C.C.P. § 703.140(b)(5) | 2,505.00 | |
| **2002 Cadillac Escalade 135,000 Miles** | C.C.P. § 703.140(b)(5) | 4,000.00 | 4,000.00 |
| **Machinery, Fixtures, Equipment and Supplies Used in Business** | | | |
| **9 tables $250.00; 35 chairs $200.00, 9 bar chairs $200.00, water drink machine $300.00; 1 small chip machine $50.00, 42 inch TV $300.00 glass refrigerator $150.00; 6 burner ove stoves $250.00; 1 fryer $200.00; 2 Grills $400.00; 2 cash register $400.00; dis** | C.C.P. § 703.140(b)(5) | 2,905.00 | 2,905.00 |
| | Total: | 85,121.84 | 83,771.84 |

Sheet 2 of 2 total sheets in Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2010 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
## Central District of California

| | | | |
|---|---|---|---|
| In re | **Eli Goldhaber**<br>**Josephine Goldhaber** | Case No. | **2:10-bk-20052-RN** |
| | Debtor(s) | Chapter | **7** |

## AMENDED STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$24,000.00** | **2010 YTD: Both Employment Income**<br>            **Gross** |
| **$72,293.28** | **2009: Debtor Employment Income** |
| **$15,812.00** | **2008: Debtor Employment Income**<br>**Gross for Rosarita Freshmex Grill $162,804.00**<br>**Gross for Casa Vieja Grill $485,000.00** |

2

### 2. Income other than from employment or operation of business

None ☒

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
| --- | --- |

### 3. Payments to creditors

None ☒

***Complete a. or b., as appropriate, and c.***

a.   *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None ☒

b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None ☒

c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

### 4.  Suits and administrative proceedings, executions, garnishments and attachments

None ☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
| --- | --- | --- | --- |
| **Chase Bank**<br>**vs**<br>**Eli Goldhaber** | **breach of contract** | **pending** | **pending-disc harged** |
| **Chase Bank USA**<br>**vs**<br>**Josie Godhaber (sic)** | **breach of contract** | **pending** | **pending-disc harged** |

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

3

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Jordan, Goldhaber, Individually and on behalf of all others similarly situated, Plaintiffs, vs Paul Financial, LLC, et al Defendants, US District Court, Northern District of California-San Francisco Division, Case No. 3:07-CV-04496-SI | Class Action Suit Alleging Deceptive Disclosures and Lending Practices | pending | pending |

None
☒    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 5. Repossessions, foreclosures and returns

None
☒    List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 6. Assignments and receiverships

None
☒    a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
☒    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

### 7. Gifts

None
☒    List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

Best Case Bankruptcy

4

**8. Losses**

None ☒

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.**(Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Law Offices of Colmenares & Tomilowitz**<br>**1321 Post Ave.**<br>**Suite 201**<br>**Torrance, CA 90501** | **3/1/2010** | **Attorney Fee $2,000.00**<br>**Court Fees $299.00** |

**10. Other transfers**

None ☐

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| **Eliseo Garcia**<br>**18401 Soledad Canyon Road**<br>**Canyon Country, CA 91387**<br>**None** | **7/27/2009** | **Transferred business.  Debtor receive no money.**<br>**Business was underwater** |

None ☒

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ☒

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

5

**12. Safe deposit boxes**

None ☒    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

**13. Setoffs**

None ☒    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

**14. Property held for another person**

None ☒    List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

**15. Prior address of debtor**

None ☒    If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
| --- | --- | --- |

**16. Spouses and Former Spouses**

None ☒    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

     "Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

     "Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ☒    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
| --- | --- | --- | --- |

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

6

None ☒ b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ☒ c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

### 18. Nature, location and name of business

None ☐ a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within six years immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Casa Vieja | | 18401 Soldeda Canyon Road Canyon Country, CA 91387 | Mexican restaurant | 2007-June 2009 |
| Rosarita Fresh | | 27674 Newhall Ranch Rd Valencia, CA 91355 | Mexican Food | 2001-Present |

None ☒ b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ☒ a. List all bookkeepers and accountants who within two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

7

None ☒    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NAME          ADDRESS          DATES SERVICES RENDERED

None ☒    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                               ADDRESS

None ☒    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS          DATE ISSUED

---

### 20. Inventories

None ☒    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

DATE OF INVENTORY        INVENTORY SUPERVISOR        DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

