**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
3175 Monterey Blvd
Oakland, California 94602-3560
Tel.: (510) 531-4529
Fax: (510) 531-4377

**BROWNE WOODS GEORGE LLP**
Lee A. Weiss (Admitted *Pro Hac Vice*)
lweiss@bwgfirm.com
626 RXR Plaza
Uniondale, New York 11556
Tel.: (516) 222-2900
Fax: (516) 977-0263

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
darbogast@law111.com
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, California 91367-2263
Tel.: (818) 961-2000
Fax: (818) 936-0232

[*Additional counsel listed on signature page*]
Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

|  |  |
|---|---|
| GREGORY M. JORDAN, ELI GOLDHABER and JOSEPHINA GOLDHABER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL FINANCIAL, LLC, LUMINENT MORTGAGE CAPITAL, INC., HSBC BANK USA, N.A., AS TRUSTEE OF LUMINENT MORTGAGE TRUST 2006-2, RBS FINANCIAL PRODUCTS, INC. and DOES 2 through 10 inclusive,<br><br>Defendants. | CASE NO. 3:07-cv-04496-SI<br><br>CLASS ACTION<br><br>**REPLY TO DEFENDANT RBS FINANCIAL PRODUCTS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: June 24, 2011<br>Time:  9:00 a.m.<br>Place:  Courtroom 10<br>Judge:  Hon. Susan Illston<br><br>Complaint Filed: August 29, 2007<br>Trial Date: Not set yet. |

1

## TABLE OF CONTENTS

2

**Page**

3  I.      INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5          A.      The Goldhabers Have Standing, Regardless of their Bankruptcy Filing . . . . . . . . . . . . . 1

6          B.      The Class is Objectively Defined and Sufficiently Numerous  . . . . . . . . . . . . . . . . . . . . 3

7          C.      RBS's Typicality Arguments, Based On Purported "Unique Defenses," Lack Merit  . . . 4

8                  1.      Plaintiffs Indisputably Read and Relied On The Loan Documents . . . . . . . . . . . 4

9                  2.      The Loan Documents At Issue In The Class Definition Are Uniform  . . . . . . . . 7

10         D.      Plaintiffs Readily Meet The Adequacy Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11                 1.      Plaintiffs' Claims Are Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12                 2.      Plaintiffs Control the Suit and Have No Disqualifying Conflict of Interest . . . . . 8

13                 3.      RBS's Remaining Adequacy Arguments Are Meritless . . . . . . . . . . . . . . . . . . . . 9

14         E.      Common Issues Predominate With Respect to the Fraudulent Omission Claim . . . . . . . 10

15         F.      Common Issues Predominate With Respect to the UCL Claims . . . . . . . . . . . . . . . . . . 12

16         G.      RBS's Remaining Predominance Arguments are Meritless  . . . . . . . . . . . . . . . . . . . . . 13

17         H.      Damages Can Be Computed in a Uniform Manner . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18         I.      A Class Action Is Superior  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19  III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20

21

22

23

24

25

26

27

28

Reply to RBS's Opposition to Plts. Motion for Class Certification - 3:07-cv-04496-SI

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>FEDERAL CASES</u>

*Berlowitz v. Nob Hill Masonic Management*,
   1996 WL 724776 (N.D.Cal. Dec. 6, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bodner v. Oreck*,
   2007 WL 1223777 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bryant v. Service Corp. Int'l*,
   2011 WL 855815 (N.D.Cal. March 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Clarkson Co. Ltd v. Rockwell Intern. Corp.*,
   441 F.Supp. 792 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dechert v. Cradle Co.*,
   333 F.3d 801 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*,
   177 F.3d 774 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Eatmon v. Palisades Collection LLC*,
   2011 WL 147680 (E.D.Tex., Jan. 18, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*First State Bank of Northern California v. Bank of America, N.T. & S.A.*,
   618 F.2d 603 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gartin v. S & M NuTec, LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Gawry v. Countrywide Home Loans, Inc.*,
   640 F.Supp.2d 942 (N.D. Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hanon v. Dataproducts Corp.*,
   976 F2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hapin v. Arrow Fin. Services*,
   428 F.Supp.2d 1057 (N.D.Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Helfand v. Gerson*,
   105 F.3d 530 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Herrera v. LCS Financial Services Corp.*,
   2011 WL 2419084 (N.D.Cal. June 1, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Adobe Systems, Inc. Securities Litigation*,
   139 F.R.D. 150 (N.D.Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iii

Reply to RBS's Opposition to Plts. Motion for Class Certification - 3:07-cv-04496-SI

*In re First Alliance Mortgage Co.,*
   471 F.3d 977 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Lopez,*
   283 BR 22 (9th Cir. BAP 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Tableware Antitr. Litig.,*
   241 F.R.D. 644 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
   267 F.R.D. 583 (N.D.Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Visa Check/MasterMoney Antitrust Litigation,*
   280 F.3d 124, 140 (2d Cir.2001), cert. denied, 536 U.S. 917, 122 S.Ct. 2382,
   153 L.Ed.2d 201 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Wachovia Corporation "Pick–a–payment" Mortgage Marketing And Sales Practices Litigation,*
   2011 WL 1877630 (N.D. Cal., May 17, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Jenkins v. Wright and Ferguson Funeral Home,*
   215 F.R.D. 518 (S.D. Miss. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jimenez v. Domino's Pizza, Inc.,*
   238 F.R.D. 241 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jordan v. Paul Financial, LLC,*
   745 F.Supp.2d 1084 (N.D.Cal., Sept. 30 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jordan v. Paul Financial LLC,*
   2009 WL 192888 (N.D.Cal. Jan. 27, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kanawai v. Bechtel Corp.,*
   254 F.R.D. 102 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lindley v. Gen. Elec. Co.,*
   780 F.2d 797 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lymburner v. U.S. Fin. Funds, Inc.,*
   263 F.R.D. 534 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11-14

*Malikyar v. Sramek,*
   2008 WL 4891020 (N.D. Cal. Nov. 12, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McPhail v. First Command Fin. Planning, Inc.,*
   247 F.R.D. 598 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ostayan v. Serrano Reconveyance Co.,*
   77 Cal. App. 4th 1411 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pacific Coast Agr. Export Ass'n v. Sunkist Growers, Inc.,*
   526 F.3d 1196 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Plascencia v. Lending 1st Mtg.,*
   259 F.R.D. 437 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11-14

*Poulos v. Caesars World, Inc.*,
   2002 WL 1991180 (D. Nev. June 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12

*Quezada v. Loan Ctr. Of Cal., Inc.*,
   2008 WL 5100241 (E.D. Cal. Nov. 26, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
   2008 WL 4906433 (C.D. Cal., Nov. 13, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sandres v. Corrections Corp. of America*,
   2010 WL 4321587 (E.D.Cal. Aug. 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
   793 F.2d 1034, 1040 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Washington v. Joe's Crab Shack*,
   271 F.R.D. 629 (N.D.Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilborn v. Dun & Bradstreet Corp.*,
   180 F.R.D. 347 (N.D.Ill.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Yamner v. Boich*,
   1994 WL 514035 (N.D.Cal. Sept. 15 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

