1

2

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.: (510) 531-4529; Fax: (510) 531-4377

**ARBOGAST BOWEN LLP**
David M. Arbogast (SBN 167571)
david@arbogastbowen.com
Chumahan B. Bowen (SBN 238168)
cbowen@arbogastbowen.com
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200; Fax: (310) 943-2309

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@bernsweiss.com
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Tel.: (818) 961-2000
Fax: (818) 936-0232

   and

Lee A. Weiss (admitted *pro hac vice*)
lweiss@bernsweiss.com
626 RXR Plaza
Uniondale, New York 11556
Tel.: (516) 222-2900
Fax: (516) 977-0263

3

4

5

6

7

8

9

10

11

*[Additional counsel listed on signature page]*
Attorneys for Plaintiffs and the proposed Class.

12

13

14

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

15

16

17

18

19

20

21

22

23

24

GREGORY M. JORDAN, ELI GOLDHABER
and JOSEPHINA GOLDHABER, individually
and on behalf of all others similarly situated,

             Plaintiffs,

      v.

PAUL FINANCIAL, LLC, LUMINENT
MORTGAGE CAPITAL, INC., HSBC BANK
USA, N.A., AS TRUSTEE OF LUMINENT
MORTGAGE TRUST 2006-2, RBS
FINANCIAL PRODUCTS, INC. and DOES 2
through 10 inclusive,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. 3:07-cv-04496-SI**

*[Assigned to the Hon. Susan Illston]*

CLASS ACTION

**NOTICE OF FILING REQUESTED
AUTHORITIES RE PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

Hearing Date: December 2, 2011
Time:             9:30 a.m.

Complaint Filed:   August 30, 2007
Trial Date:           Not set yet

25

26

27

28

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Pursuant to the request of this Court at the hearing on Plaintiffs' Motion for Class Certification held on December 2, 2011, please find attached the following authorities concerning individuals who have served as class representatives despite filing for bankruptcy:

1. *Hunt v. Check Recovery Systems, Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007) (Jenkins, J.);

2. *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2001 WL 648958 at *2 (N.D. Ill. June 7, 2001) (Kennelly, J.);

3. *Hubbard v. Midland Credit Management, Inc.*, No. 1:05-CV-0216, 2008 WL 5384219 at *3 (S.D. Indiana, Dec. 19, 2008) (Hamilton, J.);

4. *Cobb v. Monarch Finance Corp.*, 913 F.Supp. 1164, 1173 (N.D. Ill. 1995) (Aspen, J.);

5. *Wanty v. Messerli & Kramer, P.A.*, No. 05-CV-0350, 2006 WL 2691076 at *1 (E.D.Wis., Sept. 19, 2006) (Stadtmueller, J.)

6. *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 355 (N.D. Ill. 1998) (Gentleman, J.);

7. *Bigalke v. Creditrust Corp.*, No. 99 C 2303, 2001 WL 1098047 at **9-10, (N.D. Ill. Sept. 14, 2001) (Brown, Mag. Judge);

8. *Cannon v. Nationwide Acceptance Corp.*, No. 96 C 1136, 1997 WL 139472 (N.D. Ill. March 25, 1997) (Coar, J.);

Respectfully Submitted,

DATED: December 5, 2011                    **SMOGER & ASSOCIATES**

By: */s/ Gerson H. Smoger*
   Gerson H. Smoger
   3175 Monterey Blvd
   Oakland, CA  94602
   Tel.:  (510) 531-4529
   Fax:  (510) 531-4377

**ARBOGAST BOWEN LLP**
David M. Arbogast
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

1

**BERNS WEISS LLP**
Jeffrey K. Berns
jberns@bernsweiss.com
6303 Owensmouth Ave., 10th Floor
Woodland Hills, CA 91367-2263
Tel.:  (818) 961-2000
Fax: (818) 936-0232

   and

Lee A. Weiss (admitted *pro hac vice*)
lweiss@bernsweiss.com
626 RXR Plaza
Uniondale, New York  11556
Tel.:  (516) 222-2900
Fax:  (516) 977-0263

**BROWNE GEORGE ROSS LLP**
Michael A. Bowse (SBN 189659)
mbowse@bwgfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel.:  (310) 274-7100
Fax:  (310) 275-5697

**SEEGER WEISS LLP**
Christopher A. Seeger (admitted *pro hac vice*)
cseeger@seegerweiss.com
77 Water Street, 26th Floor
New York, NY 10005
Tel.:  (212) 584-0700
Fax:  (212) 584-0799

   and

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Tel.:  (215) 564-2300
Fax:  (215) 851-8029

**SPIRO MOSS LLP**
J. Mark Moore (SBN 180473)
mark@spiromoss.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Tel.:  (310) 235-2468
Fax:  (310) 235-2456

*Attorneys for Plaintiffs GREGORY M. JORDAN,*
*and ELI and JOSEPHINA GOLDHABER and the*
*Proposed Class*

2

# EXHIBIT NO. 1

**EXHIBIT 1**

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

⚑

United States District Court,
N.D. California.
HUNT, Plaintiff,
v.
CHECK RECOVERY SYSTEMS, INC., Defendant.

Nos. C05-04993 MJJ, C06-02037 MJJ.
March 21, 2007.

**Background:** Consumers brought putative class action against check recovery company, alleging violations of Fair Debt Collection Practices Act (FDCPA). Consumers moved to certify class.

**Holdings:** The District Court, Jenkins, J., held that:
(1) consumers had standing to bring action;
(2) consumers met numerosity, commonality, typicality and adequacy requirements; and
(3) certification of hybrid class was appropriate.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A** ⚯172

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak172 k. Evidence; Pleadings and Supplementary Material. Most Cited Cases
    In analyzing whether putative class meets requirements of federal rules, court is to take substantive allegations of complaint as true, and may also consider extrinsic evidence submitted by parties. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⚯174

170A Federal Civil Procedure
    170AII Parties

170AII(D) Class Actions
    170AII(D)2 Proceedings
        170Ak174 k. Consideration of Merits. Most Cited Cases
    In determining propriety of class action, question is not whether plaintiffs have stated cause of action or will prevail on merits, but whether certification requirements of federal rules are met. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ⚯172

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak172 k. Evidence; Pleadings and Supplementary Material. Most Cited Cases
    Plaintiffs bear burden of establishing each required element for class certification. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A** ⚯182.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases
    Consumers who sued check recovery company established requisite standing to bring class action under Fair Debt Collection Practices Act (FDCPA); complaint averred unlawful collection of interest by company from consumers and others similarly situated, and alleged injury occurred upon company's demand for interest on dishonored checks. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A** ⚯182.5

170A Federal Civil Procedure

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Consumers who sued check recovery company under Fair Debt Collection Practices Act (FDCPA) established requisite numerosity of putative class members pursuant to federal rules; complaint averred that company mailed 67,108 collection letters for 43,536 checks referred to company. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⬤⬤182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Consumers who sued check recovery company under Fair Debt Collection Practices Act (FDCPA) established requisite commonality of putative class members pursuant to federal rules; complaint averred that company sent out form letters demanding consumers to pay statutory fees for dishonored checks as well as interest on owed money, and that all consumers were targeted in same manner. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⬤⬤164**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)1 In General
170Ak164 k. Representation of Class; Typicality. Most Cited Cases

Putative class plaintiff's claim is "typical" for certification purposes if it arises from same event or practice or course of conduct that gives rise to claims of other class members, and his claims are based on same legal theory. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⬤⬤182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Consumers who sued check recovery company under Fair Debt Collection Practices Act (FDCPA) established requisite typicality of claims among putative class members, pursuant to federal rules; complaint shared same legal theory among members that company engaged in unlawful standardized conduct toward consumers. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⬤⬤182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Consumers who sued check recovery company under Fair Debt Collection Practices Act (FDCPA) established adequacy of representation as to putative class members' interests pursuant to federal rules; although named plaintiffs had discharged their debts to company through bankruptcy proceedings, only potential conflicts with other members could have been differing amounts of recovery. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

**[10] Declaratory Judgment 118A ⬚305**

118A Declaratory Judgment
  118AIII Proceedings
    118AIII(C) Parties
      118Ak305 k. Representative or Class Actions. Most Cited Cases

**Federal Civil Procedure 170A ⬚182.5**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)3 Particular Classes Represented
        170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Certification of "hybrid" class was proper as to consumers who sued check recovery company, alleging violations of Fair Debt Collection Practices Act (FDCPA); certification for declaratory relief was appropriate on issues of liability, declaratory relief, and statutory damages, and certification under rule governing common questions of law and fact was appropriate on issue of actual damages due to its secondary nature. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(b)(2, 3), 28 U.S.C.A.

**[11] Declaratory Judgment 118A ⬚305**

118A Declaratory Judgment
  118AIII Proceedings
    118AIII(C) Parties
      118Ak305 k. Representative or Class Actions. Most Cited Cases

**Federal Civil Procedure 170A ⬚165**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)1 In General
        170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases

Class actions certified for injunctive and declaratory relief may also seek monetary damages where such damages are merely "incidental," i.e., flowing directly from liability to class as whole on claims forming basis of declaratory relief. Fed.Rules Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.

**[12] Federal Civil Procedure 170A ⬚165**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)1 In General
        170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues. Most Cited Cases

Predominance inquiry for class certification tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[13] Federal Civil Procedure 170A ⬚161.2**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)1 In General
        170Ak161.2 k. Superiority, Manageability, and Need in General. Most Cited Cases

Manageability problems must be factual, unavoidable obstacles to litigation before they can be considered obstacles to class certification. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**\*507** Paul Arons, Law Office of Paul Arons, Friday Harbor, WA, Ronald Wilcox, San Jose, CA, Irving L. Berg, The Berg Law Group, Corte Madera, CA, O. Randolph Bragg, Horwitz Horwitz & Associates, Ltd., Chicago, IL, for Plaintiffs.

Clark Garen, Law Offices of Clark Garen, Palm Springs, CA, for Defendant.

**ORDER GRANTING PLAINTIFFS' MOTION
TO CERTIFY CLASS**
JENKINS, District Judge.
**INTRODUCTION**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

Before the Court is Plaintiffs Brandy Hunt ("Hunt") and Brian Castillo's ("Castillo") (collectively, "Plaintiffs") Motion to Certify Class. [FN1] Defendant Imperial Merchant Services d.b.a. Check Recovery Systems ("Defendant" or "Imperial") opposes the motion. For the following reasons, the Court **GRANTS** Plaintiffs' Motion to Certify Class.

FN1. Docket No. 45, filed September 19, 2006.

### FACTUAL BACKGROUND
#### A. Procedural History

Hunt and Castillo filed their complaints on December 5, 2005 and March 16, 2006, respectively. On May 9, 2006, this Court issued a Related Case Order relating Plaintiffs' cases. Both Plaintiffs seek damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiffs allege that Imperial's practice of including an interest charge, in addition to their attempt to collect both a check amount and a statutory service charge violates the FDCPA. In particular, Plaintiffs allege that Defendant's debt collection practices: (1) use false, deceptive or misleading representations in violation of § 1692e; (2) falsely represent the character, amount, or legal status of the debt in violation of § 1692e(2)(A); (3) use unfair or unconscionable means to collect or attempt to collect the debt in violation § 1692f; and (4) exceed the amount expressly permitted by law in violation of § 1692f(1). Plaintiffs now seek class certification, to create a class of similarly situated Plaintiffs, pursuant *508 to Federal Rules of Civil Procedure 23(a) and 23(b).

On behalf of the class, Plaintiffs seek the following forms of relief: (1) declaratory judgment that Defendant's practices violate the FDCPA; (2) actual damages pursuant to § 1692k; (3) statutory damages pursuant to § 1692k; and (4) costs and reasonable attorney fees pursuant to § 1692k.

#### B. The Parties

On July 5, 2004, Hunt wrote a check in the amount of $137.15 to Pak 'n Save. (Joint Statement of Undisputed Fact ("JSUF") ¶ 2.) On November 28, 2004, Castillo wrote a check in the amount of $276.36 to Pak 'n Save. (*Id.* ¶ 1.) Both checks were written for personal, family, or household purposes, and both checks returned unpaid due to insufficient funds. (*Id.* ¶¶ 1-2, 5.) Pak 'n Save is operated by Safeway, Inc. ("Safeway"). (*Id.* ¶ 3.) After the Castillo and Hunt checks were returned unpaid, Safeway referred the checks to Imperial for collection. (*Id.* ¶ 4.) The parties agree that Imperial's debt collection conduct is governed by the FDCPA. (*Id.* ¶ 5.)

#### C. Defendant's Debt Collection Practices

The principal purpose of Imperial is to collect debts. (*Id.* ¶ 5.) When Safeway refers unpaid checks written in California to Imperial, Safeway asks Imperial to collect the check amount and the service charge provided under California Civil Code § 1719. (*Id.* ¶ 6.) Imperial retains 27% of the amount collected for the check and the statutory service charge. (*Id.*) After a check has been referred to Imperial, Imperial adds an interest charge, which is calculated at the rate of 10% per annum, accruing from the date the check was written. (*Id.*) Imperial retains 100% of the interest that it collects. (*Id.*) Safeway and Imperial followed these practices in connection with the Hunt and Castillo checks. (*Id.*)

#### 1. Castillo's Check

Safeway referred the Castillo check to Imperial to collect the check amount plus a $25.00 statutory service charge. (*Id.* ¶ 7.) Imperial mailed Castillo a collection letter, dated 2005, in which Imperial demanded $276.36 for the check amount, $25.00 as a "Misc." $8.99 as interest. (*Id.*) Subsequently, Imperial mailed Castillo a collection letter, date 2005, in which Imperial demanded $276.36 for the check amount, $25.00 as a "Misc." $30.43 as interest. (*Id.*)

#### 2. Hunt's Check

Safeway referred the Hunt check to Imperial to collect the check amount plus a $35.00 statutory service charge. (*Id.* ¶ 8.) Subsequently, Imperial

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

mailed Hunt two collection demands. *(Id.)* The second demand, dated December 6, 2005, includes a demand for the check amount, a "Misc." charge of $35.00, and interest of $7.26, for a total of $179.41.

### D. Proposed Definition of the Class

Plaintiffs define the proposed class as follows:

All persons to whom defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable.

(Plaintiffs' Motion for Class Certification ("Mot. for Cert.") 2.)

### LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure outlines a two-step process for determining whether class certification is appropriate. First, Rule 23(a) sets forth four conjunctive prerequisites that must be met for any class:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). These four requirements are often **\*509** referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 153 (N.D.Cal.1991).

Second, assuming the requirements of subdivision (a) are satisfied, the party seeking class certi-

fication must also demonstrate that the action is maintainable by falling within one of the three kinds of actions permitted under Rule 23(b). *See* Fed.R.Civ.P. 23(b); *In re Adobe Sys.,* 139 F.R.D. at 153. Specifically, the plaintiffs must demonstrate their claim is proper under Rule 23(b)(1), (b)(2), or (b)(3).

An action is maintainable under Rule 23(b)(1) when there is either "a risk of prejudice from separate actions establishing incompatible standards of conduct" or the judgment in an individual lawsuit might adversely impact other class members. *See generally* Hon. William W. Schwarzer, *Federal Civil Procedure Before Trial* § 10:385 (2006). This particular type of class action does not permit the recovery of damages. *See Alpert v. U.S. Industries, Inc.,* 59 F.R.D. 491, 499 (C.D.Cal.1973).

An action is maintainable under Rule 23(b)(2) if the defendant "has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole." Schwarzer, *supra,* § 10:398-406. Rule 23(b)(2) actions are common where injunctive or declaratory relief is the primary relief sought on behalf of the class. *See id.* Recovery of damages is generally not available in a Rule 23(b)(2) class action. *See Molski v. Gleich,* 318 F.3d 937, 949-50 (9th Cir.2003). The Ninth Circuit has required a careful consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is primarily seeking injunctive relief. *See id.*

Finally, an action is proper under Rule 23(b)(3) if questions of law or fact common to the class "predominate" over questions affecting the individual members, and the court determines that a class action is superior to other methods available for adjudicating the controversy. *See* Fed.R.Civ.P. 23(b)(3). Recovery of damages is available under Rule 23(b)(3). *See* Schwarzer, *supra,* § 10:410-479. If a class is certified under Rule 23(b)(3), all absent class members must be notified of the action and informed of their right to "opt-out" of the litigation.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

*Id.*

[1][2][3] In analyzing whether the putative class meets the requirements of Rule 23, a court is to take the substantive allegations of the complaint as true, and may also consider extrinsic evidence submitted by the parties. *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975). Moreover, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)). Nonetheless, the plaintiffs bear the burden of establishing each of the required elements for class certification. *See id.* at 617 (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982)).

### ANALYSIS
### I. Prerequisites of Rule 23(a)

As a preliminary matter, Defendant argues that Plaintiffs lack standing to bring this class action. Specifically, Defendant purports that Hunt and Castillo have discharged their debt to Defendant in a prior bankruptcy proceeding and, thus, Plaintiffs sustained no injury from Defendant's alleged unlawful acts.

[4] The Court finds this argument unavailing. The conduct being litigated here is the alleged unlawful collection of interest by Defendant from Plaintiffs, and others similarly situated. In other words, the injury occurred upon Defendant's demand for interest on the dishonored checks. Plaintiffs' ability to sue Defendant for unlawful collection of interest under the FDCPA does not rest on Plaintiffs actually incurring debt as a result of Defendant's conduct. "The [FDCPA] is designed to protect consumers **510** from the abusive, deceptive and unfair debt collection practices of unscrupulous debt collectors, regardless whether a valid debt actually exists." *Borcherding-Dittloff v. Transworld*

*Sys., Inc.,* 185 F.R.D. 558, 564 (W.D.Wis.1999) (citing *Baker v. G.C. Serv. Corp.,* 677 F.2d 775, 777 (9th Cir.1982)). Therefore, Plaintiffs have standing to sue and the Court will now determine if class certification is appropriate.[FN2]

> FN2. Defendant admits that Plaintiffs meet all prerequisites of Rule 23(a) in the event that this Court finds that Plaintiffs have standing to bring this action. (*See* Decl. of Arons, Exh. 2.) The Court finds that Plaintiffs do have standing, creating a situation where class certification pursuant to Rule 23(a) is essentially unopposed. However, in the interest of justice, the Court will review all the necessary requirements under Rule 23 to ensure that class certification is appropriate. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (stating that a class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied").

#### A. Numerosity

Plaintiffs assert that the class is sufficiently numerous because Defendant mailed out thousands of collection letters demanding both interest and a statutory fee. Defendant conditionally concedes the issue of numerosity based on the Court's finding that Plaintiffs have standing to sue.

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th Cir.2003). However, there must be a "statement of basic facts. Mere repetition of the language of the Rule is inadequate." *Gillibeau v. Richmond,* 417 F.2d 426, 432 (9th Cir.1969).

[5] Here, Plaintiffs make a "statement of basic facts" and show that the class is sufficiently numerous. Plaintiffs allege that Defendants mailed 67,108 collection letters for 43,536 checks referred to Defendants between November 2004 and May 2006.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

Plaintiffs' allegations show that the potential class is "so numerous that joinder of all members is impracticable."

**B. Commonality**

Plaintiffs rely on the fact that Defendant mailed form collection letters demanding interest. Defendant does not contest the mailing or contents of the collection letters.

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class' " *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998) (quoting Fed.R.Civ.P. 23(a)(2)). The Northern District has interpreted that to mean that commonality typically manifests "where ... the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Palmer v. Stassinos,* 233 F.R.D. 546, 549 (N.D.Cal.2006) (quoting *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998)).

[6] Here, Defendant allegedly committed the same "standardized conduct" found in *Palmer.* Defendant allegedly sent out form letters demanding Plaintiffs to pay statutory fees for dishonored checks as well as interest on the owed money. Defendants targeted this conduct at all Plaintiffs in the putative class, in the same manner. Based on Defendant's alleged standardized conduct, this Court concludes that common questions exist as to whether Defendant's conduct was unlawful.

**C. Typicality**

For typicality, Plaintiffs rely on a similar argument as they did for commonality. Specifically, that typical claims amongst all potential class members exist because Defendant sent unlawful form collection letters to Plaintiffs.

[7] The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). Typicality refers to the nature of the claim or de-fense of the class representative and not on facts surrounding the claim or defense. *Id.* The burden imposed by the typicality requirement is not great. *See Hanlon,* 150 F.3d at 1020. In fact, the Ninth Circuit has noted **\*511** that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Staton,* 327 F.3d at 957. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele,* 149 F.3d at 595 (internal citations omitted).

[8] Here, Plaintiffs share one legal theory with the rest of the class. Plaintiffs are suing Defendant under the FDCPA, alleging that Defendant engaged in unlawful standardized conduct toward Plaintiffs. Defendant's argument that Plaintiffs are only typical of a putative class that "have written dishonored check[s], paid no interest, and then discharged their debt in bankruptcy" is not only incorrect, but immaterial for a typicality analysis. (Defendant's Motion in Opposition to Plaintiff's Motion for Class Certification, 11:21-23.) "Typicality refers to the nature of the claim or defense of the class representative, and not the specific facts from which it arose or the relief sought." *Abels v. JBC Legal Group, P. C.,* 227 F.R.D. 541, 545 (N.D.Cal.2005) (quoting *Hanon,* 976 F.2d at 508). Factual variations among class members' grievances do not defeat a class action. *Keele,* 149 F.3d at 594 (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980)); *see also Irwin v. Mascott,* 96 F.Supp.2d 968, 977 (N.D.Cal.1999) (stating the fact that named plaintiffs may have a right to statutory damages, injunctive relief and declaratory relief, but not a right to actual damages, does not render their claims atypical). Accordingly, the typicality requirement is satisfied.

**D. Adequacy**

Plaintiffs rely on their declarations, and those of their counsel, to satisfy the adequacy requirement. Plaintiffs allege no potential conflict of interest between them and the rest of the proposed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

class. Defendant contends that there is a conflict of interest between the Plaintiffs and the putative class because Plaintiffs discharged their debts in previous bankruptcy proceedings.

The Federal Rules require that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requires the Court to ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton, 327 F.3d at 957; see also* Fed.R.Civ.P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").

[9] Here, Defendant argues that since Plaintiffs discharged their debts to Defendant through bankruptcy proceedings, Plaintiffs have a conflict of interest with respect to the rest of the class. The Court finds this argument unconvincing. Discharging one's debt may ultimately effect the collection of damages, but it does not conflict with the legal merits of the claim with respect to class members who did not discharge their debt. Based on the record before the Court, the only conflict between Plaintiffs and any potential class member could be a difference in the amount of recovery.[FN3] However, a potential difference in recovery does not, in itself, create a conflict of interest. *See, e.g., Palmer, 233 F.R.D. at 551.* Additionally, any financial incentive to Plaintiffs or class counsel will likely lead them to "prosecute the action vigorously."[FN4]

> FN3. Named plaintiffs in FDCPA class actions would be entitled to up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(B)(i). Unnamed class members would be entitled to share statutory damages of up to 1 percent of Defendant's net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). Each class member would be entitled to any actual damages. 15 U.S.C. §

> 1692k(a)(1).

> FN4. Plaintiffs Counsel, Arons, Wilcox, and Bragg have been involved in many FDCPA class actions in this District and in other courts. *See generally Palmer, 233 F.R.D. 546 (N.D.Cal.2006); Schwarm v. Craighead, 233 F.R.D. 655 (E.D.Cal.2006); Irwin v. Mascott, 96 F.Supp.2d 968 (N.D.Cal.1999).*

Accordingly, Plaintiffs and their counsel have no conflict with potential class members and Plaintiffs' counsel has extensive experience in FDCPA class actions. Notwithstanding Defendant's concern with Plaintiffs' **\*512** bankruptcy status, Plaintiffs satisfy the adequacy requirements.

**II. Whether Certification is Appropriate Under Rule 23(b)(2) or Rule 23(b)(3)**

[10] To be certified, a class must also satisfy the criteria of one of the three subsections of Rule 23(b). Plaintiffs request class certification pursuant to Rule 23(b)(2), or in the alternative, a hybrid class pursuant to Rule 23(b)(2) and (3). Defendant argues that certification under Rule 23(b)(2) would be improper by arguing that the FDCPA does not allow a private plaintiff to obtain equitable relief. Defendant argues that certification under Rule 23(b)(3) would be improper because common questions of law and fact do not predominate and because a class action is not superior to alternative methods of adjudication of the controversy. As fully explained below, the Court finds that certification under Rule 23(b)(2) is appropriate on the issues of liability, declaratory relief, and statutory damages, and that certification under Rule 23(b)(3) is appropriate on the issue of actual damages.

**A. Rule 23(b)(2)**

Plaintiffs' primary request is for the entire class to be certified pursuant to Rule 23(b)(2). Defendant argues that certification on these grounds is improper because Plaintiffs' claims for declaratory and injunctive relief are not available under the FDCPA and not appropriate for class certification under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

Rule 23(b)(2).

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) generally does not extend to cases in which the appropriate final relief relates primarily to money damages. *See Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 450-51 (N.D.Cal.1994) (citing Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted in 39 F.R.D. 69, 102 (1966)); *see also Molski,* 318 F.3d at 949-50. The Ninth Circuit has required a careful consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2) is primarily seeking injunctive relief. *See id.*

[11] However, class actions certified under Rule 23(b)(2) are not limited to actions requesting injunctive and declaratory relief, but may include cases that also seek monetary damages where the money damages are "merely incidental." *Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 780 (9th Cir.1986), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). "Incidental" means that the monetary damages "flow directly from liability to the class as a whole on the claims forming the basis of the ... declaratory relief." *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665 (M.D.Fla.1999) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 413 (5th Cir.1998)). More specifically, FDCPA class actions certified under Rule 23(b)(2) are also not limited to actions requesting injunctive and declaratory relief. *Ballard v. Equifax Check Services, Inc.,* 186 F.R.D. 589, 596-97 (E.D.Cal.1999) (certifying FDCPA class under Rule 23(b)(2) on the issues of liability, declaratory relief, and statutory damages but reserving certification of actual damages for certification under Rule 23(b)(3)); *Gonzales v. Arrow Fin. Services, LLC,* 233 F.R.D. 577 (S.D.Cal.2006) (certifying FDCPA class under Rule 23(b)(2) where

plaintiffs received standardized demand letters and sought declaratory relief and statutory damages); *Borcherding-Dittloff,* 185 F.R.D. at 565-66 (certifying class under Rule 23(b)(2) for claims under FDCPA where plaintiffs sought declaratory relief and statutory damages); *Gammon v. GC Services Ltd. P'ship,* 162 F.R.D. 313, 319-22 (1995) (certifying class under Rule 23(b)(2) for claims under FDCPA seeking declaratory relief and statutory damages); *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665 (M.D.Fla.1999) (same).

Here, Plaintiffs' request for statutory damages is secondary to their primary claim of declaratory relief for three reasons. First, the declaratory relief requested will affect more persons and have consequences over a greater period of time than monetary damages. *See Ballard,* 186 F.R.D. at 596. These claims will affect not only those class **\*513** members who received Defendant's demand letters who may be entitled to statutory damages, but also those class members who received the demand letters and then subsequently incurred additional actual damages[FN5] by paying the alleged illegally demanded amounts. The principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling of legal relations between the parties, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Gammon,* 162 F.R.D. at 320; *see also Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir.1986); Schwarzer, *supra at* § 10:5. In the instant case, a declaratory judgment would settle the issue of the legality of Defendant's behavior with respect to the entire class. Given that the very purpose of class actions is to promote judicial efficiency and economy, the Court finds that Plaintiff's request for declaratory judgment to be appropriate. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 149, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

FN5. The inquiry regarding actual damages is more appropriate as a class under Rule 23(b)(3) as discussed below.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Second, the Court notes that Plaintiffs' monetary damages, and those of the putative class, all flow directly from the demand letters sent by Defendant and are therefore secondary to the claim for declaratory relief. *See, e.g., Borcherding-Dittloff, 185 F.R.D. at 566* (stating "[c]ourts have found requests for declaratory relief to predominate over requests for monetary relief where the award of damages flows directly from the declaratory relief and where damages are easily calculated by a formula that is uniformly applicable to the class") (citing *Rice v. City of Philadelphia, 66 F.R.D. 17, 20 (E.D.Pa.1974)*). Here, because Plaintiffs request statutory damages and declaratory relief arise from Defendant's repeated violation of the FDCPA, the resulting statutory damages flow directly from Defendant's underlying FDCPA liability. The calculation of statutory damages will be a mechanical task and is therefore readily calculable for the entire class. *See 15 U.S.C. § 1692k(a)(2)(B).*

Third, the statutory damages for each class member is comparatively nominal. As the court noted in *Gammon,* because the FDCPA caps the maximum award at $500,000 or 1 percent of the net worth of the debt collector, each class member would receive a nominal amount. *See Gammon, 162 F.R.D. at 320.* As a result, the court concluded that the plaintiff's request for declaratory relief predominated over the request for monetary relief. *See id.* Similarly, the proposed class here results from 67,108 demand letters between November 2004 and May 2006 based on a total of 43,536 checks referred. Since Defendant's net worth is approximately $456,151,[FN6] the maximum amount of recovery for each class member would approximately be between 7 cents and 10 cents. The Court finds this amount to be de minimus and not sufficient to sustain Defendant's arguments that *Rule 23(b)(2)* certification is inappropriate.

