

ROMAN SHERSHER, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; MICROSOFT CORPORATION, Real Party in Interest.

B195317

COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION FIVE

154 Cal. App. 4th 1491; 65 Cal. Rptr. 3d 634; 2007 Cal. App. LEXIS 1492

September 10, 2007, Filed

**SUBSEQUENT HISTORY:** Time for Granting or Denying Review Extended *Shersher (Roman) v. S.C. (Microsoft Corporation), 2007 Cal. LEXIS 14409 (Cal., Dec. 6, 2007)*
Review denied by, Request denied by Shersher v. L.A. County Superior Court, 2007 Cal. LEXIS 14453 (Cal., Dec. 19, 2007)

**PRIOR HISTORY:** [***1]
 ORIGINAL PROCEEDING in mandate. Superior Court No. BC340630, Anthony J. Mohr, Judge.
*Shersher (Roman) v. S.C. (Microsoft Corporation), 2007 Cal. LEXIS 4638 (Cal., Apr. 25, 2007)*

**DISPOSITION:**

**SUMMARY:**

CALIFORNIA OFFICIAL REPORTS SUMMARY

 A customer sued a manufacturer of wireless products for, among other things, violation of the unfair competition law (UCL) (*Bus. & Prof. Code, § 17200 et seq.*). The customer sought all available remedies, including restitution. The trial court granted the manufacturer's motion to strike the customer's restitution claim. The trial court concluded that the availability of restitution under the UCL was limited to direct purchasers and that the customer was not entitled to restitution because he purchased the manufacturer's product from a retailer. (Superior Court of Los Angeles County, No. BC340630, Anthony J. Mohr, Judge.)

 The Court of Appeal issued a petition for writ of mandate directing the trial court to vacate its order granting the manufacturer's motion to strike the customer's claim for restitution and enter a new and different order denying the motion. The court concluded that the recovery of restitution was not conditioned on the customer having made direct payments to the manufacturer. The only requirements the UCL imposed on the recovery of restitution were that the customer must have had an ownership interest in the money or property sought to be recovered and that the manufacturer must have acquired the customer's money or property by means of unfair competition or some other act prohibited by the UCL. The customer had an ownership interest in the restitutionary relief sought because he purchased the manufacturer's product. The customer alleged that he paid money to a retailer to purchase the manufacturer's product based on false or misleading statements on the product package. This assertion, if true, supported a claim for restitution. (Opinion by Kriegler, J., with Turner, P. J., and Armstrong, J., concurring.) [*1492]

**HEADNOTES**

CALIFORNIA OFFICIAL REPORTS HEADNOTES

**(1) Unfair Competition § 10--Actions--Remedies--Restitution--Ownership Interest--Money Paid to Retailer to Purchase Manufacturer's Product--False or Misleading Statements on Product Package.**--In a case in which a customer sued a manufacturer of wireless products for, among other things, violation of the unfair competition law (UCL) (*Bus. & Prof. Code, § 17200 et seq.*), the customer's recovery of restitution from the manufacturer was not conditioned on the customer having made direct payments to the manufacturer. The only requirements the UCL imposed on the recovery of restitution were that the customer must have had an ownership interest in the money or property sought to be re-

154 Cal. App. 4th 1491, *; 65 Cal. Rptr. 3d 634, **;
2007 Cal. App. LEXIS 1492, ***

covered and that the manufacturer must have acquired the customer's money or property by means of unfair competition or some other act prohibited by the UCL. The customer alleged that he paid money to a retailer to purchase the manufacturer's product based on false or misleading statements on the product package. This assertion, if true, supported a claim for restitution.

[*Cal. Forms of Pleading and Practice (2007) ch. 565, Unfair Competition, § 565.34*; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 125.]

**(2) Unfair Competition § 2--Definitions and Distinctions--Unlawful Business Act or Practice--Remedies--Injunctive Relief--Restitution.**--The unfair competition law (UCL) (*Bus. & Prof. Code, § 17200 et seq.*) defines "unfair competition" to mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the false advertising law (*§ 17200*). The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. Although the remedies afforded private plaintiffs under the UCL are limited to injunctive relief and restitution, the UCL's scope is broad. By defining unfair competition to include any unlawful business act or practice, the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.

**(3) Equity § 5--Relief--Inherent Powers.**--A court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the status quo ante as nearly as may be achieved.

**(4) Unfair Competition § 2--Definitions and Distinctions--Restitution.**--In the context of the unfair competition law (*Bus. & Prof.* [*1493] *Code, § 17200 et seq.*), restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it.

