**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.: (510) 531-4529
Fax: (510) 531-4377

**ARBOGAST BOWEN LLP**
David M. Arbogast (SBN 167571)
david@arbogastbowen.com
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Tel.: (818) 961-2000
Fax: (818) 999-1500

– and –

Lee A. Weiss (Admitted *Pro Hac Vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Tel.: (516) 222-2900
Fax: (818) 999-1500

[*Additional counsel listed on signature page*]
Attorneys for Plaintiffs and the RBS Subclass

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY M. JORDAN, ELI GOLDHABER and JOSEPHINA GOLDHABER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL FINANCIAL, LLC, LUMINENT MORTGAGE CAPITAL, INC., HSBC BANK USA, N.A., AS TRUSTEE OF LUMINENT MORTGAGE TRUST 2006-2, RBS FINANCIAL PRODUCTS INC. and DOES 2 through 10 inclusive,<br><br>Defendants. | CASE NO. C-07-04496-SI<br><br>CLASS ACTION<br><br>[Assigned to Hon. Susan Illston]<br><br>**CLASS REPRESENTATIVES' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS TO CLASS REPRESENTATIVES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          9:00 A.M.<br>Time:         November 15, 2013<br>Courtroom:  10 – 19th Floor<br>Judge:        Hon. Susan Illston |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 2

II.   HISTORY OF LITIGATION ............................................................................ 3

    A.   Summary of the Case and Procedural History .............................................. 3

    B.   Discovery Proceedings .................................................................................. 4

    C.   Class Certification and Summary Judgment Motions ................................... 4

    D.   Settlement Negotiations, Mediation and Settlement ..................................... 6

III.   ARGUMENT ................................................................................................... 7

    A.   The Court Should Approve the Fees and Costs Application as Fair and Reasonable ..................................................................................................... 7

        1.   The Percentage-of-the-Recovery Method is the Appropriate Basis for Determining Attorneys' Fees for the Settlement ................................ 7

        2.   The Fees and Costs Award Sought Herein is Reasonable as a Percentage of the Settlement Fund ...................................................... 7

            a.   Results Achieved ................................................................... 8

            b.   Quality of Work Performed ................................................ 10

            c.   Skill Required ..................................................................... 11

            d.   Risks of Litigation .............................................................. 12

            e.   Contingent Nature of the Fee .............................................. 15

        3.   A Lodestar Cross-Check Easily Supports the Reasonableness of the Requested Reward ............................................................................ 16

    B.   The Court Should Approve the Proposed Service Awards to Class Representatives ... 17

IV.   CONCLUSION ............................................................................................. 19

---

Motion for Award of Attorneys' Fees and Costs, and Service Awards
C-07-04496-SI

# TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Craft v. Cnty. of San Bernardino*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...................................................... 16

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................................... 7, 17

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ........................................................................ 9

*Hughes v. Microsoft Corp.*
    Case Nos. C98-1646C, C93-0179C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001)......... 17

*In re Activision Sec. Litig.*
    723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................... 10

*In re Bluetooth Headset Prod. Liability Litig.*
    654 F.3d 935 (9th Cir. 2011) ........................................................... 7, 16

*In re Brand Name Prescription Drugs Antitrust Litig.*
    186 F.3d 781 (7th Cir. 1999) ............................................................ 14

*In re Equity Funding Corp. of Am. Sec. Litig.*
    438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................... 12

*In re Lorazepam & Chlorazepate Antitrust Litig.*
    205 F.R.D. 369 (D.D.C. 2002)........................................................... 17, 18

*In re Lorazepam & Chlorazepate Antitrust Litig.*
    Case Nos. MDL 1290 (TFH), 99MS276 (TFH), Civ. 99-0790 (TFH), 2003 WL 22037741
    (D.D.C. June 16, 2003) .................................................................. 15

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ...................................................... 10, 17, 18

*In re Pacific Enterprises Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995) ............................................................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    Case No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. April 3, 2013)........................ 18

*In re Wachovia Corp. "Pick-a-Payment" Mortg. Mktg. and Sales Pract's Litig.*
    Case No. 5:09-md-02015-JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011) ................... 18

*In re Washington Public Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ....................................................... 7, 8, 15

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ........................................................... 9

ii

**TABLE OF AUTHORITIES (cont'd)**

PAGE

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*
    708 F.2d 1081 (7th Cir. 1983) ................................................................ 14

*Nichols v. SmithKline Beecham Corp.*
    Case No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ..................... 9

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ................................................................ 8

*Presley v. Carter Hawley Hale Profit Sharing Plan*
    Case No. C9704316SC, 2000 WL 16437 (N.D. Cal. Jan. 7, 2000)......................... 18

*Six (6) Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) .............................................................. 8

*United States Football League v. National Football League*
    644 F. Supp. 1040 (S.D.N.Y. 1986)......................................................... 15

*Van Vraken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 18

*Vasquez v. Coast Valley Roofing, Inc.*
    266 F.R.D. 482 (E.D. Cal. 2010) ............................................................ 8

*Vizcaino v. Microsoft Corp.*
    142 F. Supp. 2d 1299 (W.D. Wash. 2001).............................................. 12, 13, 16

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) .............................................. 8, 10, 15, 16, 17

**STATE CASES**

*Boschma v. Home Loan Ctr., Inc.*
    198 Cal. App. 4th 230 (2011) ............................................................... 14

*Rebney v. Wells Fargo Bank*
    220 Cal. App. 3d 1117 (1990) ............................................................... 9

*Wershba v. Apple Computer, Inc.*
    91 Cal. App. 4th 224 (2001) ............................................................. 9, 16

**STATUTE**

Cal. Bus. & Prof. Code § 17203 ................................................................ 13

### NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND SERVICE AWARDS TO CLASS REPRESENTATIVES

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on November 15, 2013 at 9:00 a.m., Class Representatives Eli Goldhaber and Josephina Goldhaber ("Class Representatives") will bring on for hearing before the Honorable Susan Illston, United States District Judge, in Courtroom 10, at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, this Motion for Award of Attorneys' Fees and Costs, and Service Awards to Class Representatives.

