IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY M. JORDAN, ELI GOLDHABER and JOSEPHINA GOLDHABER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL FINANCIAL, LLC, LUMINENT MORTGAGE CAPITAL, INC., HSBC BANK USA, N.A., AS TRUSTEE OF LUMINENT MORTGAGE TRUST 2006-2, RBS FINANCIAL PRODUCTS INC., and DOES 2 through 10 inclusive,<br><br>Defendants. | No. C 07-04496 SI<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARDS** |

Currently before the Court is class counsels' motion for award of attorneys' fees and incentive awards to the named plaintiffs. Dkt. No. 433. On November 15, 2013, the Court conducted a fairness hearing and in a separate order, granted the parties' joint motion for final approval of the settlement agreement. After carefully considering all papers filed and proceedings held herein and otherwise being fully informed in the premises, the Court has determined that attorneys' fees and incentive awards should be awarded and allocated as directed by this Order. For the following reasons, the Court GRANTS motion for attorneys' fees and incentive awards as detailed below.

**BACKGROUND**

The present case concerns the Option Adjustable Rate Mortgage loans ("Option ARM loans") acquired by RBS from Paul Financial, LLC. In 2005, plaintiff Gregory Jordan ("Jordan") and plaintiffs Eli and Josephina Goldhaber, ("the Goldhabers") entered into Option ARM loans with defendant Paul Financial, LLC ("Paul Financial"). Fourth Amended Complaint ("4AC"), ¶¶ 2, 3. Like all adjustable rate loans, the interest rates on the plaintiffs' loans were pegged to a variable index and thus changed

over time. *See, e.g., Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 440 (2009). The Paul Financial loans also contained a few idiosyncratic features, including an initial "teaser" rate. The Goldhabers' loan had an initial rate of 1.375%. 4AC ¶ 74. These teaser rates were dubbed the "yearly rate" on the plaintiffs' Promissory Notes (the "Notes"). *See* Weiss Decl., Ex. 1. Despite their name, however, these "yearly rates" lasted for only one month, after which the loan's interest rate substantially increased pursuant to the variable index rate. *Id*. at ¶ 25. This variable rate, disclosed in the Notes, was the sum of 3.825% plus the federal reserve index. As a result, after one month, the interest accruing on the loans more than doubled from an amount near 1% to an amount between 4 and 8%. 4AC ¶ 25.

At the same time, the Truth in Lending Disclosure Statement ("TILDS") that Paul Financial provided plaintiffs along with the Note listed a payment schedule outlining the amount of plaintiffs' minimum monthly payments for the first five years. *Id*. at ¶ 28. The TILDS payment schedule was tethered to the teaser rate, while the actual interest rate after the first month was tethered to the far-higher variable rate. Therefore, the minimum monthly payments did not cover the interest incurred after the first month of the loan. *Id.* The interest left outstanding would be added to the principal of the loan and begin accumulating interest itself. Thus, if plaintiffs paid only the monthly payment listed on the payment schedule, the principal on the loan would increase, and plaintiffs would lose equity with each payment - a process known as negative amortization.

One month after originating the Goldhabers' loan, Paul Financial sold it to Greenwich Capital Financial Products, Inc., now called RBS Financial Products, Inc. *Id.* at ¶ 7. RBS purchased loans from Paul Financial pursuant to a January 1, 2004 Master Mortgage Loan Purchase and Interim Servicing Agreement ("MLPA"), which set forth the terms and conditions under which RBS would later purchase loans from Paul Financial. Jordan's loan was also sold less than one month after origination, though instead to Luminent Mortgage Trust 2006-2, the trustee of which is HSBC. Both HSBC and Luminent have been dismissed as defendants in this case. *See* Dkt. No. 385. Therefore, only the Goldhabers' loan documents are still at issue in this case.

Jordan filed a putative class action complaint against Paul Financial on August 30, 2007. The complaint was amended to add the Goldhabers as plaintiffs as well as defendants Luminent Capital, Luminent Trust, HSBC, and RBS. The operative complaint is now the Fourth Amended Complaint, filed

2

on October 13, 2009, which states three causes of action: 1) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, et seq.; 2) fraudulent omissions; and 3) unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), Bus. & Prof Code §17200, et seq. On January 27, 2009, the Court denied plaintiff's motion for class certification. Dkt. No. 152. On September 30, 2010 the Court granted RBS's motion to dismiss the 4AC in part, dismissing plaintiffs' TILA claims as time barred, as well as the unlawful prong of plaintiffs' business practices claim, with leave to amend. Dkt. No. 295.