None ☒    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

DATE OF INVENTORY        NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
RECORDS

---

### 21. Current Partners, Officers, Directors and Shareholders

None ☒    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NAME AND ADDRESS        NATURE OF INTEREST        PERCENTAGE OF INTEREST

None ☒    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

NAME AND ADDRESS        TITLE        NATURE AND PERCENTAGE
OF STOCK OWNERSHIP

---

### 22. Former partners, officers, directors and shareholders

None ☒    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

NAME        ADDRESS        DATE OF WITHDRAWAL

None ☒    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

NAME AND ADDRESS        TITLE        DATE OF TERMINATION

---

### 23. Withdrawals from a partnership or distributions by a corporation

None ☒    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

NAME & ADDRESS
OF RECIPIENT,
RELATIONSHIP TO DEBTOR        DATE AND PURPOSE
OF WITHDRAWAL        AMOUNT OF MONEY
OR DESCRIPTION AND
VALUE OF PROPERTY

8

**24. Tax Consolidation Group.**

None ☒   If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

**25. Pension Funds.**

None ☒   If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                          TAXPAYER IDENTIFICATION NUMBER (EIN)

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  **May 18, 2011**                       Signature  **/s/ Eli Goldhaber**
                                                        **Eli Goldhaber**
                                                        Debtor


Date  **May 18, 2011**                       Signature  **/s/ Josephine Goldhaber**
                                                        **Josephine Goldhaber**
                                                        Joint Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Software Copyright (c) 1996-2011 CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

90

# EXHIBIT 9

1  **SMOGER & ASSOCIATES**
   Gerson H. Smoger (SBN 79196)
2  Gerson@texasinjurylaw.com
   Steven M. Bronson (SBN 246751)
3  steven.bronson@gmail.com
   3175 Monterey Blvd
4  Oakland, California  94602-3560
   Tel.: (510) 531-4529
5  Fax:  (510) 531-4377

6  **BROWNE WOODS GEORGE LLP**            **ARBOGAST & BERNS LLP**
7  Lee A. Weiss (Admitted *Pro Hac Vice*)   David M. Arbogast (SBN 167571)
   lweiss@bwgfirm.com                      darbogast@law111.com
8  626 RXR Plaza                           Jeffrey K. Berns (SBN 131351)
   Uniondale, New York  11556              jberns@law111.com
9  Tel.: (516) 222-2900                    6303 Owensmouth Avenue, 10th Floor
   Fax: (516) 977-0263                     Woodland Hills, California  91367-2263
10                                          Tel.: (818) 961-2000
                                           Fax: (818) 936-0232
11 [*Additional counsel listed on signature page*]
   Attorneys for Plaintiffs and the Proposed Class
12

13              UNITED STATES DISTRICT COURT

14     NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

15
16 GREGORY M. JORDAN, ELI GOLDHABER     )   CASE NO. 3:07-cv-04496-SI
   and JOSEPHINA GOLDHABER, individually )
   and on behalf of all others similarly situated, )   [*Assigned to the Hon. Susan Illston*]
17                                       )
           Plaintiffs,                   )   CLASS ACTION
18                                       )
                                         )
19       v.                              )   STATEMENT OF RECENT DECISION OF
                                         )   BANKRUPTCY COURT: ORDER
20                                       )   APPROVING STIPULATION
   PAUL FINANCIAL, LLC, LUMINENT        )   BETWEEN CHAPTER 7 TRUSTEE AND
21 MORTGAGE CAPITAL, INC., HSBC BANK    )   DEBTORS AUTHORIZING DEBTORS
   USA, N.A., AS TRUSTEE OF LUMINENT    )   TO PROSECUTE, ON BEHALF OF THE
22 MORTGAGE TRUST 2006-2, RBS          )   BANKRUPTCY ESTATE, CERTAIN
   FINANCIAL PRODUCTS, INC. and DOES 2  )   PRE-PETITION CLAIMS
23 through 10 inclusive,                 )
                                         )
24                                       )
                                         )
           Defendants.                   )   Complaint Filed:  August 29, 2007
25                                       )   Trial Date:  Not set yet.
26                                       )

27

28

──────────────────────────────────────────

Statement of Recent Decision of Bankruptcy Court - Order re Stipulation - 3:07-cv-04496-SI

1   **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on May 25, 2011, the Honorable Richard M. Neiter entered the

3  Order Approving Stipulation Between Chapter 7 Trustee and Debtors Authorizing Debtors to Prosecute,

4  on Behalf of the Bankruptcy Estate, Certain Pre-petition Claims ("Order Approving Stipulation") in the

5  matter of *In Re Eli Goldhaber - Josephine Goldhaber* ("*In re Goldhaber*"), 2:10-BK-20052-RN, United

6  States Bankruptcy Court, Central District California - Los Angeles Division.  A true and correct copy of

7  the Order Approving Stipulation is attached hereto as <u>Exhibit 1</u>.

8

9                           Respectfully submitted,

  DATED:  May 31, 2011            **ARBOGAST & BERNS LLP**

10

11                By:  */s/ David M. Arbogast*

12                   David M. Arbogast
                    Jeffrey K. Berns

13                   6303 Owensmouth Ave., 10th Floor
                    Woodland Hills, CA 91367-2263

14                   Tel.: (818) 961-2000
                    Fax: (818) 936-0232

15                   **SMOGER & ASSOCIATES**

16                   Gerson H. Smoger
                    Steven M. Bronson

17                   3175 Monterey Blvd
                    Oakland, CA  94602

18                   Tel.: (510) 531-4529
                    Fax: (510) 531-4377

19                   **BROWNE WOODS GEORGE LLP**

20                   Lee A. Weiss  (Admitted *Pro Hac Vice*)
                    626 RXR Plaza

21                   Uniondale, New York 11556
                    Tel.: (516) 222-2900

22                   Fax: (516) 977-0263

23                   and

24                   Michael A. Bowse (SBN 189659)
                    mbowse@bwgfirm.com

25                   2121 Avenue of the Stars, Suite 2400
                    Los Angeles, California 90067

26                   Tel.: (310) 274-7100
                    Fax: (310) 275-5697

27  ///

28  ///

1

Statement of Recent Decision of Bankruptcy Court - Order re Stipulation - 3:07-cv-04496-SI

Christopher A. Seeger
(*Admitted Pro Hac Vice*)
cseeger@seegerweiss.com
**SEEGER WEISS LLP**
One William Street
New York, NY 10004
Tel.: (212) 584-0700
Fax: (212) 584-0799

and

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Tel.: (215) 564-2300
Fax: (215) 851-8029

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)
mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

Attorneys for Plaintiffs GREGORY M. JORDAN,
and ELI and JOSEPHINA GOLDHABER and the
Proposed Class

2

Statement of Recent Decision of Bankruptcy Court - Order re Stipulation - 3:07-cv-04496-SI

# EXHIBIT NO. 1

EXHIBIT 1

1
**SAPERSTEIN LAW FIRM**
Israel Saperstein (SBN 84471)
2
3828 Carson Street, Suite 102
Torrance, CA 90503
3
is@sapersteinlawfirm.com

4
Attorneys for: Eli Goldhaber and
                Josephine Goldhaber
5

| FILED & ENTERED |
| --- |
| MAY 25 2011 |
| CLERK U.S. BANKRUPTCY COURT |
| Central District of California |
| BY mail        DEPUTY CLERK |

6

### UNITED STATES BANKRUPTCY COURT
7
### CENTRAL DISTRICT OF CALIFORNIA
8
### LOS ANGELES DIVISION
9

10
IN RE:

11
ELI GOLDHABER

12
JOSEPHINE GOLDHABER

13

14

15

                    Debtor(s)
16

17

18

19

20          The above entitled court (the "**Court**") (1) having entered an order reopening the above

21   captioned case (the "**Case**") on May 17, 2011 so Eli Goldhaber and Josephine Goldhaber

22   ("**Debtors**") can work with and on behalf of a reappointed trustee ("**Trustee**") to prosecute an

23   unadministered prepetition claim for the benefit of Debtors' bankruptcy estate, (2) having

24   provided in such order that a motion for the Court's approval of a stipulation between the Trustee

25   and the Debtors for such prosecution "may be brought to the Court on an emergency *ex parte*

26   basis, with limited notice by overnight mail or other overnight delivery upon the U.S. trustee and

27   the Chapter 7 trustee and the Debtors," and (3) having considered the "Stipulation Between

Case No.  2:10-BK-20052-RN

Chapter 7

**ORDER APPROVING STIPULATION
BETWEEN CHAPTER 7 TRUSTEE AND
DEBTORS AUTHORIZING DEBTORS
TO PROSECUTE, ON BEHALF OF THE
BANKRUPTCY ESTATE, CERTAIN
PRE-PETITION CLAIMS**

Date:        none unless ordered by court
Time:        none unless ordered by court
Courtroom:   1645
Judge:       Hon. Richard M. Neiter

28
**2:10-BK-20052-RN**                                  1
ORDER APPROVING STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND DEBTORS AUTHORIZING DEBTORS TO
PROSECUTE, ON BEHALF OF THE BANKRUPTCY ESTATE, CERTAIN PRE-PETITION CLAIMS

1
2          Chapter 7 Trustee and Debtors to Prosecute, on Behalf of the Bankruptcy Estate, Certain
3   Pre-Petition Claims," executed on or about May 18, 2011 (the "**Stipulation**") and (4) having
4   considered Debtors' *Ex Parte* Motion for an Order approving the Stipulation, and good cause
5   appearing therefor,
6          **IT IS ORDERED AS FOLLOWS:**
7          1. The Stipulation is hereby approved by the Court.
8          2. Debtors are hereby delegated and granted authority and standing to prosecute, on behalf
9   of the Debtors' Estate subject to exemption rights, the Debtors' claims as pleaded in that certain
10  class action lawsuit pending in the United States District Court for the Northern District of
11  California in the lawsuit entitled *Gregory M. Jordan, et al. v. Paul Financial, LLC, et al.* and
12  assigned docket No. C 07-04496 SI, which was referenced in the Stipulation as the "**Class Action**
13  **Suit.**"
14                                          ###
15
16
17
18
19
20
21
22
23
24
25  DATED: May 25, 2011                    _____
26                                          United States Bankruptcy Judge
27
28
    2:10-BK-20052-RN                        2
    ORDER APPROVING STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND DEBTORS AUTHORIZING DEBTORS TO
    PROSECUTE, ON BEHALF OF THE BANKRUPTCY ESTATE, CERTAIN PRE-PETITION CLAIMS -PETTION CLAIMS

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **SAPERSTEIN LAW FIRM, 3828 Carson Street, Suite 102, Torrance, CA 90503**

A true and correct copy of the foregoing document described as **ORDER GRANTING JOINT DEBTORS' EMERGENCY *EX PARTE* MOTION TO REOPEN BANKRUPTCY CASE SO DEBTORS CAN PROSECUTE A PREPETITION CLAIM FOR THE BENEFIT OF THE ESTATE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

☐ Service Information continued on attached page.

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On **May    , 2011** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**OVERNIGHT EXPRESS SERVICE:**

| | | |
|---|---|---|
| The Honorable Richard Neiter<br>U.S. Bankruptcy Court<br>Roybal Federal Building<br>255 E. Temple Street, Suite 1652<br>Los Angeles, CA 90012-3332 | Elissa D. Miller, former Ch. 7 Trustee<br>SulmeyerKupetz<br>333 South Hope Street, 35th Floor<br>Los Angeles, CA 90071 | United States Trustee<br>725 South Figueroa Street<br>26th Floor<br>Los Angeles, CA 90017 |

**(This is served with limited notice pursuant to order of Hon. Richard Neiter entered May 17, 2011)**

☐ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | Israel Saperstein | */s/Israel Saperstein* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                       **F 9013-3.1.PROOF.SERVICE**

**NOTE TO USERS OF THIS FORM:**
1. Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2. The title of the judgment or order and all service information must be filled in by the party lodging the order.
3. **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
4. **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **ORDER GRANTING JOINT DEBTORS' EMERGENCY *EX PARTE* MOTION TO REOPEN BANKRUPTCY CASE SO DEBTORS CAN PROSECUTE A PREPETITION CLAIM FOR THE BENEFIT OF THE ESTATE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order.  As of **May    , 2011**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Michael H Colmenares    mhcandrmt@aol.com, solucioneslegale@aol.com
- Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;emiller@ecf.epiqsystems.com
- Israel Saperstein    is@sapersteinlawfirm.com, is@sapersteinlawfirm.com
- Ramesh Singh    claims@recoverycorp.com
- United States Trustee (LA)    ustpregion16.la@usdoj.gov
- Matthew Heyn    mheyn@ktbslaw.com

☐ Service Information continued on attached page.

**II.  SERVED BY THE COURT VIA U.S. MAIL:**  A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service Information continued on attached page.

**III.  TO BE SERVED BY THE LODGING PARTY:**  Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service Information continued on attached page.