## STATE CASES

*Engalla v. Permanente Medical Group, Inc.*,
   (1997) 15 Cal. 4th 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Tobacco II Cases*,
   (2009) 46 Cal. 4th 298 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mirkin v. Wasserman*,
   (1993) 5 Cal.4th 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State by Bronster v. U.S. Steel Corp.*,
   82 Hawai'i 32, 919 P.2d 294 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

v

Reply to RBS's Opposition to Plts. Motion for Class Certification - 3:07-cv-04496-SI

*Wilner v. Sunset Life Ins. Co.*,
    78 Cal. App. 4th  952 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL RULES**

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**STATE STATUTES**

California Code of Civil Procedure
    § 474 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Code of Civil Procedure
    § 583.21(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Business & Professions Code,
    § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 12, 13, 15

Reply to RBS's Opposition to Plts. Motion for Class Certification - 3:07-cv-04496-SI

## I.       INTRODUCTION AND SUMMARY OF ARGUMENT

Certification of Plaintiffs' claims is proper, as courts in this district recently acknowledged in certifying two classes alleging claims virtually identical to those alleged here. *See Plascencia v. Lending 1st Mtg.*, 259 F.R.D. 437 (N.D. Cal. 2009) (Wilken, J.); *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010) (Laporte, J.).  *See also In re Wachovia Corporation "Pick–a–payment" Mortgage Marketing And Sales Practices Litigation*, 2011 WL 1877630 (N.D. Cal., May 17, 2011) (Fogel, J.) (certifying nationwide settlement class and granting final approval of settlement providing up to billions of dollars in loan modifications and cash to Option ARM borrowers bringing similar claims).

Shrugging *Plascencia* and *Lymburner* off as wrongly-decided, Defendant RBS Financial Products, Inc. ("RBS") hopes this Court will disregard the similar uniform loan documents common here to all Class members through obfuscation.  First, RBS argues that the Class is not ascertainable, even though membership in the Class can be ascertained on the face of the Option ARM documents.  Second, while it does not claim the Class is too small to make joinder impracticable, RBS argues that Plaintiffs have not demonstrated numerosity, despite admitting that over 3,300 individuals obtained Option ARM loans with teaser rates.  Common sense and the evidence before the Court warrant a finding that numerosity is satisfied.  Third, RBS's argument that Plaintiffs' claims are not typical of those of the Class due to an alleged standing deficiency is unsupported by the facts and law.  As the record shows, Plaintiffs have been authorized to pursue this action, and RBS's claims about lack of standing, lack of timeliness, and a variety of personal attacks on the Goldhabers are unsupported by the facts and the law.[1]  Finally, RBS's claim that class member reliance issues preclude certification contravenes settled authority holding that, under the California Business & Professions Code, §§ 17200, *et. seq.,* ('UCL"), only the named plaintiffs need rely, and that, for fraud, class-wide reliance can be presumed where, as here, all class members were subjected to a set of uniform material omissions. Plaintiffs' motion should be granted.

## II.      ARGUMENT

### A.       The Goldhabers Have Standing, Regardless of their Bankruptcy Filing

RBS contends that Plaintiffs lack standing because this action was not listed on their bankruptcy

---

[1]      For instance, the right to prosecute this action without interference from the Trustee  has been conferred on them by the Trustee of their bankruptcy estate.  Based on the Trustee's ratification (*see* Fed.R.Civ.P. 17(a)(3)), Plaintiffs are the real parties in interest.  *See* Order re Stipulation, Dkt. No. 356.

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

schedules. Opp. at 8-10. This is no longer the case. On May 17, 2011, the Bankruptcy Court reopened that case. Dkt. No. 350. On May 18, 2011, Plaintiffs filed amended bankruptcy schedules to include this action. Dkt. No. 358-1 (Ex. 8). On May 31, 2011, the Bankruptcy Court approved a Stipulation between Plaintiffs and their Chapter 7 Trustee wherein Plaintiffs were authorized to prosecute the claims at issue on behalf of the Bankruptcy Estate and to serve as Class representatives, subject to exemption rights. Dkt. No. 356.[2]

RBS, nevertheless, claims the Trustee is the real party in interest, implicating Fed. R. Civ. P. 17(a).[3] However, the Trustee and the Bankruptcy Court have approved and ratified Plaintiffs' role. *See* Fed. R. Civ. P. 17(a)(3) ("After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." The approved Stipulation provides that:

> "The Debtors are authorized to make decisions regarding the prosecution of the Class Action Suit without further advice or consent from the Trustee. Specifically, Debtors are authorized to enter into settlement negotiations concerning the disposition of the Class Action Suit as they deem appropriate, as well as to accept such settlement terms that they deem appropriate. They may also proceed through trial in accordance with their best judgment."[4]

The Order approving the Stipulation further holds: "Debtors are hereby delegated and granted authority and standing to prosecute, on behalf of the Debtors' Estate subject to exemption rights, the Debtors' claims as pleaded in that certain class action lawsuit . . . *Gregory M. Jordan, et al. v. Paul Financial, LLC, et al. ....*" Order re Stip., Dkt. No. 356. Thus, with the Bankruptcy Court's blessing, the Trustee has ratified the process and agreed to be bound by the result. *See, e.g., Jenkins v. Wright and Ferguson Funeral Home*, 215 F.R.D. 518, 521-22 (S.D. Miss. 2003); *Clarkson Co. Ltd v. Rockwell Int'l Corp.*, 441 F. Supp. 792, 797

---

[2]     The trustee has authority to assign claims of the estate for prosecution for the benefit of the estate. *Duckor Spradling & Metzger v. Baum Trust* (*In re P.R.T.C., Inc.*), 177 F.3d 774, 780-84 (9th Cir. 1999); *see also In re Lopez*, 283 BR 22, 28 (9th Cir. BAP 2002) (after reopening case, trustee can "prosecute it, settle it, abandon it, or arrange for plaintiffs to prosecute it in exchange for the estate receiving a share of the proceeds.") The trustee can do so in a class action. *See Poulos v. Caesars World, Inc.*, 2002 WL 1991180, at *5 (D. Nev. June 25, 2002) (implicitly recognizing trustee's standing in holding that plaintiff could prosecute class action because bankruptcy trustee had abandoned her claim) (citing cases), *aff'd in part and dismissed in part on other grounds*, 379 F.3d 654 (9th Cir. 2004).

[3]     "The basic purpose of the [real party in interest] rule is to protect a defendant from subsequent similar actions by one not a party to the initial action." *Pacific Coast Agr. Export Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975). As was the case in *Pacific Coast*, no such concerns exist here, since the Trustee has delegated her rights to prosecute the action to Plaintiffs.

[4]     *First State Bank of Northern California v. Bank of America, N.T. & S.A.*, 618 F.2d 603, 604 (9th Cir. 1980) is inapposite, as there the plaintiff bank had been taken over by the FDIC prior to filing the case, leaving it no authority to pursue the case. In contrast, here the Bankruptcy Court and the Trustee have expressly authorized the Goldhabers to pursue the claims in this case. *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) is also inapposite, because here the Trustee has ratified Plaintiffs' prosecution of the action and any risk of multiplicity of suits is eliminated. *See Pacific Coast*, 526 F.2d at 1208.

(N.D. Cal. 1977) (finding ratification; though rare, this is "an entirely proper method of resolving controversies over real parties in interest."); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040 (9th Cir. 1986) (confirming ratification option).

### B.     The Class is Objectively Defined and Sufficiently Numerous

The Notes at issue all contain the same statements and omissions identified in the Class definition: (**1**) The Notes disclose a low interest rate on their first page -- typically between 1% to 3%. *See* Declaration of Lee A. Weiss in Support of Plaintiffs' Motion for Class Certification ("Weiss Decl."), Exs. 2, 3, 5, 7, 8, 10;  (**2**) the Notes state that the interest rate "may change" instead of "will" or "shall" when describing a change in the listed yearly numerical interest rate, see *id*., ¶ 2, Ex. 2;  (**3**) the yearly interest rate "adjusts" after one month to a rate which is the sum of an "index" and "margin."  *Id.*  (The Notes do not disclose that the interest rate was discounted.  In addition, the interest rate listed in the Notes is represented to be the "yearly rate."  *Id.*); and (**4**) The Notes do not contain any statement that paying the amount listed for the "initial monthly payments," which monthly payment amount is in effect for the first year of the loan, will definitely result in negative amortization after the first interest rate change date.  *Id.*

RBS incorrectly claims that Plaintiffs' proffered Class definition, which focuses on the foregoing characteristics of the subject uniform loan documents, "surreptitiously" and improperly seeks to expand the Class, because the operative complaint (the Fourth Amended Complaint or "4AC" (Dkt. No. 237)) refers only to the loan form numbers and not to the characteristics of the loans. Opp. at 11. This is incorrect. The purpose of a class definition is so that class members can readily understand if they are members of a class. If RBS is aware of any other notes that fit the precisely articulated class definition, then it should - but hasn't - explain why those noteholders should not be included as part of the class.  (Plaintiffs are unaware of any.)[5]  In any case, *see, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 583, 591 (N.D.Cal. 2010) (allowing modifications to class definitions during certification briefing; distinguishing *Jordan v. Paul Financial LLC*, 2009 WL 192888 (N.D.Cal. Jan. 27, 2009) on ground that counsel, after class certification hearing, sought to "substantively redefine the class and conduct additional discovery,"

---

[5]     *Berlowitz v. Nob Hill Masonic Management*, 1996 WL 724776, *2 (N.D.Cal. Dec. 6, 1996) (Opp. at 11) is inapposite, putting aside that the court cited no authority to support that it was "bound" by the pleaded class definition.  There, the complaint defined the class to include disabled persons and the class certification motion included disabled persons and their companions.  *Id.*  That is hardly comparable to adding loans that used the same documents as loans made on the enumerated forms.

3

1  whereas "[h]ere, the proposed modifications are minor, require no additional discovery, and cause no

2  prejudice to defendants.")

3      The Class definition in this Motion is consistent with the 4AC, which defines a class of borrowers

4  who obtained "Option ARM loan on Loan Form Version Nos.: Form 3601 1/01; Form 3602 1/01; Form

5  3602 1/01 (PF0093); Form 3602 1/01 (PF 0131); or Form 3620 1/01(PF 1311). . ."  4AC ¶ 46.  The 4AC

6  *also* alleges that the loans with those enumerated form numbers have the precise uniform substantive

7  characteristics set forth in the Motion's Class definition.  *See, e.g., Id.*, ¶¶ 23-34.  Therefore, no relevant

8  difference exists between the Class defined in the 4AC and the Class Plaintiffs seek to have certified.  The

9  contention that Plaintiffs are altering the Class definition in order to satisfy numerosity is ridiculous.

10  Indeed, RBS does not claim, let alone show, that the Class is not sufficiently numerous.  Instead, it asserts,

11  without *any* factual basis or citation to evidence, that even though it bought thousands of loans from Paul

12  Financial, it cannot identify the Class members because it does not possess the loan documents for these

13  loans (Opp. at 11, n. 10).  Certainly, ascertainability cannot depend solely on a defendants' self-serving,

14  unsubstantiated assertion.  Indeed, RBS acknowledges that it purchased approximately 3,300 Option ARM

15  loans with teaser rates in California alone (Opp. at 11 n. 11; RBS Supp. Resp., Moore Decl., Ex. 1), yet, it

16  is apparently now suggesting that the Court should ignore that figure.  As the interrogatory was perfectly

17  consistent with the description of the subject loans in the 4AC and the Class definition in the motion,

18  numerosity cannot be an issue.[6]

19      **C.    RBS's Typicality Arguments, Based On Purported "Unique Defenses," Lack Merit**

20          **1.    Plaintiffs Indisputably Read and Relied On The Loan Documents**

21      Plaintiffs sat down and "read every single thing we could in that -- in that -- in those papers."  *See,*

22  *e.g.*, J. Goldhaber DT at 80:19-81:3; E. Goldhaber DT at 100:6-11.[7]  Although it does not dispute this

23  ───────────────
   [6]    To the extent that RBS is now arguing that the 3,300 figure is not relevant to the Class definition,
24  even though that is the precise language used in the interrogatory, it is essentially admitting that it willfully
   obfuscated the truth when it answered the interrogatory.  Such gamesmanship should not be tolerated.
25  Nevertheless, while there may be some outlier loans of the 3,300 that do not meet the objective criteria in
   the Class definition, there is no basis for concluding anything other than that the Class is sufficiently
26  numerous.   Plaintiffs need *not* identify the exact number of class members, as *this Court recently held.*
   *Bryant v. Service Corp. Int'l*, 2011 WL 855815, *7 (N.D.Cal. March 9, 2011).
27  [7]    Mr. and Mrs. Goldhaber testified repeatedly that they read the loan documents.  E. Goldhaber DT
   at 62:8-24, 66:17-25, 89:16-22, 92:14-18, 96:8-13, 96:14-20, 98:25-99:3, 100:6-11, 101:14-19, 104:17-22,
28  106:7-11, 108:4-13, 132:7-18; J. Goldhaber DT at 73:18-74:3, 76:23-77:8, 81:1-3, 82:3-14, 101:7-9, 101:23-
   25, 104:15-19, 108:5-8, 109:15-17.

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

testimony, RBS incorrectly asserts: "Evidence of reliance on third party statements precludes an individual from showing reliance on documents as pled here." (Opp. at 12:23-24.) But RBS does not cite a single case holding that being exposed to additional sources of information precludes reliance on misleading documents.[8] Moreover, to bolster its position that Plaintiffs relied on other information to the exclusion of the documents, RBS distorts Plaintiffs' testimony. It asserts (without citation) that Mrs. Goldhaber "stated she relied upon statements from her broker," (Opp. at 22:15) when she did no such thing. It claims (Opp. at 12) that a "broker" influenced the Goldhabers' decision,[9] yet Mrs. Goldhaber testified that she does not even recall a broker being involved in the transaction. J. Goldhaber DT, 84:1-5, Moore Decl., Ex. 3.[10] In fact, the testimony proferred by RBS regards statements of a Paul Financial employee and a notary public at the closing, not a broker. With respect to the Paul Financial representative, Mrs. Goldhaber merely stated that he "said to me that it was one of the best loans that they had, and -- and the payment was going to be low." *Id.* at 76:5-9. This vague puffery hardly demonstrates reliance on facts outside the loan documents, let alone precludes reliance on the documents and omitted facts at issue here. In fact, Mrs. Goldhaber went on to testify that the Paul Financial representative did not tell her anything about the terms of the loan – which she learned through reading the loan documents. *See Id.*, 77:3-5 ("Q. Did he tell you anything about what the terms of the loan were going to be? **A. No.**") (emphasis added). Mr. Goldhaber also testified he did not recall talking to anyone about the loan's terms before signing. E. Goldhaber DT, 65:1-24. As for the notary, he only told her that the payments were "$1300 a month" (J. Goldhaber DT, 82:15-83:6), but, of course, that is simply the Note's monthly payment amount, and does not foreclose reliance on the documents. He did not discuss the substance of the documents with her. *Id.*, 83:7-11.

Even if RBS could demonstrate that the Goldhabers were exposed to information outside the loan

---

[8]   *Ostayan v. Serrano Reconveyance Co.*, 77 Cal. App. 4th 1411, 1419 (2000) (Opp. at 12) is readily distinguishable. That court affirmed the dismissal of a fraud claim based on an auctioneer's misleading statements, because the plaintiff expressly acknowledged that he did not purchase the auctioned property in reliance on the statements. *Id.* at 1419 ("[B]y his own admission Ostayan did not rely on anything that the auctioneer stated. His concession in this regard precludes him from establishing the critical element of reliance."). Here, Plaintiffs testified that they relied *on the loan documents* in entering into the loan.

[9]   Apart from the fact that it is not relevant to the reliance analysis, RBS fails to explain how this conversation, which occurred when Mr. Goldhaber was not home (J. Goldhaber DT, 76:10-14), could have influenced *Mr.* Goldhaber's decision to enter into the loan.

[10]   Referenced excerpts from the Goldhabers' depositions are attached as Exhibits 2 and 3, respectively, to the concurrently-filed Declaration of J. Mark Moore ("Moore Decl.").

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

documents and the terms at issue here - and also relied on it - Plaintiffs need only show that the omissions

in the documents were a substantial factor in causing their damages, not that they were the *sole* cause:

> While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. "'**It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision**.'"

*In re Tobacco II Cases* (2009) 46 Cal. 4th 298, 326-327 (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-77 (1997)).[11] Plaintiffs read the loan documents before signing. Accordingly, reliance is established and they are not subject to any unique reliance defense.[12]

RBS finds no support in this Court's prior decision. There, this Court, while confirming that the defense of non-reliance is *not* a basis to deny class certification (*see Hanon v. Dataproducts Corp.*, 976 F.2d

---

[11]  Both Plaintiffs testified that they would not have entered the loans if they would have known the omitted information. E. Goldhaber DT 127:17-128:16, J. Goldhaber DT, 133:14-134:14. This suffices for reliance, as a matter of law. *Jordan v. Paul Financial, LLC*, 745 F.Supp.2d 1084, 2010 WL 3892261, *8 (N.D.Cal., Sept. 30 2010) (citing *Mirkin*, stating: "[P]laintiffs have sufficiently alleged reliance by stating that they would have behaved differently had they known about the certainty of negative amortization.") The loan documents' omission of material information regarding the Option ARM loans was critical to any reasonable person's decision as to whether to enter into the loan. *See Lymburner*, 263 F.R.D. at 542.

[12]  RBS has also greatly exaggerated the Goldhabers' experience. They are not real estate investment professionals. They are modestly educated and have never received any training in this field. *See* E. Goldhaber Dep. Tr, 12:9-14 (Mr. Goldhaber has a high school education); J. Goldhaber DT, 8:15-20 (Mrs. Goldhaber has only tenth-grade education). RBS points out that Plaintiffs had a prior "Option ARM loan." But RBS does not suggest, let alone demonstrate, that the loan documents for that Washington Mutual loan failed, like the subject loan, to disclose that negative amortization was certain based on the scheduled payments. As we know, Paul Financial, for example, sold many "Option ARM" loan products; some, as shown by Ex. 6 to the Mosner Decl., in fact disclosed the certainty of negative amortization. Those loans are not part of the class. Moreover, that prior experience is what made the Goldhabers not want another such loan. It simply confirms why the omission of the truth regarding the subject loan mattered to them, and why they in fact took pains to read the loan documents. J. Goldhaber DT, 78:24-79:4, 132:15-133:5, E. Goldhaber DT 128:10-16, 128:24-129:8. RBS's assertions that Plaintiffs were "familiar with the type of loan they were receiving and understood the loan's terms" are incorrect. To support its contention, RBS bizarrely cites to "evidence" (Opp. at 13:13) regarding a different, interest-only loan the Goldhabers *subsequently* obtained. This fails to show they understood the terms of the misleading, earlier loan at issue in this case. Mrs. Goldhaber testified that she did not even know what the term "ARM" stood for. J. Goldhaber DT, 92:20-25. RBS desperately points to Mrs. Goldhaber's hope - like most homeowners - that after living in their home for ten years, the price might be worth more than what they paid for it. Opp. at 13, n. 13; *see also* J. Goldhaber DT at 39:25-40:23. This evidence does not suggest professional or special expertise. *See, generally,* E. Goldhaber DT at 12:24-13:4, 66:7-20; 93:22-94:14; 128:24-129:12; and 133:3-5; J. Goldhaber DT at 9:23-10:10, 19:5-17; 21:16-24 and 22:4-8. RBS also points out that Plaintiffs successfully modified the subject loan and are seeking to modify another loan. Opp. at 13, n. 13. However, knowledge about loan modification programs - *after the fraud* - is irrelevant to whether Plaintiffs relied on the deceptive loan documents at issue. *See also* Opp to MSJ at 15, Dkt. No. 375 (refuting RBS's arguments about Plaintiffs' supposed vast experience and sophistication).

---

6

1  497, 509 (9th Cir. 1992)), concluded the litigation would focus on a defense *unique* to a plaintiff based on

2  evidence "regarding plaintiff's working relationship with his mortgage broker, his prior experience with

3  mortgage products, and the possibility that he did not read the loan documents. . . . . ." *Jordan v. Paul*

4  *Financial, LLC*, 2008 WL 192888, *5 (N.D.Cal. Jan. 27, 2009).  Here, Plaintiffs read and relied on the loan

5  documents, had no work relationship with any broker, and do not have the same extensive experience.[13]

6  ## 2.    The Loan Documents At Issue In the Class Definition Are Uniform

7  RBS's contention that the loan documents at issue are not uniform (Opp. at 13-14) ignores the Class

8  definition, which was designed to avoid the fact  that Paul Financial used the term "Option ARM" to cover

9  a far broader range of loans than most lenders.  Thus, unlike previously, the current Class does not cover

10  all of Paul Financial's Option ARM loans.  Instead, it is expressly limited to loans that were made using loan

11  documents that contain certain characteristics that render the loans deceptive (*e.g.*, low initial rate that

12  adjusts after one month, guaranteed negative amortization based on disclosed payment amount, and a

13  misleading disclosure that negative amortization "may" occur, even though it is certain).

14  Notably, RBS offers no support for its claim that the documents for loans using Notes with these

15  traits are not uniform. Instead, it seeks to mislead by submitting a declaration attaching multiple Notes

16  which admittedly are different, but only one of which meets the Class definition.  Plaintiffs do not claim that

17  *all* of Paul Financial's varied "Option ARM" forms (and products) are uniformly deceptive, just that the

18  ones in the class definition are.  Indeed, paragraph 24 of the Declaration of Dennis Tussey, proffered by

19  RBS, effectively admits that these form loan documents are "the same or similar for each Option ARM loan

20  product offered by Paul Financial. . . ."  Mosner Decl, Ex. 1.

21  ## D.    Plaintiffs Readily Meet The Adequacy Standard

22  ### 1.    Plaintiffs' Claims Are Timely

23  RBS's statute of limitations argument ignores California's Doe rule, which applies to the state law

24  claims at issue here.  *See Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 800-802 (9th Cir. 1986) (holding that

25  California's Doe rule, and not Fed. R. Civ. P. 15(c), applies to state claims in federal court actions, and

26

27  [13]     *Quezada v. Loan Center of Cal., Inc.*, 2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) is also
inapposite.  There, the court found the plaintiff faced a unique defense, and was not typical, because she did
28  not read any of the loan documents and had a limited grasp of English.  *Id.*, at *4.  The court cited this
Court's certification decision in doing so.  *Id.*, at *5. No such facts are present here.

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1   provided plaintiff with three years to identify unnamed defendants after filing a complaint naming Does.)

2          California Code of Civil Procedure §§ 474 and 583.210(a) provide that a plaintiff who identifies Doe

3   defendants in a complaint has three years from the filing of the complaint to identify and serve the

4   defendants.  The original complaint, filed in this action on August 30, 2007 (Dkt. No. 1) named Does 1-10.

5   RBS, the subsequent purchaser of the Goldhabers' loan, was identified as Doe 1 on October 7, 2009, when

6   the 4AC (Dkt. No. 237) was filed.  Because this occurred  well within 3 years of the filing of the original

7   complaint, the timeliness of Plaintiffs' claims is evaluated as of the filing of the August 30, 2007 complaint.

8   (In effect, RBS was named as of August 30, 2007.)  Since Plaintiffs' loan closed on July 28, 2005, they are

9   well within the three-year fraud statute of limitations and the four-year UCL limitations period.

10          **2.      Plaintiffs Control the Suit and Have No Disqualifying Conflict of Interest**

11          RBS asserts that Plaintiffs cannot adequately represent the interests of the Class.  Opp. at 15.  In fact,

12   Plaintiffs themselves control this litigation because they, not the Trustee, have power and authority to make

13   all decisions involving this case.  *See* Order Approving Stipulation, Dkt. No. 356, quoted *supra*.  Although

14   any recovery Plaintiffs obtain will benefit the bankruptcy estate (and Plaintiffs themselves), this is true of

15   any class action plaintiff who has legally enforceable debts.  The important fact is that the Trustee and

16   Bankruptcy Court have given the power to freely litigate this case to Plaintiffs.  Thus, RBS's "common

17   sense" assertion that Plaintiffs are "beholden to two masters here - the trustee and the class and thus cannot

18   serve as adequate class representatives" (Opp. at 15:13-14) is contrary to the facts and unsupported by law.[14]

19   Plaintiffs are authorized to act *without* "advice or consent" from the Trustee. Although RBS *asserts* there

20

21

22   _____

     [14]     RBS's entire argument relies on a single Seventh Circuit opinion, *Dechert v. Cradle Co.*, 333 F.3d
23   801, 803 (7th Cir. 2003), where the court found a conflict for a trustee to serve the estate and as class
     representative.  RBS *concedes* this case is not controlling.  Opp. p. 9, n. 7.  Further, the *Dechert* court stated
24   it was not promulgating a bright-line rule:  "We do not want to lay down a flat rule that a trustee in
     bankruptcy (or, what is the equivalent, a debtor in possession) can never be a class representative."  *Dechert*,
25   333 F.3d at 803.  The unique facts in *Dechert* narrow its application further, as there the court noted the
     existence of an additional conflict of interest because the defendant in the class action was affiliated with
26   a creditor to the estate that the trustee represented.  *Id.* at 803-04.  This put the trustee on both sides of the
     controversy in a Fair Debt Collection Practices Act action.  *Id.*  No such conflict exists here.  Here, the
27   Trustee authorized Plaintiffs to proceed at their own discretion.  Whatever might be the case if the Trustee
     were prosecuting this matter as a class representative, with dual fiduciary duties, Plaintiffs have no fiduciary
28   duty to the creditors - as the Trustee and the Bankruptcy Court have confirmed.  Their duty runs only to the
     class. As such, the fact that the creditors could share in Plaintiffs' recovery, if there is one, means nothing.

8

1    is a disqualifying "conflict of interest," it identifies none, and the facts and law say otherwise.[15]

2                    **3.    RBS's Remaining Adequacy Arguments Are Meritless**

3          The test for adequacy is "whether or not plaintiffs have demonstrated a willingness and vigor to

4    prosecute the action, whether they have any disabling conflicts going to the heart of the controversy, and

5    whether they have qualified counsel."  *In re Adobe Systems, Inc. Securities Litigation*, 139 F.R.D. 150, 156

6    (N.D.Cal. 1991) (noting that the plaintiffs understood the gravamen of their claims, and need not be

7    intimately familiar with every factual and legal issue).   "A named plaintiff does not need to have special

8    knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class

9    action is maintained." *Kanawai v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008); *see also In re*

10   *Tableware Antitr. Litig.*, 241 F.R.D. 644, 649-50 (N.D.Cal. 2007) ("minimal familiarity" enough); *Walters*

11   *v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (Adequacy "depends on the qualifications of counsel for the

12   representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and

13   the unlikelihood that the suit is collusive.");*Yamner v. Boich*, 1994 WL 514035 (N.D.Cal. Sept. 15 1994)

14   (rejecting inadequacy argument where it appeared plaintiff did not read complaint and lacked much

15   knowledge about the case, noting that "Plaintiff's reliance on his counsel to investigate and litigate this case

16   is appropriate, and does not render him an inadequate representative").[16]

17         Despite RBS's use of out-of-context quotations, Plaintiffs have easily demonstrated the knowledge

18   necessary to represent the Class.  For example, Mr. Goldhaber understands the nature of his claim:

19         Q:     What is your understanding of what–who took what from you and how?

20                * * *

---

21   [15]    RBS's footnote judicial estoppel argument fails, since Plaintiffs have amended their bankruptcy
22   schedules. *Malikyar v. Sramek*, 2008 WL 4891020, *6 (N.D. Cal. Nov. 12, 2008) (finding no judicial
     estoppel and noting that *Hamilton* "clearly allows a debtor to escape the doctrine of judicial estoppel if he
23   amends his schedules to identify the cause of action..."); *Sandres v. Corrections Corp. of America*, 2010
     WL 4321587, *6 (E.D.Cal. Aug. 26, 2010) (denying motion to dismiss on judicial estoppel grounds despite
24   *Hamilton*). *See also Hapin v. Arrow Fin. Services*, 428 F.Supp.2d 1057, 1062, n. 3 (N.D.Cal. 2006)
     ("Defendant also argues that Plaintiff has no standing to file his Rosenthal Act claim because he did not
25   schedule that claim in an unrelated bankruptcy proceeding. ***The Court finds that argument unavailing and
     a matter properly left for the bankruptcy forum, where the asset schedule can be amended***
26   ***appropriately***."). Moreover, as their recent bankruptcy filings show - and as the court at least implicitly
     accepted despite RBS's contrary arguments - Plaintiffs' initial failure to list the claims, now corrected, was
27   the result of a mistake.  Judicial estoppel is inapplicable when a party's prior position was based on
     inadvertence or mistake. *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir.1997).  RBS's cases are inapposite.
28   [16]    *Bodner v. Oreck*, 2007 WL 1223777 (N.D. Cal. April 25, 2007), the sole case on which RBS relies
     in making this argument, has nothing to do with the facts here.

---

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

A:      I pay my payment, 1300 a month.  I look in my statement, and I see minus -- another minus 1400.  So they're taking 3,000 -- almost 3,000 a month out of my equity every month.  I understand that I'm paying 1300, and that's only interest only.  But then they take another -- *It just doesn't show it to me here, in my opinion*.  I think they misled me.  I really -- That's my understanding.

E. Goldhaber DT, 135:5-17 (emphasis added).

Further, both Plaintiffs testified as to the material information that was omitted from the loan documents on which their claims focus. J. Goldhaber DT 131:9-136:22 ("I didn't know that I was getting in a negative amortization."); E. Goldhaber DT, 127:7-128:16 ("Q. And if it said, in those same size letters, same bold like that -- said 'Negative Amortization Note' -- if it said that before you entered into the loan, would you have entered into it?  A. No, I wouldn't.  Q. Okay. If it said -- If this note said in that second column, 'This' -- 'If I make payments according to the payment amount stated in this note, my loan' -- 'this loan will cause my principal balance to increase,'otherwise negative amortization, would you have entered into the loan? . . . THE WITNESS: No.")  Plaintiffs are sufficiently familiar with the claims.[17]

Finally, RBS cites no authority supporting its claim that by what it maliciously characterizes as "strategically defaulting" on the loan Plaintiffs were defrauded into entering, or by inadvertently not listing this case on a bankruptcy schedule, Plaintiffs somehow acted "dishonestly" so as to preclude a finding of adequacy.  There is no such authority.  These non-existent purported "wrongs" do not constitute dishonesty regarding matters directly at issue, nor do, or can, they harm the class's interests.  *See, e.g., Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 638 (N.D.Cal. 2010) (rejecting adequacy challenge based on credibility issues); *Herrera v. LCS Financial Services Corp.*, 2011 WL 2419084, *11 (N.D.Cal. June 1, 2011) (rejecting adequacy challenge and certifying class).[18]

### E.      Common Issues Predominate With Respect to the Fraudulent Omission Claim

"In cases involving material fraudulent omissions, the fourth element of reliance *may be presumed*." *Lymburner*, 263 F.R.D. at 542; *Plascencia*, 259 F.R.D. at 447; *Vasquez v. Superior Ct.* (1971) 4 Cal.3d 800,

---

[17]      RBS also claims that Plaintiffs, who have been deposed and responded to discovery, have a "lack of involvement" in the case because of a *single* error their counsel made in drafting the complaint and repeated in Plaintiffs' opening brief, which RBS bizarrely describes as "blatant inaccuracies" in the 4AC. Without citing any evidence, it intimates that this single drafting error proves they did not read the complaint or motion - putting aside that there is no such requirement - and thus are not involved.  Nonsense.

[18]      The fact that Plaintiffs (and undoubtedly other absent class members) had to fall further into arrears in order to qualify for a modification under the terms of the mortgage servicer's eligibility criteria should not be held against them, and certainly does not defeat typicality.  Put another way, it would be unjust to penalize Plaintiffs for the perverse disincentives that the mortgage servicing industry has established.

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

805 ("It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least *an inference of reliance* would arise as to the entire class.")  RBS argues that *Vasquez* does not apply because it involved a common sales recitation and, "[h]ere, there is no evidence that Paul Financial brokers offered any Homogenized scripts."  Opp. at 21, n.20.  This argument would be meaningful *if* Plaintiffs' claims were based on individualized *oral* representations.  But they are not.  They are based on standardized *written* documents making uniform material omissions, thereby providing an even stronger basis for finding class-wide reliance and predominating common issues than *Vasquez*.  RBS offers no explanation whatsoever of how a case involving uniform oral presentations would be appropriate for certification, while a case based on uniform mortgage loan documents would not be.

Here, the uniform loan documents were delivered to Plaintiffs and Class Members alike.  Indeed, clarifying its holding in *Vasquez,* the California Supreme Court later stated, *"[w]hat we did hold was that when the same material misrepresentations have actually been communicated to each member of a class,* an inference of reliance arises as to the entire class."  *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1095 (1993) (*citing Vasquez*, 4 Cal.3d at 814 & fn 9)).  Thus, the Class is entitled to a presumption or inference of reliance because uniform material omissions were made to each Class Member in the loan documents.[19] *See also McAdams v. Monier, Inc.*, 182 Cal. App. 4th  174, 184 (2010) (reversing denial of class certification, holding that inference of common reliance was available based on uniform failure to disclose material fact); *see also Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th  952, 963 (2000) (citing *Vasquez, supra*).[20]

To support its argument regarding individual reliance, RBS relies on *Poulos v. Caesars World, Inc.,* 379 F.3d 654 (9th Cir. 2004) and *Gartin v. S & M NuTec, LLC,* 245 F.R.D. 429 (C.D. Cal. 2007).  Opp. p. 19, Dkt. No. 345.  However, these cases are inapposite.  Indeed, with substantially similar facts and claims

---

[19]     *See Rivera v. Bio Engineered Supplements & Nutrition, Inc.,* 2008 WL 4906433, *11 (C.D. Cal., Nov. 13, 2008) ("This Court finds, however, that *Vasquez,* rather than *Poulos,* controls.  The issue here is the reliance element of a fraud claim under California state law.  Therefore, the California Supreme Court decision in *Vasquez,* rather than a federal case interpreting a RICO claim, is binding precedent. The Court also notes that *Vasquez* involved an affirmative misrepresentation and not a failure to disclose.")

[20]     Plaintiffs are not asking that reliance be presumed as to *them*; they have shown actual reliance, as discussed above. Whether presumed/inferred reliance applies to *them* is irrelevant. RBS's suggestion (Opp. at 21-22) that presumed/inferred reliance is not available *for class members* in class actions involving uniform misrepresentations or omissions under California law is simply wrong. *Quezada*, to the extent it might be construed to have held otherwise, erred.

1    as here, the *Lymburner* court has found that both *Poulos* and *Gartin* are not comparable to the fraudulent

2    omissions claims made here.  *Lymburner*, 263 F.R.D. at 542.

3           Finally, RBS contends it has rebutted the presumption of reliance because Plaintiffs have "vast

4    mortgage experience" and relied on broker statements.  Opp. at 22.   However, as previously discussed,

5    these arguments are without factual merit, and in any event, they have nothing to do with the presumption

6    of reliance to which the Class is entitled.   RBS does not cite a single decision where class certification in

7    a case involving uniform material omissions in mortgage loan documents was denied on predominance

8    grounds based on speculation that some class members might not have read the documents presented to

9    them for review and signature. Its individual reliance argument would eviscerate *Vasquez*.[21]

10          **F.      Common Issues Predominate with Respect to the UCL Claims**

11          Under the UCL, reliance on the allegedly unfair, unlawful or fraudulent conduct must be shown only

12   for the named plaintiffs, not for absent class members.   Unlike a claim for fraud, "liability under the UCL

13   does not require reliance and injury." *Plascencia,* 259 F.R.D. at 448; *see also Lymburner*, 263 F.R.D. at

14   542-43 ("Only the named plaintiff in an UCL class action case need show injury and causation.") (citing

15   *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009)).   "Accordingly, the 'individual circumstances of

16   each class member's loan need not be examined because the class members are not required to prove

17   reliance and damage.'" *Id.* (*quoting Plascencia,* 259 F.R.D. at 448).   No class "presumption of reliance" is

18   even needed under the UCL, since reliance by individual class members need not be shown.

19          The UCL claim is amenable to class-wide resolution by reference to the uniform loan documents

20   provided to Plaintiffs and Class members.  *See, e.g.,* 4AC ¶¶ 83-91, 101, 104; *see also* Loan Documents,

21   _____

22   [21]      Relying on ¶ 63 of the Tussey declaration, RBS also suggests that Class members did not rely on
     the documents because, by *June 2008* (long *after* the last loan was made), some Paul Financial "Option
23   ARM" borrowers were making payments above the minimum payment amount.  Opp. at 22 n. 22.  As an
     initial matter, the Tussey declaration proffered by RBS relates to the prior class certification motion (and
24   does not include its exhibits). There is not a shred of evidence that the cited facts apply to the current Class
     (and loans), rather than the broader class on the prior motion.  Moreover, this *post*-origination conduct is
25   <u>irrelevant</u> to borrowers' understanding when their loans closed.   There is no evidence that *any* class
     members  paid more than the minimum amount *initially*, when their contracts and the TILDS payment
26   schedule set forth only one, negative amortization-ensuring payment amount. Indeed, as the payment options
     were not set forth in the loan documents, but only provided *after* the loans had closed (J. Goldhaber DT,
27   134:20-25; 4AC, Ex. 2), it is unsurprising that, upon learning the truth, some borrowers, to the extent they
     could afford to do so, later opted to pay more to avoid negative amortization.  Relatedly, and more
28   importantly, there also is *no* evidence that *any* borrowers understood, at closing, that making the disclosed,
     scheduled payments set forth in their notes and TILDS would in fact guarantee negative amortization.  The
     loan documents at issue for the Class uniformly omitted that material fact.

Weiss Decl., Exs. 1-10.  Again, issues of class member reliance and causation are irrelevant under the UCL. Indeed, the Ninth Circuit in *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010) reversed the denial of class certification in a case involving a state consumer protection statute similar to the UCL where class-wide omissions existed in standard form loan documents.[22] *See also Plascencia*, 259 F.R.D. at 446; *Lymburner*, 263 F.R.D. at 541; *First Alliance* at 990-91; *accord McPhail v. First Command Fin. Planning, Inc*, 247 F.R.D. 598, 614-15 (S.D.Cal. 2007) (certifying class).

## G. RBS's Remaining Predominance Arguments Are Meritless

RBS's speculation that some absent class members may have declared bankruptcy does not defeat predominance.  Most will not have done so (and RBS cites no evidence that *any* have).  For any who might have, no highly fact-intensive inquiry will be needed.  *See Wilborn v. Dun & Bradstreet Corp*., 180 F.R.D. 347, 356 (N.D.Ill.1998) ("Many if not most class members will not have filed bankruptcy. As for those class members who have, determining whether they have exempted their claims against defendant should be a relatively straightforward matter. The bankruptcy issue, therefore, does not preclude certification.")[23]

---

[22]   Recognizing that *Yokoyama* decimates the argument that individual issues of reliance predominate for the UCL claim, RBS contends that *Yokoyama* is inapplicable because the statute at issue there (Hawaii's Deceptive Trade Practices Act (DPTA)), does not require actual reliance. Opp. at 18 n. 17. However, the relevant standards under the UCL and DPTA are identical, as actual reliance is not a substantive element of a UCL claim either.  All that must be proven to establish a violation of the UCL's "fraudulent" prong is that "members of the public are likely to be deceived" by the defendant's conduct. *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312.  Recovery under the UCL is "available without individualized proof of deception, reliance, and injury."  *Id*. at 320.  *See also Yokoyama*, 594 F.3d at 1093 ("the Hawaii Supreme Court has made it clear that reliance is judged by an 'objective 'reasonable person' standard.' *Courbat*, 141 P.3d at 436. Hawaii's Supreme Court has said as much: '[A]ctual deception need not be shown; the capacity to deceive is sufficient.' *Bronster*, 919 P.2d at 313.").

[23]   RBS relies on *Jimenez v. Domino's Pizza, Inc.* 238 F.R.D. 241 (C.D. Cal. 2006), which involved a failed attempt to certify a class in a wage/hour misclassification case, in order to argue that proposed Class Members *may* have bankruptcies that could require individualized inquiries. Opp. p. 17. However, *Jimenez* is inapposite, legally and factually.  *Id.*, at 251-252.  The court's predominance ruling was not predicated primarily on the bankruptcy issue.  Indeed, its reference to bankruptcy filings was relegated to a footnote (*Jimenez, supra* at 252, n. 10) and the defendant presented *evidence* - unlike here - that multiple class members had in fact filed for bankruptcy.  *Id*.  RBS also cites *Gawry v. Countrywide Home Loans, Inc*., 640 F.Supp.2d 942 (N.D. Ohio 2009), intimating that bankruptcy issues foreclosed predominance.  Opp., p. 17. In reality, the *Gawry* court denied certification on numerous grounds.  Notably, other courts have not accepted its bankruptcy-related analysis.  *See, e.g., Eatmon v. Palisades Collection LLC*, 2011 WL 147680, *8 (E.D.Tex., Jan. 18, 2011) (rejecting similar argument despite defendant's reliance on *Gawry*); *Wilborn, supra*, 180 F.R.D. at 356-357 (rejecting similar argument, noting that "If the mere assertion that some class members may have filed bankruptcy and failed to properly exempt their claims was enough to defeat class certification, it is doubtful that any class involving the sort of individuals that the FDCPA was meant to protect could be certified.").

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

### H.    Damages Can Be Computed in a Uniform Manner

Differences in individual damage amounts derived through a commonly applied formula will not defeat class certification. *See Blackie v. Barrack*, 524 U.S. 891, 905  (9th Cir. 1975).  Plaintiffs have set forth a uniform method for calculating damages. *See* Declaration of Leonard H. Lyons, ¶¶ 20-28.  Although RBS argues that the damages model does not take into account all circumstances, to the extent that any of the variables identified by RBS are relevant to damages, the model can be expanded to address them based upon  readily available data. *See* Lyons Reply Decl., ¶ 6.  Moreover, most of the purportedly individual circumstances identified by RBS (*e.g.*, sale of property, refinance, deed-in-lieu of foreclosure), involve the termination of the subject loan.  Thus, all of the necessary data to compute damages as of the  termination date (e.g., payments made, negative amortization accrued) can be included in the damages calculation. *Id*., ¶ 6.  Moreover, for loan modifications, the new loan terms can readily be incorporated into the calculation. *Id*., ¶ 6.  And, finally, in the unlikely event that the Court later determines that any category of the post-origination transactions identified by RBS raises insurmountable individual damages issues, the Court could exercise its inherent power to modify the Class definition to exclude those borrowers.

### I.    A Class Action Is Superior

Page 24 of Plaintiffs' opening brief sets forth the Ninth Circuit test for superiority. *See also* Fed. R. Civ. P. 23(b)(3) (setting out four non-exclusive factors).  Superiority is satisfied here, as two courts from this District have already held. *Lymburner,* 263 F.R.D. at 543; *Plascencia,* 259 F.R.D. at 449.  Nevertheless, RBS claims superiority is lacking.  Its primary argument is that class treatment would be unmanageable due to individualized evidence required "to establish standing, reliance, causation and damages." (Opp., p. 24.)[24]  Yet, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140 (2d Cir.2001) (Sotomayor, J.) (citations and internal quotation marks omitted), cert. denied, 536 U.S. 917 (2002).  Indeed, superiority should be denied based on the "manageability" factor <u>only</u> where *each* class member "has to litigate *numerous and*

---

[24]      RBS does not dispute that two of the four Rule 23(b)(3) factors favor certification. It does not claim any other litigation exists involving the claims at issue, or that it is undesirable to concentrate the litigation here. *Zinser v. Accufix Research Institute, Inc.* 253 F.3d 1180, 1191 (9th Cir. 2001) *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001), the sole Ninth Circuit case cited by RBS as to superiority, confirms that "[i]n determining superiority, courts must consider the *four* factors of Rule 23(b)(3)."

*substantial separate issues* to establish his or her right to recover individually."   *Zinser, supra*, 253 F.3d at 1192 (emphasis added).   RBS has greatly overhyped the supposed individual issues implicated by Plaintiffs' fraud claim, which rests on material, uniform omissions in standard form documents.  As for the *UCL* claim, issues of standing, reliance, causation and damages do not even exist for class members, who need not demonstrate UCL standing, reliance or causation; damages are not available under the UCL.  As *Yokoyama* confirms, *Ninth* Circuit law is clear (regardless of Fifth Circuit authority, cited by RBS): Individual questions of  damages do not defeat class certification.[25]

    Finally, RBS briefly argues that individual class members have interests in controlling separate actions.  (Opp. at 25.)  This is so, it claims, because of the potential size of the class members' claims. However, it offers no *evidence* as to the size of those claims, and, indeed, while it says that Plaintiffs' claim "is in excess of $50,000," it does not even cite evidence for that assertion.  RBS cites *Zinser, supra*, arguing that it held that $50,000 claims provide a sufficient incentive to bring individual actions (*id.*, 25:10-12), though *Zinser* did not so hold, let alone deny certification on that basis.[26]  *See, e.g.*, *In re Cornerstone Propane Partners, L.P., Sec. Litig.*, 2006 WL 1180267, *5 (N.D.Cal. May 3, 2006) (certifying class where class representative had alleged damages exceeding $578,000).[27] [28]

## III. CONCLUSION

    Plaintiffs respectfully request that their class certification motion be granted in full.

/ / /

/ / /

---

[25]  RBS also suggests, without citing evidence, that it does not own the loans or possess the loan files or "complete, current borrower information" (Opp., 24:16-17).  This would not defeat superiority even if true.  Borrower information can be obtained from Paul Financial and/or whoever owns the loans.

[26]  *Zinser*  was a proposed class action involving products liability claims and the laws of 48 states.  253 F.3d at 1184.  The Ninth Circuit noted that such claims present "inherent" management problems in a class context.  *Id.*, at 1186.  On the question of individual incentive to sue, the court in *Zinser* observed that the plaintiffs alleged that ***each*** class member sought damages of at least $50,000 and that this allegation "does not argue persuasively for class certification[,]" while at the same time  observing that even a party with a $50,000 claim might have a difficult time alone pursuing a complex case.  253 F.3d at 1190-91.

[27]  RBS's final claim that certification would "prevent" class members from controlling individual suits against brokers is easily answered by the right of any member who wishes to do so to opt out and sue on their own.

[28]  Plaintiffs object to ¶ 19 of the Declaration of Louis Dudney on the ground that it lacks foundation and is contrary to the evidence.  ¶¶ 20-21 are irrelevant and ¶ 21 lacks foundation, is plainly not within this accountant's "expertise," is admittedly speculative, and is argumentative.  Plaintiffs also note that Mr. Dudney's declaration reflects a class size of 3,931.

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

DATED: June 10, 2011

**SMOGER & ASSOCIATES**

By:  */s/ Gerson H. Smoger*
Gerson H. Smoger
Steven M. Bronson
3175 Monterey Blvd
Oakland, CA  94602
Tel.:  (510) 531-4529
Fax:  (510) 531-4377

**BROWNE WOODS GEORGE LLP**
Lee A. Weiss  (Admitted *Pro Hac Vice*)
626 RXR Plaza
Uniondale, New York 11556
Tel.:  (516) 222-2900
Fax:  (516) 977-0263

   and

Michael A. Bowse (SBN 189659)
mbowse@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel.:  (310) 274-7100
Fax:  (310) 275-5697

**ARBOGAST & BERNS LLP**
David M. Arbogast (SBN 167571)
Jeffrey K. Berns (SBN 131351)
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Tel.:  (818) 961-2000
Fax:  (818) 936-0232

**SEEGER WEISS LLP**
Christopher A. Seeger
(*Admitted Pro Hac Vice*)
cseeger@seegerweiss.com
One William Street
New York, NY 10004
Tel.:  (212) 584-0700
Fax:  (212) 584-0799

   and

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Tel.:  (215) 564-2300
Fax:  (215) 851-8029

/ / /

/ / /

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)
mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Tel.:  (310) 235-2468
Fax:  (310) 235-2456

Attorneys for Plaintiffs GREGORY M. JORDAN,
and ELI and JOSEPHINA GOLDHABER and the
Proposed Class

*UNREDACTED* Reply Mem. P&A's I.S.O. Motion for Class Certification - 3:07-cv-04496-SI