> FN6. Defendant states that its net worth has not yet been established. However, Defendant's balance sheet on its Federal 1120S Income Tax Return, provided in discovery, shows a net worth of $456,151.00. (Defendant's Motion in Opposition to Plaintiff's Motion for Class Certification, 16:1-4.)

In conclusion, because the statutory damages flow from the declaratory judgment, the readiness with which the statutory damages can be calculated, and the de minimus amount of statutory damages that each class member would potentially receive, the Court concludes that Plaintiffs' request for non-monetary relief predominates over the request for statutory damages. Accordingly, certification under *Rule 23(b)(2)* on the issues of liability, declaratory relief, and statutory damages under the FDCPA is appropriate.

**B. Rule 23(b)(3)**

In the event that this Court does not certify the entire class under *Rule 23(b)(2),* Plaintiffs alternatively seek to certify the issue of actual damages pursuant to *Rule 23(b)(3).* Defendant relies on the *Palmer* case, *233 F.R.D. 546,* and argues that common questions of law and fact do not predominate, and that a class action is not superior to alternative **\*514** methods of adjudication of the controversy.

Class certification pursuant to *Rule 23(b)(3)* requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." *Fed.R.Civ.P. 23(b)(3).* The Court now turns to the issues of predominance and superiority.

**1. Predominance**

[12] "The *Rule 23(b)(3)* predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon, 150 F.3d at 1022* (quoting *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)*). "*Rule 23(b)(3)* focuses on the relationship between the common and individual issues. 'When common questions present a signific-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

ant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.' " *Id.* (quoting 7A Charles Alan Wright, *et al., Federal Practice & Procedure* § 1778 (2d ed.1986)). The primary and predominating question in this case is whether Defendant's conduct in demanding statutory charges, in addition to the debt amount and interest, was contrary to California law and therefore in violation of the FDCPA. As to actual damages, the question will be how much actual damage was sustained by each class member. 15 U.S.C. 1692k(a)(1).

Here, the legal issues arising from Defendant's demand letters are the same for each class member. As Plaintiffs correctly point out, the only individual issues are ministerial, *e.g.* identifying class members and calculating actual damages. Plaintiffs explain that the calculation of actual damages will not require individualized issues of proof, because the amounts collected will be reflected in Defendant's collection records. Defendant does not substantively respond to Plaintiff's arguments on predominance and does not present availing arguments regarding any individualized issues. As a result, the Court finds that the predominant common questions in this case present a clear justification for handling the dispute on a representative rather than on an individualized basis.

**2. Superiority**

Plaintiffs argue that a class action is superior in this context because putative class members would not ordinarily file individualized actions. In particular, Plaintiffs contend that most putative class members would not be aware of their rights and would not have the time and resources to locate knowledgeable counsel willing to represent them. Defendant counters that an individualized action, seeking $1,000 in statutory damages, accompanied by a claim under § 17200 of the California Business and Professions Code for disgorgement of profits is the superior method of adjudicating this case.

In determining superiority of a class action to individual litigation, courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods., Inc.,* 521 U.S. at 615, 117 S.Ct. 2231. In determining whether a class action may be superior to individual litigation, the Court notes that the FDCPA specifically provides for and contemplates class action relief. 15 U.S.C. §§ 1692k(a)(2)(B), (b)(2). Courts have found that individual consumers are most likely unaware of their rights under the FDCPA. *Ballard,* 186 F.R.D. at 600. Moreover, class action certifications to enforce compliance with consumer protection laws are "desirable and should be encouraged." *Id.* (citing *Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607, 610 (D.Ariz.1982) (citing *Watkins v. Simmons and Clark, Inc.,* 618 F.2d 398, 404 (6th Cir.1980))).

[13] Here, the Court finds that a class action in this context is superior to individual claims. First, the Court agrees that individual consumers are most likely unaware of their rights under the FDCPA and that the likelihood of individual actions is remote. *See Ballard,* 186 F.R.D. at 600. Second, the **\*515** drafters of the FDCPA contemplated class action recovery within the liability portion of the act. Third, the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually. *See id.* (citing *Amchem Prods., Inc.,* 521 U.S. at 615, 117 S.Ct. 2231). Fourth, efficiency and consistency of concerns favor litigating the legality of Defendant's standardized conduct by all class members in one suit, rather than forcing each class member to sue individually. *Id.* (citing *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 188-89 (N.D.Ill.1992)). Finally, as was the case in *Ballard,* while valid concerns regarding the manageability of the class exist in relation to liability, they are not sufficient to defeat certification. Manageability is not a separate area of inquiry in considering certification under Rule 23(b)(3), but merely a secondary problem

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

241 F.R.D. 505
**(Cite as: 241 F.R.D. 505)**

to consider. *Id.* (citing *Gulish v. United States,* 78 F.R.D. 515, 518 (W.D.Pa.1978)). The more important considerations are the predominance of common questions and superiority of the class action. *Id.* "Manageability problems must be factual, unavoidable obstacles to the litigation before they can be considered obstacles to class certification." *Id.* (citation omitted). Accordingly, the Court finds certification of the issue of actual damages is proper under Rule 23(b)(3).

### CONCLUSION

1. For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Certify the Class. Named Plaintiffs Castillo and Hunt are **CERTIFIED** as the representatives of the class defined as follows: All persons to whom Defendant mailed a collection demand at any time since December 5, 2004, (1) which included a demand for both interest and a statutory service charge on a dishonored check; (2) where the check was written in the State of California for personal, family or household purposes; and (3) whose mail was not returned as undeliverable.

2. It is **FURTHER ORDERED** that the issues of liability, declaratory relief, and statutory damages under the FDCPA for those class members who did not pay any portion of the statutory service charge demanded is **CERTIFIED** under Rule 23(b)(2).

3. It is **FURTHER ORDERED** that the issues of actual damages under the FDCPA for those class members who paid any portion of the statutory service charge demanded is **CERTIFIED** under Rule 23(b)(3).

**IT IS SO ORDERED.**

N.D.Cal.,2007.
Hunt v. Check Recovery Systems, Inc.
241 F.R.D. 505

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 2

EXHIBIT 2

Not Reported in F.Supp.2d, 2001 WL 648958 (N.D.Ill.)
**(Cite as: 2001 WL 648958 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Florine HOBSON, Plaintiff,
v.
LINCOLN INSURANCE AGENCY, INC., Lincoln
Acceptance Company; Lincoln Travel Club, Inc.,
National Heritage Insurance Company; and Stuart
Liss, Defendants.

No. 99 C 5619.
June 7, 2001.

*MEMORANDUM OPINION AND ORDER*
KENNELLY, J.

**\*1** Florine Hobson has sued her car insurance
broker (Lincoln Insurance Agency, Inc.), as well as
the companies that provided her comprehensive
auto policy (National Heritage Insurance Com-
pany), her bail bond card and travel service
(Lincoln Travel Club, Inc.) and the man who hap-
pens to be president of all of these companies
(Stuart Liss). Several claims have come and gone in
the years since Hobson first filed this suit. But in its
current incarnation, Hobson's complaint alleges that
Lincoln Acceptance violated the Truth In Lending
Act, that all of the defendants violated the Illinois
Consumer Fraud Act, and that Lincoln Insurance,
Lincoln Acceptance and Lincoln Travel breached
the fiduciary duty they owed Hobson. The case is
before the Court on Hobson's motion for class certi-
fication. Hobson asks the Court to certify two
classes, FN1 and, after outlining the legal standards
that govern our analysis, the Court considers the
appropriateness of each in turn.

> FN1. Hobson initially moved for certifica-
> tion of 4 classes and two subclasses, but
> because she has withdrawn her civil rights
> claims, she no longer seeks certification of
> Classes A and B or subclasses A and B.
> Accordingly, the Court considers the certi-

fication question with respect to classes C
and D only.

To obtain class certification, Hobson must
prove that the action satisfies the four prerequisites
of Rule 23(a)-numerosity, commonality, typicality
and adequacy of representation. Additionally, be-
cause she seeks certification under Rule 23(b)(3),
Hobson must show that questions of law or fact
common to all class members predominate over in-
dividual issues and that the class action mechanism
is superior to other available methods of adjudica-
tion. *See* Fed.R.Civ.P. 23(b)(3); *Harriston v. Chica-
go Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993).
Contrary to Hobson's assertion, in determining
whether she has satisfied these criteria, we need not
blindly accept her allegations as true; where assess-
ment of the Rule 23 criteria overlaps the merits of
the case, the Court may "look beneath the surface
of the complaint" and "probe beyond the plead-
ings." *See Szabo v. Bridgeport Machines, Inc.,* F.3d
, No. 01–8003, 2001 WL 476574, at \* 4–5 (7th Cir.
May 4, 2001).

1. *Class C—The TILA Claim*

Hobson first seeks to certify class C for pur-
poses of her TILA claim against Lincoln Accept-
ance. Class C, as proposed, consists of "all persons
with respect to whom Lincoln Acceptance Com-
pany issued Truth in Lending disclosures either (i)
in the form represented by Exhibit A or (ii) to Lin-
coln Insurance Agency." Motion for Class Certific-
ation, p. 2. Exhibit A is the form Premium Finance
Contract prepared in Hobson's case. Lincoln Ac-
ceptance opposes certification of this class, arguing
that Hobson fails to satisfy the typicality and ad-
equacy of representation requirements of Rule
23(a) and that she has failed to show that the class
action mechanism would be the best way to adju-
dicate the TILA claim, as required by Rule 23(b)(3)
.

Lincoln Acceptance argues that Hobson's TILA
claim is not typical of the class because she "never

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 648958 (N.D.Ill.)
**(Cite as: 2001 WL 648958 (N.D.Ill.))**

wanted premium financing and does not know what premium financing is"; because "she never saw the Premium Finance Contract and thus, the actual disclosures are meaningless to her claim"; because she "does not understand the actual terms required by TILA so disclosure would have been irrelevant"; because she "does not claim any actual damages"; and because she no longer has a premium finance contract with Lincoln Acceptance and therefore no longer has a right to rescind the contract. *See* Response to Motion for Class Certification, pp. 7–8. That Hobson never read the contract and suffered no damages (assuming this is so) are irrelevant. " 'TILA requirements are enforced by imposing a sort of strict liability in favor of consumers who have secured financing through transactions not in compliance with the terms of the Act. It is strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." ' *Rowland v. Magna Millikin Bank,* 812 F.Supp. 875, 878 (C.D.Ill.1992) (citing *Shepeard v. Quality Siding & Window Factory,* 730 F.Supp. 1295, 1299 (D.Del.1990)). And a plaintiff need not show that she suffered any actual damages to recover statutory penalties. *See Clay v. Johnson,* 22 F.Supp.2d 832, 836 (N.D. Ill 1998) (citing *Brown v. Marquette Savings & Loan Assoc.,* 686 F.2d 608, 614 (7th Cir.1982)). Similarly, it is of no moment that some plaintiffs might be entitled to the additional remedy of rescission. *See Indiana Lumbermens Mutual Insurance Co. v. Rusty Jones, Inc.,* 128 B.R. 1001, 1013 (N.D.Ill.1991) (so long as the respective claims share the same legal theory, typicality will not be defeated even if different remedies are sought). Thus despite Lincoln Acceptance's objections, the Court finds that Hobson has satisfied the typicality requirement of Rule 23(a)(3).

**\*2** Rule 23(a)(4) requires Hobson to show that she will fairly and adequately protect the interests of the class. This requirement has two parts: Hobson must show both that *she* is adequate and that her attorneys are adequate. Defendants challenge both aspects of this requirement. As to the adequacy of plaintiff's counsel, in *Harris v. Illinois*

*Vehicle Premium Finance Co.,* No. 99 C 5411, 2000 WL 1307513, at \* 9 (N.D.Ill. Sept. 12, 2000), the Court found that the plaintiff's attorneys-the same attorneys who represent Hobson here-"are qualified, experienced and quite capable of conducting the \* proposed litigation," 2000 WL 1307513, at \* 8, and nothing in defendants' opposition brief convinces the Court to second guess that decision for purposes of this case, which is in substance the same as *Harris.* Nor do the concerns Lincoln Acceptance raises about Hobson show that she is an inadequate class representative. Neither the fact that Hobson has filed for bankruptcy protection, nor her "independent investor" business, nor her lack of knowledge about the particulars of her case suggest the sort of "antagonistic or conflicting claims" that will result in unfair and inadequate representation. *See Cobb v. Monarch Finance Corp.,* 913 F.Supp. 1164, 1173 (N.D.Ill.1995) (finding that a plaintiff who has filed for bankruptcy protection is nonetheless an adequate representative) (citations omitted); *Kamen v. Kemper Financial Services, Inc.,* 908 F.2d 1338, 1349 (7th Cir.1990) (it is the norm for a named plaintiff to know little about the case and to have given counsel free rein).

Finally, Lincoln Acceptance argues that a class action is not a superior or fair and efficient method for adjudicating Hobson's TILA claim, largely because any award to class members would be *de minimis* (roughly $1 in defendant's estimation). First, contrary to defendant's assertion, Hobson did allege actual as well as statutory damages on behalf of the class, which means that something in excess of the estimated $1 may be available for some plaintiffs. *See* Fifth Amended Complaint, p. 15. Moreover, if Lincoln Acceptance is right in its estimation of the per-plaintiff award, that makes this claim precisely the type suitable for adjudication as a class action because no individual plaintiff would take on the alleged wrongs with only a single greenback to gain. *See Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997) ("a de minimis recovery (in monetary terms) should not

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 648958 (N.D.Ill.)
**(Cite as: 2001 WL 648958 (N.D.Ill.))**

automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Even if the Court is required at some point to assess actual damages on an individual basis, the Court does not believe such issues will predominate over the common issues involved in this claim. *See Williams v. Rizza Chevrolet–Geo, Inc.,* No. 99 C 2294, 2000 WL 263731, at *3 (N.D.Ill. March 6, 2000) (possibility of individualized damage inquiries does not defeat class certification even if individual hearings ultimately may be required) (citing *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 675 (N.D.Ill.1989)); *Abt v. Mazda American Credit,* No. 98 C 2931, 1999 WL 350738, at *2 (N.D.Ill. May 19, 1999).

**\*3** Having rejected Lincoln Acceptance's arguments against class certification, the Court finds that Hobson has satisfied the requirements of Rule 23(a) and (b)(3) with respect to class C, the proposed TILA class. The motion to certify this class is therefore granted.

2. *Class D—The ICFA and Breach of Fiduciary Duty Claims*

Hobson also seeks to certify class D for purposes of her Illinois Consumer Fraud Act and breach of fiduciary duty claims. Class D, as proposed, consists of all persons who satisfy the following criteria:

a. They are the subject of a document in the form of Exhibit A, or any other document constituting Lincoln Insurance, their agent;

b. They were sold insurance products issued by National Heritage Insurance Company or any other company under common ownership with Lincoln Insurance Agency Inc.;

c. There is no document provided prior to the transaction which clearly discloses that Lincoln Insurance Agency Inc. is under common ownership with the issuer of the products, and that Lincoln Insurance Agency Inc. is not acting on behalf of and in the interests of the insured.

d. The transactions occurred on or after August 27, 1996 (Count IV), on or after August 27, 1995 (Count V), or on or after August 27, 1994 (Count III). Motion for Class Certification, p. 2.[FN2]

> FN2. In her Fifth Amended Complaint, Hobson asserts her ICFA claim (Count 3) on behalf of a class designated as class D, and she asserts her breach of fiduciary duty claim (Count 4) on behalf of a class designated as class E. In the complaint she defines the two classes in the same way, except that the transactions involving class D's members occurred on or after August 27, 1996 and the transactions involving class E's members occurred on or after August 27, 1994. In her motion for class certification she appears to have merged these two so that she is asserting both claims on behalf of class D, though the date restrictions and the reference to transactions occurring "on or after August 27, 1995 (Count V)" is somewhat puzzling. The Court will assume that this is a typographical error-perhaps stemming from the frequency with which Hobson's claims have been amended-and proceed as if Hobson is seeking certification of the classes designated D and E in the Fifth Amended Complaint.

The defendants oppose certification of this class, arguing that the requirements of both Rule 23(a) and (b) are absent. Specifically, defendants argue that Hobson has failed to show that the numerosity, typicality and adequacy of representation requirements can be met, and that individual questions predominate over common questions as to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 648958 (N.D.Ill.)
**(Cite as: 2001 WL 648958 (N.D.Ill.))**

these claims, making class certification inappropriate. Turning first to the latter argument, the Court agrees that individual questions will predominate and therefore declines to certify the class as proposed.

Rule 23(b)(3) requires Hobson to show that questions of law or fact common to all class members predominate over individual issues. *See* Fed.R.Civ.P. 23(b)(3). Liability under the ICFA requires proof of (1) a deceptive act or practice by defendants; (2) in the course of conduct involving trade or commerce; (3) made with the intent that the plaintiff rely on the deception; (4) that proximately caused an injury to the plaintiff. *Williams,* 2000 WL 263731, at *3 (citing *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 675 N.E.2d 584, 593 (1996)). As this Court held in ruling on the motion for class certification in *Harris,* a case that is as we have noted almost identical to this one, "[t]he fact that plaintiffs are required to prove intent in connection with this claim raises a significant possibility that some inquiry regarding what was said to each individual insured/debtor will be necessary .... [and] the need to deal with this issue on an individual basis may well overwhelm any common issues, absent a showing that the defendants had a standardized way of discussing the premium financing issues." 2000 WL 1307513, at *9 (citing *Williams,* 2000 WL 263731, at *3). Hobson does not attempt to distinguish *Harris,* which seems odd given that her counsel also represented the plaintiff in that case. Hobson's state law claims allege that Liss and Lincoln Insurance engaged in self-dealing by placing insurance for their customers with companies with which they were affiliated and-most crucial to the claims-that they never disclosed the affiliation. At his deposition, Liss testified that customers are advised of the affiliation: they receive a "welcome letter" "within several days after the customer takes out the insurance—within a week, a few days." Liss Deposition, p. 76. Liss also stated that customers are told about the different companies "[w]hen the insurance is sold." *Id.,* p. 77. Thus, contrary to Hobson's assertion, an individualized inquiry into

what each plaintiff was told-whether by the broker or through written materials-and when, will indeed be necessary. Because the Court believes these issues-especially when combined with the individualized injury inquiry-are likely to consume the proceedings with regard to the ICFA claim, the Court declines to permit these claims to proceed on a class basis.

**\*4** For the reasons explained above, Hobson's motion for class certification [Docket No. 37–1] is granted in part and denied in part. The motion to certify a class for purposes of pursuing the TILA claim (Count 2 of Hobson's Fifth Amended Complaint) is granted. The motion to certify a class for purposes of pursuing the ICFA and breach of fiduciary duty claims (Counts 3 and 4 of Hobson's Fifth Amended Complaint) is denied.

N.D.Ill.,2001.
Hobson v. Lincoln Ins. Agency, Inc.
Not Reported in F.Supp.2d, 2001 WL 648958 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 3

EXHIBIT 3

Not Reported in F.Supp.2d, 2008 WL 5384219 (S.D.Ind.)
**(Cite as: 2008 WL 5384219 (S.D.Ind.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana,
Indianapolis Division.
Angela T. HUBBARD, individually and on behalf
of all others similarly situated, Plaintiff,
v.
MIDLAND CREDIT MANAGEMENT, INC., and
MRC Receivables Corp., Defendant.

No. 1:05-cv-0216-DFH-TAB.
Dec. 19, 2008.

West KeySummary**Federal Civil Procedure 170A**
☞**182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers,
Borrowers, and Debtors. Most Cited Cases

A debtor's oversight in failing to disclose the lawsuit, alleging the credit management company violated the Fair Debt Collection Practices Act (FDCPA), to the bankruptcy court in her initial petition did not undermine her adequacy as class representative. When the debtor filed for bankruptcy her FDCPA claim was in procedural limbo, her claim had been dismissed and her appeal was pending. When the Circuit court revived her case, the omission was corrected and the debtor's Schedule B asset list was amended. Further, the credit management company did not offer evidence that would allow the court to conclude that the debtor was kept uninformed of her attorneys' efforts to settle her case before the Circuit court. Fed.Rules Civ.Proc.Rule 23(a),(b), 28 U.S.C.A.; Fair Debt Collection Practices Act, § 802, 15 U.S.C.A. § 1692.

David J. Philipps, Mary E. Philipps, Philipps & Philipps, Ltd., Palos Hills, IL, Steven James Halbert, Carmel, IN, for Plaintiff.

Corinne Cantwell Heggie, David M. Schultz, Justin M. Penn, Hinshaw & Culbertson, LLP, Chicago, IL, Jeffrey A. Topor, Michael Richard Simmons, Simmons & Narita, LLP, Tomio B. Narita, San Francisco, CA, for Defendant.

ENTRY ON PLAINTIFF'S MOTION TO CERTIFY CLASS

DAVID F. HAMILTON, Chief Judge.
*Introduction*

**\*1** Plaintiff Angela T. Hubbard filed this matter individually and on behalf of all Indiana residents who received a debt collection letter from defendants Midland Management Incorporated and MRC Receivables Corporation mailed between February 14, 2004 and February 14, 2005 similar to the one Hubbard complains about in this case. Hubbard alleges that the letter violated section 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. The letter offered to settle the debt at a 50 percent discount before a specific date. Pl. Br. 1-2; Pl.Ex. A. Hubbard contends that the letter was "false, deceptive or misleading" in violation of section 1692e because the defendants have been willing to settle the debt at any time and for less than the amount they said they were willing to accept. On appeal from dismissal of Hubbard's claim under Rule 12(b)(6), the Seventh Circuit held that such a claim could be viable if a plaintiff is able to demonstrate using a survey that comports with the principles of professional survey research that a sufficiently large segment of the unsophisticated public is likely to be deceived by such language. See *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 776 (7th Cir.2007). Hubbard now moves to certify a class defined as "all persons similarly situated in the State of Indiana from whom Defendants attempted to collect a delinquent consumer debt allegedly owed originally to Household Bank

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5384219 (S.D.Ind.)
**(Cite as: 2008 WL 5384219 (S.D.Ind.))**

(SB), N.A., from [February 14, 2004 to February 14, 2005], and as to which the consumer was sent a purported limited time settlement offer letter similar to the letter Plaintiff received." Complaint ¶ 9. As explained below, Hubbard's motion to certify the class is granted. The defendants' motion to strike portions of Hubbard's reply brief (Dkt.114) is denied.

### Standard for Class Certification

Class certification depends not on the merits of the lawsuit or on which party will prevail, but on whether the requirements of Federal Rule of Civil Procedure 23 are met. See *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). To secure certification of a plaintiff class under Rule 23, Hubbard must show the court that all four requirements of Rule 23(a) and at least one of the subparts of Rule 23(b) have been satisfied. *Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir.2008). The familiar requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. Failure to meet any of these requirements will preclude class certification. See *id.* The defendants concede that Hubbard has made a satisfactory showing of numerosity, commonality, and typicality. Defendants also concede that Hubbard has shown under Rule 23(b)(3) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fair and efficient adjudication of the controversy. The only remaining requirement at issue is whether Hubbard will adequately represent the class. As explained below, the court finds that she will.

### Adequacy of Representation

**\*2** To certify a class, the named representative must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The adequacy standard involves two elements. First, a class representative must have a sufficient stake in the outcome to ensure zealous advocacy and must not have claims antagonistic to or conflicting with claims of other class members. Second, counsel for the named plaintiffs must be experienced, qualified, and generally able to conduct the litigation on behalf of the class. See *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977). Generally, the court's primary concern is whether there is any potential collusion between the representative and the lawyers and whether there is a potential conflict of interest. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 896 (7th Cir.1981). As the Seventh Circuit noted, the Supreme Court has found adequate a "named plaintiff [who] did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." *Eggleston,* 657 F.2d at 896, discussing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

The defendants argue that Hubbard is merely a pawn for her counsel and thus is an inadequate class representative. Def. Br. 3. Hubbard has testified that she had limited face-to-face contact with her attorneys, "randomly" received documents from her attorneys advising her about the progress of her case, did not recall when she first read the complaint, and did not recall how many times she had spoken with her attorneys on the phone. Pl. Dep. 23, 25, 27-28, 37-41. Based on that testimony, defendants contend that she is unable to represent the class adequately. The defendants also contend that Hubbard will not adequately represent the class because she failed, when filing for bankruptcy in August 2006, to disclose her lawsuit against the defendants as an asset on her bankruptcy schedules. (At that time, this court had dismissed her action with prejudice, and an appeal was pending.) Hubbard testified that she had not received anything from her attorneys concerning her case in a long time and had forgotten that her case existed. Pl. Dep. 53-55, 59. According to the defendants, it was not until May 2008 that Hubbard learned that her case had been dismissed, appealed, and revived.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5384219 (S.D.Ind.)
**(Cite as: 2008 WL 5384219 (S.D.Ind.))**

Def. Br. 6-7, citing Pl. Dep. 47-48. The defendants conclude that while Hubbard's appeal was pending, she was not involved in any related decisions, including settlement discussions. Def. Br. 8-9.

Hubbard testified that she communicated with her attorneys and that she participated in discovery. Pl. Dep. 23, 28, 38, 40, 83-84. She understands that her claim is based on the FDCPA, and she was able to describe the general nature of her claim:

> I believe that ... I could have actually made arrangements outside of the time frame that was given.... When I got the letters, I was basically told I had to act within a certain amount of time, and because I couldn't in that time, I basically felt like it was over; you know, it was like within this window of time, and beyond that I couldn't do anything. I was led to believe that was not true....

**\*3** Pl. Dep. 29. She understood that as class representative she will represent a group of individuals who received a letter like the one she received from the defendants in about March 2004, and that she is required to participate and cooperate in discovery, communicate with her attorneys, testify, and look out for the interests of her fellow class members. Pl. Dep. at 60.

When Hubbard filed for bankruptcy in August 2006, her FDCPA claim was in procedural limbo-her claim had been dismissed and her appeal was pending. After the Seventh Circuit revived her case, the omission was corrected and Hubbard's Schedule B asset list was amended.[FN1] Given the procedural status of this case at that time, Hubbard's oversight in failing to disclose this lawsuit to the bankruptcy court in her initial petition does not undermine her adequacy as class representative. (Keep in mind that the applicable standard for violating the FDCPA is the "unsophisticated consumer," not someone trained to understand that a dismissed case pending on appeal may still be an asset; such a person presumably would also not have been misled by the allegedly misleading letter.) Further, the defendants have not offered evidence that would al-

low the court to conclude that Hubbard was kept uninformed of her attorneys' efforts to settle her case before the Seventh Circuit.

> FN1. The defendants believe that Hubbard's 2006 bankruptcy filings were amended without her knowledge. Def. Br. 6. Whether she had knowledge of the amendment does not bear on this court's decision as to whether she can serve as an adequate class representative in this matter.

All in all, Hubbard has demonstrated that, at a minimum, she is in communication with her attorneys and that she has a basic knowledge of what her case is about and what her role as class representative will be. Although Hubbard's involvement in her case has been minimal and her memory of procedural events is limited, without a showing of a potential conflict of interest or collusion between Hubbard and her attorneys, Hubbard's knowledge and participation are sufficient to meet the bar set in *Eggleston*. Hubbard has shown that she will be an adequate class representative under Rule 23(a)(4).

*Conclusion*

For the foregoing reasons, Hubbard's motion to certify the class in this matter is granted. To comply with Rule 23(c)(1): the class consists of all Indiana residents from whom defendants attempted to collect a delinquent consumer debt allegedly owed originally to Household Bank (SB), N.A. using substantially the same form of collection letter sent to Hubbard, mailed on or after February 14, 2004 and no later than February 14, 2005. The class is certified for purposes of claims that the defendants' letter proposing settlement of existing debts violated the Fair Debt Collection Practices Act. The defendants' motion to strike portions of Hubbard's reply brief is denied. No later than January 9, 2009, plaintiff's counsel shall promptly prepare and file an appropriate proposed notice to the class to comply with Rule 23(c)(2), after having given defendants a reasonable opportunity to consider proposed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 5384219 (S.D.Ind.)
**(Cite as: 2008 WL 5384219 (S.D.Ind.))**

language. If the parties do not agree, defendants
will have 14 days to comment on the proposed no-
tice.

   **\*4** So ordered.

S.D.Ind.,2008.
Hubbard v. Midland Credit Management, Inc.
Not Reported in F.Supp.2d, 2008 WL 5384219
(S.D.Ind.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 4

EXHIBIT 4

Page 1

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**



United States District Court,
N.D. Illinois,
Eastern Division.

Verlina COBB, on behalf of herself and all others
similarly situated, Plaintiff,
v.
MONARCH FINANCE CORP.; Cole Taylor Bank;
Sir Finance Corp.; Bank One, Chicago, N.A., Suc-
cessor by Merger to Bank One, Evanston, N.A.;
Brother Loan & Finance Corp.; Lakeside Bank; and
John Does 1–10, Defendants.

No. 95 C 1007.
Nov. 29, 1995.

Consumer sued lenders and finance companies
alleging violations of various federal lending and
banking laws and state law and sought class certi-
fication. Defendants move to dismiss. The District
Court, Aspen, Chief Judge, held that: (1) class cer-
tification was appropriate; (2) accounts created by
loan agreements to receive direct deposits from
consumer's paychecks which were then transferred
as loan payments to finance companies' accounts in
same bank were "accounts," within meaning of
Electronic Fund Transfers Act (EFTA); (3) con-
sumer's accounts fell within ambit of Truth in Sav-
ings Act (TISA); (4) accounts were not "savings ac-
counts" within meaning of federal regulation
providing that bank that receives allotment of fed-
eral employee's pay for savings account does so as
agent of federal employee; and (5) allegations
stated claim under Illinois Consumer Fraud Act.

Class certified; motions to dismiss granted in
part and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A** ⟨⟩ **172**

170A Federal Civil Procedure

170AII Parties
170AII(D) Class Actions
170AII(D)2 Proceedings
170Ak172 k. Evidence; Pleadings and
Supplementary Material. Most Cited Cases

Plaintiff bears burden of showing proposed
class meets requirements for certification.
Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** ⟨⟩ **172**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)2 Proceedings
170Ak172 k. Evidence; Pleadings and
Supplementary Material. Most Cited Cases

**Federal Civil Procedure 170A** ⟨⟩ **174**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)2 Proceedings
170Ak174 k. Consideration of Merits.
Most Cited Cases

In evaluating motion for class certification, al-
legations made in support of certification are taken
as true, and as general manner, court does not ex-
amine merits of case. Fed.Rules Civ.Proc.Rule
23(a), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ⟨⟩ **182.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represen-
ted
170Ak182.5 k. Consumers, Purchasers,
Borrowers, and Debtors. Most Cited Cases

Claims arising out of form contracts are partic-
ularly appropriate for class action treatment.
Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

**[4] Federal Civil Procedure 170A ⟨⟩182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Class certification was appropriate in suit against finance companies and banks alleging that, in making and handling of loans, companies and banks violated various federal lending and banking laws and state law, where hundreds of transactions met class' definition and within each of three proposed classes, same standard loan form was used, and questions of law and fact common to class predominated over individual questions. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟨⟩164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class; Typicality. Most Cited Cases

In evaluating "typicality" of named plaintiff's claims for purposes of class certification, court focuses on whether named representative's claims have same essential characteristics as claims of class at large. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⟨⟩164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class; Typicality. Most Cited Cases

Representative plaintiff's claim is "typical," for purposes of class certification, if it arises from same event or practice or course of conduct that gives rise to claims of other class members and his or her claims are based on same legal theory. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⟨⟩164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class; Typicality. Most Cited Cases

"Typicality," for purposes of class certification, might not be met where named plaintiff is subject to unique defense that will distract named plaintiff and cause representation of class to suffer; e.g., named plaintiff's lack of injury might render him or her atypical. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⟨⟩182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Fact that named plaintiff's final loan balances might be discharged in her bankruptcy case did not change injury suffered by plaintiff, i.e., interest payments she made on allegedly unlawful loans, and thus, lack of injury was not defense so unique to plaintiff that she would be distracted from representing class claims against lenders and finance companies, particularly where named plaintiff also sought to recover statutory damages, claim typical to class. Truth in Savings Act, § 271(a)(2)(B), 12 U.S.C.A. § 4310(a)(2)(B); Truth in Lending Act, §§ 130(a)(2)(B), 915(a)(2)(B), as amended, 15 U.S.C.A. §§ 1640(a)(2)(B), 1693m(a)(2)(B); Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⟨⟩182.5**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

That federal employee, named plaintiff in class action against finance companies and lenders, had three paycheck allotments concurrently which exceeded maximum number of two paycheck allotments from federal employees' checks to savings account under Department of Treasury regulation was not unique defense which would distract plaintiff from class representation in suit alleging violations of Electronic Fund Transfer Act (EFTA), Truth in Lending Act (TILA), and Truth in Savings Act (TISA); it was head of employing agency, not employee, that was directed to follow limit on number of paycheck allotments, and number of allotments was in no way mentioned in definition of accounts or transactions protected by relevant statutes or regulations. Truth in Savings Act, § 274(1), 12 U.S.C.A. § 4313(1); Truth in Lending Act, §§ 103(h), 903(2), as amended, 15 U.S.C.A. §§ 1602(h), 1693a(2); Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.; Truth in Lending Regulations, Regulation Z, § 226.2(a)(10–12), 15 U.S.C.A. foll. § 1700; 12 C.F.R. §§ 205.3(b), 230.2(a, h); 31 C.F.R. 209.3(b)(3).

**[10] Federal Civil Procedure 170A ⟨⟩182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

That named plaintiff testified in her bankruptcy proceeding that she was unaware of existence of savings accounts was not defense that would distract named plaintiff in pursuing class claims against lenders and finance companies, under Elec-

tronic Fund Transfer Act (EFTA), Truth in Savings Act (TISA), and Truth in Lending Act (TILA), arising out of defendants' failure to make required disclosures regarding accounts; plaintiff's ignorance was entirely consistent with class claims alleging that defendants failed to make required disclosures, and statutes did not limit their application to "savings" accounts and included consumer credit transactions. Truth in Savings Act, § 274(1), 12 U.S.C.A. § 4313(1); Truth in Lending Act, §§ 103(h), 903(2), as amended, 15 U.S.C.A. §§ 1602(h), 1693a(2); Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.; Truth in Lending Regulations, Regulation Z, § 226.2(a)(10–12), 15 U.S.C.A. foll. § 1700; 12 C.F.R. §§ 205.3(b), 230.2(a, h).

**[11] Antitrust and Trade Regulation 29T ⟨⟩220**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regulations
         29Tk220 k. Savings. Most Cited Cases
      (Formerly 92Hk6 Consumer Protection)

**Banks and Banking 52 ⟨⟩188.5**

52 Banks and Banking
   52III Functions and Dealings
      52III(F) Exchange, Money, Securities, and Investments
         52k188.5 k. Transmission of Money or Credit in General. Most Cited Cases

**Consumer Credit 92B ⟨⟩33.1**

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk33 Persons, Businesses, and Transactions Subject to Regulations
            92Bk33.1 k. In General. Most Cited Cases

Electronic Fund Transfer Act (EFTA), Truth in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

Savings Act (TISA), and Truth in Lending Act (TILA) do not limit their application to "savings" accounts. Truth in Savings Act, § 274(1), 12 U.S.C.A. § 4313(1); Truth in Lending Act, §§ 103(h), 903(2), as amended, 15 U.S.C.A. §§ 1602(h), 1693(a)(2); Truth in Lending Regulations, Regulation Z, § 226.2(a)(10–12), 15 U.S.C.A. foll. § 1700; 12 C.F.R. § 230.2(a, h).

**[12]** Federal Civil Procedure 170A ⚏182.5

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
           170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Named plaintiff in class action against finance companies and lenders had sufficient financial stake in litigation to be adequate to represent other interests of other class members, for purposes of class certification, even though named plaintiff was in bankruptcy, where named plaintiff's bankruptcy schedules exempted only $925 in personal property other than this lawsuit so that plaintiff was left with maximum potential recovery of $1025. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[13]** Federal Civil Procedure 170A ⚏182.5

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
           170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

That named plaintiff in class action against lenders and finance companies was in bankruptcy, which would presumably result in discharge of her debts, did not create sort of antagonistic or conflicting claims of class members that would result in unfair and inadequate representation of class; in the instant case, success for those who paid their loans in full would not impair success of those who had

not yet fully repaid their loans, and named plaintiff's interests were exactly aligned with those members of class who had presumably paid loans in full. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[14]** Federal Civil Procedure 170A ⚏1829

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
           170Ak1827 Determination
              170Ak1829 k. Construction of Pleadings. Most Cited Cases

**Federal Civil Procedure 170A ⚏1835**

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)5 Proceedings
           170Ak1827 Determination
              170Ak1835 k. Matters Deemed Admitted; Acceptance as True of Allegations in Complaint. Most Cited Cases

On motion to dismiss for failure to state claim, court takes as true well-pleaded factual allegations in complaint and views them, as well as reasonable inferences drawn therefrom, in light most favorable to plaintiff.

**[15]** Banks and Banking 52 ⚏188.5

52 Banks and Banking
   52III Functions and Dealings
      52III(F) Exchange, Money, Securities, and Investments
         52k188.5 k. Transmission of Money or Credit in General. Most Cited Cases

Accounts created by loan agreements to receive allotted portion of borrower's paychecks electronically, which funds were then immediately transferred as loan payments to finance companies' accounts held at same bank were established primarily for personal, family, or household purposes and were "accounts," that implicated Electronic Fund

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

Transfer Act (EFTA), where accounts received direct deposits from borrower's paychecks and accounts were used to repay loans which were made to borrower in personal capacity and for no apparent business purpose. Truth in Lending Act, §§ 103(h), 903(6), 904, as amended, 15 U.S.C.A. §§ 1602(h), 1693a(6), 1693b; 12 C.F.R. § 205.3(b, g).

**[16] Consumer Credit 92B ⟨⟩ 33.1**

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk33 Persons, Businesses, and Transactions Subject to Regulations
            92Bk33.1 k. In General. Most Cited Cases

Under Truth in Lending Act (TILA), like the Electronic Fund Transfer Act (EFTA), term "personal, family, or household purposes" distinguishes consumer transactions from business transactions, or in other words, consumer transactions from commercial transactions. Truth in Lending Act, §§ 103(h), 903(2), as amended, 15 U.S.C.A. § 1602(h), 1693a(2); 12 C.F.R. § 205.3(b).

**[17] Consumer Credit 92B ⟨⟩ 33.1**

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk33 Persons, Businesses, and Transactions Subject to Regulations
            92Bk33.1 k. In General. Most Cited Cases

In Truth in Lending context, court examines transaction as whole and in light of entire surrounding factual circumstances, and if transaction involves profit motive, that indicates "business" or "commercial" transaction rather than "consumer" transaction. Truth in Lending Act, § 103(h), as amended, 15 U.S.C.A. § 1602(h).

**[18] Banks and Banking 52 ⟨⟩ 188.5**

52 Banks and Banking

52III Functions and Dealings
   52III(F) Exchange, Money, Securities, and Investments
      52k188.5 k. Transmission of Money or Credit in General. Most Cited Cases

Characterization of federal employee's consumer's allotments from paycheck that were directly deposited into employee's bank account and then immediately transferred to finance companies' accounts to pay off loan as either allotments to savings accounts or "discretionary allotments," under Department of Treasury regulations governing federal employees, did not alter nature of accounts created by loan agreements, for purposes of Electronic Fund Transfer Act (EFTA); applicability of EFTA did not turn on definition of savings account or on definition of discretionary allotment set forth in Department of Treasury regulations. Truth in Lending Act, § 903(6), as amended, 15 U.S.C.A. § 1693a(6); 31 C.F.R. §§ 209.2(f), 209.8, 210.2, 210.16.

**[19] Antitrust and Trade Regulation 29T ⟨⟩ 220**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regulations
         29Tk220 k. Savings. Most Cited Cases
   (Formerly 92Hk6 Consumer Protection)

Accounts set up under loan agreement to receive direct deposits from borrower's paychecks, which funds were then transferred to respective finance companies' accounts to pay off loans were "accounts," within meaning of Truth in Savings Act (TISA). Truth in Savings Act, § 274(1), 12 U.S.C.A. § 4313(1); 12 C.F.R. § 230.2(a, h).

**[20] Antitrust and Trade Regulation 29T ⟨⟩ 220**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

tions

29Tk220 k. Savings. Most Cited Cases
(Formerly 92Hk6 Consumer Protection)

Regulation DD promulgated pursuant to Truth in Savings Act (TISA) does not refer to subjective intent in defining "account" and "consumer," and instead, nature of account is relevant inquiry. Truth in Savings Act, § 274(1), 12 U.S.C.A. § 4313(1); 12 C.F.R. § 230.2(a, h).

**[21]** **Antitrust and Trade Regulation 29T** ⚷ **297**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)1 In General
                29Tk297 k. Waiver of Rights or Remedies. Most Cited Cases
                (Formerly 92Hk6 Consumer Protection)

Truth in Savings Act (TISA) disclosure requirements are waivable. Truth in Savings Act, §§ 262–274, 12 U.S.C.A. §§ 4301–4313; 12 C.F.R. §§ 230.4–230.6.

**[22]** **Antitrust and Trade Regulation 29T** ⚷ **297**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)1 In General
                29Tk297 k. Waiver of Rights or Remedies. Most Cited Cases
                (Formerly 92Hk6 Consumer Protection)

Consumer unequivocally waived any right under Truth in Savings Act (TISA) to receive any or all account statements or transaction reports concerning account created by loan agreements with finance companies, and thus, consumer had no claim against finance companies for violations of disclosure requirements of TISA. Truth in Savings Act, §§ 262–274, 12 U.S.C.A. §§ 4301–4313; 12 C.F.R. §§ 230.4–230.6.

**[23]** **Federal Civil Procedure 170A** ⚷ **1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases

For purposes of evaluating motion to dismiss, court may consider exhibits incorporated into complaint. Fed.Rules Civ.Proc.Rule 10(c), 28 U.S.C.A.

**[24]** **Banks and Banking 52** ⚷ **100**

52 Banks and Banking
    52III Functions and Dealings
        52III(A) Banking Franchises and Powers, and Their Exercise in General
            52k100 k. Torts. Most Cited Cases

Accounts created by federal employee's loan agreements to receive direct deposits from employee's paychecks which were then transferred to finance companies' accounts in same bank as loan payments were not "savings account," within meaning of Federal Reserve Board regulation making bank that receives allotments from federal employee's paychecks to employee savings account agent of employee, and thus, banks did not owe employee fiduciary duty under federal regulation. 31 C.F.R. §§ 209.3, 209.3(a), 209.8.

**[25]** **Antitrust and Trade Regulation 29T** ⚷ **209**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk209 k. Finance and Banking in General; Lending. Most Cited Cases
            (Formerly 92Hk6 Consumer Protection)

**Antitrust and Trade Regulation 29T** ⚷ **401**

29T Antitrust and Trade Regulation

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

29TIII Statutory Unfair Trade Practices and Consumer Protection
   29TIII(E) Enforcement and Remedies
     29TIII(E)7 Relief
       29Tk399 Other Particular Remedies or Forms of Relief
         29Tk401 k. Enforceability of Contracts; Rescission. Most Cited Cases
   (Formerly 92Hk6 Consumer Protection)

Under Illinois law, bank's violations of provisions of Electronic Fund Transfer Act (EFTA) fell short of systematic violations of consumer protection laws required to support consumer's unconscionability of contract claim. Truth in Lending Act, §§ 902–920, as amended, 15 U.S.C.A. §§ 1693–1693r.

**[26] Consumer Credit 92B ⟜33.1**

92B Consumer Credit
   92BII Federal Regulation
     92BII(A) In General
       92Bk33 Persons, Businesses, and Transactions Subject to Regulations
         92Bk33.1 k. In General. Most Cited Cases

Accounts created under loan agreement to receive direct deposit of portions of borrower's paycheck that were then transferred to finance companies' accounts as loan payments served to facilitate repayment of loans, not to secure repayment upon default, and thus, finance companies did not obtain security interest in borrower's account as required for applicability of Truth in Lending Act (TILA) disclosure rules. Truth in Lending Regulations, Regulation Z, §§ 226.2(a)(25), 226.18(m), 15 U.S.C.A. foll. § 1700.

**[27] Consumer Credit 92B ⟜18**

92B Consumer Credit
   92BI In General
     92Bk18 k. Actions. Most Cited Cases

Allegations that lenders obtained what amounted to assignment of wages pursuant to loan agreements that created bank account for deposit of allot-

ments from borrower's paycheck which were then transferred as loan payments to finance companies' accounts did not state claim under Illinois Wage Assignment Act, where weekly paycheck deductions represented method by which borrower repaid loan, which were agreed upon by borrower even prior to default, and were not security for loans and collection remedy to which lenders would resort upon default. S.H.A. 740 ILCS 170/1–11, 1(2), 2–4.

**[28] Contracts 95 ⟜1**

95 Contracts
   95I Requisites and Validity
     95I(A) Nature and Essentials in General
       95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases

Under Illinois law, contract is unconscionable when it is so one-sided that only one under delusion would make it and only one unfair and dishonest would accept it.

**[29] Consumer Credit 92B ⟜10.1**

92B Consumer Credit
   92BI In General
     92Bk10 Interest and Charges
       92Bk10.1 k. In General. Most Cited Cases

Allegations that lenders charged 57% to 100% annual interest on loans stated claim of unconscionability in loan contracts under Illinois law.

**[30] Antitrust and Trade Regulation 29T ⟜135(1)**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
     29TIII(A) In General
       29Tk133 Nature and Elements
         29Tk135 Practices Prohibited or Required
           29Tk135(1) k. In General; Unfairness. Most Cited Cases
   (Formerly 92Hk4 Consumer Protection)

**Antitrust and Trade Regulation 29T ⟜136**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

29T Antitrust and Trade Regulation
  29TIII Statutory Unfair Trade Practices and Consumer Protection
    29TIII(A) In General
      29Tk133 Nature and Elements
        29Tk136 k. Fraud; Deceit; Knowledge and Intent. Most Cited Cases
    (Formerly 92Hk4 Consumer Protection)

Practice does not violate Illinois Consumer Fraud Act unless it is both unfair and deceptive. S.H.A. 815 ILCS 505/1 –12.

**[31] Antitrust and Trade Regulation 29T ☞ 358**

29T Antitrust and Trade Regulation
  29TIII Statutory Unfair Trade Practices and Consumer Protection
    29TIII(E) Enforcement and Remedies
      29TIII(E)5 Actions
        29Tk356 Pleading
          29Tk358 k. Particular Cases. Most Cited Cases
    (Formerly 92Hk38 Consumer Protection)

Allegations that bank and finance companies had consumers sign purported waivers of their rights to stop preauthorized electronic fund transfers from consumers' accounts to finance companies' accounts to pay off loans in violation of Electronic Fund Transfer Act (EFTA), which prohibits waivers of its protections, and that bank and finance companies agreed to evade giving required information to consumers about their accounts, including prohibition against waiver of rights under EFTA, were sufficient to state claim under Illinois Consumer Fraud Act. Truth in Lending Act, §§ 905, 906, 914, as amended, 15 U.S.C.A. §§ 1693c, 1693d, 1693*l* ; S.H.A. 815 ILCS 505/1 –12; 12 C.F.R. §§ 205.7, 205.9, 205.10(c).

**[32] Federal Civil Procedure 170A ☞ 636**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and Particularity
        170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

Consumers' allegations that finance companies and banks violated Illinois Consumer Fraud Act by falsely representing to consumers that they could not revoke their authorizations to have payments electronically transferred from their accounts to finance companies' accounts to pay off loans adequately set forth circumstances constituting fraud as required by Federal Civil Rule 9(b); although consumers did not specify particular persons who devised and procured misleading waivers, complaints sufficiently alleged who, what, where, when, and how of misleading practice, and complaints alleged that consumers suffered damage as result of misleading practice. Truth in Lending Act, §§ 905, 906, 914, as amended, 15 U.S.C.A. §§ 1693c, 1693d, 1693*l*; S.H.A. 815 ILCS 505/1 –12; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A; 12 C.F.R. §§ 205.7, 205.9, 205.10(c).

**[33] Federal Civil Procedure 170A ☞ 636**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak633 Certainty, Definiteness and Particularity
        170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

Where corporate insiders are involved and role of each insider defendant is solely within their knowledge, plaintiff need not specify role of each defendant in fraud to satisfy particularity requirements of Federal Civil Rule 9(b). Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.

**[34] Antitrust and Trade Regulation 29T ☞ 381**

29T Antitrust and Trade Regulation
  29TIII Statutory Unfair Trade Practices and Consumer Protection
    29TIII(E) Enforcement and Remedies
      29TIII(E)7 Relief

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

29Tk380 Injunction
29Tk381 k. In General. Most Cited Cases

(Formerly 92Hk36.1 Consumer Protection)

Consumer could bring action for injunction under Illinois Consumer Fraud Act. S.H.A. 815 ILCS 505/10a(c).

**[35] Federal Civil Procedure 170A** 1101

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(N) Striking Pleading or Matter Therein
170Ak1101 k. In General. Most Cited Cases

**Federal Civil Procedure 170A** 2531

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)3 Proceedings
170Ak2531 k. In General. Most Cited Cases

Federal Rules of Civil Procedure do not provide for striking of summary judgment motion. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

**[36] Federal Civil Procedure 170A** 2553

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)3 Proceedings
170Ak2547 Hearing and Determination
170Ak2553 k. Time for Consideration of Motion. Most Cited Cases

Consumer was not entitled to continuance of summary judgment motion in its class action suit against banks and finance companies to obtain additional discovery, where consumer failed to move under proper federal civil rule providing means by which nonmovant could seek continuance of summary judgment motion to obtain additional discov-

ery or affidavits and failed to attach required affidavit explaining why she needed additional discovery to respond to summary judgment motion. Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

Cathleen C. Cohen, Daniel A. Edelman, James O. Latturner, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Danielle Renee Gomez, Rick D. Young, Edelman & Combs, Chicago, IL, for plaintiff.

Michael B. Hyman, Norman B. Newman, William Henry London, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Monarch Finance Corp.

David J. Bradford, Darryl Mark Bradford, Paul T. Whitcombe, Jenner & Block, Chicago, IL, for Cole Taylor Bank.

Amy A. Hijjawi, Katten, Muchin & Zavis, Chicago, IL, Francis Xavier Grossi, Jr., Bates, Meckler, Bulger & Tilson, Chicago, IL, for Sir Finance Corp.

Richard F. Zehnle, Diane Marie Kehl, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Bank One Chicago, N.A.

Bernard Wiczer, Fred L. Berkovits, Elliot Scott Wiczer, Wiczer & Associates, Chtd., Northbrook, IL, for Brother Loan & Finance Corp.

*MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Verlina Cobb brings this proposed class action against three finance companies (the "Lender Defendants"), three banks (the "Bank Defendants"), and unknown corporate officers of the finance companies and banks (the "John Doe Defendants"). Cobb alleges that, in the making and handling of loans that she borrowed from the Lender Defendants, the defendants violated various federal lending and banking laws; in addition, Cobb's complaint adds several state law claims. Presently before this court are: (1) the plaintiff's motion for class certification; (2) the Bank Defend-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

ants' motion to dismiss; (3) the Lender Defendants' motion to dismiss; and (4) the plaintiff's motion to "strike" a motion for summary judgment filed by one of the Bank Defendants. For the reasons set forth below, we grant the motion for class certification, grant in part and deny in part the Bank Defendants' motion to dismiss, grant in part and deny in part the Lender Defendants' motion to dismiss, and deny the plaintiff's motion to "strike" the summary judgment motion.

## I. Background

From November 1993 to November 1994, Cobb procured a total of ten separate loans from three finance companies (collectively, the Lender Defendants): (1) four loans from Sir Finance Corporation, each with a principal of $690, an annual percentage rate of 101%, and payable in 19 bi-weekly payments; (2) five loans from Brother Loan & Finance Company, each with a principal of $700, an annual percentage rate of 96.43%, and payable in 14 bi-weekly payments; and (3) one loan from Monarch Finance Corporation, with a principal of $500, an annual percentage rate of 57.22%, and payable in 15 bi-weekly payments.

Cobb alleges that the loan agreements she entered into with the Lender Defendants, although using different language, all created a similar payment mechanism. The bi-weekly loan repayment schedules corresponded to Cobb's employee pay schedule; at the time, she worked for the United States Department of Labor. Cobb maintains that each loan agreement purported to authorize the creation of a bank account on Cobb's behalf, to which an allotted portion of Cobb's paycheck was electronically and directly deposited. The allotment was then immediately transferred from Cobb's account to the finance company's account, held at the same bank. Each finance company designated a different bank at which the account would be created. The three banks (collectively, the Bank Defendants) were: (1) Bank One–Evanston,[FN1] designated by Sir Finance; (2) Lakeside Bank, designated by Brother Loan; and (3) Cole Taylor Bank, desig-

nated by Monarch Finance. Cobb also alleges that **\*1170** the agreements purported to waive her rights to receive "account statements or transaction reports" regarding the accounts.

>    FN1. One of the named defendants, Bank One–Chicago, is the successor corporation to Bank One–Evanston.

Cobb filed for Chapter 7 bankruptcy on February 3, 1995. At the time, she had not repaid in full her final loans from Sir Finance and Brother Loan, and had not repaid in full her one loan from Monarch Finance. After filing for bankruptcy, the plaintiff filed three separate actions, which have been reassigned and consolidated on relatedness grounds, and named as defendants the Bank Defendants, the Lender Defendants, and unknown corporate officers (collectively, the "John Doe Defendants") of the banks and finance companies.

The plaintiff's consolidated complaint asserts seven counts: (1) the Lender Defendants and the Bank Defendants violated disclosure requirements and other provisions of the Electronic Fund Transfers Act (EFTA), 15 U.S.C. §§ 1693–1693r, and its implementing regulations, 12 C.F.R. part 205; (2) the Lender Defendants failed to inform Cobb that they had obtained a security interest in Cobb's bank accounts as required by 12 C.F.R. § 226.18(m), promulgated pursuant to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667e; (3) the Bank Defendants failed to meet the disclosure requirements of 12 C.F.R. §§ 230.4–230.6, promulgated pursuant to the Truth in Savings Act (TISA), 12 U.S.C. §§ 4301–4313; (4) the Bank Defendants, Lender Defendants, and John Doe Defendants obtained a wage assignment from Cobb without providing her with proper notice and opportunity to object, a violation of the Illinois Wage Assignment Act (IWAA), 740 ILCS 170/1–170/11; (5) the Bank Defendants and Lender Defendants entered into loan agreements with the plaintiff that were unconscionable under Illinois law; (6) the Bank Defendants, Lender Defendants, and John Doe Defendants violated a fiduciary duty owed to the plaintiff under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

31 C.F.R. § 209.8; and (7) the Bank Defendants, Lender Defendants, and John Doe Defendants committed a deceptive practice under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1–505/12.

The plaintiff moves to certify three classes, labelled as the Sir Finance/Bank One class, the Brother Loan/Lakeside class, and the Monarch/Cole Taylor class. In general, the proposed members of the respective classes consist of all persons who entered into finance agreements with the named finance companies and into account authorizations with the named banks using the same forms that Cobb signed. More specifically, the class members for Counts I–III would be limited to those persons who signed the documents within one year of this suit's filing date; the class members for Counts IV and VI would be limited to those persons who signed the documents within five years of this suit's filing date. Furthermore, the class members for Counts V and VII would be limited to those persons whose loans called for greater than a 40% annual percentage rate, and would be further limited to those persons who signed within five years for Count V and three years for Count VII. The defendants oppose class certification, arguing that the claims of the named plaintiff are atypical of the class's claims, and that the named plaintiff would serve as an inadequate class representative. We discuss the class certification issue first, then turn to the defendants' motions addressing the merits. *See Hudson v. Chicago Teachers Union, Local No. 1, 922 F.2d 1306, 1316–17 (7th Cir.),* cert. denied, 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

## II. Motion for Class Certification

### A. Requirements for Class Certification

[1] Federal Rule of Civil Procedure 23(a) specifies four preliminary requirements that any proposed class must meet:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If the "numerosity, commonality, typicality, and adequacy" requirements **\*1171** are satisfied, *Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir.1993)* (citations omitted), then we must also decide whether the class qualifies under one of the three subsections of Rule 23(b). In the instant case, the plaintiff seeks certification under Rule 23(b)(3), which authorizes class actions where the "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The plaintiff bears the burden of showing that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir.1993).*

[2][3] In evaluating a motion for class certification, the allegations made in support of certification are taken as true, *Hardin v. Harshbarger, 814 F.Supp. 703, 706 (N.D.Ill.1993),* and as a general matter, we do not examine the merits of the case, *Retired Chicago Police Ass'n, 7 F.3d at 598.* However, the " 'boundary between a class determination and the merits may not always be easily discernible,' " *id.* at 599 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir.1981),* cert. denied, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982)), because determining the propriety of class certification generally depends on factors " 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' " *id.* at 598 (quoting *General Tel. Co. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)* (citation omitted)). Finally, claims arising out of form con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

tracts are particularly appropriate for class action treatment. *Haroco, Inc. v. American Nat'l Bank and Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988).

### B. Uncontested Requirements

[4] In light of these principles, we find that class certification is appropriate in the instant case. At this early stage of the litigation,[FN2] the defendants recognize that the numerosity and commonality prerequisites are satisfied here. Defs.' Class Cert.Resp. at 10 n. 7. Apparently, hundreds of transactions meet the classes' definition, *see* Pl.'s Mot. for Class Cert. ¶ 8(a)–(c); Defs.' Class Cert.Resp., Exs. B, C, and within each of the three proposed classes, the same standard form was used. In addition, the defendants—for now—do not challenge that a class action is superior to individual actions and that questions of law and fact common to the class predominate over individual questions. Thus, Rule 23(b)(3) authorizes certification.

> FN2. We note that a district court "remains free to modify" a class certification order "in light of subsequent developments in the litigation." *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. at 2372.

### C. Typicality

[5][6][7] Accordingly, at this time the defendants argue against certification on only two grounds, specifically, that the named plaintiff fails to meet the typicality and adequacy prerequisites. In evaluating the typicality of a named plaintiff's claims, we

> focus on whether the named representative['s] claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

*De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions* § 1115(b) (1977)); *Retired Chicago*

*Police Ass'n,* 7 F.3d at 597. Typicality might not be met, however, where the named plaintiff is subject to a "unique defense," *Hardy v. City Optical, Inc.,* 39 F.3d 765, 770 (7th Cir.1994), that will "distract[ ]" the named plaintiff and cause the representation of the class to "suffer," *J.H. Cohn & Co. v. American Appraisal Assocs.,* 628 F.2d 994, 999 (7th Cir.1980). For example, the named plaintiff's lack of injury might render him or her atypical. *Katz v. Comdisco, Inc.,* 117 F.R.D. 403, 407 (N.D.Ill.1987).

[8] The defendants argue that there exist two defenses unique to Cobb. First, the defendants assert that Cobb has suffered no **\*1172** injury because, at the time Cobb filed for bankruptcy, she had retained more in principal on her final loans than she had repaid.[FN3] The defendants argue that Cobb, who has filed for bankruptcy, thus actually profited from the transactions because the loans will be discharged.

> FN3. Specifically, Cobb had not repaid: approximately $600 of her final $690 Sir Finance loan, Defs.' Class Cert.Resp., Ex. A, Schedule F; $692.05 on her final $700 loan from Brother Loan, *id.,* Ex. C, ¶ 22; and $514.50 on the loan from Monarch Finance, *id.,* Ex. B. Apparently, the plaintiff used subsequent loans from Sir Finance and Brother Loan to prepay the outstanding balances on prior loans. *See* Compl., Exs. O, P, R, U, X; Defs.' Class Cert.Resp. at 6 n. 4.

However, Cobb's ostensible net gains do not necessarily render her free from injury under the various claims that she brings. First, Cobb did repay the first three loans from Sir Finance, the first four loans from Brother Loan, and part of the loan from Monarch. Cobb may recover actual damages resulting from the federal statutory violations, EFTA, 15 U.S.C. § 1693m(a)(1); TILA, 15 U.S.C. § 1640(a)(1); TISA, 12 U.S.C. § 4310(a)(1), and in this case, actual damages could encompass the amount of interest that the defendants collec-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

ted—illegally, according to Cobb—from the named plaintiff.[FN4] While it is true that the final loan balances might be discharged in bankruptcy, that does not change the alleged injury suffered by Cobb, namely, the interest payments she made on the allegedly unlawful loans. Finally, apart from actual damages, Cobb also seeks to recover statutory damages, a claim typical to the class. EFTA, 15 U.S.C. § 1693m(a)(2)(B); TILA, 15 U.S.C. § 1640(a)(2)(B); TISA, 12 U.S.C. § 4310(a)(2)(B). Accordingly, we conclude that lack of injury is not a defense so unique to Cobb that she will be distracted from representing the class claims.

> FN4. We emphasize that, at the class certification stage, we refrain from deciding on the merits whether any actual damages are due in this case or the proper measure of any actual damages; for purposes of class certification, it is sufficient to hold that the named plaintiff can in fact allege injury.

[9] Next, the defendants argue that the named plaintiff is subject to another unique defense, specifically, that Cobb did not have any "accounts" within the meaning of the relevant federal statutes because (a) the number of paycheck allotments she made absolutely precludes her from statutory protection, and (b) she testified in her bankruptcy proceeding that she was unaware of the bank accounts created in her name. Although these contentions tread precariously close to arguments on the merits, we can readily address them for purposes of class certification. First, the defendants argue, two is the maximum number of paycheck allotments to a savings account under a Department of Treasury regulation, 31 C.F.R. § 209.3(b)(3), and Cobb had three paycheck allotments concurrently. This purportedly unique defense will not distract Cobb from class representation. It is the head of the employing agency, not the employee, that is directed to follow the limit on the number of paycheck allotments, § 209.3(b), and the number of allotments is in no way mentioned in the definition of the accounts or transactions protected by the relevant statutes or regula-

tions, EFTA, 15 U.S.C. § 1693a(2), 12 C.F.R. § 205.3(b); TILA 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(a)(10)–(12); TISA, 12 U.S.C. § 4313(1), 12 C.F.R. § 230.2(a), (h).

[10][11] Second, the defendants maintain, the named plaintiff has already testified in her bankruptcy proceeding that she was unaware of the existence of "savings" accounts, and thus cannot claim that she was opening accounts protected by the applicable statutes. This defense also will not distract the named plaintiff from pursuing the class's claims. Cobb's testimony in the bankruptcy creditor's hearing reflects that she avows ignorance of *any* bank accounts created in *her* name pursuant to the loan agreements, Tr. of Creditor's Hearing at 6; this ignorance is entirely consistent with the class claims alleging that the defendants failed to make required disclosures. Moreover, just as the applicable federal statutes do not mention the number of permissible allotments in the definition of protected "accounts," the statutes do not limit their application to "savings" **1173** accounts, EFTA, 15 U.S.C. § 1693a(2), 12 C.F.R. § 205.3(b); TILA 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(a)(10)–(12); TISA, 12 U.S.C. § 4313(1), 12 C.F.R. § 230.2(a), (h), and indeed the TILA governs consumer credit transactions, not bank accounts, 15 U.S.C. § 1602(h). We conclude at this time that the named plaintiff satisfies the typicality prerequisite and is not subject to unique defenses.[FN5]

> FN5. Our finding that typicality is met also applies to the named plaintiff's state law claims; no unique defenses will distract Cobb from pursuing these claims on the classes' behalf.

### D. Adequacy

[12] The other prerequisite challenged by the defendants is the adequacy of the named plaintiff, a requirement comprised of two parts: " '[1] the adequacy of the named plaintiff's counsel, and [2] the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n,* 7

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986) (*en banc* )). The defendants raise no dispute regarding the adequacy of Cobb's attorneys, and we have in a prior case deemed Cobb's attorneys "experienced class action attorneys," *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 676 (N.D.Ill.1989) . Because there apparently is no reason to question otherwise, we find plaintiff's counsel to be adequate.

The defendants do challenge, however, the adequacy of the named plaintiff's representation of other interests of the class members. First, the defendants argue that Cobb does not have a sufficient financial stake in the litigation. However, given a class size on the order of a thousand individuals, each class member stands to recover hundreds of dollars in statutory damages, in addition to actual damages. Indeed, the defendants recognize that recovery against the Bank Defendants could provide financial incentive to pursue the class action; the defendants instead argue that Cobb failed to exempt the causes of action against the Bank Defendants from her bankruptcy estate. Defs.' Class Cert.Resp. at 12. Cobb has filed, however, a Third Amended Schedule of Exempted Property that includes the causes of action, Pl.'s Class Cert.Reply, Appendix, and thus may recover and personally retain damages in this action.[FN6]

> FN6. The plaintiff is entitled to exempt up to $2000 in personal property from the bankruptcy estate, 11 U.S.C. § 522(b)(2) (A), 735 ILCS 5/12–1001(b), and her Third Amended Schedule exempts only $925 in personal property other than this lawsuit against the defendants. Accordingly, Cobb is left with a maximum potential recovery of $1025.

[13] Finally, the defendants argue that Cobb has a conflict of interest with the class, presumably because her debts will be discharged in bankruptcy and she thus will have "no interest in injunctive relief or in reducing the amount of the loan obligation

as a form of relief." Defs.' Class Cert.Resp. at 13. The defendants pose a hypothetical settlement offer in which the defendants forgive the last loan payment of each class member, a value of approximately $40 for each member given a class size of one thousand. *Id.* According to the defendants, Cobb could not adequately evaluate this offer on behalf of those class members who have not finished paying their loans. This is not, however, the sort of " 'antagonistic or conflicting claims' " of class members that will result in unfair and inadequate representation, *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993)). Although it is always possible to construct a creative settlement that will pit some class members against others, in the instant case success for those who have paid their loans in full will not impair the success of those who have not yet fully repaid their loans. Hence, the claims of the class members do not conflict. Lastly, some class members presumably have paid their loans in full, and thus Cobb's interests are exactly aligned with those members. Accordingly, we find that Cobb has met the adequacy prerequisite, and we grant the plaintiff's motion to certify the three proposed classes. We now discuss the motions addressing the merits of the case.

### *1174 II. Standard for Reviewing Motions to Dismiss

[14] A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

*230,* 991 F.2d 1316, 1324 (7th Cir.1993) (citing *Ellsworth,* 774 F.2d at 184).

### III. Bank Defendants' Motion to Dismiss[FN7]

FN7. Although the parties label the motion to dismiss that addresses the federal claims as the motion of the "Bank Defendants," and the other motion, which argues the TILA state claims, as the "Lender Defendants," each group adopted the arguments of the other to the extent that the claims were asserted against them.

#### A. Electronic Fund Transfers Act

[15] In debating Count I, the parties primarily dispute whether the plaintiff fails to allege that she owned an "account" that implicates the EFTA. Because the EFTA's requirements are triggered by "electronic fund transfer[s]" that "debit or credit an *account,*" 15 U.S.C. § 1693a(6) (emphasis added); 12 C.F.R. § 205.3(g), the meaning of "account" determines in this case whether Cobb states a claim under the EFTA. Pursuant to its rulemaking authority under the EFTA, § 1693b, the Federal Reserve Board promulgated a set of regulations codified at 12 C.F.R. part 205, popularly known as "Regulation E," including a specific section that defines account as

a demand deposit (checking), savings, or other consumer asset account ... held either directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.

12 C.F.R. § 205.3(b).[FN8] In the instant case, Cobb maintains that each bank account received direct deposits from Cobb's paychecks; the respective bank then transferred the funds to an account of the appropriate Lender Defendant as a loan payment. According to Cobb, the bank accounts were "savings account[s]," Compl., Ex. L (Lakeside Bank allotment agreement), or at least were "account[s]," Compl., Ex. C (Cole Taylor Bank allotment agreement), established primarily for per-

sonal, family, or household purposes, Pl.'s Resp. to Bank Defs. at 6–7.

FN8. Regulation E's definition draws from the statutory definition of account:

a demand deposit, savings deposit, or other asset account ..., as described in regulations of the Board [of Governors of the Federal Reserve System], established primarily for personal, family, or household purposes....

15 U.S.C. § 1693a(2).

[16][17] We hold that the plaintiff states a claim under the EFTA. Section 1693a(2) and regulation § 205.3(b) simply define "accounts" as those bank accounts "established primarily for personal, family, or household purposes." In interpreting this latter phrase, we turn to similar language in the TILA, which defines "consumer credit transaction" as those in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, [or] household ... purposes," 15 U.S.C. § 1602(h). Under the TILA, like the EFTA, the term "personal, family, or household purposes" distinguishes "consumer" transactions from "business" transactions, *see American Express Co. v. Koerner,* 452 U.S. 233, 242–43, 101 S.Ct. 2281, 2286–87, 68 L.Ed.2d 803 (1981), or in other words, "consumer" transactions from "commercial" transactions, *Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir.1980) (deeming a mortgage for a home improvement loan as a consumer transaction). In the TILA context, we "examine the transaction as a whole" and in light of "the entire surrounding factual circumstances," *id.* at 1166 & n. 4, and if the transaction "involves a profit motive," that indicates a business or commercial transaction, *see In re Booth,* 858 F.2d 1051, 1054–55 (5th Cir.1988).

[18] Employing an analogous standard to the EFTA claim, and taking the allegations **\*1175** as true and in the light most favorable to the plaintiff, we determine that the alleged bank accounts were

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

"established primarily for personal, family, or household purposes." The accounts received direct deposits from Cobb's paychecks, and then the funds were transferred to the respective finance company's account.FN9 Using the accounts to repay the loans—which were made to Cobb in her personal capacity and for no apparent business purpose—represented a personal purpose for the bank accounts. Thus, the plaintiff's accounts, as alleged, meet the definition of "accounts" under the EFTA. FN10 Accordingly, the plaintiff adequately alleges violations of specific provisions of the EFTA and Regulation E.FN11

> FN9. In arguing against the applicability of the EFTA, the defendants contend that the EFTA would provide for *over* disclosure because of the limited purpose of the accounts. The defendants point out that the plaintiff's pay statements already indicate the date, amount, and recipient of the fund transfer. However, we cannot rewrite the statutory and regulatory definitions to exclude the alleged accounts, which fall within the definitional language. Moreover, even if the plaintiff's pay statements did express which account number had received a fund transfer, EFTA disclosures would still serve a purpose because the pay statement would *not* reflect when and whether the loan payment had been successfully transferred to the Lender Defendants' accounts.

> FN10. In discussing the EFTA claims, the parties also dispute whether Cobb's allotments constituted allotments to "savings account[s]" under 31 C.F.R. § 209.2(f), or whether Cobb's allotments constituted "discretionary allotments" under 31 C.F.R. § 210.2. We discuss these disputes in deciding whether the plaintiff states a claim under 31 C.F.R. § 209.8 for breach of fiduciary duty, *see infra* Part III.C, but for purposes of deciding the EFTA claims, we

need only hold that there exists no persuasive reason to think that the applicability of *the EFTA* turns on § 209.2(f)'s definition of savings account or on § 210.2's definition of discretionary allotment. Both regulatory parts disavow any intent to "supersede" or "circumvent[ ] the requirements of particular statutes." §§ 209.1(b), 210.16. Because we find that the alleged bank accounts otherwise fall within the EFTA's statutory definition of "account," the purported characterization of Cobb's allotments as either savings or discretionary does not somehow alter the nature of the accounts.

> FN11. We point out that Count I generally alleges that the Bank *and* Lender Defendants are responsible for each of the specific statutory and regulatory violations: Compl. ¶ 97. However, it appears that some of the specified statutory and regulatory sections may be applicable only to the Bank *or* Lender Defendants. *E.g.,* 12 C.F.R. § 205.10(a) (directing the "financial institution" to provide notice). Because the defendants, for now, move to dismiss only on more comprehensive grounds, we note that our decision today does not decide these more narrow issues.

### B. Truth in Savings Act

[19][20] Similarly to their argument on the EFTA claims, the Bank Defendants contend that the plaintiff fails to allege that she owned bank accounts that fall within the TISA's definition of account. The Federal Reserve Board regulations promulgated pursuant to the TISA are popularly known as "Regulation DD" and codified at 12 C.F.R. part 230, and provide that "[a]ccount means a deposit account at a depository institution that is held by or offered to a consumer." § 230.2(a). In turn, the definition of "consumer" is "a natural person who holds an account primarily for personal, family, or household purposes, or to whom such an

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

account is offered." § 230.2(h).FN12 Regulation DD's definition of "account," in conjunction with the definition of "consumer," parallels the EFTA's and Regulation E's definition of "account." Accordingly, we hold that Cobb's alleged accounts fall within the ambit of the TISA.FN13

> FN12. Regulation DD's definitions draw from the TISA's statutory definition of account:
>
> > any account intended for use by and generally used by consumers primarily for personal, family, or household purposes that is offered by a depository institution into which a consumer deposits funds, including demand accounts....
>
> 12 U.S.C. § 4313(1).

> FN13. The defendants argue that Cobb never subjectively intended to open the bank accounts, relying on her testimony during the creditor's hearing held as part of her bankruptcy filing, *see* 11 U.S.C. § 341. The bankruptcy trustee asked Cobb to describe the lawsuit, and the plaintiff explained, with some difficulty, that she had not been aware that the defendants opened bank accounts in her name. Bank Defs.' Mot., Ex. J, at 5–6. However, we take caution in considering this testimony in what is otherwise a motion to dismiss because the testimony is not incorporated into the plaintiff's complaint; the dangers of considering the testimony at this stage are highlighted by: the plaintiff's obvious difficulty in articulating her concerns at the creditor's hearing, Bank Defs.' Mot., Ex. J. at 7; the plaintiff was represented at the hearing by an attorney of counsel to her bankruptcy attorney's firm, who had no knowledge of the class action, *id.* at 11; and although the hearing was for creditors, 11 U.S.C. § 341(a), at least one of the *Bank* Defendants sent an attorney to the

hearing, Defs.' Resp. to Class Cert., Ex. E, at 14. Finally, Regulation DD does not refer to subjective intent in defining "account" and "consumer"; rather, consistent with the case law interpreting the TILA, *see supra* Part III.A, the nature of the account is the relevant inquiry.

[21] The Bank Defendants argue, however, that even if the alleged accounts trigger **\*1176** the TISA's disclosure requirements, the plaintiff waived her statutory right to receive the disclosures. The plaintiff responds that the TISA's disclosure requirements are not waivable, arguing that the TISA contains no express authorization for waiver. However, in addressing a wide array of constitutional and statutory provisions, the Supreme Court has held that waiver is presumptively available absent an express bar of waiver. *United States v. Mezzanatto,* 513 U.S. 196, ——, 115 S.Ct. 797, 801, 130 L.Ed.2d 697 (1995). "[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *Id.* Thus, we reject the plaintiffs' contention that the TISA's requirements are not waivable.

[22][23] Accordingly, we grant the Bank Defendants' motion to dismiss the TISA count. Based on the allegations in the complaint, and the exhibits incorporated into the complaint,FN14 the plaintiff unequivocally "waive [d] any rights to receive any and all account statements or transaction reports concerning this account that are required under any law, regulation or rule to be sent to me."FN15 Compl., Exs. C, L; Compl. ¶¶ 22(d), 29(b), 36(d). Thus, we dismiss the TISA count.

> FN14. For purposes of evaluating a motion to dismiss, we may consider exhibits incorporated into a complaint. Fed.R.Civ.P. 10(c); *Webster v. New Lenox Sch. Dist. No. 122,* 917 F.2d 1004, 1005 (7th Cir.1990).

> FN15. The EFTA expressly prohibits waiver of its provisions, 15 U.S.C. § 1693l

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

, and thus the defendants do not argue that the waiver provisions signed by the plaintiff are fatal to the EFTA claims.

### C. Breach of Fiduciary Duty

[24] Next, the defendants move to dismiss Count VI, which alleges that the defendants owed and breached a fiduciary duty to the plaintiff under 31 C.F.R. part 209. The Federal Reserve Board promulgated part 209 to govern, in pertinent part, recurring deductions from federal employee paychecks to employee savings accounts. § 209.3. Employees "may authorize an allotment of pay for a savings account," § 209.3(a), and a financial institution that receives such an allotment "does so in each case as the agent of the employee ... who has designated the financial institution to receive the check and credit his account," § 209.8. The plaintiff relies on the agency relationship imposed by § 209.8 as the source of the Bank Defendants' fiduciary duty to her.

However, § 209.2(f) provides that

[s]avings account means an account (single or joint) for the purchase of shares (other than shares of stock) or *for the deposit of savings* in any financial institution, the title of which account include[s] the name of the authorizing employee.

(emphasis added). Neither party urges that the alleged accounts are for the "purchase of shares," and we additionally conclude that the alleged accounts are not accounts for the "deposit of savings." According to the complaint, the accounts received direct deposits from Cobb's paychecks, and the banks then transferred the funds to another account as a loan payment. The alleged accounts thus received deposits of funds to repay personal loans, not "deposits of savings"; the deposited funds were not to be saved in any way. Because the complaint fails to adequately allege that the accounts were "savings account[s]" covered by part 209, the Bank Defendants did not owe the plaintiff a fiduciary duty.[FN16] Accordingly, we dismiss Count VI

*1177 for failure to state a claim.[FN17]

FN16. In light of our holding, there is no reason to address whether § 209.8 actually imposes a fiduciary duty on financial institutions merely because the regulation imposes an agency relationship.

FN17. We reject the defendants' argument that if we conclude Cobb's allotments do not fall under part 209, then the allotments are necessarily "discretionary allotments" covered by part 210; the defendants contend that discretionary allotments do not implicate the EFTA or the TISA. However, while discretionary allotments are made from the employee's paychecks to a "recipient's" account, §§ 210.2, 210.18(b), the allegations in the instant case express that the funds were credited to accounts in the plaintiff's name, not to accounts of the Lender Defendants. As alleged, the allotments are covered by neither part 209 nor 210. It may be true that parts 209, 210, and the general provisions for salary allotments in 5 C.F.R. § 550.301–550.381 *should* be the exclusive means by which the employing agency makes salary allotments, but as a practical matter it is entirely possible that the employing agency might make salary allotments outside the regulatorily-prescribed means. In the instant case, on the direct deposit forms submitted to the employing agency, the Bank Defendants apparently noted that the allotments were for "savings," Compl., Exs. E, L, and it is understandable that the employing agency would construe the allotments as such.

### D. State Law Claims

Finally, the Bank Defendants move to dismiss the state law claims, relying for the most part on the Lender Defendants' arguments. As we explain below in deciding the Lender Defendants' motion to dismiss, *see infra* at Part IV.B, we dismiss Count IV, which alleges that the Bank and Lender De-

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

fendants violated the Illinois Wage Assignment Act, 740 ILCS 170/1–170/11.

[25] In addition, we dismiss Count V, the unconscionable contract claim, as to the Bank Defendants. Aside from incorporating other allegations, the plaintiff's sole allegation in support of the unconscionable contract claim declares:

The combined effect of the extraordinarily high interest rates charged, the systematic violations of consumer protection laws and regulations by defendants, and in the case of Monarch the misrepresentation that borrowers were obtaining "signature loans" made all of the loans at issue unconscionable.

Compl. ¶ 106. "A contract will be treated as unconscionable when it is so one-sided that only one under delusion would make it and only one unfair and dishonest would accept it." *In re Estate of Croake,* 218 Ill.App.3d 124, 161 Ill.Dec. 209, 211, 578 N.E.2d 567, 569, *appeal denied,* 142 Ill.2d 654, 164 Ill.Dec. 916, 584 N.E.2d 128 (1991). The plaintiff's "combined effect" theory, however, fails to implicate the Bank Defendants as parties to the loan agreements. Indeed, the complaint does not allege that the Bank Defendants played any part in setting the loans' interest rates or in procuring prospective debtors.

Accordingly, we consider only those allegations that relate to the Bank Defendants' agreement to create accounts in the plaintiff's name. Although the plaintiff adequately alleges that the Bank Defendants violated provisions of the EFTA, this falls short of the "systematic violations of consumer protection laws," Compl. ¶ 106, that the plaintiff alleges in support of the unconscionability claim; in short, the EFTA violations are the only allegations supporting the unconscionability claim against the Bank Defendants. Without more, the plaintiff has failed to allege an unconscionable contractual relationship between the Bank Defendants and the plaintiff. We dismiss Count V as to the Bank Defendants.

Lastly, as we explain below, *see infra* Part IV.D, we deny the defendants' motion to dismiss Count VII, the Illinois Consumer Fraud Act claim, 815 ILCS 505/1 – 505/12. The plaintiff adequately alleges a statutory fraud claim against both the Bank and Lender Defendants.

## IV. Lender Defendants' Motion to Dismiss
### A. Truth in Lending Act

[26] The Lender Defendants move to dismiss Count II, which alleges that each of the Lender Defendants "fail[ed] to disclose that it was obtaining a security interest in the savings accounts," Compl. ¶ 28, in violation of 12 C.F.R. § 226.18(m). The Federal Reserve Board promulgated § 226.18 as part of "Regulation Z," which implements the TILA. Section 226.18(m) provides that creditors governed by the TILA shall disclose "[t]he fact that the creditor has or will acquire a **\*1178** security interest in the property purchased as part of the transaction, or in other property identified by item or type." Under Regulation Z, a security interest is "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." § 226.2(a)(25).

The plaintiff argues that the "transaction documents" created a security interest in the plaintiff's accounts. Pl.'s Resp. to Lender Defs. at 5. Specifically, the plaintiff contends that the loan agreements prohibited her from "cancel[ing] my allotment until loan is paid in full," *e.g.,* Compl., Exs. G, M, and that the allotment agreements prohibited her from withdrawing funds from the accounts without the Lender Defendants' permission, *e.g.,* Compl. ¶¶ 22(e), 29(c). However, the Lender Defendants' alleged interest in the plaintiff's accounts did not "secure[ ] performance" of the loan obligations. § 226.2(a)(25). The complaint simply alleges that the plaintiff's accounts received funds from her paycheck for transfer to the Lender Defendants' accounts. That is, the accounts served to facilitate repayment of the loans, not to secure repayment upon default. We dismiss Count II because the complaint fails, as a matter of law, to allege that the Lender

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

Defendants acquired a "security interest" in the plaintiff's accounts.

### B. Illinois Wage Assignment Act

[27] Next, the Lender Defendants move to dismiss Count IV, the IWAA claim, 740 ILCS 170/.01–170/11. The IWAA renders invalid an "assignment of wages earned or to be earned" unless, *inter alia,* "[g]iven to *secure* an existing debt of the wage-earner or one contracted by the wage-earner simultaneously with its execution." 170/1(2) (emphasis added). In addition, the IWAA sets forth notice provisions and other procedures that creditors must follow in order to collect under a wage assignment. *E.g.,* 170/2–170/4. For example, the creditor may not serve an employer with a "demand" pursuant to a wage assignment unless, *inter alia,* "[t]here has been a *default* of more than 40 days in payment of the indebtedness secured by the assignment and the *default* has continued to the date of the demand." 170/2(1) (emphases added).

Because we interpret the IWAA to govern only those wage assignments that "secure" debt, 170/1(2), and that provide a method for collection upon "default," 170/2(1), we hold as a matter of law that the plaintiff fails to state a claim under the IWAA. The IWAA repeatedly refers to "default" as the triggering event at which time the creditor may make demands upon a wage assignment, *e.g.,* 170/2(1), 170/2.1 (requiring that demand form served upon the debtor's employer state that the debtor is in "default"), and thus wage assignments governed by the IWAA represent a self-help remedy for collection upon a debtor's default, *see In re Rosol,* 114 B.R. 560, 563 (Bankr.N.D.Ill.1989). FN18 In the instant case, the complaint simply alleges that the defendants "[o]btain[ed] what amount to assignments of wages within the meaning of the IWAA." Compl. ¶ 103(a). However, the allegations establish that the weekly paycheck deductions represented the *method* by which the plaintiff repaid the loans—the plaintiff agreed to make the deductions **\*1179** weekly, even prior to default—not the security for the loans and the collection remedy to which the Lender Defendants would resort upon default. Accordingly, we grant the defendants' motion to dismiss Count IV.

> FN18. We reject the plaintiff's contention that 170/11 supports interpreting the IWAA to cover wage assignments that do not require a default. In general, 170/11 exempts court-ordered withholding of income for child and spousal support payments entered pursuant to various statutes governing family law. The plaintiff argues that the relevant statutes do not require default, or delinquency, as a precondition to ordering income withholding; the plaintiff concludes that the exemption in 170/11 would be unnecessary if the IWAA already applied only to wage assignments collectable upon default. It is true that, as of January 1, 1989, the family law provisions no longer require delinquency as a precondition of court-ordered income withholding. Illinois Public Code, 305 ILCS 5/10–16.2(B)(1) (Supp.1995); Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/706.1(B)(1) (Supp.1995); Non–Support of Spouse and Children Act, 750 ILCS 15/4.1(B)(1) (Supp.1995); Revised Uniform Reciprocal Enforcement of Support Act, 750 ILCS 20/26.1(B)(1) (Supp.1995); Paternity Act, 750 ILCS 45/20(B)(1) (Supp.1995). However, prior to 1989, the same family law provisions *did* require delinquency as a precondition of income withholding. Indeed, the Public Act that added the delinquency preconditions to the family law statutes, P.A. 83–658 (eff. Jan. 1, 1984), also added 170/11 to the IWAA. Thus, rather than suggesting a contrary interpretation, 170/11's exemption actually supports the interpretation that the IWAA only covers those wage assignments used as collection remedies upon default.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

### C. Unconscionability

[28][29] The Lender Defendants also move to dismiss Count V, which alleges that the loans were unconscionable primarily due to the "combined effect" of the high interest rates and the violations of consumer protection laws. Compl. ¶ 106. Under Illinois law, a contract is "unconscionable when it is so one-sided that only one under delusion would make it and only one unfair and dishonest would accept it." *In re Estate of Croake,* 161 Ill.Dec. at 211, 578 N.E.2d at 569. In addition, "[t]he term unconscionable encompasses the absence of meaningful choice by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Larned v. First Chicago Corp.,* 264 Ill.App.3d 697, 201 Ill.Dec. 572, 574, 636 N.E.2d 1004, 1006 (1994).

At this stage of the litigation, we cannot hold as a matter of law that Cobb has failed to state a claim of unconscionability. The annual percentage rates charged by the Lender Defendants, ranging from 57% to 101%, appear unreasonably favorable to the lenders, and the transactions are not inconsistent with an absence of meaningful choice. Although the Lender Defendants argue in their brief that the loans "were made available without any credit check" and "included all transaction costs," Lender Defs.' Mot. at 9, the complaint does not allege these facts; determining whether the terms were "unreasonably" favorable to the Lender Defendants requires looking beyond the complaint. Similarly, although the existence of at least three finance companies willing to Lend Cobb money suggests that she exercised some choice, *see Larned,* 201 Ill.Dec. at 574, 636 N.E.2d at 1006, deciding whether the choice was "meaningful" requires a factual inquiry outside the complaint. Accordingly, we deny the Lender Defendants' motion to dismiss Count V.

### D. Illinois Consumer Fraud Act

[30][31] Finally, the defendants move to dismiss Count VII, which alleges that the defendants violated the ICFA, 815 ILCS 505/1 – 505/12, by

"engag[ing] in the conduct" alleged in the complaint. Compl. ¶ 113. More specifically, the plaintiff alleges that the Bank and Lender Defendants "agreed to ... [f]alsely represent to plaintiff and the class members that they could not revoke their authorizations to have the payments transferred to the finance company's account," Compl. ¶ 85(b), and that the Bank and Lender Defendants "ha [d] plaintiff and the class members sign a purported waiver of their right to stop payment of preauthorized electronic fund transfers at any time, as conferred by 12 C.F.R. § 205.10(c)," Compl. ¶ 97(c). FN19 Section 205.10(c), a regulation promulgated pursuant to the EFTA, provides that a consumer may stop a preauthorized electronic fund transfer from her account by providing three days' notice to the bank, and the EFTA prohibits waiver of its protections, 15 U.S.C. § 1693l. In addition, the complaint alleges that the Bank and Lender Defendants "agreed to ... [e]vade giving required information to plaintiff and the class members about their accounts," Compl. ¶ 85(a), including a purported waiver of "any rights to receive any and all account statements or transaction reports concerning" the account, Compl. Exs. C, L. The EFTA requires discloses of specific information prior to the first electronic fund transfer and also requires documentation of transfers. 15 U.S.C. §§ 1693c, 1693d; 12 C.F.R. §§ 205.7, 205.9.

> FN19. Because we have already dismissed the alleged violations of the TILA and the TISA, we do not consider the plaintiff's allegations in support of those claims in considering the ICFA claim.

These allegations state a claim under the ICFA. The ICFA prohibits

> unfair or deceptive acts of practices, including ... the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact....

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

505/2. Notwithstanding 505/2's language, a practice does not violate the ICFA unless it **\*1180** is both "unfair" *and* "deceptive," *Kedziora v. Citicorp. Nat'l Servs.,* 780 F.Supp. 516, 533–34 (N.D.Ill.1991) (citing *Laughlin v. Evanston Hospital,* 133 Ill.2d 374, 140 Ill.Dec. 861, 868, 550 N.E.2d 986, 993 (1990)). However, in order to constitute a "deceptive" practice, "[i]t is enough that a business form be 'misleading,' and whether it is in fact 'misleading' is a factual question not susceptible to decision as a matter of law." *Id.* at 534 (citing *People ex rel. Daley v. Datacom Sys.,* 146 Ill.2d 1, 165 Ill.Dec. 655, 670, 585 N.E.2d 51, 66 (1991)). The defendants argue that, because the EFTA does not cover the alleged accounts, it was not misleading to have the plaintiff waive the ability to stop the electronic fund transfers and waive the right to receive disclosures. However, because we have already held that the EFTA covers the alleged accounts, the plaintiff adequately alleges that the Bank and Lender Defendants engaged in a deceptive practice.

[32][33] The defendants also contend that the allegations fail to meet the particularity requirement for allegations of fraud, Fed.R.Civ.P. 9(b). Even if Rule 9(b) applies to allegations of "deceptive" practices under 505/2 as well as fraudulent practices, we hold that the plaintiff adequately sets forth the " 'circumstances constituting fraud,' " *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (quoting Fed.R.Civ.P. 9(b)), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)). Although the plaintiff does not specify the particular persons who devised and procured the misleading waivers, where "corporate insiders are involved and the role of each insider defendant is solely within their knowledge," the plaintiff need not specify the role of each defendant. *Marc Develop., Inc. v. Wolin,* 845 F.Supp. 547, 556 (N.D.Ill.1993). We conclude that the complaint sufficiently alleges the "who, what, where, when, and how" of the misleading practice. *DiLeo,* 901 F.2d at 627.[FN20]

FN20. The defendants also argue that

505/10a(a) requires that the plaintiff "suffer[ ] damage as a result of a violation of this Act" in order to state a claim under the ICFA. We note, however, that " Rule 9(b) does not require any greater detail in pleading damages unless the information is necessary" to put the defendants on notice of the claim. *Williams v. Sabin,* 884 F.Supp. 294, 297 (N.D.Ill.1995). In addition, the complaint and its incorporated exhibits do reflect that the defendants' standard forms purported to waive the EFTA disclosures, and a reasonable inference is that the plaintiff in fact did not receive the required disclosures. Thus, for purposes of resolving the motion to dismiss, the complaint does allege that Cobb suffered "damage" as a result of the misleading practice. However, we observe that whether the failure to receive disclosures actually resulted in compensable, monetary damages might be the proper subject of a motion for summary judgment. *Cf. Dwyer v. American Express Co.,* 273 Ill.App.3d 742, 210 Ill.Dec. 375, 381, 652 N.E.2d 1351, 1357 (1995) (holding that the plaintiff failed to allege damages under the ICFA because "the only damages that the plaintiffs could have suffered was a surfeit of unwanted mail").

[34] Finally, the defendants contend that Cobb fails to state a claim for injunctive relief because only the state Attorney General may bring actions for injunctions under the ICFA. However, 505/10a(c) of the ICFA expressly provides, with an exception not relevant here, that "in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate." The defendants acknowledge that a 1991 amendment added this authorization to 505/10a, but cite cases in support of the proposition that, even after the amendment, "courts continue to dismiss claims of putative class representatives for injunctive relief under ICFA." Lender Defs.' Reply at 11. Remark-

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

ably, the defendants fail to point out that the cases to which they cite, although decided after 1991, addressed actions based on conduct occurring *prior* to the effective date of the amendment. *Sutherland v. Illinois Bell,* 254 Ill.App.3d 983, 194 Ill.Dec. 29, 31, 627 N.E.2d 145, 147 (1993); *Disc Jockey Referral Network v. Ameritech Publishing,* 230 Ill.App.3d 908, 172 Ill.Dec. 725, 727–728, 596 N.E.2d 4, 6–7, *appeal denied,* 146 Ill.2d 625, 176 Ill.Dec. 796, 602 N.E.2d 450 (1992). Because the allegedly misleading practices in this case occurred well after the effective date of 505/10a(c)'s authorization of injunctive relief, we deny the defendants' motion to dismiss the ICFA claim insofar as it seeks an injunction. In sum, we deny the defendants' motion to dismiss Count VII.

### V. Motion to Strike

[35] Lastly, the plaintiff moves to "strike" Bank One's motion for summary **\*1181** judgment. Bank One moved for summary judgment, arguing that the bank had not in fact established an account in Cobb's name. Rather, the salary deductions were made directly into Sir Finance's account at Bank One. Thus, Bank One concluded, there existed no "account" for which Bank One had to provide disclosures and other documentation. Instead of responding to the bank's summary judgment motion, the plaintiff moved to "strike" the motion, contending that Bank One's own documents contradicted the affidavit submitted by Bank One in support of summary judgment. In the alternative, Cobb moved to delay briefing on the summary judgment motion in order to conduct additional discovery.

We deny the plaintiff's motion to "strike" Bank One's summary judgment motion. Although Federal Rule of Civil Procedure 12(f) authorizes the strike pleadings containing "immaterial, impertinent or scandalous matter," there exists no express authority for "striking" a summary judgment motion. *See Hrubec v. National R.R. Passenger Corp.,* 829 F.Supp. 1502, 1506 (N.D.Ill.1993). Moreover, Rule 56(a) expressly permits the filing of a summary judgment motion "at any time after the expiration

of 20 days from the commencement of the action." Therefore, we decline to "strike" Bank One's motion for summary judgment.

[36] We also deny the plaintiff's self-styled motion for a continuance to obtain additional discovery. Rule 56(f) provides the means by which a nonmovant may seek a continuance of a summary judgment motion in order to obtain additional discovery or affidavits. However, the plaintiff does not move under Rule 56(f), and indeed fails to attach the required affidavit explaining why she needs additional discovery to respond to the summary judgment motion. *Chambers v. American Trans Air,* 17 F.3d 998, 1002 (7th), *cert. denied,* 513 U.S. 1001, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). Accordingly, we deny the plaintiff's motion to delay briefing on the summary judgment motion.

In light of our disposition, and in order to facilitate prompt disposition of Bank One's summary judgment motion, we order that the plaintiff respond to the motion within 10 days from the entry of this order, and that Bank One reply within 7 days thereafter.

### VI. Conclusion

For the reasons set forth above, we grant the motion for class certification, grant in part and deny in part the Bank Defendants' motion to dismiss, grant in part and deny in part the Lender Defendants' motion to dismiss, and deny the plaintiff's motion to "strike" Bank One's motion for summary judgment.[FN21] It is so ordered.

FN21. The remaining claims are: (a) Count I, the EFTA claim, as against the Bank and Lender Defendants; (b) Count V, the unconscionable contract claim, as against the Lender Defendants and their John Doe Defendant officers; and (c) Count VII, the ICFA claim, as against all defendants. We repeat our earlier observation that, to the extent not raised by the present motions to dismiss, we have refrained from deciding the propriety of naming certain defendants

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

913 F.Supp. 1164
**(Cite as: 913 F.Supp. 1164)**

in specific claims. *See supra* n. 11.

N.D.Ill.,1995.
Cobb v. Monarch Finance Corp.
913 F.Supp. 1164

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 5

EXHIBIT 5

Not Reported in F.Supp.2d, 2006 WL 2691076 (E.D.Wis.)
**(Cite as: 2006 WL 2691076 (E.D.Wis.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
Chris L. WANTY, Star E. Tieme, Karen A. For-
sythe, Rafik Fahim Itseitef, Salam Inseitef,
Plaintiffs,
v.
MESSERLI & KRAMER, P.A., Defendant.

No. 05-CV-0350.
Sept. 19, 2006.

John D. Blythin, Robert K. O'Reilly, Corey Mather,
Ademi & O'Reilly LLP, Cudahy, WI, for Plaintiffs.

Heidi M. Miller, Terry E. Johnson, Peterson John-
son & Murray SC, Milwaukee, WI, for Defendant.

**ORDER**

J.P. STADTMUELLER, District Judge.

**\*1** The plaintiffs allege that defendant Messerli
& Kramer, P.A. ("Messerli") violated the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. §
1692 et seq., by sending debt collection letters that
contain the mechanically reproduced signature of
attorney "William C. Hicks," creating the false im-
pression that attorney Hicks is involved in the col-
lection of the plaintiffs' debts. The plaintiffs have
filed a motion for class certification. The plaintiffs
propose to represent a class consisting of "(a) all
natural persons in the State of Wisconsin (b) who
were sent a collection letter in the form represented
by Exhibit A, (c) seeking to collect a debt for per-
sonal, family or household purposes, (d) on or after
a date March 24, 2004 (one year prior to the filing
of this action), (e) that was not returned by the
postal service." (Pls.' Mot. for Class Certification
1.) Messerli opposes the motion for class certifica-
tion and moves for summary judgment. For the
reasons stated below, the court will grant the mo-
tion for class certification and deny without preju-
dice Messerli's motion for summary judgment.

**I. Class Certification**

The plaintiff has the burden of demonstrating
that certification of the class is appropriate. *Retired
Chicago Police Ass'n v. City of Chicago,* 7 F.3d
584, 596 (7th Cir.1993). The plaintiff must estab-
lish a class action will "advance 'the efficiency and
economy of litigation which is a principal purpose
of the procedure.' " *General Telephone Co. of
Southwest v. Falcon,* 457 U.S. 147, 159 (1982)
(quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S.
538, 553 (1974)).

The court will conduct a two-step analysis to
determine whether class certification is appropriate.
First, the plaintiff must satisfy all four requirements
of Federal Rule of Civil Procedure 23(a), which are
numerosity, commonality, typicality, and adequacy
of representation. *Harriston v. Chicago Tribune
Co.,* 992 F.2d 697, 703 (7th Cir.1993). Second, the
plaintiff must satisfy one of the conditions of Rule
23(b). *Alliance to End Repression v. Rochford,* 565
F.2d 975, 977 (7th Cir.1977).

Messerli opposes the motion for class certifica-
tion for essentially one reason: the plaintiffs have
filed for Chapter 7 bankruptcy, presumably unlike
many of the proposed class members, so the
plaintiffs would not adequately represent the class.
Adequacy of representation pursuant to Rule
23(a)(4) requires the named plaintiff to "fairly and
adequately protect the interests of the class."
Fed.R.Civ.P. 23(a)(4). Adequacy of representation
has three requirements. First, the chosen class rep-
resentative cannot have antagonistic or conflicting
claims with other members of the class. *Rosario v.
Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992).
Second, the named representative must have "a suf-
ficient interest in the outcome to ensure vigorous
advocacy." *Riordan v. Smith Barney,* 113 F.R.D.
60, 64 (N.D.Ill.1986). Third, counsel for the named
plaintiffs must be competent, experienced, quali-
fied, and generally able to conduct the litigation
vigorously. *Kriendler v. Chemical Waste Mgmt.,
Inc.,* 877 F.Supp. 1140, 1159 (N.D.Ill.1995). Be-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2691076 (E.D.Wis.)
**(Cite as: 2006 WL 2691076 (E.D.Wis.))**

cause the plaintiffs filed for bankruptcy, Messerli argues that the plaintiffs' interest conflicts with the interest of the class. Messerli, however, fails to explain where the conflict lies. Messerli merely states that there may be limits on the damages recoverable by a plaintiff who has had his debts discharged, (Def.'s Br. in Opp'n to Pls.'s Mot. for Class Certification 3), but the plaintiffs represent to the court that they have properly exempted their FDCPA claims and retained the right to sue Messerli. *(See* Pls.' Reply Mem. in Supp. of Mot. for Class Certification 5.)* The fact that the plaintiffs filed for bankruptcy, therefore, does not demonstrate that their interests are different from those of the class or that their potential recovery from Messerli is so much less than other potential class members that they do not have as strong of an incentive to litigate this action. *See In re Polis,* 217 F .3d 899, 904 (7th Cir.2000); *Wilborn v. Dun & Bradstreet Corp.,* 180 F.R.D. 347, 355-57 (N.D.Ill.1998) (holding that plaintiff who filed bankruptcy is an adequate class representative for FDCPA class action). Thus, the court finds that the plaintiffs are adequate class representatives.[FN1]

> FN1. Messerli also argues that the plaintiffs may not be adequate representatives because each plaintiff owes a debt to U.S. Bank National Association, presumably unlike other potential class members who may have different creditors. The plaintiffs, however, indicate that all potential class members allegedly owe a debt to U.S. Bank. (Pls.' Reply Mem. in Supp. of Mot. for Class Certification 2.) Therefore, no conflict can exist on this basis.

**\*2** The numerosity, commonality, and typicality requirements of Rule 23(a) are also satisfied. Numerosity requires the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Here, Messerli admits that it sent the form collection letter at issue to more than 100 people with Wisconsin addresses. (Pls.' Reply Mem. in Supp. of Mot. for Class Certification 1 n.

1.) Thus, the proposed class is sufficiently large to satisfy the numerosity requirement of Rule 23(a).

Commonality requires the presence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). The presence of some factual variations among class members' experiences will not defeat class certification. *Id.* at 1017. Plaintiffs need only show there is "at least one question of law or fact common to the class" to satisfy the commonality requirement. *In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991). Here, each of the class members was sent a debt collection letter that contains the mechanically reproduced signature of attorney "William C. Hicks." There is a common question of fact regarding whether attorney Hicks had any involvement in the collection of the plaintiffs' debts, and if he didn't, there is a common question of law regarding whether Messerli violated the FDCPA by including the mechanically reproduced signature of attorney Hicks in the debt collection letters. Accordingly, the plaintiffs share a commonality of facts and legal claims with the rest of the proposed class sufficient to satisfy the commonality requirement under Rule 23(a)(2).

Typicality requires the representative's claims be typical of those of the class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Since "commonality and typicality are closely related, a finding of one often results in a finding of the other." *McKenzie v. City of Chicago,* 175 F.R.D. 280, 286 (N.D.Ill.1997). Here, the claims of the plaintiffs and the proposed class members' arise out of the same course of conduct: specifically, Messerli sending the same allegedly misleading form letter. Additionally, the claims are based on the same legal theory, that the form letter violates

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2691076 (E.D.Wis.)
(Cite as: 2006 WL 2691076 (E.D.Wis.))

15 U.S.C. §§ 1692e, 1692e(3), and 1692e(9). Thus, the court is satisfied the claims of the plaintiffs are typical of the claims of the class within the meaning of Rule 23(a)(3).

The court also finds that the plaintiffs have satisfied the conditions of Rule 23(b)(3). Rule 23(b)(3) allows for certification when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In this case, every member of the class received a nearly identical debt collection letter that contains the mechanically reproduced signature of attorney "William C. Hicks." The common question of law as to whether the letter violates the FDCPA predominates over any questions affecting individual members. For the fair and efficient adjudication of the controversy, the court concludes that a class action is superior to a large number of individual lawsuits interpreting the same facts and legal issue. Accordingly, the court concludes that it is proper to certify the plaintiff's proposed class under Rule 23(b)(3).

II. Summary Judgment

*3 Messerli moved for summary judgment on October 28, 2005, and again on January 26, 2006. Messerli's first motion for summary judgment was filed without an accompanying supporting brief or a statement of proposed findings of fact in violation of Civil Local Rule 7.1(a) and 56.2(a), and the plaintiff filed an unopposed motion to strike the motion for summary judgment on this basis. The court grants the plaintiffs' motion to strike and consequently denies Messerli's first motion for summary judgment.

Messerli's second motion for summary judgment is fully briefed, but because the court wishes to avoid the possibility that the merits are decided before potential class members decide whether to opt out of this action, see Premier Electrical Con-

str. Co. v. Nat'l. Elec. Contractors Assoc., Inc., 814 F.2d 358, 361-363 (7th Cir.1987) (stating that Rule 23 is designed to avoid fail-safe classes in which class members are able to choose to accept class action damages but avoid entirely the risk of an adverse class judgment), the court will deny Messerli's second motion for summary judgment with leave to re-file within 30 days of the close of the class notice period. The plaintiffs may also file a dispositive motion within 30 days of the close of the class notice period. The parties shall confer and submit a proposed amended scheduling order within 30 days from the date of this order.

Accordingly,

IT IS ORDERED that the plaintiffs' motion for class certification be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the following plaintiff class be and hereby is CERTIFIED:

All natural persons in the State of Wisconsin who were sent a collection letter in the form represented by Exhibit A, seeking to collect a debt for personal, family or household purposes, on or after a date March 24, 2004 (one year prior to the filing of this action), that was not returned by the postal service.

IT IS FURTHER ORDERED that the plaintiffs shall be the class representatives and plaintiffs' counsel, Ademi & O'Reilly, LLP, is appointed as counsel for the class under Rule 23(g);

IT IS FURTHER ORDERED that pursuant to Rule 23(c)(2)(B), the plaintiff shall submit a proposed form of notice within 10 days, including the class members' rights to opt out of the class;

IT IS FURTHER ORDERED that Messerli's first motion for summary judgment [docket # 21] be and the same is hereby DENIED;

IT IS FURTHER ORDERED that plaintiffs' motion to strike be and the same is hereby GRAN-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2691076 (E.D.Wis.)
**(Cite as: 2006 WL 2691076 (E.D.Wis.))**

**TED;**

IT IS FURTHER ORDERED that Messerli's second motion for summary judgment [docket # 25] be and the same is hereby **DENIED** with leave to re-file within 30 days of the close of the class notice period;

IT IS FURTHER ORDERED that the parties confer and submit a proposed amended scheduling order within 30 days from the date of this order;

IT IS FURTHER ORDERED that the plaintiffs' motion to stay proceedings pending the court's ruling on the plaintiffs' motion for class certification be and the same is hereby **GRANTED.**

E.D.Wis.,2006.
Wanty v. Messerli & Kramer, P.A.
Not Reported in F.Supp.2d, 2006 WL 2691076 (E.D.Wis.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 6

EXHIBIT 6

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

⚑

United States District Court,
N.D. Illinois.
Eastern Division.
Eddie J. WILBORN, individually and on behalf of
all others similarly situated, Plaintiff,
v.
DUN & BRADSTREET CORPORATION, doing
business as Dun & Bradstreet Receivable Manage-
ment Services, Defendant.

No. 97 C 8990.
Aug. 5, 1998.

Debtor brought suit against debt collector al-
leging that collector's form collection letter violated
the Fair Debt Collection Practices Act (FDCPA)
because it was contradictory and contained false
and misleading threats. On plaintiff's motion for
class certification, the District Court, Gettleman, J.,
held that: (1) plaintiff's filing bankruptcy did not
deprive him of standing to bring suit; (2) fact that
factual circumstances surrounding plaintiff's debt
and the debts of other class members might differ
did not preclude finding that typicality requirement
of class action rule was satisfied; (3) plaintiff had
sufficient interest in the outcome to satisfy ad-
equacy of representation requirement of class ac-
tion rule; (4) necessity of determining whether the
transactions involved in each particular class mem-
ber's case were consumer transactions did not pre-
clude class certification; and (5) class action was
superior to other available methods of adjudication.

Motion granted.

West Headnotes

**[1] Federal Civil Procedure 170A ⬤═━172**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)2 Proceedings

170Ak172 k. Evidence; pleadings and
supplementary material. Most Cited Cases

**Federal Civil Procedure 170A ⬤═━174**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)2 Proceedings
        170Ak174 k. Consideration of merits.
Most Cited Cases
When evaluating a motion for class certifica-
tion, the court accepts the allegations made in sup-
port of certification as true, and does not examine
the merits of the case.

**[2] Federal Civil Procedure 170A ⬤═━161.1**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)1 In General
        170Ak161.1 k. Factors, grounds, ob-
jections, and considerations in general. Most Cited
Cases
The failure to meet any one of the requirements
of class action rule precludes certification of a
class. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⬤═━172**

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)2 Proceedings
        170Ak172 k. Evidence; pleadings and
supplementary material. Most Cited Cases
Plaintiff bears the burden of showing that the
requirements for class certification have been met.
Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⬤═━103.7**

170A Federal Civil Procedure
  170AII Parties

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

170AII(A) In General

170Ak103.7 k. Class actions. Most Cited Cases

Plaintiff seeking class certification must establish that he has standing to bring the suit by showing that he is a member of each class that he purports to represent. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[5] Antitrust and Trade Regulation 29T ⬅290**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29TIII(E)1 In General
                29Tk287 Persons Entitled to Sue or Seek Remedy
                    29Tk290 k. Private entities or individuals. Most Cited Cases
            (Formerly 92Hk36.1 Consumer Protection)

Debtor who filed bankruptcy had standing to bring class action suit against debt collector for violations of the Fair Debt Collection Practices Act (FDCPA), where debtor exempted his FDCPA claims from the bankruptcy estate pursuant to state statute allowing a "wildcard" exemption; because it was exempt from the bankruptcy estate, the cause of action against collector belonged to the debtor, not the bankruptcy trustee. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; S.H.A. 735 ILCS 5/12–1001(b).

**[6] Antitrust and Trade Regulation 29T ⬅214**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk210 Debt Collection
                29Tk214 k. Communications, representations, and notices; debtor's response. Most Cited Cases
            (Formerly 92Hk10 Consumer Protection)

Objective viewpoint of the reasonable, "unsophisticated consumer" is used to determine whether debt collection messages are deceptive or misleading, and therefore violate the Fair Debt Collection Practices Act (FDCPA). Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

**[7] Federal Civil Procedure 170A ⬅182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases

Fact that factual circumstances surrounding plaintiff's debt and the debts of other class members might differ did not preclude finding that typicality requirement of class action rule was satisfied in suit against debt collector alleging that form collection letter violated the Fair Debt Collection Practices Act (FDCPA), where claims asserted by plaintiff on behalf of himself and the class members were based on the nature of the collection letter, not the nature of the underlying debt. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⬅164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of class; typicality. Most Cited Cases

A plaintiff's claim is "typical" within meaning of class action rule if it arises from the event or practice or course of conduct that gives rise to the claims of other class members, and his claims are based on the same legal theory. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⬅182.5**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases

Typicality requirement of class action rule was satisfied in suit against debt collector for violations of the Fair Debt Collection Practices Act (FDCPA), where plaintiff's claim arose from his receipt of an allegedly false and misleading form collection letter, proposed classes consisted of people who also received form collection letter, and plaintiff asserted that the letter violated the FDCPA with respect to him and the members of proposed classes in the same way. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[10]** Federal Civil Procedure 170A ⟺164

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
      170AII(D)1 In General
        170Ak164 k. Representation of class; typicality. Most Cited Cases

Adequacy of representation requirement of class action rule has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[11]** Federal Civil Procedure 170A ⟺182.5

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented

         170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases

Debtor who brought suit alleging that debt collector's form collection letter violated the Fair Debt Collection Practices Act had sufficient interest in the outcome to satisfy adequacy of representation requirement of class action rule, despite fact that debt that was the subject of collection efforts was discharged in bankruptcy; debtor had an economic stake in the outcome of the litigation because he was seeking statutory damages, which could be recovered without regard to actual damages. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[12]** Federal Civil Procedure 170A ⟺164

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
      170AII(D)1 In General
        170Ak164 k. Representation of class; typicality. Most Cited Cases

To satisfy adequacy of representation requirement of class action rule, named plaintiff need only have a marginal familiarity with the facts of his case, and does not need to understand the legal theories upon which his case is based to a greater extent. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[13]** Federal Civil Procedure 170A ⟺182.5

170A Federal Civil Procedure
   170AII Parties
     170AII(D) Class Actions
       170AII(D)3 Particular Classes Represented
         170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases

Fact that some members of proposed class might not be entitled to personally recover damages because their claims were part of a bankruptcy estate did not preclude finding that suit against debt collector for violations of the Fair Debt Collection

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

Practices Act (FDCPA) satisfied class action requirement that common issues of law and fact predominated over individual ones. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A ☜182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases
   Necessity of determining whether the transactions involved in each particular class member's case were consumer transactions did not preclude class certification in suit brought against debt collector under the Fair Debt Collection Practices Act (FDCPA), on ground that suit did not satisfy class action requirement that common issues predominate over individual ones. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**[15] Federal Civil Procedure 170A ☜182.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak182.5 k. Consumers, purchasers, borrowers, and debtors. Most Cited Cases
   Class action was superior to other available methods of adjudication of suit alleging that debt collector's form collection letter violated the Fair Debt Collection Practices Act (FDCPA), even though statutory damages at most might amount to $22 for each class member, while up to $1000 in statutory damages might be awarded in an individual action; class members could recover any actual damages they sustained in addition to statutory damages, and they would avoid the inconvenience of pursuing an individual action. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. §

1692 et seq.; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

**\*349** Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Sheila A. O'Laughlin, Edelman & Combs, Chicago, IL, for plaintiff.

James A. Cherney, Timothy Bunker Hardwicke, Latham & Watkins, Chicago, IL, for defendant.

   *MEMORANDUM OPINION AND ORDER*
GETTLEMAN, District Judge.
   Plaintiff Eddie J. Wilborn has filed a two-count amended class action complaint against defendant Dun & Bradstreet Corporation, doing business as Dun & Bradstreet Receivable Management Services, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Plaintiff has moved for class certification. For the reasons set forth below, plaintiff's motion is granted.

                *FACTS*
   [1] When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true, and does not examine the merits of the case. *See Hardin v. Harshbarger, 814 F.Supp. 703, 706 (N.D.Ill.1993)*. According to the amended complaint, plaintiff is a resident of Illinois. Defendant is a Delaware corporation and a "debt collector" under the FDCPA. Plaintiff obtained insurance for personal, family, or household purposes from Economy Fire & Casualty Company ("Economy"). Shortly after May 8, 1997, plaintiff received a letter from defendant demanding payment of an insurance premium to Economy. Plaintiff claims that the letter is a form collection notice used by defendant. The letter, a copy of which was attached to the amended complaint**\*350** as Exhibit A, states that "this communication is being sent to you as a final attempt to amicably resolve [your] past-due account ... unless your check is received within five days, steps will be taken to enforce payment of this obligation [sic]." Plaintiff asserts no action to enforce payment of the obliga-

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

tion was taken within five days, or at any time prior to October 21, 1997, when plaintiff filed for bankruptcy. Plaintiff asserts that defendant regularly used the form of notice represented by Exhibit A. He also asserts that defendant regularly failed to take action to enforce payment if payment was not received within five days after sending notices in the form of Exhibit A. Therefore, in Count II, plaintiff claims that defendant has violated the FDCPA by sending the form collection letter to consumers because the letter contains false and misleading threats.

The back of the letter contains a notice of the debtor's right to dispute and obtain verification of the debt. Plaintiff asserts that the notice language on the back of the letter is the same language used by defendant on other collection letters. Plaintiff also asserts that Exhibit A, or another letter with identical language on the back, was the first letter he received from defendant concerning the debt to Economy. Defendant has modified the notice language required by the FDCPA by adding the following language at the beginning of the notice:

> IMMEDIATE PAYMENT IS REQUESTED. HOWEVER, IF THE AMOUNT CLAIMED AS OWING ON THE OTHER SIDE OF THIS LETTER ARISES FROM A **PERSONAL, FAMILY, HOUSEHOLD OR AGRICULTURAL** TRANSACTION OR OTHERWISE INVOLVES A **CONSUMER TRANSACTION**, PLEASE NOTE THE FOLLOWING ....

The notice language required by the FDCPA then follows:

IF THIS IS THE FIRST NOTICE YOU HAVE RECEIVED FROM THIS OFFICE IN REGARDS TO THIS DEBT, THEN:

IF YOU DISPUTE THE VALIDITY OF THIS DEBT, OR ANY PORTION THEREOF, NOTIFY THIS OFFICE WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE. IF YOU DO NOT NOTIFY THIS OFFICE WITHIN THIRTY DAYS THAT YOU DISPUTE THE

VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID.

IF YOU REQUIRE VERIFICATION OF THIS DEBT, NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY DAYS FROM RECEIVING THIS NOTICE. THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH VERIFICATION OR JUDGMENT; AND

IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS LETTER IS AN ATTEMPT TO COLLECT THIS DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

In Count I, plaintiff claims that defendant has violated the FDCPA because the request for immediate payment and other language added by defendant is confusing, and overshadows and contradicts the notice language required by the FDCPA.

Plaintiff asserts this class action on behalf of two proposed classes: Class A and Class B.

Class A is defined as:
(a) All natural persons, (b) [w]ith addresses in the State of Illinois, (c) [t]o whom [defendant] sent initial letters, (d) [w]ith a reverse side in the form represented by *Exhibit A,* (e) [o]n or after December 31, 1996, (f) [s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) [w]hich letters were not returned by the Postal Service as undeliverable.

**\*351** Class B is defined as:
(a) All natural persons, (b) [w]ith addresses in the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

State of Illinois, (c) [t]o whom [defendant] sent letters, (d) [i]n the form represented by *Exhibit A,* (e) [o]n or after December 31, 1996, (f) [s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) [w]hich letters were not returned by the Postal Service as undeliverable, and (h) [a]gainst whom legal action was not taken within 30 days after the date of the letter.

The claim in Count I is asserted on behalf of Class A, and the claim in Count II is asserted on behalf of Class B.

### DISCUSSION

[2][3][4] Fed.R.Civ.P. 23, which governs class actions, requires a two-step analysis to determine whether class certification is appropriate. First, plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). Second, plaintiff must satisfy one of the conditions of Rule 23(b). *See Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Plaintiff seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The failure to meet any one of the requirements of Rule 23 precludes certification of a class. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Plaintiff bears the burden of showing that the requirements for class certification have been met. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993). Plaintiff must also establish that he has standing to bring this suit by showing that he is a member of each class that he purports to represent. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

The parties do not dispute that plaintiff has sat-

isfied the numerosity requirement of Rule 23(a). Although it claims that it cannot identify the specific debtors who fall within the each of the classes, defendant states that "its best information is that Class A has approximately 23,000 members and Class B has up to 1,335 members." The parties also do not dispute that this case presents common issues of law and fact. Plaintiff claims that defendant sent him and each of the class members a form collection letter which violates the FDCPA. Thus, the factual basis for each class member's claim is the same. Common legal issues include: (1) whether the form letter contains false and misleading threats, and (2) whether the request for immediate payment and other language added by defendant is confusing, and overshadows and contradicts the notice language required by the FDCPA.

Defendant, however, asserts that plaintiff has failed to satisfy the other requirements for class certification. Defendant argues that the proposed classes should not be certified because: (1) plaintiff's claims are not typical of the class members' claims; (2) plaintiff is not an adequate class representative; (3) the common issues of law or fact do not predominate over the questions affecting only individual members of the class; and (4) a class action is not superior to other available methods for resolving this dispute. Defendant also argues that plaintiff lacks standing to bring this suit.

### I. STANDING

[5] Plaintiff filed bankruptcy on October 21, 1997. Illinois has a "wildcard" exemption which allows a debtor to prevent the distribution of certain personal property, not exceeding $2,000 in value, by claiming it as exempt from the bankruptcy estate. *See* 735 ILCS § 5/12–1001(b). As of November 1997, plaintiff had already claimed as exempt $1,658 worth of property, and had $342 of the $2,000 limit remaining. On November 24, 1997, plaintiff filed an amended schedule and claimed this FDCPA claim and two others as exempt property.[FN1] In the amended schedule, **352** plaintiff stated that the maximum possible recovery under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

the FDCPA is $1,000 per case, and listed the current market value of his claims as "unknown."

> FN1. Plaintiff asserts that one of the other two claims was never filed, and that the other was filed, but was voluntarily dismissed.

Defendant argues that plaintiff lacks standing because he did not properly exempt his FDCPA claims against defendant. According to defendant, plaintiff's description of the current market value of his claim as "unknown" lacked the required specificity. Defendant also argues that plaintiff lacks standing because his bankruptcy proceedings are still pending.FN2

> FN2. Defendant's assertion that plaintiff's bankruptcy proceedings are still pending is based on plaintiff's testimony that his "bankruptcy never finished" and is still open. Plaintiff has neither confirmed nor denied this assertion by defendant.

No objections were filed within thirty days of plaintiff's claim that this cause of action was exempt. The exemption, therefore, became effective and conclusive. *See Taylor v. Freeland & Kronz,* 503 U.S. 638, 642–44, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (holding that, even where a debtor has no colorable basis for claiming an exemption, once the thirty-day period for filing objections provided by Federal Rule Bankruptcy Procedure 4003(b) has expired, the property is considered exempt); *Matter of Kazi,* 985 F.2d 318, 320–22 (7th Cir.1993) (same). Because it is exempt from the bankruptcy estate, this cause of action against defendant belongs to plaintiff, not the bankruptcy trustee. *See Ball v. Nationscredit Fin. Serv. Corp.,* 207 B.R. 869, 872 (N.D.Ill.1997) ("If a cause of action that preexisted the filing of the bankruptcy petition is exempted from the estate or abandoned by the trustee, then it is property of the debtor and the debtor will have standing to pursue the cause of action in his or her own name"). The fact that plaintiff's cause of action is not part of the bankruptcy estate

also means that the issue of whether his bankruptcy proceedings are still pending is irrelevant. Accordingly, the court rejects defendant's argument that plaintiff lacks standing.

## II. TYPICALITY OF PLAINTIFF'S CLAIMS

Defendant argues that plaintiff's claims are not typical of the class members' claims for several reasons. First, defendant argues that plaintiff's claim in Count I is not typical of Class A because the factual circumstances surrounding his debt and the debts of other class members differ. Defendant asserts that plaintiff owed $132 for personal automobile insurance, while the accounts of some other class members involved more "sophisticated" transactions like moving expenses and boat insurance.

[6] Defendant's first argument is without merit. The claims asserted by plaintiff on behalf of himself and the class members are based on the nature of the collection letter, not the nature of the underlying debt. Defendant does not deny that the collection letter at issue was a form letter. In addition, Jack Finley ("Finley"), defendant's National Account Manager, has testified that the form letter at issue was typically sent to debtors who did not respond to previous letters. Plaintiff asserts that language in this form letter was false and misleading. In this circuit, the objective viewpoint of the reasonable, "unsophisticated consumer" is used to determine whether collection messages are deceptive or misleading, and therefore violate the FDCPA. *See Avila v. Rubin,* 84 F.3d 222, 226–27 (7th Cir.1996); *Gammon v. GC Serv. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). Thus, the court need not determine whether an individual who purchases boat insurance is more "sophisticated" than an individual who purchases car insurance. *See Blum v. Fisher & Fisher,* 1997 WL 433630, at *1 (N.D.Ill. July 29, 1997) ("The standard, applicable as a matter of law to all debtors, is that of an unsophisticated consumer. The courts do not engage, after a liability finding, in an individual assessment of the level of class member sophistication").

In his concurrence in *Gammon v. GC Serv. Ltd.*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

*Partnership,* 27 F.3d 1254, 1259 (7th Cir.1994), Judge Easterbrook made the following observations about the unsophisticated consumer standard:

**\*353** Although the majority describes the unsophisticated person "whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading" as "hypothetical," I understand this reference point to be hypothetical in the same sense as the reasonable person of tort law is hypothetical. Courts seek a benchmark divorced from any one person, but reflecting the behavior of classes of persons acting reasonably. And this reasonable person must differ according to the nature of the addressees. A warning about a drug's side effects, perfectly adequate for the reasonable physician, may be woefully deficient for the reasonable consumer. Thus it is potentially important that the recipients of GC Services' letter were American Express cardholders, a group that is less apt to be misled than, say, an association of high school dropouts.

(internal citation omitted).

[7] In *Vaughn v. CSC Credit Serv., Inc.,* 1995 WL 51402, at \*4–5 (N.D.Ill. Feb. 3, 1995), and *Holloway v. Pekay,* 1995 WL 736925, at \*2 (N.D.Ill. Dec. 11, 1995), Judge Coar, relying on Judge Easterbrook's concurrence, limited the classes in two FDCPA suits based on the type of debt involved. These cases offer some support for defendant's argument that plaintiff's claims are not typical of the class members' claims because his underlying debt is not the same type of debt as the underlying debt of every class member. The court, however, respectfully disagrees with the analysis in *Vaughn* and *Holloway.* The unsophisticated consumer standard applies to all debtors as a matter of law. *See Blum,* 1997 WL 433630 at \*1. The standard is meant to protect a "hypothetical consumer" who is "uninformed, naive or trusting." *Gammon,* 27 F.3d at 1257. It is, therefore, inappropriate to mandate a narrowed class definition based on speculative assumptions about the sophistication of certain types of individuals.

Judge Easterbrook's assumption that American Express cardholders are more sophisticated than high school dropouts may be less speculative than other assumptions, but it leads to the sort of improper assertions made in this case. In an attempt to prevent plaintiff from representing the proposed class of debtors in this case, or at least to limit the scope of that class, defendant has argued that individuals who purchase boat insurance are more sophisticated than those who purchase car insurance. This ludicrous argument is unsupported and stereotypical, at best. Defendant appears to be suggesting that individuals who purchase more expensive items are more sophisticated. But some wealthy individuals have obtained their fortune by inheritance or other means unrelated to their own ingenuity or sophistication. Moreover, the purchase of a less expensive item may be a demonstration of thrift, which may indicate a higher level of sophistication. Ultimately, determining what the reasonable, but unsophisticated consumer would buy or think or do is a task for the jury, not the court on a motion for class certification. Accordingly, the court rejects defendant's first argument.

Second, defendant argues that plaintiff's claim in Count II is not typical of Class B because plaintiff's account, unlike other class members' accounts, was "rolled over" into another division for further attempts at collection after he failed to respond to three letters from defendant. Thus, defendant claims that "further steps" to enforce the payment of plaintiff's obligation were in fact taken, as defendant stated they would be in the collection letter. Plaintiff's claim, however, is based on the premise that the statement in the collection letter that "steps would be taken" was a threat of legal action or could be reasonably interpreted as such. *See United States v. Nat'l Fin. Serv., Inc.,* 98 F.3d 131, 135 (4th Cir.1996) ("collection notices violate § 1692e(5) if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action").

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

To accept defendant's second argument would be to accept defendant's interpretation of the language in its collection letter, as opposed to plaintiff's. The court cannot accept defendant's interpretation at this time because it must accept the allegations made in support of certification as true and refrain from examining the merits of the case. *See* **\*354** *Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993).* Accordingly, the court rejects defendant's second argument.

Third, defendant asserts that the decision whether or not to pursue legal action is an individual, fact-specific determination, such that plaintiff cannot assert on behalf of Class B that defendant threatened, but did not take, legal action. Whether or not to take legal action against a particular debtor, however, is not necessarily an individual, fact-specific determination. On the contrary, a company could have a policy of not taking legal action against debtors who owe less than a certain amount. FN3 In the instant case, plaintiff claims that defendant has such a policy, but sends its collection letters threatening legal action anyway. Defendant has presented some evidence that it does not have such a policy, and that it determines whether to recommend legal action on a case-by-case basis after considering various factors, including the amount of the debt. Plaintiff, however, has presented evidence that defendant, as a matter of policy, does not recommend legal action in cases where the debt is less than a certain amount. FN4 Weighing this conflicting evidence for its truth at this stage of the proceedings would be inappropriate. *See In re Corrugated Container Antitrust Litig.,* 80 F.R.D. 244, 250 (S.D.Tex.1978)* ("Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weigh this evidence for its truth but merely to ascertain whether it is of a type suitable for classwide use"). Accordingly, the court rejects defendant's third argument.

FN3. Finley has testified in his affidavit

that the amounts of the debts reflected in the accounts of the members of Class B range from $5.06 to $2,443.

FN4. For example, Tina Rudins testified that defendant would recommend that a lawsuit be filed with respect to a consumer or commercial debt "[i]f we have been in contact with the debtor, *the balance is over $1,000,* we have knowledge of where the debtor is located and would be able to get service on him or their company, and if we have knowledge of any assets" (emphasis added). Finley testified that, in order for defendant to recommend a lawsuit, a consumer debt would have to be "[a] very minimum of probably $2,000 and more likely higher than that. Probably closer to $5,000."

Nevertheless, the class should be limited based on the amount of the underlying debt. The evidence shows that the amounts of the debts reflected in the accounts of the members of Class B range from $5.06 to $2,443. There is also evidence that suggests that defendant would not recommend suit unless the amount of a consumer debt was almost $5,000. Because plaintiff is asserting that defendant, as a matter of policy, does not recommend legal action in cases where the debt is less than a certain amount, the class will be limited to those individuals whose accounts reflected debts of $5,000 or less.

[8][9] A plaintiff's claim is typical if it arises from the event or practice or course of conduct that gives rise to the claims of other class members, and his claims are based on the same legal theory. *See De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983).* Here plaintiff's claim arises from his receipt of an allegedly false and misleading form collection letter. The proposed classes consist of people who also received this form collection letter. Plaintiff claims that, in sending the letter, defendant violated the FDCPA with respect to him and the members of Class A and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

Class B in the same way. Therefore, the court finds that plaintiff has satisfied the typicality requirement of Rule 23.

## III.  PLAINTIFF'S  ADEQUACY  AS  THE CLASS REPRESENTATIVE

[10] Under Rule 23, the class representative must "fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations and internal quotations omitted). Defendant argues that **\*355** plaintiff cannot adequately represent the class for several reasons. The court, however, disagrees.

[11] First, defendant argues that plaintiff cannot adequately represent the class because he does not have an economic stake in the outcome of this litigation since the debt that was the subject of defendant's collection efforts has been discharged in bankruptcy.[FN5] But plaintiff's claims are not based on the debt which he allegedly owed; they are based on his receipt of an allegedly illegal collection letter from defendant. Plaintiff has an economic stake in the outcome of this litigation because he is seeking statutory damages, which may be recovered without regard to actual damages. *See Keele v. Wexler,* 149 F.3d 589, 593–94 (7th Cir.1998) (holding that, so long as the named plaintiff and the class members' injuries arose out of the same violative conduct, the named plaintiff could properly represent proposed classes, whether or not she suffered any actual damages, because statutory damages are available under the FDCPA without proof of actual damages).

FN5. It would be more appropriate for defendant to argue that plaintiff's debt *may*

have been discharged since the status of plaintiff's bankruptcy proceedings is not known or, at least, has not been disclosed to the court.

Second, defendant argues that plaintiff cannot adequately represent the class because he is not sufficiently familiar with his claims and has a "fundamental" misunderstanding of the role of a debt collector. Defendant bases this argument on plaintiff's testimony that defendant was not supposed to demand payment within five days because "[i]t takes three or four days for the letter to get to you," and plaintiff's testimony that defendant did not have a right to take legal action against him because he did not owe defendant any money. Plaintiff, however, has testified that a collection agent is "[w]hen you owe a person and that you don't pay them, they turn it over to a collection agency." He has also testified that he did not contact defendant because he did not feel he owed Economy any money. Plaintiff has thus demonstrated that he understands the role of a collection agency and the relationship between defendant and Economy.

[12] Plaintiff has also testified that defendant threatened to bring a lawsuit against him in the collection letter. This alleged threat is the basis for plaintiff's claim in Count II. With respect to Count I, plaintiff's testimony demonstrates that he was, and perhaps still is, confused about the significance of defendant's simultaneous demand for payment within five days and statement that plaintiff could dispute the debt and request verification within thirty days. This confusion, however, is the whole point: plaintiff claims in Count I that the notice language used by defendant was confusing and overshadowed the notice language required by the FDCPA. Plaintiff need only have a marginal familiarity with the facts of his case, and does not need to understand the legal theories upon which his case is based to a greater extent. *See Kamen v. Kemper Fin. Serv., Inc.,* 908 F.2d 1338, 1349 (7th Cir.1990) (finding that a securities class action in which the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

named representative knew little about either the case or the mutual fund involved, and had given counsel free reign merely fit the norm; it did not demonstrate the named plaintiff's inadequacy as a representative), *rev'd on other grounds,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 896 (7th Cir.1981) (recognizing that class certification was not defeated in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), even though "the named plaintiff [a Polish immigrant] did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants" and relied almost entirely on the explanations of her son-in-law).

Third, defendant argues that plaintiff cannot adequately represent the class because his perception that defendant threatened legal action against him is based on an unreasonable interpretation of the notice language used by defendant. As stated above, a collection notice violates the FDCPA if a debtor **\*356** would reasonably believe that the notice threatens legal action and the debt collector does not intend to take legal action. *See United States v. Nat'l Fin. Serv., Inc.,* 98 F.3d 131, 135 (4th Cir.1996). Defendant's argument that plaintiff's interpretation of its collection letter was unreasonable, therefore, goes to the merits, and it would be inappropriate for the court to address it at this time. In any event, it is not plaintiff's perspective, but the objective perspective of the reasonable unsophisticated consumer, that is relevant to defendant's liability. *See Avila v. Rubin,* 84 F.3d 222, 226–27 (7th Cir.1996); *Gammon v. GC Serv. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994); *Blum v. Fisher & Fisher,* 1997 WL 433630, at \*1 (N.D.Ill. July 29, 1997).

Finally, defendant argues that plaintiff cannot adequately represent the class because he testified at his deposition that he read and understood the entire collection notice when he first received it from defendant. Defendant asserts that plaintiff, by testifying that he understood the notice language, expressly disavowed the theory of liability on which the claim in Count I is based, namely that the notice language on the back of defendant's collection letter was confusing and overshadowed the notice language required by the FDCPA. Although plaintiff has testified that he understood the letter, the cited testimony does not reveal that his understanding was, in fact, correct; it merely establishes that plaintiff, in his own estimation, believes that he understood the letter. In fact, as stated above, plaintiff's testimony demonstrates some confusion on his part about the notice language. In any event, as the court has just stated, whether the language used by defendant was misleading will be judged from the objective viewpoint of the hypothetical unsophisticated consumer. Accordingly, the fact that plaintiff may have understood the notice language used by defendant is irrelevant to defendant's liability and plaintiff's ability to adequately represent the class. The court, therefore, finds that plaintiff has established that he is an adequate class representative.

## IV. PREDOMINANCE OF COMMON ISSUES OF LAW OR FACT

[13] Under Rule 23(b)(3), the questions of law or fact common to the class members must "predominate over any questions affecting only individual members ...." Defendant asserts that the individual issues predominate over the common issues of law and fact in this case for several reasons. First, defendant asserts that some class members may have filed bankruptcy and failed to properly exempt their claims against defendant such that they would lack standing to sue. Defendant argues that because the court will have to conduct an inquiry as to each class member's standing, individual issues predominate.

Although some class members may not be entitled to personally recover damages because their claims have become part of a bankruptcy estate, the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

common issues of law and fact regarding defendant's liability still predominate. If damages are awarded, the bankruptcy status of each class member will have to be determined. This determination regarding damages, however, need not require a highly fact-intensive inquiry, as defendant suggests. Many if not most class members will not have filed bankruptcy. As for those class members who have, determining whether they have exempted their claims against defendant should be a relatively straightforward matter. The bankruptcy issue, therefore, does not preclude certification. *See Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 675 (N.D.Ill.1989) (certifying class even though each class member would have to show that the defendant's RICO violation caused injury to his or her property); *Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 151 (N.D.Ill.1982) (finding in a securities fraud case that, "[i]f necessary, the Court may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact").

The FDCPA is meant to protect individuals who are the subject of improper collection efforts, and such individuals may be more likely to file for bankruptcy than individuals who have not been the subject of collection efforts. If the mere assertion that some **\*357** class members may have filed bankruptcy and failed to properly exempt their claims was enough to defeat class certification, it is doubtful that any class involving the sort of individuals that the FDCPA was meant to protect could be certified. Accordingly, the court rejects defendant's first argument.

[14] Second, defendant argues that individual issues predominate because only non-business debts are subject to the requirements of the FDCPA, and it is not clear whether each class member's debt was business-related. Plaintiff has limited the proposed classes to only those individuals who were sent letters "[s]eeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business

debts." Defendant, however, argues that an "in-depth" inquiry as to the nature of each class member's debt will be required because—contrary to plaintiff's assertions—it cannot determine by looking at its own records which debts, if any, are business-related.

The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions. If that need alone precluded certification, there would be no class actions under the FDCPA. The court acknowledges that defendant has cited two cases in which the court found that the need to determine whether the transactions at issue were consumer transactions precluded class certification. *See Parker v. George Thompson Ford, Inc.,* 83 F.R.D. 378, 381 (N.D.Ga.1979); *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602, 609 (N.D.Ill.1973). Yet, other courts, including the Seventh Circuit, have reached contrary conclusions. *See Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1165 n. 4 (7th Cir.1974) (observing that the possibility that some transactions were commercial rather than personal would probably not prevent certification in a Truth in Lending Act class action because commercial transactions are "frequently ... readily identified by the listing of the name of the business as the purchaser"); *Beasley v. Blatt,* 1994 WL 362185, at *5 (N.D.Ill. July 11, 1994) (finding that a common issue predominated over individual issues because determining whether the class members entered into their automobile leases for business or personal reasons would be "easy"); *Bantolina v. Aloha Motors,* 419 F.Supp. 1116, 1122 (D.Haw.1976) ("while there may be some difficulties in determining whether some class members are barred from claiming relief under the Truth in Lending Act because of the commercial nature of the transaction ... this Court does not believe that such a potential complexity is overly serious or overshadows the advantages the class-action device provides in this case").

In this case, the process of determining whether

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

the debts at issue are consumer debts should be relatively straightforward. Although defendant claims that it cannot determine the nature of the debts from its own records, the evidence suggests that the necessary information can be obtained from defendant's customers. Moreover, the court is reluctant to deny certification on the grounds that the nature of the debts cannot be determined when the testimony of several of defendant's agents demonstrates that defendant itself assumes certain debts are consumer debts when the debtor's name is an individual's name. The court, therefore, rejects defendant's second argument.

Third, defendant asserts that individual issues predominate because the court will have to determine what "steps," if any, were taken with respect to each class member after he or she received the collection letter. Defendant argues that it cannot be liable for threatening to take "steps" if steps, such as sending additional letters or calling the debtor on the telephone, were actually taken. This argument, however, is based on defendant's assertion that its threat to take "steps ... to enforce payment" refers to any additional collection efforts, as opposed to legal action, as plaintiff claims. As stated above, the court must accept the allegations made in support of certification as true and refrain from examining the merits of the case. *See Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993). Therefore, it is inappropriate, at this time, to either accept defendant's interpretation of the notice language or address whether the interpretation offered by plaintiff is reasonable. Accordingly, the **\*358** court rejects defendant's third argument, and finds that the issues of law or fact common to the class members predominate over any individual questions.

## V. SUPERIORITY OF CLASS ACTION AS THE METHOD OF ADJUDICATION

[15] Rule 23(b)(3) also requires a finding that a class action is superior to other available methods of adjudication. Defendant argues that a class action is not a superior method in this case because

individual issues predominate over the common issues. The court has already found that individual issues do not predominate over the common issues in this case and, therefore, rejects this argument.

Defendant also argues that a class action is not superior because it would result in a de minimis award for each class member. Under the FDCPA, the statutory damages awarded to a class may not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. *See* 15 U.S.C. § 1692k(a). According to defendant's estimation, Class A has approximately 23,000 members. If Class A were to recover the maximum amount, each class member would each stand to recover approximately $22 ($500,000 divided by 23,000) in statutory damages.[FN6] Because up to $1000 in statutory damages may be awarded in an individual action, defendant asserts that a class action in this case is actually disadvantageous to the class members.

> FN6. Although defendant does not specifically address Class B in its brief, the court notes that a maximum statutory recovery of $500,000 divided by the roughly 1,335 members of Class B yields a recovery of approximately $375 each in statutory damages.

In making this argument, defendant ignores the fact that class members may recover any actual damages which they have sustained in addition to their share of the statutory damages. Defendant also does not address the inconvenience of pursuing an individual action or an individual action's potential lack of deterrence. *See Sarafin v. Sears, Roebuck and Co., Inc.*, 73 F.R.D. 585, 588 (N.D.Ill.1977) (recognizing that the threat of a class action has a "potent deterrent effect" on creditors, and that "[e]liminating that deterrent for all large classes would emasculate the enforcement of the [Truth in Lending] Act"). In any event, defendant's alleged concern that individual class members may be able to recover more in individual actions is adequately addressed by use of the Rule 23(b)(3) opt-out pro-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

180 F.R.D. 347
**(Cite as: 180 F.R.D. 347)**

cedure. *See Avila v. Van Ru Credit Corp.,* 1995 WL 22866, at *6 (N.D.Ill. Jan. 18, 1995) (finding that possibility that class members might be able to recover more damages by pursuing individual actions did not preclude certification because "the ability of individual plaintiffs to bring individual suits for more damages is preserved by ample notice and use of the Rule 23(b)(3) opt-out procedure"); *Sarafin,* 73 F.R.D. at 588–89 (certifying the class, even though each member stood to recover only a fraction of the amount he might recover as an individual plaintiff, because each class member would receive notice of his right to pursue an individual action against the defendant).

The common issues of law and fact in this case will be more efficiently resolved in a class action. A class action will also allow the individual class members to avoid the costs and hassles of bringing an individual action against defendant. Finally, a successful class action will have a stronger deterrent effect on defendant than would the handful of individual actions that might otherwise be filed. Accordingly, the court finds that a class action is superior to other available methods of adjudication of this controversy.

### VI. STATUTE OF LIMITATIONS

The proposed classes are made up of individuals who were sent letters "[o]n or after December 31, 1996 ...." Defendant asserts that, because plaintiff filed his original complaint on January 5, 1998, the claims of class members who received letters between December 31, 1996, and January 5, 1997, are expired under the one-year statute of limitations. Plaintiff has not responded to this argument. The court's docket, however, reflects that plaintiff filed his original complaint on December 31, 1997, not January 5, 1998. Indeed, the case number, 97 C 8990, **\*359** establishes that the case was filed and docketed in 1997. Accordingly, the court finds that none of the claims of the class members are barred by the statute of limitations.

### *CONCLUSION*

Because he has met the requirements of Rule

23, plaintiff's motion for class certification is granted. Class A is certified and defined as:

> (a) All natural persons, (b) with addresses in the State of Illinois, (c) to whom Dun & Bradstreet sent initial letters, (d) with a reverse side in the form represented by *Exhibit A,* (e) on or after December 31, 1996, (f) seeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) in an amount of $5,000 or less, (h) which letters were not returned by the Postal Service as undeliverable.

Class B is certified and defined as:
> (a) All natural persons, (b) with addresses in the State of Illinois, (c) to whom Dun & Bradstreet sent letters, (d) in the form represented by *Exhibit A,* (e) on or after December 31, 1996, (f) seeking to collect debts which, from the records of defendant or the creditor or the nature of the creditor or debt, are non-business debts, (g) in an amount of $5,000 or less, (h) which letters were not returned by the Postal Service as undeliverable, and (i) against whom legal action was not taken within 30 days after the date of the letter.

N.D.Ill.,1998.
Wilborn v. Dun & Bradstreet Corp.
180 F.R.D. 347

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 7

EXHIBIT 7

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Sherry BIGALKE, formerly known as Sherry L.
Anderson and Diane M. Cresson, Plaintiffs,
v.
CREDITRUST CORPORATION Defendant.

No. 99 C 2303.
Sept. 14, 2001.

REPORT AND RECOMMENDATION

BROWN, Magistrate J.

**\*1** Plaintiffs Sherry Bigalke and Diane Cresson
allege in their Amended Complaint [Dkt # 44] that
defendant Creditrust Corporation ("Creditrust") is a
debt collection firm that has issued a form debt col-
lection letter to the plaintiffs and other Illinois res-
idents that is misleading in violation of the Fair
Debt Collection Practices Act ("FDCPA"), 15
U.S.C. § 1692 et seq., and the Credit Repair Organ-
izations Act ("CROA"), 15 U.S.C. § 1679 et seq.
The District Judge has referred the plaintiffs' Mo-
tion for Class Certification [Dkt 45, 61] for report
and recommendation by the Magistrate Judge. [Dkt
# 50A.] FN1 For the following reasons, this Court
respectfully recommends that the plaintiffs' motion
be GRANTED and that two classes be certified pur-
suant to Fed.R.Civ.P. 23(b)(3) as defined below.

> FN1. Creditrust filed a motion to dismiss
> under Fed.R.Civ.P. 12(b)(6) as to Count II
> of the Amended Complaint, which alleges
> violation of the CROA. [Dkt # 49.] On Au-
> gust 8, 2001 the District Judge issued a
> Memorandum Opinion and Order denying
> Creditrust's motion. [Dkt # 88.]

PLAINTIFFS' COMPLAINT AND CLASS CER-
TIFICATION MOTION

The plaintiffs' Amended Complaint alleges that
Creditrust purchases delinquent debts at a discount

from various financial institutions, mostly credit
card issuers, then attempts to collect on the debts.
(Am.Compl.¶¶ 6, 7.) As of December 31, 1998,
Creditrust owned over 1.3 million such debts, with
a charged-off value of over $2.5 billion.
(Am.Compl.¶ 7.) Approximately 3.1% of
Creditrust's portfolio ($77.5 million [as of Decem-
ber 31, 1998] ) consists of debts owed by Illinois
residents. (Am.Compl.¶ 9.) Assuming the average
debt is $1,000, Creditrust [as of December 31,
1998] acquired debts from approximately 77,500
individuals in Illinois who are potential members of
the class in this lawsuit. (Am.Compl.¶¶ 25, 35.)

Plaintiffs Sherry Bigalke ("Bigalke") and Di-
ane M. Cresson ("Cresson") (collectively
"Plaintiffs") both Illinois residents, allege that each
of them received by mail in December 1998 an
identical form letter from Creditrust. (Am.Compl.¶¶
3, 4, 11, 12.) The form letters advised that
Creditrust had purchased a debt owed by the re-
spective Plaintiffs to a creditor, and sought payment
of the debt. (Am. Compl., Exs. A and B.) The form
letters state, in relevant part:

> We are NOT a collection agency. We OWN this
> account, therefore we can completely remove the
> entire outstanding balance from your credit report
> and consider this account paid.
>
> Creditrust is prepared to report your account to
> the credit bureau as satisfied in full, once you
> complete any of the payment options below.

(Am. Compl., Exs. A and B.) Plaintiffs allege
that these representations "are misleading, in that
they suggest to an unsophisticated consumer that
Creditrust can completely remove a report of a bad
debt from his or her credit report," which allegedly
is not true. (Am .Compl. ¶¶ 19, 20.) Plaintiffs also
allege that the form letter's promise to report a debt
as "satisfied in full" is "vague and obfuscatory" and
is not the accepted terminology in the credit in-
dustry, which makes the form letter further mis-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)

**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

leading. (Am.Compl.¶ 21.) Plaintiffs allege these representations constitute violations of § 1692e(10) of the FDCPA and §§ 1679b(a)(3) and (4) of the CROA.[FN2]

> FN2. FDCPA § 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt...." 15 U.S.C. § 1692e(10). CROA § 1679b(a)(3) prohibits a person from making or using "any untrue or misleading representation of the services of [a] credit repair organization." 15 U.S.C. § 1679b(a)(3). CROA § 1679b(a)(4) prohibits a person from engaging directly or indirectly in any act that causes or attempts to commit "a fraud or deception on any person in connection with the offer or sale of the services of [a] credit repair organization." 15 U.S.C. § 1679b(a)(4).

**\*2** Plaintiffs allege that they bring their claims on behalf of a class that includes all persons with certain characteristics, *i.e.,:* 1) who were mailed letters similar to Amended Complaint Exhibits A and B; 2) on or after July 31, 1998 (Count I-FDCPA claim) or on or after April 8, 1998 (Count II-CROA claim); 3) to an Illinois address; 4) where the letters were not returned by the Postal Service; and 5) which letters, as to the FDCPA claim, Count I, were in connection with an attempt to collect a debt which can be determined to be a consumer debt by Creditrust's records, the records of the creditor or the nature of the creditor or of the debt. (Am.Compl.¶¶ 24, 34.) Plaintiffs seek certification for two classes: one pertaining to the FDCPA claim, Count I, comprising all five of the above class characteristics, with July 31, 1998 as the relevant date; and one pertaining to the CROA claim, Count II, comprising the first four of those characteristics, with April 8, 1998 as the relevant date. (Pls.' Mot. for Class Certification at 1-2, hereinafter "Pls.' Mot.")

Under Fed.R.Civ.P. 23(a), Plaintiffs may bring a class action against Creditrust only if: 1) the class of potential plaintiffs is so numerous that joinder of all members is impracticable; 2) the claim involves questions of law or fact common to the class; 3) the claims of Plaintiffs are typical of the claims of the class; and 4) Plaintiffs will fairly and adequately protect the interests of the class. In addition, Fed.R.Civ.P. 23(b)(3), the specific provision under which Plaintiffs seek class certification, requires that the Court find that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## DISCUSSION

Creditrust challenges whether Plaintiffs have met two of these requirements. First, Creditrust contends that Plaintiffs Bigalke and Cresson, as well as Plaintiffs' counsel, Edelman, Combs & Latturner, do not qualify to represent the interests of the class. (Def.'s Mem. of Law in Opp'n to Pls.' 2nd Mot. for Class Certification at 1, 3, 10 n. 3 [Dkt # 86], cited herein as "Def.'s Mem.") Second, Creditrust contends that questions common to the class do not predominate over questions affecting only individual members of the class. (Def.'s Mem. at 2, 11.)

Notwithstanding Creditrust's decision to challenge only two of the six certification requirements of Rule 23, the court must determine whether all six prerequisites are demonstrated. The Amended Complaint contains allegations regarding each requirement. However, unlike the situation on a motion to dismiss under Rule 12(b)(6), the Court is not bound to accept such allegations as true for purposes of a motion for class certification. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir.2001). On the contrary, the Seventh Circuit in *Szabo* emphasized that the trial court must make "whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. Unlike the situation of a Rule 12(b)(6) motion, where the allegations accep-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

ted as true at the motion stage will be tested later by summary judgment motion or trial,

**\*3** [b]y contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional).

*Id.*

Accordingly, before addressing the two requirements for certification that Creditrust challenges, the Court considers whether the other four requirements-numerosity, commonality, typicality, and superiority-are satisfied.

*1. Numerosity*

Plaintiffs' Amended Complaint alleges a potential class of more than 77,500 persons, assuming that the individual credit card debts of the persons to whom Creditrust sent the form letter averaged $1,000. (Am.Compl.¶ 25.) Plaintiffs have submitted discovery requests seeking to determine the size of the class. (Pls.' Mot., Ex. E.) In response to Plaintiffs' requests to admit, Creditrust admits that it "regularly used" the subject form letter during the period in question. (Pls.' Mot., Ex. D at Req. and Answer 15.) Creditrust admits that it purchases debts in substantial blocks from credit card issuers. (Pls.' Mot., Ex. D at Req. and Answer 5.) Creditrust also admits that as of December 31, 1998, it held over 1.3 million payment obligations ("receivables") worth a charged-off amount of over $2.5 billion, and that 3.1% of this total consisted of debts owed by Illinois residents, although Creditrust denies that the total charged-off amount of debts owed by Illinois residents was over $77.5 million. (Pls.' Mot., Ex. D at Req. and Answer 6, 10, 15.)

Plaintiffs' discovery includes a request asking Creditrust to admit that more than 20 persons were sent letters similar to the ones sent to Plaintiffs, on or after July 31, 1998, to Illinois addresses, and that the letters were not returned by the Postal Service. (Pls.' Mot., Ex. D at Req. and Answer 23.) Creditrust answered this by stating, "After reasonable inquiry, the information known or readily obtainable to Creditrust is insufficient to enable Creditrust to admit or deny this request." [FN3] (Pls.' Mot., Ex. D at Req. and Answer 23.) Creditrust provided identical answers to similar requests to admit, which asked whether Creditrust had sent 40, 100, 300 or 500 letters similar to Exhibit A to Illinois addresses on or after July 31, 1998, which were not returned by the Postal Service. (Pls.' Mot., Ex. D at Req. and Answer 25, 27, 29, 31.) The fact that Creditrust cannot admit or deny a request asking whether it sent 500 letters similar to Exhibit A suggests that the numerosity requirement is met.

FN3. Creditrust denied a similar request to admit that included the additional admission that the letters were sent in connection with attempts to collect consumer debts. (Pls.' Mot., Ex. D at Req. and Answer 22.)

In a similar claim under the FDCPA, the court was able to conclude that the numerosity requirement was satisfied based on the size of the defendant debt collection firm and the frequency with which it issued collection letters. *Sledge v. Sands,* 182 F.R.D. 255, 258 (N.D.Ill.1998). In *Sledge,* the court noted that the plaintiff issued discovery requests seeking to determine the number of persons to whom defendant sent form collection letters. Although the defendant apparently had yet to respond to the discovery requests, the court noted that the defendant, in objecting to the class certification motion, did not argue that joinder of claimants was practicable.

**\*4** Courts frequently certify classes in the hundreds or thousands; and, depending on factors such as the (small) size of potential individual claims and the lack of financial resources or ability of prospective class members to bring individual claims, courts have certified classes numbering 40 or even fewer. *Newberg on Class Actions,* §§ 3.05 at 3-23, 3-25 (3d ed.1992). Plaintiffs need not allege the ex-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

act number of class members. *Id.* at 3-19. Creditrust's admissions, together with its failure to contest the numerosity requirement, are sufficient for the Court to determine that the class of Illinois residents who received the form letter is so numerous that joinder of their individual claims would be impracticable.

*2. Commonality*

Rule 23(a) requires that there be questions of law or fact common to the class. That requirement is satisfied by a common nucleus of operative fact that pertains to all prospective class members. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998). It is not necessary to find that all factual or legal questions raised in the litigation are common to the class. It is sufficient if the class members share at least one common issue. *McDonald v. Washington Mut. Bk., FA,* No. 99 C 6884, 2000 WL 875416, at *2 (N.D.Ill. June 26, 2000) (Lindberg, J.). A debt collector's standardized conduct of mailing form letters to members of the proposed class is frequently determined to be a common nucleus of operative fact sufficient to satisfy the commonality requirement of Rule 23(a). *Keele,* 149 F.3d at 594, citing cases.

As noted previously, Creditrust admits that it had a standard practice during the relevant time period of mailing form letters like those received by Plaintiffs to persons in Illinois whose credit card debts Creditrust had acquired. Accordingly, the Court finds that Plaintiffs have met the Rule 23(a) requirement that all prospective class members share at least one common factual and legal issue.

*3. Typicality*

Whether Plaintiffs' claims are typical of those of the other members of the prospective class is closely related to the commonality issue. *Keele,* 149 F.3d at 595. Plaintiffs' claims are typical of the class claims if they arise out of "the same event or practice or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." *Id.,* quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th

Cir.1983).

Here, as in *Keele,* the claims of all class members arise out of Creditrust's admitted practice or course of conduct of sending the same standard form letter to other class members that was sent to Plaintiffs. Similarly, Plaintiffs' claims that sending this form letter violated the FDCPA and CROA are typical of the claims to be raised by all other class members. Hence, like the court in *Keele,* this Court is "confident that [Plaintiffs have] met Rule 23's typicality requirement." *Id.*

*4. Superiority*

**\*5** Before addressing Creditrust's two objections, the Court will discuss the last-listed factor in the required analysis: whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Rule lists the following matters as pertinent to the Court's finding on this issue:

> (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

> *Id.*

It is evident from the language of the FDCPA and CROA statutes that Congress regarded claims arising from those statutes to be likely subjects for class actions. Both statutes contain express provisions relating to calculation of damages in a class action proceeding. FDCPA, 15 U.S.C. §§ 1692k(a)(2)(B) & (b)(2); CROA, 15 U.S.C. § 1679g(a)(2)(B) & (b)(4). The members of the proposed class in this case have small individual claims that are not economically feasible to litigate unless adjudicated in a class action. *See Deposit*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

*Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980). Thus, courts in this District have recognized that a class action is often the superior way of adjudicating claims under the two statutes. *See, e.g., Nance v. Lawrence Friedman P.C.,* No. 98 C 6720, 1999 WL 966444, at *1 (N.D.Ill. Oct. 19, 1999)* (Kennelly, J.) (citing cases). Creditrust does not suggest that this class action might interfere with other litigation already commenced by members of the class. The class action proposed by the Plaintiffs meets the superiority requirement of Rule 23(b)(3).

### DEFENDANT'S OBJECTIONS

Creditrust's argument against class certification focuses on two objections: Whether questions of law or fact affecting only individual members of the class predominate over questions common to the class; and the ability of Plaintiffs and Plaintiffs' counsel to protect the interests of the class fairly and adequately.

### 1. Predominance

As stated above, Plaintiffs' Amended Complaint alleges that Creditrust's form letter is misleading in that it falsely suggests to an unsophisticated consumer that Creditrust can completely remove a bad debt from his or her credit rating. (Am.Compl.¶¶ 18-20.) The Amended Complaint further alleges that the letter's promise to report a debt as "satisfied in full" is vague and obfuscatory. (Am.Compl.¶ 21.) "Where the rights of many consumers are violated by the same or similar instrument, predominance is readily satisfied ." *Wells v. McDonough,* No. 97 C 3288, 1998 WL 160876, at *6 (N.D.Ill. March 31, 1998)* (Marovich, J.).

Virtually ignoring the actual wording of the letter and the allegations of the Amended Complaint, Creditrust seizes upon one sentence in Plaintiffs' Memorandum [FN4] and frames the issue as "whether Creditrust's implication [in the form letter]-that payment on the debt will necessarily improve the consumer's ability to obtain credit-is true or false." (Creditrust's Sur-reply Mem. of Law in Opp'n to Pls.' 2nd Mot. for Class Certification [Dkt

# 92] at 2.) This, Creditrust argues, may be true for some consumers but not true for others. Thus, Creditrust argues, to determine whether Creditrust is liable under the two statutes will require "inquiry into the unique credit history and other unique personal characteristics of each and every member of the putative class," creating "a predominance of individual issues rather than common ones." (Def.'s Mem. at 2.)

> FN4. Plaintiffs stated, "The above language suggests to an unsophisticated consumer that Creditrust can completely remove a report of a bad debt from his or her credit report. However, nothing that Creditrust can do will erase a prior negative credit report made by the original owner of the debt or meaningfully improve the consumer's credit report." (Pls.' Mem. at 1-2.)

**\*6** Plaintiffs contend that "[t]he dispositive issue-indeed the *only* issue-is whether the text of the letter is misleading." (Pls.' Mem. at 12, emphasis in original.) Plaintiffs argue:

> [T]he statement that the debt can be "completely removed" is false and misleading as to *every* recipient of a Creditrust letter, as each person has a charged off debt which Creditrust purchased and is attempting to collect [which charged off debt cannot be removed from the person's credit record by payment of the Creditrust debt]. There are no individual issues which preclude the common question as to whether or not this statement is misleading.

(Pls.' Reply in Supp. of their Mot. for Class Certification ("Pls .' Reply") at 9, emphasis in original.) Plaintiffs attach as an exhibit to their Reply a copy of Bigalke's credit report referring to the debt Creditrust sought to collect in the form letter it sent to Bigalke. (Pls.' Reply, App. E.) That credit report shows the debt Creditrust purchased as two entries: First, as a credit card debt charged off by Amoco; and second, as the same debt now owned

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

by Creditrust. Plaintiffs contend that even if Bi-galke makes full payment to Creditrust and re-moves the second item from her credit record, the payment to Creditrust cannot remove the notation that Bigalke defaulted on payment of her debt to Amoco. (Pls.' Reply at 8-9.)

Plaintiffs and Creditrust submit to the court documents from their respective experts on the is-sue of whether a consumer's credit would be "meaningfully improved" by the payment of the debt to Creditrust. *See* Def.'s Mem., Ex. E: Expert Report of Don Whittaker; and Pls.' Reply, App. D: Affidavit of Edward C. Lawrence. However, this battle of experts need not be resolved, because it is not relevant to the present issue.

The statutes at issue prohibit a debt collector from using "any false representation or deceptive means to collect or attempt to collect a debt" (FDCPA § 1692(e)) or from making or using "any untrue or misleading representation of the services of [a] credit repair organization." (CROA § 1679(a) (3).) *See* footnote 2, *above.* Creditrust argues that, notwithstanding the Plaintiffs' allegation that the text of the form letter is literally false, "if a pay-ment on the debt to Creditrust will actually result in a meaningful improvement of the particular recipi-ent's credit rating, the collection letter does not im-ply a false message and is not misleading." (Def.'s Mem. at 11-12.) Creditrust cites no authority in either its Memorandum of Law or its Sur-reply for that argument, which is contrary to the express pro-visions of the statutes.

Creditrust argues that the Plaintiffs' claim is premised on the theory that consumers are "con[ned] into paying the delinquent debt on the false hope of an improved credit rating." (Creditrust's Sur-Reply at 6.) However, whether in-dividual consumers would be "conned" or had false hopes is irrelevant. As Plaintiffs note, under the FDCPA, the test for liability is whether an "unsophisticated consumer" would be misled by Creditrust's letter into believing something that is not true, not whether any class member actually

was misled. (Pls.' Mem. at 3, citing *Avila v. Rubin,* 84 F.3d 222 (7th Cir.1996); *Gammon v. GC Ser-vices, LP,* 27 F.3d 1254 (7th Cir1994); and *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997).) The "unsophisticated consumer" standard eliminates for purposes of liability the question of what a specific individual inferred from the form letters and wheth-er or not that inference would be correct or incor-rect as to that individual.

*7 *Bartlett v. Heibl,* 128 F.3d 497 (1997),* makes clear that liability under the FDCPA does not depend on the circumstances of the individual plaintiff who receives a misleading debt collection notice. In *Bartlett,* as in the present case, the plaintiff sought only statutory damages, not actual damages.[FN5] *Id.* at 499. That being the case, the court found it did not matter whether the plaintiff had even read the collection letter, much less whether he had been confused by it. *Id.* at 499, 501. If it were established that the letter was confusing to a hypothetical unsophisticated consumer-which is a question of fact, *Walker v. Nat'l Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999)-the court then would determine how much of the statutory award-up to $1,000-to grant the plaintiff. *Bartlett,* 128 F.3d at 499.

> FN5. The FDCPA makes the following provision for recovery of damages:
>
> 15 U.S.C. § 1692k. Civil Liability
>
> (a) Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an in-dividual, such additional damages as the

Page 7

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

Plaintiffs' prayer for relief on the FD-CPA claim seeks: "The maximum amount of statutory damages provided under 15 U.S.C. § 1692(k)." There is no allegation of or claim for actual damages on the part of Plaintiffs. (Am. Compl., Count I.)

The Credit Repair Organizations Act provides for damages as follows:

15 U.S.C. § 1679g. Civil liability

(a) Liability established

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

(1) Actual damages

The greater of-

(A) the amount of any actual damage sustained by such person as a result of such failure; or

(B) any amount paid by the person to the credit repair organization.

(2) Punitive Damages

(B) Class actions

In the case of a class action, the sum of-

(i) the aggregate of the amount which the court may allow for each named plaintiff; and

(ii) the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

Plaintiffs' prayer for relief on the CROA claim seeks: "Such damages as the Court may award." As with the FDCPA, Plaintiffs make no allegation of or claim for actual damages on the part of Plaintiffs. (Am. Compl., Count II.)

That point was reemphasized in *Keele,* where the court noted that the injury under the FDCPA is the receipt of the collection letter. 149 F.3d at 593. It does not matter whether the person paid the debt, nor whether the plaintiff otherwise can prove actual damages; it does not matter whether the debt claimed was or was not legitimate. *Id.* at 593-94. Hence there is no need to examine each class claimant's situation on an individual basis. *Id.* at 594.

Although there are fewer reported cases discussing the CROA, Creditrust does not argue that a different standard applies to that claim. The fact that Congress expressly anticipated class actions to enforce the CROA suggests that, at least for determining whether common questions of law or fact predominate, it is the text of the form letter that is critical, rather than any individual class member's understanding of the letter or whether any class member incurred actual damages.

The issue as to either the FDCPA or the CROA claim is whether an unsophisticated consumer would be mislead by the text of letter into believing something that allegedly is not true, *i.e.,* that Creditrust could entirely remove the debt from his

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

or her credit record. Creditrust provides no author-
ity to support its theory that its liability under the
FDCPA or the CROA depends upon Plaintiffs'
proving that their credit ratings would not be
"meaningfully improved" by payment of the
Creditrust debt. Likewise, Creditrust's liability to
the class members does not depend on whether the
class members' individual credit ratings would be
improved by their payment of the Creditrust debt.

The Court finds that common issues predomin-
ate over individual issues in this case, and therefore
class certification is appropriate.

*2. Adequacy of Plaintiffs and their Counsel to Pro-
tect Class Interests*

Creditrust contends that neither of the individu-
al Plaintiffs is qualified to represent the class, nor
are Plaintiffs' counsel qualified to do so. Three
factors are applied to evaluate the adequacy of an
individual and counsel to represent the class:

(1) the chosen class representative cannot have
antagonistic or conflicting claims with other
members of the class; (2) the named representat-
ive must have a sufficient interest in the outcome
to ensure vigorous advocacy; and (3) counsel for
the named plaintiff must be competent, experi-
enced, qualified, and generally able to conduct
the proposed litigation vigorously.

**\*8** *Roe v. Publishers Clearing House, Inc., No.
98 C 330, 1999 WL 966977, at \*2 (N.D.Ill. Oct. 4,
1999)* (Gettleman, J.).

The basis for Creditrust's contention that Bi-
galke and Plaintiffs' counsel are inadequate repres-
entatives arises out of a bankruptcy proceeding
commenced by Bigalke prior to her filing the
present lawsuit.[FN6] According to Creditrust, Bi-
galke filed for bankruptcy and initially failed to list
as a protected asset the potential recovery she might
make in the present lawsuit. Subsequently-still pri-
or to filing the present lawsuit-Bigalke amended her
bankruptcy disclosure, indicating she owned a pro-
spective FDCPA claim against Creditrust, from

which she anticipated a maximum recovery of
$1,000, as well as another FDCPA claim against a
medical center, from which she also anticipated a
maximum $1,000 recovery.

> FN6. The following recitation of facts is
> drawn from Creditrust's Memorandum, pp.
> 3-11, Plaintiffs' Reply, pp. 2-7, and various
> documents attached as exhibits to the
> parties' respective memoranda.

Creditrust cites an Illinois statutory provision
that allows a bankruptcy petitioner to exempt up to
$2,000 of disclosed assets from attachment by cred-
itors. 735 ILCS 5/12-1001(b). Bigalke's belated dis-
closure of the two FDCPA claims presumably was
to shield the $2,000 in damages Bigalke anticipated
from these two cases.

Bigalke's initial disclosure made no mention,
however, of any FDCPA claims against ten John
Doe defendants-unnamed Creditrust employees.
Nor did Bigalke's bankruptcy filing mention the
CROA claim. The day after Bigalke filed her
amended asset disclosure statement in the bank-
ruptcy case, the bankruptcy trustee made a finding
that Bigalke had no assets available to pay her cred-
itors and Bigalke was discharged from bankruptcy.
Less than two months later she filed the present
lawsuit, which named Bigalke as the sole individual
plaintiff representing the class, named as defend-
ants Creditrust and ten Creditrust employees
(named as John Does), and brought class action
claims under both the FDCPA and CROA. [Dkt #
1.]

When Bigalke brought a motion to certify the
class [Dkt # 16], Creditrust investigated and dis-
covered Bigalke's bankruptcy filing and the asset
disclosure statement that named only Bigalke's FD-
CPA claims against Creditrust and the medical cen-
ter. Creditrust took the position that by failing to
list the potential CROA claim (or the FDCPA
claims against unnamed Creditrust employees) as
an asset in her bankruptcy filing, Bigalke forfeited
the right to include these claims in the lawsuit. Bi-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

galke then voluntarily dismissed the CROA count [Dkt # 27], and a month later sought and was granted leave to file an amended complaint [Dkt40, 42]. This Amended Complaint-the present pleading-added Cresson as a named plaintiff along with Bigalke, eliminated the John Doe defendants, and renewed the CROA count. [Dkt # 43.] Plaintiffs then renewed the motion for class certification. [Dkt # 45.]

Creditrust claims that Plaintiffs' counsel, Edelman, Combs & Latturner, colluded with Bigalke in the bankruptcy proceeding to omit reference to the CROA claim and the FDCPA claims against the John Doe defendants from whom Creditrust presumes Bigalke expected to recover $1,000 each in additional statutory damages. The purpose of the purported collusion was to enable Bigalke to conceal these claims, and their potential asset values, from the bankruptcy trustee and Bigalke's creditors. (Def.'s Mem. at 10.) Creditrust sought and obtained leave to conduct additional discovery to prove this theory. [FN7] Without citing any evidence it may have obtained from that discovery, Creditrust now argues in opposition to the present motion:

> FN7. Magistrate Judge Denlow, to whom Creditrust presented its theory and motion to conduct additional discovery, permitted a limited investigation of the issue. *See* Tr. of April 17, 2000 proceedings, attached as Appendix A to Pls.' Reply.

**\*9** The vast experience of Bigalke's counsel, ... creates a strong inference that this failure was not merely inadvertent, but rather was a conscious omission that permitted Bigalke and her counsel to claim this litigation as an exempt asset, avoid turning it over to the bankruptcy trustee, and thereby preserve their opportunity to control this litigation and earn fees. Even if the failure to disclose was inadvertent, it suggests that Bigalke and the class have not been adequately represented by EC & L in this case.
(Def.'s Mem. at 10.) Creditrust adds:

Moreover, EC & L was aware or should have been aware that the doctrine of res judicata would bar the rights of the class members to pursue their CROA claims if Bigalke was permitted to litigate only her FDCPA claim on behalf of the class. EC & L's willingness to disregard this conflict of interest and sacrifice the claims of their absent class member clients is a breach of their fiduciary duty and precludes a finding of adequacy.

(*Id.*) Based on its res judicata argument, Creditrust contends that, if Bigalke had continued to pursue the FDCPA claim alone, this "would have prejudiced the rights of every class member to pursue a CROA claim." (Def.'s Mem. at 3.)

Plaintiffs' counsel concede they failed to reference the CROA and John Doe FDCPA claims in a communication they sent to Bigalke's bankruptcy attorney advising of what was at the time still only a prospective lawsuit against Creditrust. Plaintiffs' counsel describe the oversight as, in effect, an inadvertent mistake. (Pls.' Reply at 2, 5.) They state that Bigalke's original bankruptcy filing contained no reference to anything about the present claim because Bigalke's counsel in this action did not discover the potential claim until after Bigalke's bankruptcy attorneys, Feld & Korrub, already had filed the bankruptcy petition. (Pls.' Reply at 2.) Plaintiffs' counsel in the present action also state that as to the John Doe FDCPA claims, the law is well-established that the maximum statutory recovery of $1,000 applies "*per case* not per defendant." (Pls.' Reply at 5, citing cases, emphasis in original.) In addition, they point out that the bankruptcy disclosure listed Bigalke's FDCPA claim as being "against Creditrust and 'possible related parties,' and that the maximum recovery was $1,000." (Pls.' Reply at 6.)

An argument similar to Creditrust's was rejected in *Nielsen v. Dickerson,* No. 98 C 5909, 1999 WL 350649 (N.D.Ill. May 20, 1999) (Marovich, J.). In *Nielsen,* the named plaintiff in a FDCPA class action similarly filed for bankruptcy prior to bringing the class claim, and, as with Bigalke, belatedly

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

listed as an exempt asset her interest in the FDCPA claim. The plaintiff failed to identify one of the defendants on the bankruptcy disclosure statement, however. The defendants argued that this failure to identify one of the defendants was grounds to bar the plaintiff as inadequate to protect the interests of the class. *Id.* at *5. Defendants apparently protested that the plaintiff omitted naming one of the defendants deliberately, in order to protect this claim from attachment by her creditors. The court rejected defendants' argument, reasoning that even if a bankruptcy petitioner conceivably might try to conceal a deep pocket defendant from creditors, that was not likely to be the case in this FDCPA claim, where statutory damages were capped at $1,000. *Id.* at *6.

**\*10** Creditrust has not demonstrated any actual "collusion" on the part of the Plaintiffs' counsel. The facts fail to suggest any motive for deliberately concealing any claim in the bankruptcy.

Creditrust's speculations about prejudice to the class that *might* have occurred concern an issue made moot by what in fact transpired. Whatever merit there may be in Creditrust's argument that res judicata would bar a subsequent CROA claim had Bigalke proceeded as the lone named plaintiff solely on the FDCPA claim, that argument is merely theoretical. Any such possible prejudice to the class was averted by joining Cresson as an additional named plaintiff and obtaining leave to file the Amended Complaint renewing the CROA claim. As previously noted, the District Judge has denied Creditrust's motion to dismiss that claim, and the CROA claim is thus at issue in this lawsuit. *See* footnote 1, *above.* Accordingly, the Court need not address Creditrust's hypothetical res judicata argument.

Creditrust argues that the Court must find that Bigalke is inadequate to represent the class for the further reason that her "decision to drop the CROA claim was driven by circumstances unique to Bigalke." (Def.'s Mem. at 3.) Creditrust argues that since Bigalke's "personal interests are only in the FDCPA claim ... her position is different from and antagonistic to that of the class members." (Def.'s Mem. at 8.) Creditrust contends that the typicality requirement of Rule 23(a) "requires that the plaintiff be able to advance the same legal argument as the class members," citing *Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 112 (N.D.Ill.1993). (Def.'s Mem. at 8, n. 2.)

The *Williams* case differs significantly from the present situation. In *Williams,* six individual plaintiffs proposed to represent a nationwide class of persons who purchased interests in a limited partnership. Plaintiffs alleged as the class claim that there were misrepresentations in the limited partnership's offering statement that misled class members into purchasing shares in the enterprise. 150 F.R.D. 109, 112. The court in *Williams* examined the individual claims of the six proposed representatives of the class, and found that *none* of the six proposed representatives actually claimed to have relied on the defendant's offering statement in choosing to invest in the limited partnership. *Id.* The court concluded that each proposed representative would be subject to unique defenses, and accordingly would not be able to represent adequately the members of the class, who allegedly purchased in reliance on the offering statement.

The *Williams* case is inapposite. Nothing in the *Williams* case suggests that the fact that Bigalke does not have a CROA claim disqualifies her as a representative of a class bringing claims under the FDCPA. Creditrust does not assert that it has a defense unique to Bigalke on the claim for which she seeks to represent the class, the FDCPA claim. Furthermore, Bigalke's and Cresson's claims are the same as all other class members: that Creditrust sent them a misleading form letter. The defense that Creditrust will raise to the named Plaintiffs is identical to its defense to all other class members: that the form letter is not misleading. Hence it does not matter that Bigalke brings her claim under the FDCPA only, while Cresson brings her claim under both the FDCPA and the CROA. Both plaintiffs have an equally strong interest in litigating the is-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

sue of whether the form letter is misleading.

**\*11** In a footnote and without citing authority, Creditrust argues that Cresson also is inadequate to represent the class, because she is a "last minute 'substitute' " who is unaware of "key decisions in this matter" such as the fact that Plaintiffs "agreed to limit their monetary claims ... to Creditrust's insurance proceeds," or that Plaintiffs' counsel has retained an expert for the case and that this expert will charge fees for his services. (Def's Mem. at 10, n. 3.)

It is the norm in a class action that the representative plaintiff will know little about the case, and will give free reign to class counsel to prosecute the claim. *Kamen v. Kemper Financial Services, Inc.,* 908 F.2d 1338, 1349 (7th Cir.1990), *rev'd on other grounds,* 500 U.S. 90 (1991). The Seventh Circuit in its decision in *Kamen* commented that class actions characteristically are "lawyer's vehicles" that "are valuable precisely because they allow the vindication of claims too small to prosecute individually but worth litigating in the aggregate." 908 F.2d at 1349. With such relatively small amounts at stake for individual claimants, it is not unusual for plaintiffs representing the class to have little involvement with the proceedings of the case. Hence, Cresson's purported lack of familiarity with the proceedings in the case would not bar her from acting as a representative plaintiff for the class.

Creditrust attaches as an exhibit to its Memorandum a ten-page excerpt from a 125-page transcript of Cresson's deposition. (Def.'s Mem., Ex. D.) Creditrust claims that this excerpt shows that Cresson is not aware that the amount of recovery is limited by the amount of insurance Creditrust has or that Plaintiffs' counsel hired an expert. (*Id.* at 116-18.) However, that she is not aware of that the recovery is limited by insurance does not demonstrate that Cresson is inadequate to represent the class. Furthermore, contrary to Creditrust's argument, Cresson testified that she received in the mail a copy of the report prepared by Plaintiffs' expert, Edward Lawrence. (*Id.* at 123-24.) The portions of

Cresson's deposition transcript attached as Appendix B to Plaintiffs' Reply show that Cresson is aware that the claim arises from the letter that she received, and can relate the allegations of the Amended Complaint to the letter, which she believes is misleading. (Pls.' Reply, App. B at 78-90.)

The class representative must understand the basic facts underlying his claims. General knowledge and participation in discovery are sufficient to meet this standard. In demonstrating a class representative's adequacy, the burden is not a heavy one.

*Sledge v. Sands,* 182 F.R.D. at 259 (citations and quotations omitted). Cresson's deposition shows that she meets the threshold, and Creditrust has not demonstrated that she does not.

The final factor in determining Plaintiffs' adequacy to represent the class is whether Plaintiffs' class counsel have the requisite competence, experience, qualifications, and general ability to conduct this litigation. Plaintiffs' law firm, Edelman, Combs & Latturner, include with the motion for class certification a review of their firm's experience in consumer-related litigation, including FDCPA claims. (Pls.' Mem., Ex. F.) They cite FDCPA cases where courts of this District accepted Edelman, Combs & Latturner as class counsel over objections raised by the same law firm that is representing Creditrust in this case. (Pls.' Mem. at 10.) They assert that "every judge" in this District has found their firm to be adequate class counsel. (Pls.' Mem. at 10.)

**\*12** This history of approval is persuasive. Creditrust fails to provide the Court any reason to believe that Edelman, Combs & Latturner is not qualified to represent the class in the present case. Accordingly, the Court finds Edelman, Combs & Latturner to be qualified as counsel for the class, and finds Bigalke and Cresson to be qualified as class representatives.

CONCLUSION

For the foregoing reasons, the Court respect-

Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)
**(Cite as: 2001 WL 1098047 (N.D.Ill.))**

fully recommends that the District Judge certify two classes in this case consisting of the following: as to Count I (FDCPA), all persons: 1) who were mailed letters similar to Amended Complaint Exhibits A and B, 2) on or after July 31, 1998, 3) to an Illinois address, 4) where the letters were not returned by the Postal Service, and 5) which letters, were in connection with an attempt to collect a debt which can be determined to be a consumer debt by Creditrust's records, the records of the creditor, or the nature of the creditor or of the debt; as to Count II (CROA), all persons: 1) who were mailed letters similar to Amended Complaint Exhibits A and B, 2) on or after April 8, 1998, 3) to an Illinois address, 4) where the letters were not returned by the Postal Service. The Court further recommends that Plaintiffs Sherry Bigalke and Diane Cresson be accepted as class representatives, and that the law firm of Edelman, Combs & Latturner be accepted as counsel for the class.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. *Fed.R.Civ.P. 72(a).* Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir.1995).

N.D.Ill.,2001.
Bigalke v. Creditrust Corp.
Not Reported in F.Supp.2d, 2001 WL 1098047 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT NO. 8

EXHIBIT 8

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)
**(Cite as: 1997 WL 139472 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.

Devona CANNON, on Behalf of Herself and all
Others Similarly Situated, Plaintiff,

v.

NATIONWIDE ACCEPTANCE CORPORATION
and Michael Lutz, Defendants.

No. 96 C 1136.
March 25, 1997.

*MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

**\*1** Plaintiff Devona Cannon ("Cannon") has
moved to have the following class certified:

All persons who (1) obtained credit from Nation-
wide Acceptance Corporation ("Nationwide"),
(2) were later solicited by Nationwide to make,
and ultimately made, additional extensions of
credit before their existing credit was paid off,
and (3) received additional money as part of this
transaction which was documented as a refinan-
cing, and in which one or more of the refinanced
loans was outstanding on or after January 11,
1993 (for purposes of counts I–II) or January 11,
1992 (for purposes of Count III).[FN1]

> **FN1.** Plaintiff's Motion for Class Certifica-
> tion ("Petition") at 1.

Plaintiff has asserted against defendants civil
claims under the Racketeer Influenced and Corrupt
Organizations ("RICO") statute and the Illinois
Consumer Fraud and Deceptive Business Practices
Act ("ICFDBPA"), 815 ILCS 505/1 *et seq.*
Plaintiffs claims are based on defendant's alleged
predicate acts of mail fraud in connection with
"loan flipping." The relevant of facts of the under-
lying action as alleged in plaintiff's complaint (the
"Complaint") are set forth in the Court's prior opin-
ion involving this case.[FN2]

> **FN2.** *See* Memorandum Opinion and Or-
> der, March 18, 1997.

*Legal Standard for Motions for Class Certification*

Motions for class certification are governed by
Fed.R.Civ.P. 23, which provides that the following
prerequisites must be satisfied in order for one or
more members of a class to sue as representatives
of others in the class: (1) the class is so numerous
that joinder of all members is impracticable
["numerosity"]; (2) there are questions of law or
fact common to the class ["commonality"]: (3) the
claims or defenses of the representative parties are
typical of the claims or defenses of the class
["typicality"]; and (4) the representative parties will
fairly and adequately protect the interests of the
class. Fed.R.Civ.P. 23(a). In addition to these re-
quirements, an action must meet the criteria under
at least one of three sections of Rule 23(b). *Id.;*
Charles Wright, Arthur Miller, and Mary Kay
Kane, Federal Practice and Procedure: Civil 2d §
1759 (1986). Rule 23(b) provides that the action
sought to be brought as a class action must be such
that (a) the prosecution of separate actions by or
against individual members of the class would cre-
ate a risk of incompatible or varying adjudications
with respect to the individual member or adjudica-
tions which would necessarily implicate the rights
of other members not party to the action; (b) the op-
posing party has acted or refused to act on grounds
generally applicable to the class as a whole; or (c)
the court finds that the questions of law or fact
common to the members of the class as a whole
predominate over any questions affecting only indi-
vidual members and that a class action is the most
efficacious method of adjudication. *See*
Fed.R.Civ.P. 23(b). The Seventh Circuit has in-
structed courts to interpret Rule 23 liberally in fa-
vor of the maintenance of class actions. *King v.
Kansas City S. Indus.,* 519 F.2d 20, 25–26 (7th
Cir.1975).

**\*2** For purposes of determining a motion for
class certification. the court will deem true all of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)
**(Cite as: 1997 WL 139472 (N.D.Ill.))**

the allegations contained in the complaint. *Johns v. DeLeonardis.* 145 F.R.D. 480. 482 (N.D.Ill.1992). Moreover. the court will not consider the merits of the case, rather. the court focusses on whether the certification requirements are satisfied. In Re *VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991). If the party seeking class certification meets each of the certification requirements, the court must certify the proposed class. *Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir.1976); *Fujishima v. Board of Educ.,* 460 F.2d 1355, 1360 (7th Cir.1972). However, this court has broad discretion concerning whether a proposed class satisfies certification requirements. *See Patterson v. General Motors Corp.,* 631 F.2d 476. 480 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

*Discussion*

I. Federal Rule of Civil Procedure 23(a)

As established above, parties seeking class certification must prove that the proposed class satisfies the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. Plaintiffs' have met their burden of establishing each of these criteria as to the proposed class.

A. *Numerosity*

Rule 23(a)(1) requires that the class be so numerous that joinder is impractical. However, the number of class members alone is not dispositive. *Rosario v. Cook County.* 101 F.R.D. 659, 661 (N.D.Ill.1983). Rather the court must consider other relevant factors including "the nature of the relief sought, the ability of the individuals to press their own claims, the practicality of forcing relitigation of a common core of issues. and administrative difficulties involved in interpretation and joinder." *Id.* Indeed, "to require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 (7th Cir.1969). Moreover, the court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States*

*Pipe & Foundry,* 696 F.2d 925. 930 (11th Cir.1983). *see also In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991).

Plaintiffs assert that, "based on the size of defendants' loan portfolio and the fact that form documents were used to induce refinancing, it is reasonable to infer the classes are so numerous that joinder of all members is impractical." (Memorandum in Support of Plaintiff's Motion for Class Certification ("Pl.Memo.") at 4). Defendant Nationwide is a major consumer lender in the Chicago area. (*See* Complaint ¶¶ 5, 7–11). While it is difficult to ascertain at this time the number of potential class members in this suit, this Court assumes that the number would be significant enough to satisfy the numerosity requirement. Indeed, the exact number or identity of class members need not be pleaded to establish numerosity. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989); *Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979); *Gomez by Hernandez v. Comerford,* 833 F.Supp. 702. 706(N.D)Ill.1993).

**\*3** Furthermore, upon considering the other relevant factors. this Court finds that the common issues of fraud and unfair and deceptive business practices alleged by plaintiffs in the context of a "loan flipping" scheme suggest a finding of numerosity. Indeed, the solicitations in the instant case are form letters which can be quickly generated from a computer and thus permit defendants to contact countless persons. In addition, in light of the allegation that the plaintiffs are generally working class individuals (and, presumably, in financial need or would not have sought a loan from Nationwide), the Court concludes that such individuals would be unable to press their claims individually. Furthermore. it is in the interest of judicial economy that each potential claimant not be forced to litigate his or her claims independently of others sharing similar grievances and seeking similar relief. Accordingly, the Court finds that the proposed class is sufficiently numerous.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)
**(Cite as: 1997 WL 139472 (N.D.Ill.))**

Defendants argue, however, that there is no identifiable class. Defendants assert two reasons for thier argument: (1) Defendants do not have records of each customer to whom they sent a solicitation letter, and (2) there are no objective criteria by which to identify class members. Defendants' first argument conveniently relies on the insufficiency of Nationwide's record keeping and the automation of its solicitation system. However, it has been established through deposition testimony that the solicitation received by Cannon was also sent. at various intervals. to all existing direct loan customers who had two hundred ($ 200) in available credit and had made at least one payment on their account. (Plaintiff's Reply in Support of Motion for Class Certification ("Pl.Reply") Appendix A, Deposition of Linda Stellon ("Stellon Depo.") pp. 31–31). Thus. based on this information, the identity of the class members can easily be revealed through discovery. Moreover, some class members might be able to demonstrate membership by producing the form letter that they received. It cannot be the rule that actions based on fraud cannot be maintained as class actions unless the defrauder has kept a record of those who he might have deceived.

Second, defendants contend that, because there is no record of who received the solicitations and the state of mind of each individual may vary with respect to the alleged scheme, there are no objective criteria by which to identify class members. In support of their position, defendants cite *Kohn v. Mucia,* 776 F.Supp. 348 (N.D.Ill.1991), and *Elliot v. ITT Corp.,* 150 F.R.D. 569, 573–74 (N.D.Ill.1992). In *Kohn,* the plaintiff sought to bring suit on behalf of all persons who had their impounded vehicles sold or destroyed by the City of Chicago. The key issue in the case was whether the individual whose car was sold or destroyed had received sufficient notice of the impending sale or destruction. The proposed class in *Kohn* included both people who had and people who had not received notice. The court found the inclusion of the former group was inappropriate in light of the key issue in the case. However, the court denied class certification on the ground that there were too few potential plaintiffs.

**\*4** By contrast, this Court has determined that there is sufficient numerosity. *Kohn* is therefore inapposite. Furthermore, in the instant case, the proposed class is tailored to include persons who *actually received* a solicitation from defendants and then obtained additional funds through a refinancing. These objective criteria are sufficient to identify potential class members. Furthermore, any assertion that persons to whom the solicitations were sent did not receive them is purely speculative. Indeed, there is a legal presumption that letters mailed with sufficient postage to a valid address are received by the addressee.

In *Elliot,* the court held that "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria, but not it membership is contingent on the prospective member's state of mind. 150 F.R.D. at 574 (citing *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D.Ill.1987). However, *Elliot* goes on to observe that "[a] class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant." *Id.* at 575. Moreover, because the allegations in the instant case are based upon a scheme to defraud rather than separate actions taken against plaintiffs, the individual plaintiff's state of mind is not pertinent. The Seventh Circuit "has reiterated on numerous occasions that the ultimate success of the fraud and the actual defrauding of a victim are not necessary prerequisites to a successful mail fraud prosecution." *United States v. Bucey,* 876 F.2d 1297, 1311 (7th Cir.) (citations omitted), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989)). Thus. that the proposed class members may have varying states of mind regarding the fraud is of no import. The Court thus finds that the class is identifiable and sufficiently numerous.

B. *Commonality*

The second requirement of Rule 23(a) is that there be questions of law or fact common to the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)
**(Cite as: 1997 WL 139472 (N.D.Ill.))**

class. In order to satisfy this requirement, the party seeking certification need only demonstrate that there is at least one common question—either of law or of fact. *Arenson v. Whitehall Convalescent and Nursing Home,* 164 F.R.D. 659, 663 (N.D.Ill.1993); *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984). Moreover, factual variations among class members' experiences will not defeat class certification so long as there is a "common nucleus of operative fact." *Rosario v. Livaditis.* 963 F.2d 1013. 1017–18 (7th Cir.1992). *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993).

Plaintiff asserts that there are five common questions: (1) whether defendants engaged in the scheme complained of, that is, "loan flipping:" (2) whether defendants thereby engaged in a scheme or artifice to defraud, within the meaning of 18 U.S.C. § 1341; (3) whether the mails were used in further-ance of the scheme: (4) whether defendants conduc-ted the affairs of one or more enterprises using a pattern of mail fraud, thereby violating 18 U.S.C. § 1962(c): (5) whether defendants engaged in unfair and/or deceptive business practices.[FN3]

> [FN3]. Plaintiffs' Motion for Class Certifica-tion ("Motion") at 2–3.

**\*5** Defendants argue that these questions are not common to the proposed class since each class members' claim depends on his or her individual-ized circumstances. Defendants claim that each cus-tomer's refinancing is "divergent and individual-ized." (Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification ("Def.Memo.") at 12). Again, defendants rely on *Elliot,* where the court denied class certification of the plaintiff's RICO and Illinois consumer fraud claims, because there was a lack of commonality and predominance of common issues. The court found that there was a "substantial likelihood on many individual questions in a piece of litigation involving a potentially enormous class." *Id.* 583–84. Similarly, defendants contend that each potential class member might have been informed

about the refinancing differently. However, it has already been established that it is unlikely that the information that is relevant to this litigation was ever disclosed to any potential class members. Linda Stellon, Vice President of Direct Lending at Nationwide, admitted that it is not Nationwide's policy or part of the loan officers' job to instruct customers as to the differences between a renewal loan and an additional loan. (Stellon Depo. p. 79–80). Moreover, the key factual allegation that customers were solicited with deceptive propa-ganda is the same for each potential class member. Finally, this court concluded in a prior opinion in this case that "the eventual enlightenment of the de-frauded is characteristic of the 'bait and switch' technique allegedly employed by defendants." Thus. it is of little consequence that potential class members may have ultimately received different in-formation and different terms in their refinancings. The Court thus finds that the commonality require-ment is satisfied.

C. *Typicality*

Fed.R.Civ.P. 23(a)(3) requires that the named plaintiffs' claims be typical of the class. A plaintiff's claim is typical if it arises out of the "same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal the-ory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225,232 (7th Cir.1983). Plaintiffs need not present the same factual circumstances so long there is a single issue common to all class mem-bers. *Allen v. Isaac,* 99 F.R.D. 45, 54 (N.D.Ill.1983) . Moreover, each plaintiff need not allege that same injury. *De La Fuente,* 713 F.2d at 232–33.

Cannon moves to certify a class of persons who (1) obtained credit from Nationwide. (2) were later solicited by Nationwide to make, and ultimately made, additional extensions of credit before their existing credit was paid off, (3) received additional money as part of this transaction which was docu-mented as a refinancing. and in which (b) one or more of the refinanced loans was outstanding on or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)
**(Cite as: 1997 WL 139472 (N.D.Ill.))**

after January 11, 1993 (for purposes of counts I–II) or January 11, 1992 (for purposes of Count III). According to the Complaint, Cannon meets each of these criteria, and thus, satisfies the requirement of typicality. However, defendants contest the typicality of Cannon's claim on the same grounds that they contested the issue of commonality. For the reasons stated above, the Court finds these arguments unpersuasive. The Court resolves that there is no meaningful discrepancy between the allegations Cannon asserts and those presumed of the proposed class; commonality is therefore established.

D. *Fair and Adequate Representation*

**\*6** Rule 23(a)(4) requires that the named plaintiff provide fair and adequate protection for the interests of the class. Two factors are particularly important in that determination: (1) plaintiff's attorney's qualifications, experience, and ability to conduct the litigation and (2) whether the plaintiff has interests antagonistic to those of the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* U.S., 113 S.Ct. 972 (1993).

The Court has no reason to question the qualifications of plaintiffs' counsel. Indeed. they have presented to the Court an extensive profile of their experience in class actions, in general, and consumer fraud, in particular, which indicates that they are competent to represent the proposed class. (Pl.Memo. Appendix B). Moreover, defendants raise no objections opposing counsel's qualifications. Rather. defendants argue that Cannon is not an adequate representative because she is not financially solvent.

Defendants maintain that Cannon filed Chapter 7 bankruptcy in 1995 and has thereby admitted her inability to pay the necessary expenses for the proposed class action. Class counsel has made clear that it will finance the entire litigation on a contingency basis pursuant to Rule 1.8(e)(1) of the Rules of Professional Conduct for the Northern District of Illinois and Rule 1.8(d)(2) of the Illinois Rules of Professional Conduct. (Pl. Reply at 5 ("In this action, class counsel will advance all costs of litiga-

tion. Repayment is contingent upon recovery.")). Thus, any argument regarding Cannon's inability to financially support this litigation is moot. Nonetheless, it should be made clear that a named plaintiff's willingness to vouch for the entire costs of litigation is not determinative of her adequacy to be a fair representative. *Rand v. Monsanto Co.* 926 F.2d 596, 601 (7th Cir.1991). Furthermore, based on the Court's review of the facts, it does not appear that the named plaintiff has interests that would potentially compromise those of the class. The requirement of fair and adequate representation is therefore satisfied.

II. Federal Rule of Civil Procedure 23(b)

Having satisfied the certification requirements of Rule 23(a), plaintiffs must demonstrate that this action meets the demands of Rule 23(b). Accordingly, the plaintiffs must prove that the action is such that (a) the prosecution of separate actions by or against individual members of the class would create a risk of incompatible or varying adjudications with respect to the individual member or adjudications which would necessarily implicate the rights of other members not party to the action, (b) the opposing party has acted or refused to act on grounds generally applicable to the class as a whole: or (c) the court finds that the questions of law or fact common to the members of the class as a whole predominate over any questions affecting only individual members and that a class action is the most efficacious method of adjudication. See Fed.R.Civ.P. 23(b).

**\*7** Plaintiff contends that the instant action satisfies the criteria of factor (c) because the economic status of the potential plaintiffs would preclude them from bringing individual suits and, given the individual sums involved, it would not make financial sense to bring an individual suit. Thus, plaintiff argues, and this Court agrees, that a class action is the most efficacious vehicle of adjudication. In addition, common issues of law and fact predominate in this case, especially since it is based upon a scheme to defraud. All that is required is "an essen-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)

**(Cite as: 1997 WL 139472 (N.D.Ill.))**

tial common factual link between all class members and the defendant for which the law provides a remedy." *Johns v. DeLeonardis,* 145 F.R.D. 480–84 (N.D.Ill.1992). Here Cannon alleges a scheme of mail fraud that is common to all potential plaintiffs and for which RICO and the Illinois consumer fraud laws provide remedies. Thus, in light of the foregoing and in the interest of judicial economy, this Court finds that a class certification is appropriate.

**III. Scope of the Class**

Plaintiff's proposed class pertains, in part, to persons who received a solicitation from defendants to obtain additional money. However, because plaintiff's theory of recovery under RICO is that defendants alleged scheme or artifice to defraud was conducted through the United States mails and therefore constitutes mail fraud, the Court restricts the class as follows:

All persons who (1) obtained credit from Nationwide Acceptance Corporation ("Nationwide"), (2) were later solicited by Nationwide, *though the United States mails,* to make (and ultimately made) additional extensions of credit before their existing credit was paid off. and (3) received additional money as part of this transaction which was documented as a refinancing, and in which one or more of the refinanced loans was outstanding on or after January 11, 1993 (for purposes of counts I–Il) or January 11, 1992 (for purposes of Count III).

*Conclusion*

WHEREFORE, for the reasons stated in this memorandum opinion, plaintiff's petition for class certification is granted as to the following class:

All persons who (1) obtained credit from Nationwide Acceptance Corporation ("Nationwide"), (2) were later solicited by Nationwide, through the United States mails, to make, and ultimately made, additional extensions of credit before their existing credit was paid off, and (3) received additional money as part of this transaction which

was documented as a refinancing, and in which one or more of the refinanced loans was outstanding on or after January 11.1993 (for purposes of counts I–Il) or January 11, 1992 (for purposes of Count III).

Plaintiff is directed to file a proposed notice to the class thus defined by April 14, 1997. Written objections to the proposed notice are to be filed by May 1, 1997. A hearing on objections to the proposed notice shall be held on May 16, 1997 at 9:30 a.m.

N.D.Ill.,1997.
Cannon v. Nationwide Acceptance Corp.
Not Reported in F.Supp., 1997 WL 139472 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.