**(5) Unfair Competition § 10--Actions--Remedies--Restitution--Disgorgement of Profits.**--The only remedy expressly authorized by *Bus. & Prof. Code, § 17203*, is restitution to individuals who has an ownership interest in money paid to the defendants; there is nothing, either in the express language of the statute or in its legislative history, to indicate that the Legislature intended to authorize a court to order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits.

**(6) Unfair Competition § 10--Actions--Remedies--Restitution--Return of Money or Property.**--On the issue of restitution, the remedy a plaintiff seeks under the unfair competition law (*Bus. & Prof. Code, § 17200 et seq.*) must be truly restitutionary in nature--that is, it must represent the return of money or property the defendant acquired through its unfair practices.

**(7) Unfair Competition § 10--Actions--Remedies--Restitution.**--To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution.

**(8) Restitution § 1--Equity--Unjust Enrichment.**--A person is entitled to restitutionary relief from another person under the traditional equitable principles of unjust enrichment, upon a determination that under the circumstances and as between the two individuals, it is unjust for the person receiving the benefit to retain it.

**COUNSEL:** Spiro Moss Barness & Barge and David M. Arbogast for Petitioner.

No appearance for Respondent.

Munger Tolles & Olson, Ronald K. Meyer and Daniel P. Collins for Real Party in Interest.

**JUDGES:** Kriegler, J., with Turner, P. J., and Armstrong, J., concurring.

**OPINION BY:** Kriegler

**OPINION**

[**635] **KRIEGLER, J.**--The unfair competition law (UCL) authorizes a court to "make such orders ... as may be necessary to prevent the use or employment [*1494] by any person of any practice which constitutes unfair competition, ... or as may be necessary to restore to any person in interest any money or property, [**636] real or personal, which may have been acquired by means of such unfair competition." (*Bus. & Prof. Code, § 17203*.)[1] California's false advertising law (*§ 17500 et seq.*) contains similar language. (*§ 17535.*)

> 1   All further statutory references are to the Business and Professions Code unless otherwise indicated.

**(1)** In this consumer action against Microsoft Corporation, respondent court granted Microsoft's motion to strike plaintiff's claim for restitution. Adopting Microsoft's interpretation of certain language in *Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134 [131 Cal. Rptr. 2d 29, 63 P.3d 937]* [***2] (*Korea Supply*), respondent court held that the availability of restitution under the UCL was limited to direct purchasers and

excluded plaintiffs such as the petitioner in this case, who purchased Microsoft's product from a retailer. We conclude that respondent court's ruling went beyond the holding in *Korea Supply*, which was that an individual private plaintiff in a tort action may not invoke the court's equitable power under the UCL to seek the return of money or property in which the plaintiff never had an ownership interest. Nothing in *Korea Supply* conditions the recovery of restitution on the plaintiff having made direct payments to a defendant who is alleged to have engaged in false advertising or unlawful practices under the UCL. The only requirements the UCL and the false advertising law impose on such recovery are that the plaintiff must be a "person in interest" (that is, the plaintiff must have had an ownership interest in the money or property sought to be recovered), and the defendant must have acquired the plaintiff's money or property "by means of ... unfair competition" or some other act prohibited by the UCL or the false advertising law. Plaintiff in this case has [***3] alleged that he paid money to a retailer to purchase Microsoft's product based on false or misleading statements on the product package. This assertion, if true, supports a claim for restitution.[2]

> 2  For purposes of a motion to strike, we assume the allegations of the complaint to be true. (*Blakemore v. Superior Court (2005) 129 Cal.App.4th 36, 53 [27 Cal. Rptr. 3d 877]*.)

**FACTS AND PROCEDURAL HISTORY**

This action concerns wireless routers, adapters, and other similar products manufactured by Microsoft and purchased by plaintiff Roman Shersher and members of the class he purports to represent. Plaintiff alleges that "while voluntarily marketing and promoting their wireless products as '11Mbps' and '54 Mbps' on the packaging of each of its wireless products, Microsoft represented either directly or by implication that the subject wireless products [*1495] would be capable of delivering to the consumer data transmission rates of up to '11Mbps' and '54 Mbps.'" The term " 'Mbps' relates to the measurement of the data transfer rate and is commonly known and understood to mean Megabits (Million Bits) per second. Thus, the representations of '11Mbps' and '54 Mbps' are commonly known and understood to mean 11 Million Bits per [***4] second and 54 Million Bits per second." In fact, these numbers were "not based on the actual transmission rates of these wireless products and therefore are ... false, deceptive and misleading." The facts that Microsoft concealed were material to consumers' decisions to purchase Microsoft's wireless product. As a result of these misrepresentations, consumers bought "hundreds of thousands of wireless products that do not deliver the represented functionality and performance [**637] as represented on the packaging of each of the subject Microsoft wireless products."

Plaintiff filed the underlying action both as a class action and as a representative action under the Business and Professions Code.[3] The operative pleading is the third amended complaint, which contains four causes of action: (1) breach of express warranty; (2) violation of the Consumers Legal Remedies Act (CLRA) (*Civ. Code, § 1750 et seq.*); (3) violation of the UCL (*§ 17200 et seq.*); and (4) violation of the false advertising law (*§ 17500 et seq.*). Plaintiff seeks all remedies available under these laws, including damages, injunctive relief, disgorgement of profits, restitution, and attorneys' fees.[4]

> 3  A "representative action" [***5] is an action that is not certified as a class action in which a private person is the plaintiff and seeks disgorgement and/or restitution on behalf of persons other than or in addition to the plaintiff. (*Kraus v. Trinity Management Services, Inc. (2000) 23 Cal.4th 116, 126, fn. 10 [96 Cal. Rptr. 2d 485, 999 P.2d 718]*.)
>
> 4  In his prayer for damages, plaintiff has not separately set out each cause of action with the requested remedy. The UCL, CLRA, and false advertising law all provide for restitution. Damages are available only under the CLRA. (See *Korea Supply, supra, 29 Cal.4th at p. 1144*.)

Microsoft moved to strike plaintiff's claim for restitution and any reference to "restitution" in the third amended complaint. The motion was predicated on a single sentence from *Korea Supply*: "Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." (*Korea Supply, supra, 29 Cal.4th at p. 1149*.) Focusing on the word "directly," Microsoft argued that "indirect purchasers"--those who purchase from someone other than the defendant--could not obtain restitution because they paid no money *directly* to defendant. Respondent court agreed with [***6] Microsoft: "Because Plaintiff alleges no facts in the [third amended complaint] to show [*1496] that he or any purported class member purchased a Wireless Device directly from Microsoft and therefore could be eligible under the rule stated in *Korea Supply* to receive restitution from Microsoft, the allegations of the [third amended complaint] are insufficient to support the remedy of restitution, and all allegations seeking restitution should be stricken."

Plaintiff filed a petition for writ of mandate on December 12, 2006. We initially denied the petition on the basis that because plaintiff had other remedies available, he had an adequate remedy by way of appeal from a final judgment should those remedies prove inadequate. Plain-

tiff sought review in the California Supreme Court. On April 25, 2007, the Supreme Court granted the petition for review and transferred the matter to this court with directions to issue an order to show cause.

## DISCUSSION

**(2)** The UCL defines " 'unfair competition' to mean and include 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law [citation]].' (*§ 17200*.) [***7] The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 110 [101 Cal. Rptr. 745, 496 P.2d 817].)" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal. Rptr. 2d 296, 45 P.3d 243].) Although the remedies afforded [**638] private plaintiffs under the UCL are limited to injunctive relief and restitution, the UCL's scope is broad. "By defining unfair competition to include any '*unlawful* ... business act or practice' (*§ 17200*, italics added), the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." (*Kasky v. Nike, Inc., supra*, 27 Cal.4th at p. 949, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal. Rptr. 2d 548, 973 P.2d 527].)

**(3)** The Supreme Court has held that "[b]oth consumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights. Class actions and representative UCL actions make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage attorneys to undertake private enforcement actions. Through the UCL a plaintiff may obtain [***8] restitution and/or injunctive relief against unfair or unlawful practices in order to [*1497] protect the public and restore to the parties in interest money or property taken by means of unfair competition. These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts." (*Kraus v. Trinity Management Services, Inc., supra*, 23 Cal.4th at p. 126, fn. omitted.) "[A] court of equity may exercise the full range of its inherent powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved." (*People v. Superior Court* (1973) 9 Cal.3d 283, 286 [107 Cal. Rptr. 192, 507 P.2d 1400].)

**(4)** Thus, the UCL encompasses a broad range of activity, but provides only limited remedies: restitution and injunctive relief. It has become a common practice for plaintiffs asserting a UCL claim (whether or not in a consumer case) to seek "restitution" in order to invoke the court's broad equitable powers, even though the term "restitution" does not accurately describe the relief sought. The message of *Korea Supply* is that "in the UCL context ... restitution means the return of [***9] money to those persons from whom it was taken or who had an ownership interest in it." (*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 455 [30 Cal. Rptr. 3d 210].)

**(5)** The plaintiff in *Korea Supply* was a business that represented manufacturers of military equipment. It represented one such manufacturer in a deal with the government of the Republic of Korea that would have netted the plaintiff a commission of $30 million had its bid been accepted. The plaintiff alleged that it lost the contract to another bidder, Lockheed Martin, even though plaintiff's bid was lower and its product superior, because Lockheed Martin's agent had "offered bribes and sexual favors to key Korean officials." (*Korea Supply, supra*, 29 Cal.4th at p. 1140.) The plaintiff sued Lockheed Martin asserting claims for conspiracy to interfere with prospective economic advantage, intentional interference with prospective economic advantage, and unfair competition under the UCL. Even though the plaintiff had never paid the defendant any money, it sought "restitution" and disgorgement of the profits the defendant had received as the result of its wrongful conduct. The issue in *Korea Supply* was a narrow one: "whether disgorgement of profits [***10] that is not restitutionary in nature is an available remedy for an individual private plaintiff under the UCL." (*29 Cal.4th at p. 1144*.) The court rejected [**639] the plaintiff's contention that the equitable powers afforded a court under *section 17203* were broad enough to encompass nonrestitutionary disgorgement of profits to an individual. The court held that the only remedy expressly authorized by *section 17203* was restitution to individuals who had an ownership interest in money paid to the defendants; there was nothing, either in the express language of the statute or in its legislative history, to [*1498] indicate that the legislature intended to authorize a court to "order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits." (*29 Cal.4th at p. 1147*.) The court went on to explain: "The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants. First, it is clear that plaintiff is not seeking the return of money or property that was once in its possession. [Korea Supply] has not given any money to Lockheed Martin; instead, [***11] it was from the Republic of Korea that Lockheed Martin received its profits. Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." (*Korea Supply, supra*, 29 Cal.4th at p. 1149.) The court also found that the relief sought by

the plaintiff was not restitutionary in nature because it was not money in which the plaintiff had a vested interest: "[Korea Supply] itself acknowledges that, at most, it had an 'expectancy' in the receipt of a commission." (*Ibid.*)

**(6)** Nothing in the language of *Korea Supply* suggests that the Supreme Court intended to preclude consumers from seeking the return of money they paid for a product that turned out to be not as represented. Rather, the holding of *Korea Supply* on the issue of restitution is that the remedy the plaintiff seeks must be truly "restitutionary in nature"--that is, it must represent the return of money or property the defendant acquired through its unfair practices.

Several Court of Appeal cases have construed *Korea Supply* to prohibit claims for "restitution" that are not truly "restitutionary in nature." *Alch v. Superior Court (2004) 122 Cal.App.4th 339 [19 Cal. Rptr. 3d 29]* [\*\*\*12] involved 23 separate class action lawsuits filed by hundreds of television writers, all over the age of 40 and members of the Writers' Guild of America, against television networks, studios, production companies, and talent agencies, alleging the defendants had a pattern and practice of discriminating against the plaintiffs on the basis of age. The plaintiffs sought, among other things, restitution in the form of backpay. The plaintiffs conceded they had not actually been employed by the defendants (in fact, their claims were based on their having been denied employment), but they asserted the court had the equitable power to award them "nonrestitutionary" backpay to deter the defendants from engaging in wrongful conduct. The court found that the recovery sought by plaintiffs--"[b]ackpay to compensate persons discriminatorily refused employment"--was not restitutionary in nature and therefore not a remedy available to the plaintiffs. (*Id. at p. 407, fn. 79.*) [\*1499]

*Madrid v. Perot Systems Corp., supra, 130 Cal.App.4th 440*, involved a situation in which the plaintiff, on behalf of California electricity customers, sued, among others, a company that had designed a computer system it sold to "various [\*\*\*13] market participants for the purpose of cheating Californians out of billions of dollars" following the enactment of legislation [\*\*640] that deregulated the California electricity market. (*Id. at p. 446.*) The plaintiff alleged he was entitled to "restitution," "which he appear[ed] to define as any money defendants or their conspirators received." (*Id. at p. 453.*) Significantly, the plaintiff did not seek to recover alleged electricity overcharges the class members had paid. In fact, the plaintiff could not recover those funds because they were already the subject of a proceeding before the Federal Energy Regulatory Commission. The court in *Madrid* held that what the plaintiff was attempting to recover was not restitution--the return of property or funds in which the plaintiff has an ownership interest (or is claiming through someone with an ownership interest)--but rather nonrestitutionary disgorgement of wrongfully obtained profits, a remedy that was not available to plaintiff. (*Ibid.*)

In *Feitelberg v. Credit Suisse First Boston, LLC (2005) 134 Cal.App.4th 997 [36 Cal. Rptr. 3d 592]*, the plaintiffs, individual investors, claimed the defendant had issued biased stock reports designed to favor with large investment [\*\*\*14] banking clients. The reports contained "exaggerated or unwarranted claims" that precluded the plaintiffs from getting unbiased information that would allow them to have a sound basis for evaluating their investments. The plaintiff did not pay any money for the reports, but merely alleged they had been damaged as a result of the defendant's allegedly biased information.

Although Microsoft relied on these cases in support of its motion to strike, they do not support Microsoft's position. In *Alch*, *Madrid*, and *Feitelberg*, the plaintiffs never had any interest in the money they sought to recover. Here, plaintiff and the putative class members clearly had an ownership interest in the restitutionary relief sought because they purchased Microsoft's product.

**(7)** *Hirsch v. Bank of America (2003) 107 Cal.App.4th 708 [132 Cal. Rptr. 2d 220]* illustrates how, in appropriate circumstances, the plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly. The plaintiffs in *Hirsch* were property owners who, in the course of completing real estate transactions, deposited money with escrow and title companies, which in turn deposited the plaintiffs' funds in [\*1500] demand deposit accounts [\*\*\*15] with the defendant banks. Federal law prohibited the banks from paying interest on demand deposit accounts. However, there were other legal means by which the banks could reward these large depositors: awarding "earning credits" (applied against fees for normal banking services), or purchasing "monthly revolving credit facilities," which were securities that the banks purchased and liquidated at the end of each month, depositing the interest earned on the securities into separate accounts controlled by the title and escrow companies. The plaintiffs alleged that these payments were merely interest payments in disguise, and should have been paid to the plaintiffs instead of the escrow and title companies. The banks also charged the escrow and title companies a variety of fees to service the demand deposit accounts. These fees were "passed on to consumers as higher fees for separate services or higher fees for escrow services generally." (*Hirsch, at p. 721.*) The Court of Appeal held that the plaintiffs could not recover the "interest" payments as restitution, because they would not have been entitled to interest in the first place. However, the court

held that the plaintiffs had "stated [***16] a valid cause of action for unjust enrichment based on [the] Banks' unjustified charging and retention of excessive fees which the title companies [**641] passed through to them. [The] Banks received a financial advantage--excessive fees charged to the title companies--which they unjustly retained at the expense of [the plaintiffs], who absorbed the overage. To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution. (*County of Solano v. Vallejo Redevelopment Agency (1999) 75 Cal.App.4th 1262, 1278 [90 Cal. Rptr. 2d 41]*.)" (*Hirsch v. Bank of America, supra, 107 Cal.App.4th at p. 722*.) **(8)** The plaintiffs were entitled to relief under the traditional equitable principles of unjust enrichment, "upon a determination that under the circumstances and as between the two individuals, it is unjust for the person receiving the benefit to retain it. (*Rest., Restitution, § 1, com. c*., p. 13; *First Nationwide Savings v. Perry (1992) 11 Cal.App.4th 1657, 1663 [15 Cal. Rptr. 2d 173]*.)" (*Hirsch v. Bank of America, supra, 107 Cal.App.4th at p. 722*.)

Microsoft attempts to draw a distinction between *Hirsch* and this case on the basis that in *Hirsch*, the plaintiffs paid money into an escrow account in [***17] which they still had a legal interest, whereas here, plaintiff allegedly lost any ownership interest in his money once he used it to purchase Microsoft's product from a retailer. The UCL does not make such a distinction, however. It requires only that the plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means. Microsoft's argument is contrary to the plain language of the UCL and the Supreme Court's mandate that the UCL be interpreted broadly. [*1501]

**DISPOSITION**

The petition for writ of mandate is granted. A peremptory writ shall issue directing respondent court to vacate its order of October 16, 2006, granting Microsoft's motion to strike plaintiff's claim for restitution and enter a new and different order denying the motion. Costs of this proceeding are awarded to petitioner. [5]

> 5   Both parties have requested that we take judicial notice of orders made by superior courts throughout the state. The purpose of the requests is to demonstrate that there is a split among the trial courts on the issue presented in this case. Each side has submitted copies of court orders that they contend support its particular position. Although [***18] we may take judicial notice of the fact that these orders exist, the substance of the orders is not properly a matter for judicial notice. (See *Fremont Indemnity Co. v. Fremont General Corp. (2007) 148 Cal.App.4th 97, 113-114 [55 Cal. Rptr. 3d 621]*.) Accordingly, the requests for judicial notice are denied.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied October 1, 2007, the petition of real party in interest for review by the Supreme Court was denied December 19, 2007, S157482. Chin, J., and Corrigan, J., did not participate therein.