The motion seeks an order: (1) awarding attorneys' fees and litigation costs to Class Counsel in the amount of $437,500.00 pursuant to section III(F) of the proposed Settlement Agreement (the "Settlement Agreement") between Class Representatives, on behalf of themselves and the RBS Subclass, and Defendant RBS Financial Products Inc. ("RBS," and collectively with Class Representatives as the "Parties"); and (2) awarding service awards in the amount of $5,000.00 to each of the Class Representatives pursuant to section III(C)(1) of the Settlement Agreement for their time and effort devoted to representing the RBS Subclass's interests.[1]  A proposed form of Order awarding the proposed relief is submitted herewith.

For the reasons set forth in the attached Memorandum of Points and Authorities, Class Representatives respectfully submit that the Court should award the proposed attorneys' fees and litigation costs to Class Counsel and the proposed service awards to Class Representatives.

This Motion is based on the Notice of Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Jeffrey K. Berns ("Berns Decl."); the pleadings, orders, transcripts, and other papers on file in this matter; and any further evidence and arguments as may be presented at the hearing of this matter.

---

[1] Capitalized terms herein shall have the same meaning as in the Settlement Agreement, which is attached as Exhibit A to the Declaration of Jeffrey K. Berns (Dkt. 427-1) filed on May 2, 2013.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3  By this motion, Class Representatives herein request the Court to approve a combined award of
4  attorneys' fees and litigation costs in the amount of $437,500.00 to Class Counsel, and service awards in
5  the amount of $5,000.00 to each of the Class Representatives.

6  The request for attorneys' fees and costs to be awarded as a percentage of the total Settlement
7  Amount is supported by well-established Ninth Circuit precedent. The proposed $437,500.00 award is
8  25% of the $1,750,000.00 Settlement Proceeds under the Settlement Agreement. Because the requested
9  amount includes expenses, and thus, is less the Ninth Circuit's attorneys' fee benchmark of 25% of the
10 common fund, it is, therefore, presumptively appropriate and particularly justified under the
11 circumstances of this litigation and proposed settlement. The proposed award recognizes Class
12 Counsel's extensive efforts over four years of litigation against RBS that have resulted in a recovery of
13 over $1,750,000.00 for the RBS Subclass in the face of significant risks that could have resulted in, and
14 still could if settlement is not approved, far lower or even no recoveries for individual RBS Subclass
15 Members. Moreover, the proposed fees and costs award is also supported when applying the lodestar
16 and multiplier methodology. As delineated below, Class Counsel's substantial work was necessary to
17 achieve this result and the resulting fractional multiplier of less than 25% of lodestar is more than fair
18 and reasonable in light of the result Class Counsel have achieved on behalf of the RBS Subclass, the
19 complex nature of this litigation, and the high degree of risk that Class Counsel assumed in undertaking
20 and litigating this action. The proposed Settlement Agreement provides real and immediate cash relief
21 for individual RBS Subclass Members, the vast majority of whom, but for this litigation, would have
22 received nothing for their legal claims in this action. Thus, Class Representatives' request for attorneys'
23 fees and litigation costs in the amount of $437,500.00 is fair and reasonable, and should be approved.

24 So too should the Court approve the proposed service awards of $5,000.00 to each of the Class
25 Representatives for their efforts in representing the RBS Subclass and enabling the substantial recovery
26 under the Settlement Agreement. The proposed awards each represent .29% of the Settlement Amount,
27 and are far lower than awards to class representatives that this Court and others have approved. In light

28

2

of the substantial efforts that the Class Representatives have devoted as representatives of the RBS Subclass for over four years, including answering all of Class Counsel's queries, producing documents, responding to written discovery, and appearing for depositions, the proposed service awards of $5,000.00 to each Class Representative are imminently reasonable in the context of this Settlement Agreement and therefore should be approved.

## II.      HISTORY OF LITIGATION

### A.      Summary of the Case and Procedural History

This action concerns Option Adjustable Rate Mortgage loans ("Option ARM loans") RBS acquired from Defendant Paul Financial, LLC ("Paul Financial"), which were originated using mortgage notes with the following characteristics: (i) the yearly numerical interest rate listed on page one of the Note is 3.0% or less; (ii) in the section entitled "Interest," the Promissory Note states that this rate "may" instead of "will" or "shall" change, (e.g., "The interest rate I will pay may change"); (iii) the yearly numerical interest rate listed on page one of the Note was only effective through the due date for the first monthly payment and then adjusted to a rate which is the sum of an "index" and "margin;" and (iv) the Note does not contain any statement that paying the amount listed as the "initial monthly payment(s)," will definitely result in negative amortization or deferred interest. Class Representatives allege claims for fraudulent omissions and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*, because the relevant loan documents allegedly failed to make adequate disclosures regarding the loans' potential for negative amortization, the interest rates used to compute the disclosed monthly payment schedules, and the full terms of borrowers' legal obligations. Fourth Amended Complaint (Dkt. No. 237), ¶¶82-117.

On August 30, 2007, after an extensive investigation by Class Counsel (Berns Decl., ¶¶2-3), Plaintiffs filed the initial complaint in this matter (the "Action") against Paul Financial and Doe defendants. The complaint in the Action was subsequently amended multiple times to, among other things, add Eli Goldhaber and Josephina Goldhaber as plaintiffs and add Luminent Mortgage Capital, Inc., HSBC Bank USA, N.A., as Trustee of Luminent Mortgage Trust 2006-2, and RBS as defendants. The operative complaint is the Fourth Amended Complaint (the "Complaint"), filed on or about October

7, 2009, which alleges three causes of action: (1) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; (2) fraudulent omissions; and (3) unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* , (Dkt. No. 237) on behalf of the Class Representatives and, in relevant part, a subclass of all individuals who, within the four-year period before the filing of Plaintiffs' original complaint through the date that notice is mailed, obtained an Option ARM loan with certain characteristics from Paul Financial that was later assigned to RBS, and which was secured on their home located in the State of California or on their home located outside the State of California where the loan was approved in or disseminated from California. On September 30, 2010, the Court granted RBS's motion to dismiss the Complaint in part, dismissing Plaintiffs' TILA claims as time barred, dismissing the "unlawful" prong of Plaintiffs' business practices claim, and denying the motion as to the fraudulent omissions claim and Plaintiffs' remaining UCL claims. (Dkt. No. 295.) On July 27, 2011, pursuant to a stipulation, the Court ordered the dismissal of defendants HSBC Bank USA, N.A. and the Luminent Mortgage Trust 2006-2 with prejudice. (Dkt. No. 385.) Berns Decl., ¶4.

## B.  **Discovery Proceedings**

Between October 2009 and April 2013, Class Representatives served two sets of interrogatories and requests for production of documents on RBS. Class Representatives also responded to one set of interrogatories, requests for production of documents, and requests for admission from RBS. In addition to this written discovery, Defendants deposed each of the Class Representatives and Class Counsel deposed representatives of RBS and Paul Financial. *Id.*, ¶12.

## C.  **Class Certification and Summary Judgment Motions**

On March 18, 2011, the Class Representatives filed a motion to certify the class, and on April 7, 2011, RBS filed a motion for summary judgment arguing, *inter alia*, that Class Representatives lacked standing because they failed to list this Action in their schedule of assets in a Chapter 7 bankruptcy proceeding, *In re Eli Goldhaber – Josephina Goldhaber*, 2:10-BK-20052-RN, United States Bankruptcy Court, Central District of California – Los Angeles Division ("Bankruptcy Action"). *Id.*, ¶5.

To address the standing issue, the Class Representatives successfully reopened the Bankruptcy Action in May 17, 2011, and amended their schedule of assets to include this Action. The Class Representatives also obtained a stipulation, which was approved by the Bankruptcy Court on May 25, 2011, whereby the bankruptcy trustee authorized the Class Representatives to prosecute the claims on behalf of the bankruptcy estate in this Action. Berns Decl., ¶6.

In June and July 2011, after briefing on Class Representatives' class certification motion and RBS's motion for summary judgment was complete, RBS attempted to settle the claims in this action directly with the bankruptcy trustee. After a status conference on July 13, 2011, at which the Court "determined that the parties [should] proceed with any issues regarding the trustee settlement in the Bankruptcy Court" (Dkt. No. 382), Class Counsel worked with the Class Representatives' bankruptcy counsel and prevailed on a motion in the bankruptcy court to enforce the stipulation Class Counsel had previously negotiated with the bankruptcy trustee that allowed Class Counsel and the Class Representatives to continue to pursue this litigation on behalf of the Class. *Id.*, ¶7.

Due to the above-described issues related to the Bankruptcy Action, the hearing on Class Representatives' class certification motion and RBS's motion for summary judgment was continued several times and ultimately took place on December 2, 2011. Pursuant to the Court's request, on December 5 and 7, 2011, the Parties filed supplemental documents regarding additional authority supporting Class Representatives' class certification motion and RBS's sale of Class Representatives' loan. *Id.*, ¶8.

On August 23, 2012, the Court entered an Order denying RBS's motion for summary judgment and granting the Class Representatives' motion (the "Class Certification Order"). *Id.*, ¶9. On September 26, 2012, the Court certified the following class and subclass (the "Class Definition Order"):

**The Class**
All individuals who within the four-year period preceding the filing of Plaintiffs' original complaint through the date that notice is mailed to the Class (the "Class Period"), obtained an Option ARM loan from Paul Financial, LLC that either (a) was secured by real property located in the State of California, or (b) was secured by real property located outside the State of California where the loan was approved in or disseminated from California, which loan had the following characteristics: (i) the yearly numerical interest rate listed on page one of the Note is 3.0% or less; (ii) in the section entitled "Interest," the Promissory Note states that this rate "may" instead of "will" or "shall"

5

change, (e.g., "The interest rate I will pay **may** change"); (iii) the yearly numerical interest rate listed on page one of the Note was only effective through the due date for the first monthly payment and then adjusted to a rate which is the sum of an "index" and "margin;" and (iv) the Note does not contain any statement that paying the amount listed as the "initial monthly payment(s)," will definitely result in negative amortization or deferred interest. Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

**The RBS Subclass**

All members of the Class whose Option ARM loans were sold or otherwise assigned by Paul Financial, LLC to RBS Financial Products Inc.

Additionally, the Class Definition Order appointed Eli Goldhaber and Josephina Goldhaber as representatives of the Class and RBS Subclass, and appointed the law firms of Berns Weiss LLP, Smoger & Associates, Arbogast Bowen LLP, and Spiro Moore LLP as counsel for the Class and RBS Subclass (collectively, "Class Counsel"). Berns Decl., ¶10.

**D.  Settlement Negotiations, Mediation and Settlement**

On February 7, 2013, counsel for the Parties participated in a mediation session with Professor Eric Green of Resolutions, LLC. Following the submission of lengthy mediation briefs, and after a full-day's mediation, the Parties reached an agreement in principle to settle the claims brought in the Action against RBS. *Id.*, ¶13. After extensive negotiation of the final terms of the settlement over 11 weeks, the Parties entered into the Settlement Agreement that provides all RBS Subclass Members with a cash payout.  *Id.* RBS has and continues to deny the allegations of the Complaint, and denies that the Class Representatives have been harmed by any act or omission of RBS. But the Parties agree that it is in their best interests to compromise the claims raised by the Complaint and to end the litigation due to their desire to avoid the expense, delay and risks of continued litigation, including motion practice and trial, and they desire to compromise the claims of the RBS Subclass against RBS, upon the terms and conditions set forth in the Settlement Agreement. *Id.*

Under the terms of the Settlement Agreement, the Parties have agreed to settle the action for a payment of $1,750,000.00 that will be used to fund the settlement. Ten (10) calendar days after the Preliminary Approval Order, RBS established a Settlement Fund, which was initially funded with $20,000.00 for payment of the expenses of the Settlement Administrator to cover all costs associated with the sending of notice and other communications to RBS Subclass Members, the costs of drafting of

checks, the cost of sending all payments to RBS Subclass Members, and all other costs incurred by the

Settlement Administrator arising from the administration of the Settlement. The Settlement

Administrator agreed to cap its fee at $20,000.00 for its services and these costs. Berns Decl., ¶¶14-15.

## III.   ARGUMENT

### A.   The Court Should Approve the Fees and Costs Application as Fair and Reasonable.

#### 1.   The Percentage-of-the-Recovery Method is the Appropriate Basis for Determining Attorneys' Fees for the Settlement.

Here, the attorneys' fees and costs award should be based on a percentage of the total Settlement

Proceeds since the Settlement Agreement provides entirely for monetary relief to be paid to the RBS

Subclass. As the Ninth Circuit recently explained, "[b]ecause the benefit to the class is easily quantified

in common-fund settlements, we have allowed courts to award attorneys a percentage of the common

fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth Headset*

*Prod. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Although the Court has discretion to utilize either the percentage-of-the-fund or the lodestar

method for awarding attorneys' fees and costs, *In re Washington Public Power Supply Sys. Sec. Litig.*

("*In re WPPSS*"), 19 F.3d 1291, 1295 (9th Cir. 1994), the better exercise of the Court's discretion here

would be to utilize the percentage method because the Settlement Agreement's sole provision of

monetary relief makes settlement valuation and application of the percentage method a more straight-

forward undertaking. *Compare In re Bluetooth*, 654 F.3d at 942 ("[T]he benefit to the class is easily

quantified in common-fund settlements . . . ."); *with Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th

Cir. 1998) ("We note, however, that the [district] court rejected the idea of a straight percentage

recovery because of its uncertainty as to the valuation of the settlement."). Since the Settlement

Agreement here has a certain and readily determinable value, the percentage-of-the-fund method is the

most appropriate basis for awarding attorneys' fees and costs.

#### 2.   The Fees and Costs Award Sought Herein is Reasonable as a Percentage of the Settlement Fund.

The proposed attorneys' fees and expenses reimbursement award of $437,500.00 represents

exactly 25% of the $1,750,000.00 Settlement Proceeds. Because the amount sought includes

7

reimbursement of expenses, it is the less than the benchmark of 25% for attorneys' fees, exclusive of costs, commonly used by the Ninth Circuit, and thus falls well within the range of reasonableness recognized in this Circuit. *See*, *e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("Ordinarily, however, such fee awards range from 20 percent to 30 percent of the fund created. We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.") (quoting *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 692 (M.D. Ala. 1988)); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("In *Graulty*, we established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases.").

Although the Ninth Circuit's 25% benchmark is only a "starting point for analysis," *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("*Vizcaino II*"), and must be applied by making "reference to all the circumstances of the case[,]", *In re WPPSS*, 19 F.3d at 1298, the circumstances of this litigation and proposed Settlement Agreement strongly support making the 25% benchmark both the starting and ending point of the analysis of an appropriate fee and cost award.

"When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved; (b) the risk of litigation; (c) the skill required; (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing *Vizcaino II*, 290 F.3d at 1047, and *Six Mexican Workers*, 904 F.2d 1301). All of these factors strongly support the proposed 25%, or $437,500.00, fees and costs award here.

### (a)      Results Achieved

The results achieved in this extremely high-risk litigation are excellent. The Settlement Agreement creates a $1,750,000.00 settlement fund from which all RBS Subclass Members who do not opt out will receive an equal distribution. Settlement Agreement, § III(C)(1) and (D). This is a substantial recovery for the RBS Subclass as a whole and the nearly 3,800 individual RBS Subclass Members. *See* Berns Decl., ¶¶11, 14, 17. In assessing the results achieved through a class action settlement for purposes of awarding attorneys' fees and costs, courts have compared "the present value

of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing with the amount of the proposed settlement." *Nichols v. SmithKline Beecham Corp.*, Case No. Civ.A.00-6222, 2005 WL 950616, at *15 (E.D. Pa. Apr. 22, 2005) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod's Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (quoting *Manual for Complex Litigation* 2d (1985) § 30.44)). The Court must "recognize that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and guard against demanding too large a settlement . . . ." *Id.* (internal quotations omitted).

Moreover, a settlement is not judged against what might have been recovered had the plaintiff prevailed at trial; nor does the settlement need to provide anywhere near 100% of the damages sought to be fair and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 246 and 250 (2001); *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1139 (1990). "Compromise is inherent and necessary in the settlement process . . . . [E]ven if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation." *Wershba*, 91 Cal. App. 4th at 250 (citing *Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.,* 455 F.2d 101, 109 (7th Cir. 1972)). Ultimately, Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained").

Here, the relief obtained by the Settlement Agreement is substantial in light of the obstacles the litigation presented and thus strongly supports the proposed 25% fees and costs award. Indeed, Class Counsel filed this case in the absence of any supporting precedent and faced substantial risks in pursuing the litigation against RBS for over four years, including risks associated with RBS's threats to seek decertification, as well as risk associated with the RBS Subclass's ability to obtain restitution under the UCL for the undisclosed or inadequately disclosed negative amortization at the heart of the RBS Subclass's UCL claims. Berns Decl., ¶¶20-24.  In the face of these risks, the Settlement Agreement's recovery of $1,750,000.00 represents a substantial, if not extraordinary, result.

Under similar circumstances, the Ninth Circuit has upheld awards in excess of its 25% benchmark. *See Vizcaino II*, 290 F.3d at 1046-50 (affirming district court's award of 28% of a $96,885,000.00 class action settlement fund ($27,127,800.00) for attorneys' fees, finding that class counsel had "pursued this case in the absence of supporting precedents" and in the face of other serious obstacles, and compiling list of 34 other cases in which courts approved awards of attorneys' fees that were equal to or greater than 25% of settlement funds ranging from $50,000,000.00 to $200,000,000.00). As in *Vizcaino*, Class Counsel undertook representation in this litigation in the absence of controlling or supporting precedents and in the face of significant risks (discussed in more detail below). *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33 1/3% of the fund); *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (awarding fees equivalent to 32.8% of the settlement fund).

### (b)   Quality of Work Performed

Throughout the course of the litigation, the quality of the legal work performed by Class Counsel has been of the highest caliber and quality.

### (i)   Investigation and Development of Facts

From the outset, Class Counsel undertook substantial effort to develop the facts to support a convincing case. Before the initial complaint was filed, Class Counsel began investigating what claims, if any, could be properly alleged on behalf of Class Representatives and putative class members. Berns Decl., ¶¶2-3. These issues, which would play out through both the extensive Rule 12(b)(6) and Rule 23 litigation, first arose in connection with Class Counsel's thorough analysis of RBS's acquired loans, including the relevant disclosure documents, and of the applicable federal and state laws governing the liability of both mortgage loan originators and the subsequent purchasers of mortgage loans.

Class Representatives also sought extensive written and deposition discovery in the case. For example, Class Representatives served two sets of written discovery on RBS, resulting in the production of tens of thousands of pages of documents. Berns Decl., ¶12. Class Representatives also responded to one set of interrogatories, requests for production of documents, and requests for admission from RBS.

1    In addition to this written discovery, Class Representatives were each deposed and Class Counsel

2    deposed representatives of RBS and Paul Financial. *Id.*

3                          **(ii)    Extensive Motion Practice**

4          The motion practice and briefing in this litigation have been extensive. Class Representatives and

5    Class Counsel were able to successfully defend against RBS's motion to dismiss, thereby preserving

6    significant portions of Class Representatives' original claims. *Id.*, ¶4. After successfully fending off

7    RBS's Rule 12(b)(6) motion, Class Representatives successfully moved for class certification and

8    successfully opposed RBS's motion for summary judgment in which RBS argued, *inter alia*, that Class

9    Representatives lacked standing because they failed to list this Action in their schedule of assets in a

10   Chapter 7 bankruptcy proceeding. *Id.*, ¶5. To address the issue of the Class Representatives' standing,

11   and to prevent an individual settlement between RBS and Class Representatives' bankruptcy trustee,

12   Class Counsel worked with the bankruptcy counsel and prevailed on a motion in the bankruptcy court to

13   enforce a stipulation Class Counsel has previously negotiated with the Class Representatives'

14   bankruptcy trustee that allowed Class Counsel and Class Representatives to continue to pursue this

15   litigation on behalf of the RBS Subclass.  *Id.*, ¶¶6-8.

16                         **(iii)   Settlement Negotiations**

17         Class Counsel's successes throughout the foregoing stages of litigation, spanning over four years

18   from the filing of the Complaint to the date of the settlement agreement, brought RBS to the settlement

19   table earlier this year. The Parties held a day-long mediation session with Professor Eric Green of

20   Resolutions, LLC, Berns Decl., ¶13, and then spent 11 weeks finalizing the settlement after it had been

21   agreed to in principal.  In preparation for the settlement negotiations, Class Counsel prepared and

22   presented detailed internal evaluations and/or submissions analyzing the evidence against the RBS and

23   potential damages/restitution computations. *Id.*

24              **(c)    Skill Required**

25                          **(i)    Complexity and Difficulty of the Issues**

26         This is a novel, complex case that has required Class Counsel to confront the many difficult legal

27   and factual issues set forth herein. These include the federal and state legal frameworks for establishing

28

                                            11

secondary liability in cases like this where the subsequent purchaser of mortgage loans, rather than the loan originators, is the driving force behind the predatory and deceptive lending practices being challenged, and the difficult and disputed question of whether negative amortization incurred as a result of disclosed but artificially low monthly mortgage payments constitutes available restitution under the California UCL. *See* Berns Decl., ¶¶21-24.

Courts have recognized that the novelty and difficulty of issues in a case are significant factors to be considered in making a fee award. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001) ("*Vizcaino I*"). Here, Class Representatives and Class Counsel have achieved significant successes in litigating these issues to date, which have resulted in the substantial monetary relief provided to the RBS Subclass under the Settlement Agreement. Class Counsel's successes on these difficult and complex litigation issues weigh strongly in favor of the proposed fees and costs award, which represents less than the Ninth Circuit benchmark of 25% of the available settlement fund for fees alone.

### (ii)     High Caliber of Opposing Counsel

The caliber of opposing counsel is another important factor in assessing the quality of Class Counsel's representation of the RBS Subclass. *See, e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1303; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1336-37 (C.D. Cal. 1977). Here, Class Counsel was opposed by attorneys from a well-regarded law firm who were representing a sophisticated client. Despite facing such heavily funded adversaries, Class Counsel achieved an outstanding result for the RBS Subclass by virtue of the Settlement Agreement's $1,750,000.00 settlement fund and the cash benefits provided therein for nearly 3,800 RBS Subclass Members. Class Counsel's achievement of this result against highly skilled opposing counsel backed by massive resources likewise supports the 25% fees and costs award sought herein.

### (d)     Risks of Litigation

Risk is likewise an important factor in assessing the fairness and reasonableness of a class action settlement fee and cost award. *See, e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1303-04. Indeed, courts in the Ninth Circuit have recognized that a high risk factor is one reason for increasing attorneys' fee awards

above the 25% benchmark in common fund cases. *Id.*; *see also In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% of common fund as attorneys' fees was fair and reasonable because of the complexity of issues and risks of litigation). In *Vizcaino I*, the district court found that the case was extremely risky for class counsel to pursue because of negative facts, a lack of controlling law, and opposing counsel's vigorous defense of the case. 142 F. Supp. at 1303. The court further found that class counsel's risk was even greater, and their work made more difficult, because the defendant (Microsoft) was one of the nation's largest and most formidable companies and it, and several law firms, defended the case vigorously for years on end. *Id.* Class Counsel here faced many of these same risks, including, but not limited to, the following substantive litigation risks.

### (i)      Risk of Not Establishing Claim or Liability

Although the loan documents did not disclose the material facts that the scheduled monthly payments for up to the first five years of the loan were based on a teaser interest rate that applied for only one month and that the loans therefore were certain to negatively amortize at these payment amounts, the loan documents did disclose the fact that the scheduled payment amount *could* be less than the accrued interest and that, if this occurred, then the difference would be added to the loan's principal balance (*i.e.* the loan would negatively amortize). Berns Decl., ¶21. Class Representatives and Class Counsel steadfastly maintain that the difference between *could* and *will* is critical with respect to incurring indebtedness secured by one's home. *Id.* Nevertheless, there has been since the outset of this litigation, and continues to be, a distinct possibility that a fact-finder or a reviewing appeals court could determine otherwise that the disclosures and omissions do not rise to the level of deceptiveness that is required to support violations under the different prongs of the UCL.

### (ii)      Risk as to Measure and Amount of UCL Restitution

Another risk throughout this litigation that cannot be dismissed as insubstantial pertains to the measure of available restitution to Class Representatives and RBS Subclass Members under the UCL. As to the UCL claims, RBS Subclass Members are entitled only to restitution of money or property "which may have been acquired by means of" Defendants' unfair competition. Cal. Bus. & Prof. Code § 17203. Class Representatives' restitution theory is that the negative amortization and interest thereon

1   that they and RBS Subclass Members paid or incurred, and all payments they made to avoid negative

2   amortization, constitute money or property that RBS may have acquired by means of their unlawful and

3   deceptive lending practices in concealing the certainty of incurring these costs. Berns Decl., ¶23.

4   However, one published state appeals court decision, *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App.

5   4th 230 (2011), has questioned the premise of this theory that negative amortization on Option ARM

6   loans constitutes a loss of money when it comes about through purportedly "lower" monthly payments.

7   *Id.* at 251. Admittedly, *Boschma*'s discussion arises in an assessment of common law fraud damages that

8   is *dicta* inasmuch as the court did not dismiss that claim, is not controlling law in any event, and is

9   highly suspect even on its own terms because it ignores the fact that the purportedly "lower" monthly

10  payments are the only payment amounts disclosed (while the certainty of negative amortization caused

11  by these payments is omitted). Berns Decl., ¶23. Nonetheless, Class Representatives and Class Counsel

12  again cannot turn a blind eye to the fact that this published appellate authority creates some risk that

13  their Class-wide restitution theory under the UCL still may not be accepted by this Court or an appeals

14  court, and thus that RBS Subclass Members may be found not to be entitled to substantial or even any

15  restitution under the UCL.

16      Moreover, and more importantly, as RBS only held the loans for a short period of time, and did

17  not service the loans at all, it did not collect any negative amortization and the amount of negative

18  amortization that accrued or was paid while RBS held the loans was modest.  The results obtained

19  despite these formidable threats are extremely favorable to the RBS Subclass and support the fees and

20  costs sought here.

21          **(iii)   Risk of Going to Trial**

22      Going to trial in any case is a risk. The records of federal courts are filled with complex cases

23  such as this one that have gone to trial and ended up being unsuccessful. *See, e.g.*, *In re Brand Name*

24  *Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 785-87 (7th Cir. 1999), *cert. denied*, 528 U.S. 1181

25  (2000) (affirming, in substantial part, a directed verdict during a trial held after plaintiffs obtained

26  reversal of summary judgments against defendant prescription drug manufacturers); *MCI Commc'ns*

27  *Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166-69 (7th Cir. 1983), *cert. denied*, 464 U.S. 891 (1983)

28

1   (remanding substantial antitrust judgment for new trial and damages determination); *United States*

2   *Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986), *aff'd*, 842 F.2d

3   1335, 1377 (2d Cir. 1988), *cert. denied*, 493 U.S. 1071 (1990) (antitrust trial resulting in liability verdict

4   for plaintiff and award of $1 in damages subject to trebling).

5         In sum, in light of the uncertainties of any protracted litigation and the specific risks pertaining to

6   liability, class certification, and the measure of any available restitution under the UCL that have been

7   present since the inception of, and throughout, this litigation, Class Counsel's undertaking to represent

8   the RBS Subclass and in confronting these risks head-on and with great success to date should be

9   considered to weigh strongly in favor of the proposed attorneys' fee and cost award in the benchmark

10   amount of 25% of the common fund obtained under the Settlement Agreement.

11                **(e)**     **Contingent Nature of the Fee**

12         The Ninth Circuit has confirmed that a fair fee award must include consideration of the

13   contingent nature of the fee where there is no assurance of attorneys' fees or reimbursement of expenses.

14   *See, e.g.*, *Vizcaino II*, 290 F.3d at 1049-50 (approving award of 28% of $96,885,000.00 settlement fund

15   based in part upon finding that "counsel's representation of the class-on a contingency basis-extended

16   over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forego

17   significant other work, resulting in a decline in the firm's annual income. These burdens are relevant

18   circumstances."). Attorneys' fee award must be sufficient to encourage skilled and determined counsel

19   to take on difficult cases and see them through years of litigation to a fair and adequate resolution for the

20   plaintiffs. *See, e.g.*, *In re Lorazepam & Chlorazepate Antitrust Litig.*, Case Nos. MDL 1290 (TFH),

21   99MS276 (TFH), Civ. 99-0790 (TFH), 2003 WL 22037741, at *8 (D.D.C. June 16, 2003). As the Ninth

22   Circuit has recognized:

23           It is an established practice in the private legal market to reward attorneys for taking the
        risk of non-payment by paying them a premium over their normal hourly rates for

24           winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at
        534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the

25           services if rendered on a non-contingent bass are accepted in the legal profession as a
        legitimate way of assuring competent representation for plaintiffs who could not afford to

26           pay on an hourly basis regardless whether they win or lose.

27   *In re WPPSS*, 19 F.3d at 1299.

28

15

The commencement of a class action is no guarantee of success. Class Counsel have received no compensation during the four year course of the litigation against RBS and have incurred well over $2 million in attorney and paralegal time and over $100,000 in expenses while litigating for the benefit of the RBS Subclass. Berns Decl., ¶¶26-27. Any fee award or reimbursement of expenses for Class Counsel has always been a substantial risk, *id.*, ¶¶20-24, and ultimately any award still is within the Court's discretion. Here, despite the many risks faced, Class Counsel committed their financial and human resources to litigating this case and achieved a successful result for the substantial benefit of the RBS Subclass.

### 3.     A Lodestar Cross-Check Easily Supports the Reasonableness of the Requested Reward.

Even in common fund cases like this one where a percentage-based award is readily determinable with straight-forward calculations, a lodestar cross-check may help a court in determining whether a proposed percentage award is reasonable in light of all circumstances of a case. As the Ninth Circuit has explained, "[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino II*, 290 F.3d at 1050. Although "the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*; *see also In re Bluetooth*, 654 F.3d at 944 ("[W]e have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method.").

Here, a lodestar cross-check of the requested fee award yields a fractional multiplier of less than 25%. *See* Berns Decl., ¶26 (total hourly fee before multiplier exceeds $2 million). Moreover, Class Counsel are continuing, and will continue, to dedicate significant time to the case throughout the final approval and administration process. In the Ninth Circuit and elsewhere, courts regularly approve percentage-based awards where the lodestar cross-check yields a multiplier of three (3.0) or far more. *See*, *e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1305-06 (approving 3.67 lodestar multiplier for percentage-based fee award); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving an award that "will result in a multiplier of approximately 5.2"); *see generally Wershba*,

16

*supra*, 91 Cal. App. 4th at 255 ("Multipliers can range from 2 to 4, or even higher."); *Vizcaino II*, 290 F.3d at 1052 Appendix (compiling 34 common fund cases with percentage-based fee awards and funds ranging from $50,000,000.00 to $200,000,000.00 where lodestar cross-check resulted in multiplier of 2.0 or more in half of the cases and 3.0 or more in a fourth of the cases). Thus, the fractional multiplier here easily supports the requested fee award.

Here, an award of $437,500.00 representing 25% of the common fund, inclusive of costs, and a lodestar multiplier of less than 25% based on hours of work performed to date, is more than reasonable under either of these measures for determining fee and cost awards in class action litigation. The fact that the final lodestar multiplier will be even lower after Class Counsel performs all of the necessary additional work to secure final approval and implementation of the Settlement Agreement only further underscores the reasonableness of the proposed award. Berns Decl., ¶29. *See generally Hanlon*, 150 F.3d at 1029 (affirming fee award where class counsel "must remain available to enforce the contractual elements of the settlement agreement and represent any class members who encounter difficulties").

For all of the reasons set forth, whether measured as a percentage of the common fund under the Settlement Agreement or on a lodestar basis, the proposed attorneys' fee and cost award of $437,500.00 to Class Counsel falls well within the bounds of fairness and reasonableness recognized by the Ninth Circuit, this Court, and others across the country, and therefore should be approved.

## B.   The Court Should Approve the Proposed Service Awards to Class Representatives.

Courts often approve awards to class representatives for their service to the class as part of their approval of settlements in class actions. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 ("Finally, the district court did not abuse its discretion . . . in awarding an incentive award to the Class Representatives."); *In re Lorazepam & Chlorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are not uncommon in class action litigation and particularly where a common fund has been created for the benefit of the entire class. In fact, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *id.* (approving plaintiff awards representing 0.3% of classes' recoveries); *Hughes v. Microsoft Corp.*, Case Nos. C98-1646C, C93-0179C, 2001 WL 34089697, at *12

1   (W.D. Wash. Mar. 26, 2001) ("Incentive awards compensate named plaintiffs for the services they

2   provided and the risks they incurred during the course of the class action litigation.").

3        Class Representatives and Class Counsel are requesting that the Court approve compensation

4   from the $1,750,000.00 Settlement Proceeds in the amount of $5,000.00 for each Class Representative

5   based on their contributions to the litigation. *See* Settlement Agreement, § III(C)(1). Mr. and Ms.

6   Goldhaber have worked with Class Counsel, as the representatives of the RBS Subclass, for over four

7   years. During this time, they have responded to Class Counsel's requests for information, responded to

8   RBS's written discovery, reviewed relevant court filings, provided documents in response to RBS's

9   discovery requests, and have each been deposed by RBS's counsel. *See* Berns Decl., ¶30.

10       In light of the valuable services the Class Representatives have performed for the RBS Subclass

11   in helping to bring about the substantial benefits of the Settlement Agreement, the proposed $5,000.00

12   service awards, which represents .0029% of the total Settlement Proceeds, falls well within the range of

13   such awards that courts in the Ninth Circuit and elsewhere have approved as fair and reasonable. *See*,

14   *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. M 07-1827 SI, 2013 WL 1365900, at *17

15   (N.D. Cal. April 3, 2013) (approving incentive awards of $15,000 for each of the 40 court-appointed

16   class representatives)*; In re Mego*, 213 F.3d at 457 (affirming awards of $5,000 to each of two named

17   plaintiffs from $1,725,000 settlement fund); *In re Wachovia Corp. "Pick-a-Payment" Mortg. Mktg. and

18   Sales Pract's Litig.*, Case No. 5:09-md-02015-JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011)

19   (approving awards ranging from $2,500 to $14,250 and totaling $125,000 to named plaintiffs); *In re

20   Lorazepam & Chlorazepate Antitrust Litig.*, 205 F.R.D. at 400 (approving plaintiff awards representing

21   0.3% of classes' total recoveries); *Presley v. Carter Hawley Hale Profit Sharing Plan*, Case No.

22   C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. Jan. 7, 2000) (approving $25,000 incentive awards);

23   *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 award

24   to named plaintiff).

25       In light of the benefits conferred by the Settlement Agreement reached in this action, the role of

26   the Class Representatives in this lawsuit should be recognized with reasonable payments to compensate

27   them for the time and expense they devoted through their active participation in this litigation.

28

**IV.    CONCLUSION**

For all of the reasons set forth herein, Class Representatives and Class Counsel respectfully request that the Court approve the proposed award of attorneys' fees and costs of $437,500.00 to Class Counsel and the proposed service awards of $5,000.00 to each of the Class Representatives.

Respectfully submitted,

**BERNS WEISS LLP**

Dated: August 27, 2013

/s/ *Jeffrey K. Berns*

Jeffrey K. Berns
jberns@law111.com
20700 Ventura Boulevard, Suite 140
Woodland Hills, CA 91364
Tel.: (818) 961-2000
Fax: (818) 936-0232

– and –

Lee A. Weiss (Admitted *Pro Hac Vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Tel.: (516) 222-2900
Fax: (818) 999-1500

**SPIRO MOORE LLP**
J. Mark Moore (SBN 180473)
mark@spiromoore.com
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

**ARBOGAST BOWEN LLP**
David M. Arbogast (SBN 167571)
david@arbogastbowen.com
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Gerson@texasinjurylaw.com
Steven M. Bronson (SBN 246751)
steven.bronson@gmail.com

19

3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.: (510) 531-4529
Fax: (510) 531-4377

Attorneys for Plaintiffs and the RBS Subclass

Motion for Award of Attorneys' Fees and Costs, and Service Awards
C-07-04496-SI