On March 18, 2011, plaintiffs moved for class certification as to the Goldhabers' remaining claims against RBS for common law fraudulent omission and violation of the California's UCL under its "fraud" and "unfair" prongs; and on April 7, 2011, RBS moved for summary judgment on the same claims. Dkt. Nos. 315 & 330.[1] On August 23, 2012, the Court granted plaintiffs' motion for class certification and denied RBS' motion for summary judgment. Dkt. No. 413. The parties were referred to private alternative dispute resolution in November 2012 and filed a motion for preliminary approval of their settlement agreement in May 2013. Dkt. Nos. 420 & 427. On June 14, 2013, the Court granted the parties' joint motion for preliminary approval of the settlement agreement. Dkt. No. 429. On November 14, 2013, class counsel submitted supplemental briefing and declarations to support their lodestar calculation, pursuant to the Court's order. Dkt. Nos. 440 & 442. A fairness hearing was conducted on November 15, 2013.

**DISCUSSION**

**1.   Attorneys' Fees**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Ninth Circuit has approved two different methods to calculate reasonable attorneys' fees. *Id*. Depending on

---

[1] On July 27, 2011, following the parties' joint request for dismissal, the Court ordered the dismissal of defendants Luminent Trust and HSBC. Dkt. No. 385.

3

the circumstances, a district court may employ the percentage-of-recovery or the lodestar method. *Id.* Under the lodestar method, the "figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id*. at 942. *Id.* 25% of the common fund is typically the "benchmark" for a reasonable fee award. *See Id.*; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *Id*. at 944; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002).

RBS has agreed to pay $1,750,000 into a settlement fund to provide a cash payout to all of the RBS subclass members. Berns Decl. ¶ 13. Class counsel seeks 25% of the settlement fund as an award for attorneys' fees and litigation expenses ($437,500.00). Viewing this as a common fund case, the Court first applies the percentage-of-recovery calculation method. In common fund cases, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Court has considered the relevant circumstances of the case, including the results counsel achieved for the class, the risk of litigation, counsel's performance, the contingent nature of the fee and the financial burden. *See Id*. at 1050-51; *see also Six Mexican Workers*, 904 F.2d at 1311. The Court has also reviewed class counsel's supplemental declarations describing the time spent by each firm on this litigation, the qualifications of the attorneys, and the submitted schedules detailing the number of hours spent and hourly billing rate for each attorney and paralegal involved in the case. Having compared counsel's lodestar with the percentage-of-fund amount as a cross-check,[2] the Court finds the 25% fee request reasonable. *See, Vizcaino*, 290 F.3d at 1050.

---

[2] Counsel aver (*see* Berns Decl, ¶ 26) that "based on contemporaneous daily time records regularly prepared and maintained by the [plaintiff] firms, the total hourly billing amount for the work performed by the partners, associates and professional support staff of the [plaintiff] firms from the inception of the case through May 1, 2013 is well over $2 million."

4

**2.    Incentive Awards to Class Representatives**

The Court may, at its discretion, award incentive or service awards to named plaintiffs to compensate them for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts often assess the reasonableness of the award by taking into consideration: "(1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atlantic Ritchfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal. 1995).

The parties have agreed that a $5,000 service award to each named plaintiff be paid from the $1,750,000 settlement fund RBS has agreement to fund. The litigation of this case against RBS was lengthy, lasting over four years, and was challenging. Class counsel's declaration states the class representatives "have worked with their counsel, as the representatives of the RBS Subclass, for over four years" and have "responded to Class Counsel's requests for information, responded to RBS's written discovery, reviewed relevant court filings, provided documents in response to RBS's discovery requests, and have each been deposed . . ." Berns Decl. ¶ 30. Although the class representatives have not submitted their own declarations attesting to their involvement in the case, their counsel has stated that they performed "valuable services" and "have helped to secure" substantial recovery for the subclass. *Id*. In general, courts have found incentive awards of $5,000 for service to a class to be presumptively reasonable. *See e.g., In re Mego Fin. Corp. Sec.* Litig., 213 F.3d 454, 463 (9th Cir. 2000); *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871 (N.D.Cal. Oct 27, 2009); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D.Cal. Apr. 3, 2009). Accordingly, the Court finds the requested $5,000 service award to the class representatives is reasonable.

///

**CONCLUSION**

For the foregoing reasons, the Court hereby awards:

1. Class counsel fees in the amount of $437,500.00.

2. Named plaintiffs' service award in the amount of $5,000 each to be paid in accordance with the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: November 19, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE